## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **829 YALE HOLDINGS, INC. d/b/a** | § | |
| **STEADFAST 829 YALE HOLDINGS,** | § | |
| **INC.** | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO._____ |
| | § | |
| **2017 YALE DEVELOPMENT, LLC,** | § | |
| **JETALL COMPANIES, INC.,** | § | |
| **ALI CHOUDHRI, LLOYD KELLEY,** | § | |
| **MICHELLE FRAGA, ET AL.** | § | |
| Defendants | § | |

### PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW Plaintiff, 829 Yale Holdings, Inc. d/b/a Steadfast 829 Yale Holdings, Inc., (referred to herein as "Steadfast" or the "Steadfast Parties"),[1] by their attorney, and file this Complaint, and would state as follows:

## I.

## INTRODUCTION

---

[1] Originally Steadfast Funding, LLC, and multi-state lenders Initram, Inc., RJL Realty, LLC, Eternal Investments, LLC, Bruce Robinson, Dale Pilgeram Trustee of the Pilgeram Family Trust, Joseph C. Hibbard, Kornelia Peasley-Brown, Salvador Ballestero, Margaret M. Serrano-Foster, Trustee of the Margaret M. Serranto-Foster Trust Dated 12/02/2005, Richard R. Melter, Trustee of the Richard R. Melter Revocable Living Trust, Liberty Trust Company, LTD Custodian FBO Vincent Paul Mazzeo, Jr., IRA, Joe Saenz, Patrick Grosse, Trustee of the Grosse Family Trust Dated 12/31/2004, Eric Verhaeghe, Stephen K. Zupanc, Liberty Trust Company, LTD, Custodian FBO Adam K. Hruby IRA #TC005383, Vincent Investments, Inc. AKA Vincent Investments, Equity Trust Company Custodian FBO Stephen (Steven) Krieger IRA, Judy M. Schnars, Joseph Dersham, Joyce Dersham, Walter Kaffenberger, Christel Kaffenberger, Mike Berris (Berres), Jason Sun, Equity Trust Company Custodian FBO Erica Ross-Krieger IRA, Elm 401K-PSP, Laurel Mead and Edwin A. Mead, Trustees and James T. Smith, Trustee of the James T. Smith Trust, all having assigned the property, and their claims, rights, obligations and causes of action related to Yale to Plaintiff for the protection, sale and management of the collateral and claims (hereinafter "Steadfast Parties"). The Steadfast Parties are residents of numerous states. In 2021, effective in 2022, they assigned the Property and all claims and causes of action to Plaintiff. Exhibits 215-18, 225.

1.     Defendants fabricated sham entities used in a pattern of interstate crimes, to commit a series of fraudulent schemes against Plaintiff (and its' predecessors by assignment, who will altogether be referred to as "Plaintiff" or "Steadfast").  Defendants fraudulently induced millions of dollars in real estate loans from Plaintiff, never paid the loans back and never paid a cent for the collateral Property located at 829 Yale Street.  They further fabricated sham transactions to illegally convey away title to Plaintiff's collateral real property and commit various schemes designed to steal Plaintiff's millions in loaned money, as well as Plaintiff's collateral property, altogether damaging Plaintiff in excess of fifteen million dollars to date.  The sham trust transaction and fraudulent transfer occurred on July 23, 2019, and whistleblowers came forward years later with evidence including audiotapes and emails proving the intentional schemes of Defendants.

2.     The case is simple. A short summary of video and audio recordings of Lloyd Kelley, Ali Choudhri, and Brad Parker prove the bulk of the case, as set forth in this PowerPoint link, slides 3, 4, 6, 7, and as quoted below, and summarized in <u>Exhibits 234, 235</u>:

https://www.dropbox.com/s/uhss354y0305tfq/Motion%20to%20Appoint%20Receiver%2C%20release%20bond%2C%20discovery.pptx?dl=0

3.     This Petition is lengthy because of detailed pleadings standards, and years of misleading briefing, unsupported by evidence, filed by Defendants in related litigation, in a campaign intended to bury the truth, or avoid substantive justice via procedural or non-legal means.  The facts set forth herein are already proven by undisputed evidence. Defendants engaged in a pattern of frivolous pleadings, designed to overload Courts, confuse fact finders, and create a procedural morass. *See e.g.* <u>Exhibit 242</u>.

4.    Steadfast made multimillion dollar construction loans to a developer, Terry Fisher and his company 829 Yale St., secured by the 829 Yale Property.  <u>Exhibit 1</u>.  Defendants Choudhri and Jetall secretly paid Fisher with $100,000 (secret until a whistleblower produced the check in July of 2021, <u>Exhibits B, 170</u>) to cause the borrower, 829 Yale St., to illegally[2] give away a deed to Steadfast's collateral at 829 Yale to Jetall (owned by Choudhri) for no consideration,.  <u>Exhibits 3, 4, 4a21, 4a22</u>.

5.    The Lenders moved to foreclose due to this transfer in violation of the Loan Documents, but Choudhri, Jetall, Brad Parker, and Fisher fraudulently induced Steadfast into a loan workout, loaning more funds to Parker's company, a new borrower, 2017 Yale Development, LLC.  <u>Exhibits 1, 11(b)(and 11a-e), 170</u>.  However, Parker and 2017 Yale were secretly 'fronts' for Choudhri, who was hiding cash and assets from his wife in his divorce.  <u>Exhibits 234, B, B(a-c)</u>. Choudhri, Jetall, and other defendants owed Kelley three million dollars, so they secretly assigned ownership of Steadfast's borrower 2017 Yale to Kelley (his LLC Pabeshan) in violation of the Loan Documents and criminal statutes, to satisfy that debt.  <u>Exhibit A</u>;  <i>Id</i>.[3]  Parker, secret 'front-man' for Kelley and Choudhri, caused 2017 Yale to fraudulently induce more loan draws from Steadfast, never paid a cent of the six-million-dollar loan back, ripped off its construction contractors, and abandoned the unfinished property.  <u>Exhibits 92, 15, 170, 220</u>. The Lenders moved to foreclose again, but Kelley, concealing his ownership of the borrower, caused 2017 Yale and Fisher to sue Steadfast to obstruct foreclosure using perjured evidence, ultimately losing all claims.  <i>Id</i>.

---

[2] <i>E.g.</i> Penal Code 32.33 and federal crimes as evidenced in the Amended Petition and <u>Exhibit 292</u>.
[3] Despite l discovery requests, this secret assignment of ownership of the borrower, violating the recorded Loan Documents (<u>Exhibit 11b</u>) was not discovered until whistleblowers produced it in July of 2021.  <i>Id</i>;  <u>Exhibits A, B, 106, 170</u>.

6.      Immediately upon losing summary judgments in July of 2019, Kelley secretly induced his long-time friend from Michigan, a teacher, Fugedi, to pretend to be a trustee of a sham trust.  *Id*; Exhibits 86(a-v), G, H; 272; 290 e.g. at pg. 20.   Kelley's long-time-friend from Costa Rica, Elberger, became the supposed member of Carb Pura Vida, LLC, supposedly managed by a paralegal, Norma Lopez, which posed as Kelley's sham settlor and beneficiary.  *Id*.   Kelley and Choudhri then used Parker as a front-man for 2017 Yale, Fugedi as a front for the trust, and fabricated a sham conveyance of Steadfast's collateral to the sham trust, to hinder Steadfast's secured creditor's rights and judgment.  Exhibit 86(o).  They transferred the Property "*so that [Steadfast] wouldn't get it*" and planned to "*undo*" the transaction once they defeated Steadfast.  Exhibits 234, B(a-c).  Kelley, Fraga, Parker tried claimed the sham transaction as a bona fide purchase, to steal the collateral.[4] Exhibits 102, pg.78 on; 234. They and Choudhri planned to undo the trust transaction afterwards, and dole out percentages to the other Defendants for their help with the scam. Exhibits 234, B, B(a-c).[5]

---

[4] No consideration was paid by the trust or received by 2017 Yale;  the only funds for this multi-million dollar property was $275,000, of which $251,000 was a bribe to Alvarez to file a knowingly fraudulent lien release, purporting to release Steadfast's lien.  Exhibits 234, 86(i), 272, 285, 290.  Defendants knew the lien release was fraudulent.  That money actually came from Choudhri and went to Alvarez.  Exhibits 272, 290.  Kelley also admits that he created the trust documents, and that the audiotapes are authentic.  Exhibit 272.

[5] The scheme, fraudulent title abstract and frivolous claims were predicated in part on a fraudulent lien release, purportedly Alvarez releasing Steadfast's first lien.  Defendants knew and previously testified Alvarez could never release Steadfast's lien, back when it was in their interest to tell the truth, before they lost the loan lawsuit, and then wanted to pull the fake trust and lien release scam.  Alvarez, with Kelley and Fraga representing both 2017 Yale and Alvarez, before they fabricated the fake trust and illegal lien release.  Exhibit 285:

*Pg. 201 Alvarez:· I never had rights to the first lien.  That's something that Matt and Marc [Sherrin for Steadfast] had control of 205 · I mean, there was nothing I could do on the first lien because Matt and Marc controlled it. 208 Q.:· Nobody else wiped your lien out, right?  KELLEY:· Objection.· Form. ·6· THE WITNESS ALVAREZ:· Again, Marc [Steadfast, pursuant to the Collateral Transfer of Note and Lien, Exhibit 20e] and Matt had control of the first lien.  I only wiped out the 2.2 lien -- 2.2 million [second]  lien…The first [Steadfast] lien, I did not wipe out.· I had no control in it to wipe it out or 25· release the lien.*

Only after they needed a fraudulent lien release from Alvarez, to spring the Fugedi fraudulent transfer scam using this Court as a

7.     Defendants concealed all evidence of their predicate acts throughout discovery and litigation.  *Id; see also*  Exhibit 170.  However, in 2020, Kelley and Choudhri began fighting over which of them would get the rewards of the scheme, which is why Choudhri recorded Kelley and Defendants plotting the scams.  *Id.*  Whistleblowers later produced documents and those recordings in July of 2021, proving the schemes. *Id.*  This was the first time, despite herculean efforts to obtain discovery in prior cases, that Steadfast learned of the fake trust scam, the roles of the title and other Defendants, or that some of their loan money and other benefits that wrongfully went to the Parker and Fisher Defendants.  *Id.*

8.     Defendants, and their attorneys caused the trust and Defendants to file innumerable frivolous suits and tens of thousands of pages of vexatious pleadings to try to evict Steadfast, prevent foreclosure, obstruct sale or development of the property, get a quiet title judgment on fraudulent pretenses, cause procedural complication and confusion, try to project misconduct on everyone associated with Steadfast (by pleadings without evidence), and ultimately bury their misconduct to avoid substantive justice.  Exhibit 242.

9.     Steadfast has still never received any repayment for its loans, and has been damaged in excess of fifteen million dollars.  Exhibit 170.  Not one Defendant ever paid anything for the property, or to pay Steadfast's valid lien, and not one of them took the stand in any of the trials.  Exhibits 92, G, H, 291, 290, 170.  Defendants have avoided numerous depositions by vexatious means since their conduct was exposed in 2021.  *See e.g.* Exhibits 256, 266, 267, also dodging depositions in this case.  Yet they have sued whistleblowers,

---

tool for fraud, fraudulently asserting the sham trust to be a bona fide purchaser because of the release, did they change their story and claim that Alvarez could release Steadfast's lien.

their families, witnesses, opposing lawyers, their spouses, state bar investigatory counsel, reporters, and everyone filing bar complaints against them, to harass, intimidate, and obstruct substantive justice.  Exhibit 242.

10.    Fugedi, the Enterprise's supposed trustee, appeared and admitted that he doesn't know why the trust was formed or why it wanted the property, why he is a trustee, who named the trust, who the supposed seller was, where the pittance of money involved came from, or where or to whom it went for the sham property transaction.  Exhibits 291, 290. He never set foot on the property, and never even saw it until years after frivolous suits were filed in his name.  *Id*.  He didn't know who he sued or why, nor has he read the pleadings. *Id*.  He claimed not to know that Steadfast loaned millions of dollars to 2017 Yale and had a Deed of Trust precluding the trust's acquisition. *Id*.  He couldn't identify or describe anyone supposedly affiliated with his supposed seller 2017 Yale, other than Kelley, Fraga, Patterson, Elberger, Pierce, and Hill.  *Id*. He didn't know that Alvarez received the supposed (and inadequate) consideration, or why.  *Id*.  Not only is the trust and trustee not paying any lawyers in this case, but the lawyers are paying him and claiming ownership of the property!  *Id.*

11.    All Defendants each committed more than two RICO predicate acts and federal criminal violations in furtherance of this interstate fraud scheme, as set evidenced and briefed in Steadfast's disclosures, Supplemental 12(b) responses, and other pleadings, which are incorporated herein fully.  *See* Exhibit 292.  Now that the trust scam has been exposed, Parker and Elberger apparently backed out of their participation as 'front-men',

leaving Choudhri and Kelley admitting ownership of both sides of the sham trust transaction.  Exhibit 286.

12.    Defendants bribed witnesses to perjure themselves, bribed landmen, title companies, and other attorneys to participate in their schemes; bribed witnesses to claim ownership of fake trusts and sham companies, and pretend to be bona fide purchasers using fraudulent instruments and perjured testimony.

13.    Defendants filed frivolous suits against Plaintiff to obstruct Steadfast's foreclosure for their loan default.  Every single time a legitimate Court that wasn't disqualified or forced to resign from the bench actually pierced through the garbage and reviewed the actual evidence, Steadfast won every issue.  Steadfast won its contractual note default counterclaims, eviction case, and quiet title counterclaim against Defendants' frivolous lawsuits, at the unnecessary cost of over two million dollars in legal fees (which fees constitute damages herein as well) caused by Defendants' Criminal Enterprise. However, the present crimes and tort claims were not before those courts, Defendants having fraudulently concealed key information from discovery in those matters and concealed the true nature of the Enterprise from the Courts.  Perjury, fraudulent evidence and frivolous, vexatious litigation were all a part of their scheme to abuse those courts as actual vehicles for their criminal Enterprise.[6]   A detailed procedural history accurately citing the history

---

[6] One reason they have gotten away with so much fraud against so many people for so long is their ability to confuse courts, create procedural messes, exert influence certain courts, and bury people and judges in paper.  This time they are finally caught red-handed, and this Court finally has the undisputed evidence before it to do justice, and avoid the procedural quagmire this Criminal Enterprise is sure to try to create, yet again.

of related litigation has been separately filed by Plaintiff, and is incorporated herein fully without further reference. *See* Exhibit 242.

14.    It was not until whistleblowers came forward that the extent of Defendants' criminal conduct and depth of fraud were able to be proven.  The whistleblower evidence submitted herewith, including extensive audiotape recordings, is already judicially admitted, authenticity and admissibility proven, objections waived, and proves the full nature of Defendants' criminal, fraudulent Enterprise.  It also establishes Defendants' criminal intent, conspiracy, and use of interstate commerce to implement their fraudulent schemes and commit a pattern of predicate acts.

## II.
## JURISDICTION AND VENUE

15.    This Court has subject matter RICO jurisdiction under 18 U.S.C. 1964.  Further, this Court has jurisdiction under 28 U.S.C. § 1332 as the claims are between citizens of different states. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  This Court also has independent jurisdiction under 28 U.S.C. § 1331.  Under the *Smith* rule, a suit can "arise under" federal law, for purpose of conferring federal question jurisdiction, where the plaintiff's right to relief, based on a state law cause of action, turns on the construction or application of federal law.  Venue is proper in this Court because the property that is the subject of this suit is located in the Southern District of Texas and the majority of events occurred in the Southern District of Texas.  Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and reside in this district, though they may be

served nationwide pursuant to 18 U.S.C. § 1965(b).

## III.
## PARTIES

1.    **JETALL Companies, Inc**., is a Texas corporation who may be served through its registered agent Legal Registered Agent Services, Inc, 5900 Balcones Drive, Ste. 100, Austin, TX 78731, formerly 700 Lavaca, Ste. 1401, Austin, TX 78701.

2.    **Ali Choudhri** is an individual who resides in Texas and who may be served at 11511 Gallant Lane, Houston, 77082; 1708 River Oaks Blvd., Houston, TX 770019, 2425 West Loop S., Houston, Texas 77027, 2500 West Loop S. Ste. 255, Houston, TX 77027, 1001 West Loop S., Ste. 700, Houston, TX 77027, or wherever he may be served.

3.    **Brad Parker** is an individual who resides in Texas who may be served at 2500 West Loop S. Ste. 255, Houston, TX 77027, 2127 Bolsover St. Houston, TX 77005, 1911 Westheimer Road, Houston, TX 77098, or wherever he may be served.

4.    **2017 Yale Development, LLC**, is a Texas limited liability company who may be served through its registered agent, Legal Registered Agent Services, Inc. 5900 Balcones Dr., Ste. 100, Austin, TX 78731, formerly at 1614 Sidney Baker Street, Kerrville, TX 78028, at 5900 Balcones Dr., Ste. 100, Austin, TX 78731, at 1001 West Loop S., Ste. 700, Houston, TX 77027.

5.    **2017 Yale Development GP, LLC** is a Texas limited liability company who may be served through its registered agent, Legal Registered Agent Services, Inc. 5900 Balcones Dr., Ste. 100, Austin, TX 78731, formerly at 1614 Sidney Baker Street, Kerrville, TX 78028, at

5900 Balcones Dr., Ste. 100, Austin, TX 78731, at 1001 West Loop S., Ste. 700, Houston, TX 77027.

6.    **Nicholas Fugedi, individually and as Trustee of the Carb Pura Vida Trust** is a Michigan resident who may be served at 480 Oakwood Beach, Brooklyn, Michigan 49230, 15555 Markese Ave., Allen Park, MI 48101, 33315 Grand River, Farmington, MI 48336, 41701 Sutters Lane, Northville, MI 48168, or wherever he may be served.

7.    **Carb Pura Vida, LLC**, is a Texas Limited Liability Company, and may be served by its registered agent, Ed Herman, at 27606 Ossineke Dr., Spring, Texas 77386, or at 5755 Beacon Hill Dr., Frisco, Texas 75036.

8.    **Michelle M. Fraga**, is a Texas resident and may be served at 1411 Woodcrest, Houston, Texas 77018.

9.    **Lloyd E. Kelley** is a Texas resident and may be served at 2726 Bissonnet, Ste. 240 PMB 12, Houston, Texas 77005; 717 Cowley Ave., East Lansing, MI 48823-3009; 7157 E. Saginaw St., East Lansing, MI 48823-9627; 6514 Buffalo Speedway, Houston, TX 77005; or 517 Collingwood Dr., East Lansing, MI 48823-3414.

10.    **Pabeshan Castle, LLC** is a Texas Limited Liability Company, and may be served by its registered agent, Sonfield & Sonfield, 2500 Wilcrest Drive, Ste. 300, Houston, TX 77042; or at 2776 Bissonnet Street, Ste. 240 c/o Box 12, Houston, TX 77005,  770 S. Post Lak, Lane, Ste. 435, Houston, TX 77056, or 2500 Wilcrest Drive, Ste. 300, Houston, TX 77042.

**Plaintiff:**

<mark>Plaintiff is 829 Yale Holdings, Inc. (a New Mexico Corporation) d/b/a Steadfast 829 Yale Holdings, Inc. as registered in Texas.</mark>

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 2

II. JURISDICTION AND VENUE ................................................................. 8

III. PARTIES ................................................................................................. 9

IV. CASE STATEMENT .............................................................................. 25

    Parties and Their Roles ........................................................................... 25

    Background ............................................................................................... 33

    First Predicate Act:  The Yale Enterprise Secretly Forms:
    The Fisher/Jetall Fraudulent Title Transfer, Tortious Interference and
    Extortion Scam ......................................................................................... 34

    The Second Scam:  The 2017 Yale Fraudulently Induced Loan Workout
    Scam, and Using the 190th District Court as a Tool for Extortion and Defraud ... 36

    The Third Scam:  Stealing Steadfast's Loan Money ............................... 42

    The Fourth Scan:  A Three Million Dollar Secret, Hidden Assets in a Divorce,
    And a Secret Deal Between Choudhri and Kelley Exposed by a Whistleblower-
    Giving Away Ownership and Borrower .................................................. 43

    The Fifth Scam:  Attempted Acquisition of the First Lien by Extortion,
    Try to use it to Wipe Out the Second Lien ............................................. 45

    The Sixth Scam:  Contacting the Steadfast Lenders to Dupe Them into
    Turning on the Other Steadfast Lenders ................................................. 45

    The Seventh Scam:  The Alvarez Deception ........................................... 45

    The Eighth Scam:  the Tax Lien Scam .................................................... 47

The Ninth Scam:  The Tort Severance/TCPA Sanctions/Vexatious Litigation Scam ............................................................................. 48

The Tenth Scam:  The Fraudulent Transfer of Collateral to Kelley's Fake Trust.................................................................................... 49

  Criminal Fraudulent Intent Confirmed........................................... 51

The Eleventh Scam:  Perjury and Fraudulent Documents Fabricating A Bona Fide Purchase by the Fake Trust ................................... 52

The Twelfth Scam:  The Fraudulent Title Abstract ................................ 57

The Thirteenth Scam:  The Frivolous Eviction Case ............................. 59

  Kelley Secretly Controlled Both Sides of the Transaction by which Kelley's Fake Trust Took the Void Deed ..................................... 62

The Fourteenth Scan:  Bribing Attorneys to Pursue Frivolous Litigation Based on Fraudulent Documents and Perjured Testimony ................................... 63

  Conspirators and Counsel Knew Their Litigation was Frivolous; Violated Bar Rules, FRCP, FRAP, and Criminal Statutes......................... 64

The Fifteenth Scam:  The Frivolous Title Abstract................................. 68

The Sixteenth Scam:  Conspirators and Counsel Continue to Defraud Courts and Cloud Title with False Allegations and Filings ................. 71

The Seventh Scam:  The 2022 Fraudulent Lis Pendens, Another Crime and Tortious Interference, Fitting Right into the Pattern of the Yale Criminal Enterprise.................................................................................... 71

V. DETAILED TIMELINE ............................................................... 72

The Enterprise Forms a Sham Company to Perpetrate its Fraud and Extortion Scheme ...................................................................... 77

The Enterprise's Second Fraudulent Transfer and Fraudulent Loan Inducement/Extortion Scam ...................................................... 78

Another Secret Fraudulent Transfer by the Enterprise Calculated to Steal The Property ................................................................................ 89

The Enterprise Uses Over Two Hundred Hours of Deposition Time for the Sole Purpose of Harassing, Abusing, Intimidating, and Attempting to Turncoat the Steadfast Lenders Against each Other as they did Alvarez .............. 93

The Enterprise Obtains Improper *Ex Parte* Relief from Harris County Judge ...... 94

Yet Another Sham Company and Fraudulent Transfer Calculated to Steal the Property ...................................................................................... 95

Attorneys Must be Disqualified ............................................................... 105

**VI. CAUSES OF ACTION** ................................................................. 109

    **CIVIL RICO** ...................................................................................... 110

        Predicate Acts of Racketeering Activity ..................................... 111

        Pattern ......................................................................................... 114

        Persons and Enterprise ............................................................... 117

        Racketeering Activity .................................................................. 120

        Additional Information on State Law Crimes Supporting Civil RICO Relief .................................................................................. 121

            Extortion .............................................................................. 121

        § 32.33 Hindering Secured Creditors ........................................ 123

        § 32.49 Refusal to Execute Release of Fraudulent Lien or Claim ............ 124

        § 31.03 Defendants Stole over Seven Hundred Thousand Dollars Out of the Loan .......................................................................... 125

        § 32.46 Defendants Fraudulently Induced and Deceived Steadfast And Alvarez into Executing Documents with the Intent of Defrauding Steadfast ..................................................................................... 126

        Additional Offenses .................................................................... 127

        Federal Crimes Supporting RICO Relief ................................... 128

Defendants Violated 18 U.S.C. 1§§ 503 and 1512, *supra* ............. 128

Defendants Violated 18 U.S.C. §§1341 and 1343, *supra* .............. 129

Interstate Commerce ....................................................................... 130

RICO Damages ............................................................................... 133

**CONVERSION** ................................................................................... 134

**FRAUD, FRAUDULENT TRANSFER, STATUTORY FRAUD, AND FRAUD IN THE INDUCMENT** ................................................... 135

**TORTIOUS INTERFERENCE WITH A CONTRACT AND PROSPECTIVE BUSINESS RELATIONS** .......................................... 135

**QUANTUM MERUIT** ......................................................................... 136

**CONSPIRACY** ................................................................................... 136

**AIDING AND ABETTING** ................................................................. 137

**FRAUDULENT TRANSFER** .............................................................. 137

**PRINCIPAL-AGENT LIABILITY** ..................................................... 138

**TEXAS CIVIL PRACTICE & REMEDIES CODE §12.002** ............. 138

**VICARIOUS LIABILITY, ALTER EGO, PIERCING THE CORPORATE AND LLC VEIL** ............................................................ 139

**VII. APPLICATION FOR APPOINTMENT OF RECEIVER AND TURNOVER** ............................................................................................ 139

**VIII. DECLARATORY JUDGMENT** ...................................................... 142

**IX. CONDITIONS PRECEDENT AND DAMAGES** ............................... 145

**X. ADDITIONAL DAMAGES** ................................................................. 146

**XI. FOLLOWING THE MONEY REVEALS DEFENDANTS' OBVIOUS SCAMS** ............................................................................................ 156

**XII. "WHO DID WHAT" SUMMARY PROVES EACH DEFENDANTS' CONTRIBUTIONS TO THE CRIMINAL ENTERPRISE** ...................................... 151

**XIII. PREDICATE ACTS ALREADY PROVEN** ....................................... 197

    18 U.S.C. 1341, 1343 MAIL, WIRE FRAUD - SCHEME ................................. 197

        Summary of one key Scheme (detailed acts of wire fraud are identified ................................................................. 198

        Summary of Evidence on Concealed or Misrepresented Facts ............... 199

        Whistleblower and Documentary Evidence Summary ........................... 202

        The scheme hinged on the illegal, fraudulent transfer deed Kelley and Choudhri plotted ...................................................... 204

    MAIL, WIRE FRAUD ELEMENT 2 – PARTIAL PARTICIPATION ............. 207

    RICO MAIL WIRE FRAUD ELEMENT 3 – INTERSTATE IMPACT ........... 209

    18 U.S. CODE § 1621 - PERJURY ........................................................ 215

    18 U.S. CODE § 1622 - SUBORNATION OF PERJURY ................................ 216

    18 U.S. CODE § 1016 - ACKNOWLEDGMENT OF APPEARANCE OR OATH ...................................................................................... 216

    18 U.S. CODE § 1623 - FALSE DECLARATIONS BEFORE COURT ........... 217

    18 U.S.C. § 1001: FALSE STATEMENTS ........................................... 218

**XIII. PRAYER** ......................................................................... 221

### EXHIBIT INDEX – Steadfast 829 Yale Holdings, Inc. – RICO Matter

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | 1st Lien Deed of Trust |
| 2 | (Ex. 4) 2nd Lien Deed of Trust |
| 3 | Fraudulent - General Warranty Deed - 829 Yale to Jetall 09-23-16 |
| 4 | (Ex. 1) Memorandum of Understanding |
| 4a21 | Fisher signed Memorandum of Understanding |
| 4a22 | Fisher signed Memorandum of Understanding bribe check |
| 4a22b | Naeve participation – Doc 475 |
| 4a22b | 12-2016 Naeve flat fee conspiracy |
|  |  |
| 7 | 839 Yale St. photos 12-15-16 |
| 9 | Kavac-Fisher-829 Yale St. - draw of 05-20-17 |
| 10 | (Ex 33) Last email regarding draws |
| 11a | (Ex.11a) Warranty Deed |
| 11b | (Ex. 4c) 04-04-17 Deed of Trust |
| 11d | (Ex 11d) Promissory Note |
| 11e | (Ex 11e) Construction Loan Agreement |
| 12 | KAVAC-T. Fisher draw of 10-11-17 |
| 12 | (Ex. SF-420) 09-15-17 draw package |
| 13 | (Ex. 13) Lloyd Kelley building documents |
| 13a22 | 12-14-17 Lloyd Kelley involved, knew STF would fund, knew DA loan maturing |
| 14 | 2017 Yale Development LLC change of Registered Agent |
| 14 | 2017 Yale, LLC Certificate of Formation |
| 14 | 2017 Yale Development Group change of Registered agent |
| 14 | 2017 Yale Development Group Certificate of Formation |
| 14 | 2017 Yale Development LLC new SOS and comptroller records |
| 15 | (Ex 34) M&M Liens |
| 15 | (Ex.15) Mustang Lien 11-2017 (2) |
| 15 | RP-2017-511106 - Mustang Rental Services |
| 15 | RP-2017-542576 - Mustang Rental Services |
| 15 | RP-2018-17584 - Supply Network, Inc. dba Viking Supplynet |
| 15 | RP-2018-17915 - Ferguson Fire and Fabrication, Inc |
| 15 | RP-2018-62360 - Mustang Rental Services |
| 15 | RP-2018-109687 - Chero-Key Piping Company, Inc |
| 15 | RP-2018-469230 - Contractors Access Equipment |
| 17 | Ali and Brad abandon Yale 11-03-17  TL 140 |
| 18 | 0121-Plaintiffs 4th Amended Petition |
| 18 | 0133- suing Alvarez in Supplemental 4th Amended Petition |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 19 | (Ex. 19) Email regarding last draw swindle more DA threat |
| 19 | (Ex. 231) Fraga illegally contacts represented clients - sue DA, flip 1L |
| 19 | (Ex. 229) Fraga ltr of 01-29-18 swindle more loan, split lenders |
| 19 | (Ex. 230) Kelley ltr of 02-09-18 conceal ownership - split lenders |
| 19b | (Ex. 231) Fraga ltr of 06-25-18 interfering with represented lenders |
| 20e | (Ex. 3c) 02-16-18 Collateral Transfer of Note and Lien |
| 21 | (Ex. 21) Frivolous Injunction against 4c 04-2018 |
|  |  |
| 29 | (Ex. 29) 07-14-18 Kelley induced Release of Alvarez 2nd lien |
|  |  |
| 32 | (Ex. 32) 10-18-17 last JPK report draw request via email |
|  |  |
| 35 | Highlighted Bradley Parker depo |
| 35c | (Ex 35) Parker Depo default, Steadfast money, M&M lien |
| 35c | (Ex 9) Brad Parker Deposition |
| 35c | (Ex. 35) Brad Parker Deposition |
| 35c | Parker Bradley 2019 full deposition |
|  |  |
| 44 | (Ex. 44) Kelley induced DA to release 07-14-18 |
| 45 | (Ex. 45) Kelley engagement ltr |
| 46 | (Ex. 46) Illusory fake "Restoration Commitment" Brad Parker to DA |
|  |  |
| 53 | STF default warning emails till 11-17 416 tl38 |
| 53 | Yale default, draws declining, warning payment due |
|  |  |
| 55 | 2017 YALE DEVELOPMENT LLC (Transfer TO Cityscape) (1) |
| 55 | 2017 YALE DEVELOPMENT LLC (Transfer TO JETALL) (1) |
| 55 | 2017 YALE DEVELOPMENT LLC (Transfer TO KAVAC, LLC) (1) |
|  |  |
| 68 | Fraudulent General Warranty Deed 07-23-19 |
|  |  |
| 81 | (Ex. 5) Brad Parker assigns fake Tax Relief lien using Fraga's address |
| 82 | Real Tax Relief not involved, Fraga used her address for fake company |
| 83 | (Ex. 9) Fraga firm address on SOS matches fake Tax Relief |
| 83 | (Ex. 17) Wyoming Tax Relief |
| 83 | (Ex. 12) Fraga secretly formed fake Tax Relief in Wyoming to avoid discovery |
| 83 | (Ex. 10) Fraga swindled DA to pay tax lien for fake Tax Relief |
| 83 | (Ex. 16) Real Tax Relief |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
|  |  |
| 86a | 07-21-19 Lloyd Kelley arranged whole scam |
| 86b | 07-21-19 Lloyd arranged meeting on fake Trust |
| 86c | 07-22-19 Trust is Lloyd's friend |
| 86d | 07-22-19 Lloyd sent DA whole package |
| 86e | 07-22-19 DA to title with Lloyd drafts |
| 86f | 07-22-19 fake illusory Note Purchase Sale Agreement.1 |
| 86g | Fake illusory Note 222 |
| 86h | Fake LLC and Trust 07-21-19 never signed |
| 86i | Fake Assignment of Note 222 |
| 86j | 07-21-19 Carb Pura Vida, LLC Operating Agreement |
| 86k | 07-21-19 SOS existence Carb Pura Vida |
| 86l | Change of Registered Agent |
| 86l1 | Carb Pura Vida LLC Certificate of Formation |
| 86l2 | 07-21-19 CARB-Unanimous Consent of Sole Member |
| 86m | Fraud lien release Kelley induced DA to sign against CTNL |
| 86n | Deed - General Warranty 222 - just like fraudulent deed they filed |
| 86o | Filed  - General Warranty Deed 07-23-19 |
| 86p | Fake illusory Sales Contract Revised 222 - never signed |
| 86q | July 31, 2019 Wire - $251,301.00 |
| 86r | 07-26-19 no closing of fake Trust transfer |
| 86s | 07-30-19 no real closing, no signed documents, Brad Parker signed, Mansoor involved |
| 86u | 07-22-19 Umatiya circulates fake Trust documents to Brad Parker, DA Ali Choudhri and Lloyd Kelley |
| 86v | Signed Settlement Statement (1) for fake closing |
|  |  |
| 88 | 2021-03-05 STF grounds supporting federal judgment |
| 89 | 2021-04-16 recorded certified federal final judgment |
| 89 | Federal Final Judgment |
| 90 | (Ex. 20) Letter to Judge Brown re disqualification |
| 90 | (Ex. 21) 2nd letter to Judge Brown (5) |
| 90 | (Ex. 22) Motion to Disqualify (1) |
| 90 | (Ex. 23) Supplement to Motion to Disqualify |
| 90 | (Ex.t 29) Supplement to Motion to Disqualify |
| 91 | (Ex. 30) signed Disqualification Order |
| 92 | 190th Final Judgment on Note default and frivolous Lloyd Kelley claims |
| 93 | 08-01-19 Frivolous title complaint by fake Trust |
| 94 | Exhibits to fraudulent Huebner Abstract |
| 94 | Fraudulent Abstract |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 94 | Fraudulent Huebner title abstract omitting CTNL |
| 94 | Key pages to fraudulent Abstract |
| 94 | True STF Abstract adding prior recorded documents - JS declaration |
| 95 | Title Policy First American fraudulent document |
| 96 | 2019 Fugedi tortious Lis Pendens |
| 97 | 11-06-2019 foreclosure - STF Substitute Trustee Deed |
| 98 | TRO 07-26-19 |
| 99 | List of Criminal Enterprise Lawsuits as of 2019 |
| 100 | Fraga received Texas Penal Code Sections 32-49 felony notice |
| 100 | Kelley received Texas Penal Code Sections 32-49 felony notice |
| 100 | Texas Penal Code Sections 32-49 notice to 2017 Yale via Brad Parker |
| 100 | Demand under Texas Penal Code Section 32 |
| 101 | 5th Amended Petition now repping Alvarez |
| 102 | (Ex. 10) Trial Transcript - Miller |
| 103 | Ali sues Kelley unearned fees |
| 103 | Kelley intervening against Choudhri |
| 103 | Kelley intervention v Choudhri |
| 103 | Lloyd and Ali fraud suit |
| 103 | Kelley moves for arbitration |
|  |  |
| 105 | Kelley threatened Groves Guards |
| 106 | Pabeshan Certificate of Formation - Kelley |
| 106 | Pabeshan 2017 Public Information Report- Kelley |
| 106 | Pabeshan 2019 Public Information Report- Kelley |
| 106a21 | 07-14-18 Kelley has Pabeshan use Brad Parker to dupe DA Resolution |
| 107 | Fisher deposition only disclosing unsigned Memorandum of Understanding |
| 108 | 202-06-25 Kelley arbitration demand |
| 108 | 2021-06-25 Kelley suing DA |
| 109 | last 2017 Yale Bank Records money is gone |
| 110 | 2019-10-30 2017 Yale declaration of net worth |
| 110 | 2019-10-30 first case deposit in lieu of supersedeas bond |
| 110 | 2019-10-30 Kelley has Alvarez fake deposit in lieu of supersedeas bond |
| 111 | 351- Tenth Amended Petition (1) |
| 112 | (Ex. 16) 2021 Photographs |
| 112 | (Ex. 16) Photographs |
| 112 | (Ex. 17) Additional Photographs |
| 112 | (Ex. 18) Supplemental Photographs |
| 113 | (Ex. 4) Photos 2019 |
|  |  |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 115 | JS Declaration of true Title Abstract adding CTNL and other key documents |
|  |  |
| 120 | Choudhri deposition - perjury re fisher bribe, 2017 Yale control, joke VIDEO - |
| 120 | Ali Choudhri deposition - 01-31-19 |
| 121 | Fugedi perjured title Motion for Summary Judgment declaration |
| 122 | Ali fails to request copies of all recordings back on Wyatt term |
| 122 | Ali instructing Wyatt to record conversations 2 |
| 122 | Ali instructing Wyatt to record conversations |
|  |  |
| 126 | Page verifying filing of thumb drive (3:19-cv-249 [Dkt. 126] |
|  |  |
| 150 a21 | Jetall fraudulent marketing Bio-Experience Shell (1) |
| 151 a21 | 09-28-16 Jetall fraud brochure 829 Yale Modern Condos for Ali |
|  |  |
| 154 a21 | Ali knows Brad faked documents - Redacted |
| 154 a21 | Ali still in YCE paying Michelle - Redacted |
| 154 a21 | Ali texts - YCE covering up stolen loan money, Naeve demanding money - Redacted |
| 154 a21 | DA, Brad Parker and Ali Choudhri meeting 07-19-19  Redacted |
| 154 a21 | Mansoor Yale - Redacted |
| 154 a21 | Text Stephanie Alvarez spied on foreclosure sale for YCE - Redacted |
| 154 a21 | Stephanie Alvarez spied and videoed foreclosure sale for YCE -Redacted |
| 154 a21 | Whole YCE knew fake release and trust deed – Stephanie Alvarez, Mansoor, Ali Choudhri, Brad Parker Redacted |
| 154 a21 | YCE plotting scams - Redacted |
| 154 a21 | 04-04-18 YCE changing plans, hiding Kelley and Fisher, |
| 154 a22 | 02-2018 WFG title commitment proves CNTL DA0 knowledge |
| 154a22 | 07-09-19 Kelley and Brad Parker knew CTNL and STF title when made up fake Trust scam after losing Motion for Summary Judgment |
|  |  |
| 160 | 018 example STF motion to Consolidate |
| 160 | Example STF Motion to Consolidate |
|  |  |
| 162 | 2017 Yale closing statement |
| 163 | 2022-02-25 Fugedi Lis Pendens (002) |
|  |  |
| 170 | Declarations – <br> - 2022-03-18 Sherrin Declaration <br> - 2022-03-28 CBR Declaration |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| | - 2022-03-29 Hruby revised Supplemental Declaration<br>- 2022-03-29 Sherrin Supplemental Declaration |
| 171 | Correction Deeds and Perjured Affidavit |
| 172 | 2022 Property Photos –(43 Images) |
| | |
| 174 | STF MSJ Demonstrative Ex. 64 v Alvarez |
| | |
| 180 | 2022-03-01 1 COA -36 appellate Judgment for Steadfast |
| 181 | Quote from 190th - Court gave YCE everything (Reporter Record V5-13) |
| 181 | Transcript - 190th gave YCE all requested relief |
| 183 | 2022-02-25 fraud Lis Pendens |
| 184 | Arbitration Award-YCE are frauds, same people and pattern |
| 185 | Fisher deposition perjury on Memorandum of Understanding, bribe |
| 186 | Ballesteros Salvador deposition - typical abuse by YCE |
| 187 | Ali Choudhri deposition - perjury, joke |
| | |
| 190 | Sale process Release-Indemnity-all claims-risks-if you request information, these bind you |
| | |
| 192 | Sale contract Extension Redacted |
| 192 | Extension redacted - Redacted |
| 193 | 2022-02-25 mailed fraud Lis Pendens |
| 194 | Grove Order - YCE frauds and need Receiver |
| | |
| 196 | 190th case file list |
| | |
| 198 | YCE concealed discovery - roa 3864 |
| 198 | YCE concealed discovery - roa 3920 |
| | |
| 205 | STF Bank records eStmt_2017-04-28_Redacted |
| 206 | eStmt_2017-05-31_Redacted |
| 207 | eStmt_2017-06-30_Redacted |
| 208 | eStmt_2017-07-31_Redacted |
| 209 | eStmt_2017-08-31_Redacted |
| 210 | 399- MSJ 1 - staged funding |
| 210 | eStmt_2017-09-29_Redacted |
| 211 | eStmt_2017-10-31_Redacted |
| 212 | 2017 Yale borrower statement |
| 212 | eStmt_2017-11-30_Redacted |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 214 | 413- MSJ 4 - Alvarez Loan is binding |
| 215 | 2021-05-04 New Mexico formation documents |
| 215 | 2021-05-07 federal express invoice |
| 216 | signed 2021-05-06 written consent |
| 217 | 2022-02-18 Acceptance Letter |
| 218 | 2022-03-29 TX SOS Original Document |
| | |
| 220 | 190th MSJ 6 with signed order |
| 221 | Safe Harbor violation |
| 222 | Safe Harbor Letter |
| 223 | 2022-04-28 Letter in Response to Sanctions |
| 224 | 190th YCE Sixth Amended Petition |
| 225 | STF D/B/A |
| 226 | Amended Complaint in Quiet Title case |
| 227 | Federal 02-14-20 Counterclaim and Third Party Claim [48] |
| 227 | Federal TRO denied |
| 228 | Harris County Tax Suit Return of Service on 2017 Yale |
| 229 | Harris County Tax Suit Return of Service on Nicholas Fugedi |
| 230 | RICO Petition |
| 231 | Motion to Dismiss – 5th Cir., all courts |
| 232 | Email to Plaintiff re work on property 10-03-22 |
| 232 | Photos proving recent remediation 10-02-22 |
| 233 | Notice to Fugedi of remediation prior to Motion |
| 234 | FRE 1006 audio summary duplicate to Ex 249 [140] |
| 235 | FRE Timeline Summary duplicate to Ex 249 [141] |
| 236 | Master Exhibit List – duplicate to Ex 249 [139] |
| 237 | Wyatt Memorandum of Law Confirming Legality and Admissibility of Audio Tapes |
| 238 | Wyatt – continued TRO hearing 06/06/22 |
| 239 | Wyatt – TRO expired 05/30/22 |
| 240 | Wyatt – Application for TRO |
| 241 | Alvrez supplemental declaration in Galveston matter |
| | EXHIBIT – Ali personally sent recordings to Wyatt outside of employment |
| 242 | F.R.E. 1006 Procedural History 12-17-22 |
| 243 | Costa Appearance |
| 243 | Costa Appearance Briar Building |
| | |
| 249 | 2022-10-05 S-Master Exhibit List [139] |
| 249 | 2022-10-05 S-FRE Timeline Summary [141] |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 249 | 2022-10-05 S-FRE 1006 audio summary [140] |
| 249 | - 2022-10-28 S-Alvarez Supp. Declaration [163] – Duplicate to H |
| 250 | 829 Yale Release - Indemnity |
| 251 | Special Provisions Addendum 1– 829 Yale |
| 252 | Stewart Title Commitment 4-21-221- Redacted |
| 253 | Jetall vs Wyatt Nonsuit |
| 254 | Costa's Appearance in Briar Bldg matter - Duplicate to 243 |
| 254 | Costa's Appearance in Divorce appeal - Duplicate to 243 |
| 255 | STF Motion to Dismiss Appeals - Fraud |
| 256 | Wyatt's Motion to Nonsuit with Prejudice and Sanctions |
| 256 | Wyatt's  partial deposition transcript in Jetall lawsuit |
| 257 | Wyatt's response to Mtn for Contempt in Jetall lawsuit |
| 258 | STF Release of Waiver – sale of 829 Yale |
| 258 | Addendum 06-15-22 |
|  |  |
| 260 | 03/29/21 Hrg Transcript – LEK admits rep 2017 whole time |
| 261 | 04/26/21 Hrg Transcript – LEK admits DA has no note |
| 263 | Fraga Letter sent to First American Title |
| 264 | Choudhri – Orders to Compel |
| 265 | Wyatt's response to Jetall TRO |
| 266 | Jetall Mtn for Contempt on Wyatt |
| 267 | Wyatt rsp to Mtn for Contempt for tapes |
| 267a | Wyatt declaration to rsp to Mtn for  Contempt |
| 268 | Mtn to Dismiss 190th Appellate matters for fraud |
| 268 | Kelley 190th appellate matters brief |
| 269 | Scared to address tapes in rsp brief to MTD |
| 270 | Jetall rsp to Wyatt Mtn for Protective Order |
| 271 | Hearing transcript – 04-26-23 |
| 272 | Alvarez cond deposition transcript *Alvarez v. Kelley* |
| 272 | LEK setup deposition – Alvarez/Kelley |
|  |  |
| 280 | KAVAC hearing transcript 01-03-19 |
| 281 | Hearing transcript – 04-26-23 DUPLICATE OF #271 |
| 282 | Hearing transcript – 03-02-23 |
| 283 | Commercial Listing Agreement Termination |
|  |  |
| 285 | Alvarez deposition 01-14-19 |
| 286 | 2021 - Ali owns 2017 Yale |
| 286 | Lloyd owns Carb Pura Vida |

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 286 | Kelley Elberger go way back |
|  |  |
| 289 | Sale documents to Bella |
| 289 | Bella Warranty Deed |
| 289 | Bella permits |
| 289 | Bella Deed of Trust |
|  | 2022-03-18 Steadfast RICO Petition |
|  | 2022-03-20 Petition [1] |
|  | 2022-03-23 Mtn for TRO to appt Receiver [rd4] (1) |
|  | 2022-10-06 STF m2 substitute 2022-11-21 Procedural History |
|  | 64847 order deny recuse 107856674 |
| 290 | Fugedi – Rough deposition transcript |
| 291 | FRE 1006 – Fugedi Deposition Summary |
|  |  |
| 296 | 4-11-23 Hearing Transcript |
| A | 07-17-18 Assignment and Assumption Agreement LK reduced size |
| A | 07-17-18 Assignment and Assumption Agreement LK |
| A | 829 Yale Assignment and Assumption Agreement 07-17-18 |
| B | Memorandum of Law – Wyatt admissibility of Ex B 07-15-21 |
| B | Wyatt Declaration Yale 06-22-21 |
| B | Wyatt Declaration Yale 07-07-21 |
| B | Wyatt Declaration |
| B(a) | Choudhri Kelley Telephone Conversation 04-14-20 |
| B(a) | highlighted Choudhri Kelley Telephone Conversation 04-14-20 condensed |
| B(A) | Wyatt audio 2020  04-14-12  34-40.mp3 |
| B(A) | Wyatt time reference summary of 04-14-20 Telephone Conversation |
| B(b) | Choudhri Kelley – Telephone Conversation 01-13-20 |
| B(b) | Highlighted Choudhri Kelley Telephone Conversation 01-13-20 condensed |
| B(b) | Wyatt audio 2020-01-13 17-45-29 – Copy.mp3 |
| B(B) | Wyatt time reference summary of 01-13-20 Telephone Conversation |
| B(c) | Choudhri Kelley Fraga Parker Telephone Conversation 02-21-20 |
| B(c) | Highlighted Choudhri Kelley Fraga Parker 02-21-20 condensed |
| B(c) | Wyatt audio 2020-02-21  13-54-39.mp3 |
| B(C) | Wyatt time reference summary of 02-21-20 Telephone Conversation |
|  |  |
| G | STF Motion for Summary Judgment (Ex. 34) Alvarez Declaration |
| H | Alvarez Supplemental Declaration 10-28-22 |

**IV.**

**CASE STATEMENT**

**Parties and their roles:**

16.     Steadfast Funding, LLC is a small private real estate and construction loan servicing company owned by Marc Sherrin (together "Steadfast").   The "Steadfast Parties" are private individuals, lending their personal retirement or other funds to make secured construction loans through Steadfast, including the loan in question; a first lien construction loan secured by real property located at 829 Yale.   Exhibits 1, 11(b)(and a-e), 170. Steadfast funded nearly six million dollars of loans to the Defendants (first to 829 Yale St., LLC, then to Defendant 2017 Yale Development, LLC), which funds were stolen.  *Id*. Not one Defendant ever paid a cent of the loans back or paid a cent for the property.  *Id*. The Steadfast parties had no significant litigation history until the Yale Enterprise defrauded them and interfered with their loan and title to their collateral.  *Id*.  The Steadfast Parties assigned the Property, and all of their claims and causes of action to a single purpose entity, Plaintiff, commencing in May of 2021, before the whistleblowers came forward.  Exhibits 170, 214-218, 225.

17.     The existence of the Yale Enterprise, its intent, and the details of its schemes are proven by whistleblower evidence (the Yale Enterprise conspired to commit seventeen distinct scams designed to steal the money and title, *infra).  See e.g.,* Exhibits A, B, B(a-c), *infra*.   The Yale Enterprise engaged in a lengthy pattern of fraudulent and felonious sham transactions and predicate acts over several years and continuing to this day, all calculated to steal Steadfast's money and collateral.  *Id*.

18.    Defendant Ali Choudhri allegedly inherited over a hundred million dollars, and has infamously used that money to fund real estate schemes spawning hundreds of fraud lawsuits in Harris County.  *Id.  See e.g.* Exhibits 99, 103.  He owns Jetall Companies, Inc., and employed Defendant Brad Parker and others to engage in rampant fraud, the Choudhri parties generally making themselves a scourge on the citizens of Harris County.  *Id*; Exhibit 99; *See also e.g.:*

https://dolcefino.com/video/
https://www.houstonpress.com/news/a-lawyers-murder-makes-a-weird-houston-divorce-case-a-lot-weirder-8682209; https://setexasrecord.com/stories/512691948-galleria-area-property-owner-accused-of-running-scams; https://abovethelaw.com/2016/08/murdered-lawyer-only-the-latest-bizarre-twist-in-bizarre-divorce-case/; https://dolcefino.com/2016/08/22/assassination-bigamy-fraud-and-abuse/; https://dolcefino.com/2020/04/19/the-coronavirus-defense/.; https://dolcefino.com/2016/08/28/the-taliban-and-president-obama-linked-to-houston-divorce-trial/; https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-judge-recused-from-civil-case-16242195.php; https://www.houstonchronicle.com/news/houston-texas/houston/article/Texts-raise-conflict-of-interest-for-Harris-15885846.php; https://setexasrecord.com/stories/580872228-harris-county-business-owner-allegedly-hid-assets-from-creditors-suit-states; https://dolcefino.com/2016/08/25/no-gag-order-for-fridays-divorce/; https://dolcefino.com/2020/12/01/lifestyles-of-the-rich-and-infamous/; https://dolcefino.com/2021/01/20/a-judicial-embarrassment/; https://dolcefino.com/2021/01/20/a-judicial-embarrassment/; https://dolcefino.com/2020/09/14/would-you-do-business-with-this-guy/; https://dolcefino.com/wp-content/uploads/2020/03/choudhri.jpg; https://dolcefino.com/2021/01/13/texts-bust-a-houston-judge/; https://dolcefino.com/2020/11/02/houston-judge-punishes-ali-choudhri/; https://fbindependent.com/litigant-seeks-mistrial-citing-covid-p13940-1.htm

19.    Choudhri, Parker and Jetall commenced the Yale Enterprise with Fisher and the other Defendants by illegally taking title to Steadfast's collateral in a secret deal to interfere with Steadfast's loan, obstruct Steadfast's lenders' rights and foreclosure, extort the lenders, and fraudulently induce a loan workout from Steadfast.  Exhibits 3, 4, 4a21, 4a22, *infra*. They intended to, and did steal those loaned funds, *infra*.  *Id.*  Parker, his wife and her business all secretly took 'consulting fees', stealing their part of the loaned funds, and

was offered a 'real' percentage of 2017 Yale along with five hundred thousand dollars cash to continue to perjure himself after they had a falling out.  *See e.g.,* Exhibits 4a22b, 4a22b DOC 475, and B(a-c). *infra.*

20.     Terry Fisher ("Fisher") was a real estate developer with dozens of projects around Houston, including 829 Yale. Exhibit 170.  He sought out and obtained construction loans from Steadfast and other lenders. *Id.*  Fisher owned or controlled borrowers 829 Yale St., LLC, KAVAC, Cityscape, Assurance Home Warranty, and other relevant companies which stole loan money and otherwise participated in the Yale Enterprise. *Id.  See also* Exhibit 55, *infra.*  Allen Fisher is his son and was participating in numerous schemes. *Id.* Fisher was secretly having problems with his other lenders on various projects. *Id.*  Instead of resolving his troubles legally, he made a secret deal with Choudhri and other conspirators to commence the Yale Enterprise.  *Id.*

21.     Fisher secretly took a personal bribe of one hundred thousand dollars from Defendant Jetall to cause Steadfast's borrower under his control, 829 Yale St., LLC to illegally give away title to Steadfast's collateral at 829 Yale to Jetall.  Exhibit 4a22, *infra.* Fisher, Choudhri and Parker perjured themselves in front of Kelley, Fraga and others about that bribe, and concealed all relevant documents in discovery, *infra. See also* Exhibits 102, 120, 35, 35c, 120, 185, *infra.*  They planned and commenced a series of scams as part of the Yale Enterprise, all designed to steal Steadfast's loaned funds, as well as title to Steadfast's collateral, *infra.* Fisher and his companies later received additional funds stolen from Steadfast's loan from the other conspirators.  Exhibit 55, *infra.*

22.    Defendant Lloyd Kelley is an attorney who made himself a principal conspirator in the Yale Enterprise.  Exhibits 170, A, B(a-c) (audiotapes and transcripts[7]) etc., *infra*.  In the past, Kelley repeatedly represented Ali Choudhri in fraudulent real estate cases, and Choudhri's divorce.  *Id; see also* Exhibit 99.  In this case, he secretly took ownership of the borrowing entity, Defendant 2017 Yale, before its ultimate loan default, though he pretended to be only a lawyer for the Enterprise until recently exposed by the whistleblowers.  Exhibits A; B(a-c), etc., *infra*.  Again, this secret ownership was concealed from all parties and courts.  *Id*.  During their secret ownership Kelley and his conspirators Parker, Fraga, Choudhri, and Fisher stole the loan money, abandoned the construction project at Yale, caused the loans to default, and commenced a pattern of criminal and fraudulent predicate acts, all designed to steal Steadfast's loan money and title to the collateral as part of the Enterprise.  *Id*.

23.    Kelley, Michelle Fraga, and other counsel appear in numerous fraud cases for Choudhri, Parker, and related entities.  Exhibits 170, 99, B(a-c).  An apparent theme involves forcing their way into title or fraudulently acquiring a lien on a target property, then defrauding or extorting the legitimate owners or lienholders using sham transactions, vexatious litigation, insurance fraud, or other nefarious means.  *Id.  See also e.g.,* Exhibit 184, *infra*.

24.    Choudhri and Kelley were defrauding Choudhri's wife in her divorce case, hiding assets from the Court, and Choudhri apparently failed to pay Kelley over three million

---

[7] The three primary whistleblower audio recordings are labeled B(a-c), with both certified transcripts and actual audio submitted to the Court with this pleading and referenced or quoted herein.

dollars in legal fees. Exhibits A, B(A-C), *infra*.[8]  Choudhri was using Brad Parker as the fraudulent 'front-man' purportedly owning 2017 Yale, to defraud his wife and that Court, and to fraudulently induce the loans. *Id*.  2017 Yale was Steadfast's borrower entity. Exhibits 170, 11(a-e). Then, Choudhri secretly gave Lloyd Kelley all of the membership interest in 2017 Yale Development, LLC, which owned title to the collateral property subject to Steadfast's lien.  Exhibits A, B, B(a-c) *infra*.  He secretly gave Kelley full ownership of the borrower entity 2017 Yale as payment for these delinquent legal fees. *Id*. Kelley acted as primary counsel in numerous courts, conceal and perjuring himself about his involvement, *infra*.

25.    TransAct Title and its affiliates regularly work with these conspirators in their schemes. Exhibits 86(a-v), 99, 170, B(a-c), G.   Mansoor Chaudhry and Salima Umitaya own or control TransAct Title, LLC and a law firm participating in the Yale Enterprise, along with Elberger, Herman, and other Defendants who all participated in creating fake entities and prepared fraudulent instruments for the Enterprise to carry out its seventeen scams. *Id*.  They and First American Title Company issued a fraudulent title insurance policy to a fake trust based upon fraudulent documents, omitting Steadfast's liens, and filed it in state and federal Court to support frivolous title claims and eviction claims in attempts to steal the property.

26.    Don Huebner is a landman who fabricated a fraudulent title abstract and perjurious affidavit which the Enterprise filed in multiple Courts, omitting Steadfast's Loan

---

[8] There being no honor among thieves, they have even sued each other claiming each other are frauds, though they usually resort to confidential arbitration to conceal their fraudulent schemes from the public.  Exhibit 103.

Documents and liens, which Defendants knew had already been adjudicated to have been valid, prior recorded, in default, without excuse. *Id; see also e.g.,* Exhibits 94, 115, *infra.*

27.     Defendant Nicholas Fugedi is a Michigan friend of Lloyd Kelley, bribed to participate in the fraudulent Yale Enterprise, posing as a fake trustee and filing fraudulent documents as a sham "bona fide purchaser" of the collateral. Exhibits 86(a-v), 170, B, G, *infra*. Fugedi's fake transaction was designed to help the Yale Enterprise avoid Steadfast's judgment on the loan default, obstruct Steadfast's foreclosure on its collateral, and ultimately try to steal title to the collateral using fake evidence, fraudulent real property documents, and frivolous litigation. *Id.*

28.     Defendant 2017 Yale Development LLC and its Manager 2017 Yale Development GP, LLC, are sham companies created and owned by Kelley, Parker, Fraga and Choudhri, to defraud Steadfast, fraudulently induce a loan workout from Steadfast for more funds, steal Steadfast's loan money, distribute it to themselves and the Fisher entities pursuant to the secret "MOU",  steal or extort title to Steadfast's collateral at 829 Yale Street, and later give away yet another illegal fraudulent transfer deed to Fugedi's fake trust. Exhibits 170, 11(a-e), 102, 35, 35c, 14, A, G, 86(o), *infra*.  Kelley, Fraga, and Choudhri bribed Parker to act as a fake "front man" to pretend he owned the companies, present perjured testimony, hide assets from Steadfast, Choudhri's wife, the Courts, and even their own supposed "clients" such as David Alvarez. *Id; see also* Exhibits B(a-c) *infra*.

29.     After secretly acquiring ownership of 2017 Yale, Kelley bribed Fraga and other attorneys into doing frivolous and vexatious legal work for the Enterprise, all knowingly using fraudulent documents and perjured testimony. *Id*.  The Enterprise bribed these

attorneys with promises of a percentage of ownership of the company they were pretending to represent as lawyers (2017 Yale, which owned title to the collateral subject to the liens they were attempting to destroy). *Id*. They also bribed Parker to perjure himself, continue the sham, and participate in fraudulent transactions, also based upon a promised percentage of actual ownership of 2017 Yale, and accordingly all intended to benefit from their plan to split of the profits of their fraudulent Criminal Enterprise against Steadfast. *Id*.

30.    2017 Yale never had any assets of any kind other than Steadfast's loan money (which it stole and distributed among the Yale Enterprise), and the record title to the collateral at 829 Yale subject to Steadfast's lien. Exhibits 35, 35c; Exhibit 102 starting page 78; Exhibit 109, 110, *infra*. 2017 Yale later illegally tried to give title to the collateral away to Kelley's fake trust using Fugedi and Carb Pura Vida in a fraudulent transfer to avoid Steadfast's judgment and foreclosure. Exhibits 86 (a-v), B(a-c), G, *infra*. After stealing Steadfast's (and its own contractors', Exhibit 15) funds, 2017 Yale only had $355 dollars left in its bank account. Exhibits 55, 109, 110.

> **STEADFAST COUNEL: "…other than funds that were deposited into 2017 Yale's account that came from the loans, the Steadfast loans, was there ever any money contributed into or paid into 2017 Yale?** MS. FRAGA: Objection. Form. PARKER: If we're going to ignore that small minor deposit that we're talking about to open an account, then I don't believe there was additional funds put in." Exhibit 35, at pg. 34.

31.    In addition to participating in the bribes, fraudulent documents, fake legal representation, sham ownership of 2017 Yale, and frivolous litigation, Michelle Fraga also personally secretly formed and was president of a sham Wyoming company, Tax Relief, Inc. *See e.g.,* Exhibits G, 81-83, *infra*. The Enterprise secretly created this sham entity to

fabricate a fraudulent tax lien scam against the collateral as part of the Yale Enterprise. *Id*; *see also* Exhibits 99(a-c), *infra*.[9]  They hid this tax scam entity from the Texas Secretary of State, the County, the Courts, Steadfast, Alvarez and everyone else.  Kelley and Fraga presented Parker to perjure himself in deposition about this transaction and other matters, and concealed all relevant documents from discovery, *infra*.

32.    David Alvarez is a Dallas businessman making real estate loans through his company D&A Alvarez Group, LLC.  Exhibit 170. D&A also made a loan to Fisher/829 Yale St., LLC as a second lien lender secured by 829 Yale.  *Id*;  Exhibit 2. The Yale Enterprise also defrauded him out of his lien, all of his claims, and into releasing his debtors and tortfeasors, joining the Criminal Enterprise, and convinced him to file fraudulent documents on their behalf.  *See e.g.,* Exhibits 18, 29, 44-46, 86(a-v), G, *infra*.  He lost everything as a result. *Id; see also* Exhibit 92. Alvarez then became a whistleblower and produced documents relevant to the Yale Enterprise in 2020 and 2021, which the conspirators had previously concealed.   Exhibits 86(a-v), G.

33.    Chris Wyatt was allegedly employed by Jetall Companies, Inc. as Chief Financial Officer, reporting to Choudhri. Exhibit B.  During Wyatt's employment, Choudhri asked Wyatt to record their conversations with Parker, Fraga, and Kelley, to use as leverage so that Choudhri could swindle more of the profits from the Yale Enterprise for himself at the expense of the other conspirators.  *Id.  See also* Exhibits B, B(a-c).  Wyatt was (wrongfully) terminated for refusing to perjure himself for the Criminal Enterprise, became a

---

[9] e.g., FRAGA:"what does that do with the tax lien because brad transferred it and the Secretary of State still shows brad parker on it?" Exhibit B(C) 0:19.

whistleblower instead, and properly produced authenticated audio tapes and information relevant to the Yale Enterprise in 2021, finally shedding full light on the Enterprise. *Id*.

**Background:**

34.     This case arises from a borrower in default (829 Yale St., LLC and Terry Fisher on a personal guaranty) entering into a fraudulent Enterprise (with Defendants Jetall, 2017 Yale, Choudhri, Parker, Kelley, Fraga, Fugedi and the others), to engage in a persistent pattern of criminal and fraudulent conduct designed to defraud, steal, or extort the lenders' (Steadfast and Alvarez) money and title to the collateral property at 829 Yale in Houston (the "Yale Enterprise").[10]

35.     Defendants used the U.S. mail to send original fraudulent instruments to record in the Harris County Real Property records, used interstate electronic communications to electronically file fraudulent instruments in the real property records and state and federal courts,[11] sent perjurious affidavits and transcripts via interstate email, conspired and committed numerous predicate acts via interstate cellular communications, wired bribe money using vehicles of interstate commerce and national bank accounts, illegally wired Steadfast's loaned funds from 2017 Yale's bank account to the other members of the Enterprise, created a fake Wyoming company and fake Michigan trust to enter into sham transactions, and generally used interstate emails and cell phone communications to

---

[10] The Allegations in this Petition are verified by Declaration of Marc Sherrin, Exhibit 170, but generally all corroborated with additional undisputed evidence and judicial admissions.  More detailed evidentiary citations are contained in the timeline below.  All Exhibits are provided to the Court by paper copy, and via thumb drive, concurrently with the filing hereof.  Those few Defendants who do not already possess copies of the Exhibits will be provided them after appearance.
[11] Even the Harris County District Clerk's website was illegally altered at one point. *See e.g.*, Exhibits 90-91, *infra*.

commence plan, and execute the Yale Enterprise and the criminal and fraudulent predicate acts against the Steadfast parties in multiple states.  *Id.*

**FIRST PREDICATE ACT:   *The Yale Enterprise secretly forms: The Fisher/Jetall Fraudulent Title Transfer, Tortious Interference, and Extortion Scam.***

36.    Steadfast loaned its money to 829 Yale St., LLC (and later to 2017 Yale Development, LLC),[12] subject to a valid, prior recorded first lien deed of trust.  Exhibit 1. Fisher secretly caused 829 Yale St., LLC to illegally[13] give away title to Steadfast's collateral to Jetall (Exhibits 3, 4, 4a21, 4a22).    Jetall used its tortious interference in title to defraud (by promises of quick loan repayment, among other things) and extort (by threat of endless litigation if they didn't loan more 'short term' money) Steadfast into agreeing to a loan workout.  *See e.g.*, Exhibit 170.  The Enterprise threatened to litigate against foreclosure forever, but in the alternative promised to use their 'hundreds of millions of dollars' to repay the loans quickly 'if Steadfast would just continue some bridge funding while they gathered the funds.' *Id.* Choudhri and Parker created the sham entity 2017 Yale, and Jetall conveyed title to 2017 Yale as part of that scheme.  Exhibits 11(a-e).    Steadfast funded more loan money to the Enterprise, nearly six million dollars in total principle.  *Id.*

37.    Later, to avoid Steadfast's impending final judgment on the loan defaults against 2017 Yale, 2017 Yale illegally gave title to the collateral away again, this time to a fake a trust, (the 'Carb Pura Vida Trust', Fugedi supposedly being the trustee), for no

---

[12] Brad Parker, the CFO of Ali Choudhri's infamous company, Jetall Companies, Inc., claimed to own 2017 Yale. They fraudulently induced and extorted Steadfast into doing a loan workout to 2017 Yale using the leverage of a frivolous suit by Jetall to enjoin Steadfast's foreclosure due to 829 Yale's fraudulent transfer of collateral to Jetall.
[13] *See e.g.*, Texas Penal Code § 32.33 *infra*; Deed of Trust and CTNL, Exhibits 1, 11(b) and 20e, respectively. *See* Exhibits 3, 4, 4a22 for the secret deed and "MOU" deal to extort Steadfast and other lenders, *infra*.

consideration other than the sham party bribes.  *See e.g.,* Exhibits 86(a-v), B(a-c), G, *infra*.

38.    Not one of the Defendants ever paid a single cent for the property or to repay

Steadfast's loans since the start of the Enterprise:  *Id*.  Exhibits 92, 170.

> "***Neither the Carb Pura Vida Trust nor 2017 Yale ever paid anything for the property or to Steadfast*" "*Kelley and Fraga, told me they had devised a stratagem … to prevent Steadfast from being able to foreclose on the Property.*"  Exhibit G; *See also* Sherrin Declaration (Exhibit 170); *See also* Exhibit 35, 35c. 102 starting page 78.[14]  *See also* Exhibits 55, 109, 110; *see also* 92, 88, 89.

> STEADFAST COUNSEL: *Where did the money come from and who all is involved in this transaction?...***PARKER: …*outside of draws from the lender [Steadfast], that no meaningful funds were contributed [by the Yale Enterprise] to this.***"  *Id;* Exhibit 35, at Pg. 104-5.

> *THE 190th CIVIL DISTRICT COURT, JUDGE MILLER QUESTIONING:  You made a deal with somebody for it [Steadfast's collateral] to be transferred?* **PARKER*:  I did* --THE COURT:  And you don't know who you did that with?* **PARKER*:  I don't know the specifics, no*. THE COURT:  How much money did you get for it?* **PARKER*:  Cash ~~mutual~~[neutral], no money*.*"  Exhibit 102 (all with Kelley and Fraga presenting Parker).

> STEADFAST COUNSEL: *"there's no disputing that you failed to make your interest payment …. right?* **A. That's --- [PARKER]: -- a true fact, yes."** Exhibit 35, at Pg. 104-5.

39.    Fisher, 829 Yale St., LLC, Jetall, Choudhri and Parker initially defrauded Steadfast

by Jetall illegally taking title to Steadfast's collateral and conspiring to defraud Steadfast

and tortiously interfere with Steadfast's original loan.[15] Exhibits 4, 3, 151a21; compare

Exhibit 1 and Texas Penal Code 32.33, *infra*.   Choudhri owns Jetall, and employed Brad

Parker (and Chris Wyatt).  Fisher took a personal bribe of $100,000.00 from Jetall, to have

---

[14] The only payment was Kelley's bribe to Alvarez to get him to sign the fraudulent, ineffective release.  Exhibit G. The fake illusory note was never signed.  Exhibits 86(a), (d), (g), G.  The fake trust agreement was never signed, though the fraudulent lien release and the fraudulent transfer deed were recorded. *Id*.  There was no fully formed real trust, no consideration, and no closing on July 22, 2019, the date of the deed.  *Id*; Exhibits G, 86(r).  There was never any consideration for the transfer to Fugedi.  *Id*; Exhibit 102 (ROA.3227); *see also* Exhibit 35 at pgs. 34, 206.

[15] Including Cause No. 2016-64847.  The 190th denied Steadfast's joinder of these claims, creating the mess on appeal in other cause numbers relating to the Disqualification of the 125th.

his company, 829 Yale St., LLC secretly and illegally give away title to Steadfast's collateral and have Choudhri and Kelley interfere with the loan and extort funds and title from Steadfast. Exhibits 3, 4, 4a22.[16] They split the profits among Assurance, Cityscape, Kavac, Jetall, M.Naeve, and others. Exhibits 4a22b, 55. The Enterprise failed to inform the lenders of their fraudulent transaction, which is a felony and a Loan Default. Exhibits 1, 11(a-e), 170. The Enterprise concealed the bribe, check, and signed agreement throughout the entire litigation. *Id*. No Defendants in the Enterprise never produced any significant documents, and never testified truthfully in any of the litigation, other than Kelley using Fisher to produce thousands of pages of duplicative garbage carefully vetted to contain no relevant documents.

***The Second scam:  The 2017 Yale Fraudulently Induced Loan Workout Scam, and Using the 190th District Court as a Tool for Extortion and Defraud.***

40.    The Conspirators filed frivolous suits to enjoin Steadfast and Alvarez' foreclosure, which the lenders immediately posted once they discovered the fraudulent conveyance to Jetall, *infra*.[17] The Enterprise then created 2017 Yale to fraudulently induce and coerce a loan workout from Steadfast, 2017 Yale acquiring title to the collateral subject to Steadfast's liens, secured by the property at 829 Yale Street. *Id. See also* Exhibits 8, 11(a-

---

[16] Fisher perjured himself about this and other matters in deposition:

"…*why would you release Jetall and Ali Choudhri from claims or causes of action related to this property?... there's no particular reason for that? A.  Nothing. And what did you receive for that? A. Well, I wouldn't have received anything…What did he receive? A. The same smile back that -- he gave me. So as far as you know, no one paid anything to anyone for this agreement? A. Looks like we paid $10.00. Hand paid…. And a smile. And nothing else? A. Nothing else. You actually quit claimed 829 Yale property to 2017 Yale Development? A. If that's what it says…The undersigned Fisher Parties, for your $10.00, paid by 2017 Yale, and other good and valuable consideration, which there is none, right?...Nothing else? A. That's it. The same smile I'm giving you.*" Exhibit 185. Pg. 317-319

[17] Fisher was trying to scam more money on his own, which prompted a lender title search.

e), 14.

41.    The conspirators told every Court, and every party, that Brad Parker owned 2017

Yale, and that he would pay off the loans quickly, 'he just needed some temporary bridge

funds from Steadfast.'  Exhibit 170. They also threatened Steadfast with endless frivolous

litigation if Steadfast refused a loan workout.  *Id*.

42.    However, Choudhri secretly owned 2017 Yale, and Parker was a 'front man.' Then

they secretly gave Lloyd Kelley all of the membership interest in 2017 Yale on October 9,

2017.[18]  *Id.  See* Secret Assignment, Exhibit A, with authenticating declaration Exhibit B,

and Exhibit 106.[19]    Kelley took a secret assignment signed by Parker and Choudhri in

2017, and then fraudulently transferred title to the collateral again during Steadfast's trial

in 2019 to Kelley's fake "Carb Pura Vida" trust.   *See* Exhibits 86, 102, A, G.  They hid

this transaction from everyone until the whistleblowers in 2021 exposed it.  Kelley bribed

Fraga, Parker, and others with secret ownership interests in 2017 Yale, all conspiring

together to extort cash and title to the property from Steadfast.   *See* whistleblower

audiotapes, Exhibits A, B, B(a-c), *infra*.[20]

---

[18] Kelley used "Pabeshan LLC," to front for him.  However, it was Kelley all along:  *KELLEY: "Pabeshan?  You're crazy.  Pabeshan is not involved in that at all.  It's just not involved."  **CHOUDHRI: "before me and you went to Pakistan, I transf…"** KELLEY: "you transferred 2017 to me" **CHOUDHRI: "yes"** B(C) 16:20.* Exhibit B.

[19] Choudhri secretly gave Kelley 2017 Yale in exchange for three million dollars Choudhri owed Kelley, apparently for defrauding Choudhri's wife in the divorce:  Kelley: "*you wanted to exchange that for some shit on yale which I've now spent two and a half years of my life on, it's always a fucking mess with you Ali, I just wanted the cash, just wanted the cash that you owe me, and then you wanted to sell me a condo, and then you wanted to sell me the whole building*" Exhibit B(A) 17:16.  "*you know none of it is ever going to be delivered, you know that." B(A) 17:41. "You gave it to me because it's a piece of shit going that was going into litigation.  That's the truth.  You sold me something you knew you couldn't even hold onto." B(A) 17:45.* All of these Defendants concealed this document, transaction, and evidence, and perjured themselves regarding this issue, *infra*.

[20] Due to time constraints, these lengthy audio tape transcripts were initially submitted with in-house created summaries, referenced by tape time; later transcribed by Court reporter, with later citations using traditional page-line references.  In the upcoming Summary Judgment pleadings, all references will be trued up to page line references. The Court also has the actual audio files for review.

43.    Choudhri had his conversations with Fraga, Parker and Kelley recorded by Jetall's employee, Chris Wyatt, intending to blackmail Kelley, Parker and Fraga into giving 2017 Yale back to him by using the audio in a confidential arbitration and/or threatening their law licenses.  *Id*.  All of the conspirators were planning together on stealing Steadfast's loan money and the title to the property.  *Id*.  The audiotapes reflect their arguments about which of them would benefit the most from their fraudulent Yale Enterprise against Steadfast.  *Id*.  These tapes are not privileged; Kelley didn't represent Choudhri, Jetall or any party at the time of the recording, the topics involve no Jetall business, and they are scheming to commit ongoing crimes and fraud throughout the conversations.  *Id*.  They have already been judicially admitted and objections waived without controversion or dispute in other Courts (the conspirators essentially "pleading the 5th" due to criminal liability and investigation).  *Id*.[21]  *See also* Memorandum on Admissibility of Wyatt Audio filed in conjunction herewith and with Exhibit B.

| | |
|---|---|
| *Kelley:* | *"I've got paperwork that shows you signed that said Brad [Parker] owns it and he's selling it to me."*  Exhibits B, A, and B(A) 27:50. |
| ***Ali Choudhri:*** | ***"you knew because of my divorce, who owned 2017 Yale from the outset… 24:09…. I had Brad as my proxy in front."*** B(A) 24:24. |
| *Lloyd Kelley:* | *"I OWN 2017 Yale!* B(A) 5:13. |
| ***Ali Choudhri:*** | ***"why did you have Brad testify that he owns and controls?"*** *B(A) 22:24.* |
| *Kelley:* | *"I don't give a fuck what Brad testified to!"* B(A) 22:28. *"because its MINE!  Because 2017 Yale was mine, not yours!"* B(A) 33:17. |
| *Kelley:* | *"Brad was a front guy"* B(A) 31:03. |

---

[21] *See* Motions to Dismiss Appeals and for Just Damages filed in the 5th Circuit and First Court of Appeals of Texas, *infra*.

44.    2017 Yale filed false Certificates of Formation with the Secretary of State concealing 2017 Yale's true ownership.  Exhibit 14.[22]    Transferring the membership interest of 2017 Yale to Choudhri or Kelley and the other Conspirators also constituted another loan default, as Steadfast's Deeds of Trust and other Loan Documents precluded not only transferring the collateral away, but also transferring any membership interest of 2017 Yale, the borrower, away.  Exhibits 11(b), (d).  The Enterprise concealed all this evidence during the loan default case and trial, all the way through the title case, and to the present, until the whistleblowers came forward in 2021.

45.    Kelley had secretly acquired 2017 Yale before it abandoned the Yale construction project and missed its loan payments due Steadfast, defaulting in November of 2017.  *Id. See e.g.,* Exhibits 10, 17, 32, 35, 35c, A.  Kelley and Choudhri caused 2017 Yale to default, stop construction, and steal the loan money.  *Id.  See also* Exhibit 13a22, *infra*.[23]  As such, Kelley, Fraga, Parker and Choudhri each personally caused the defaults that resulted in the 190th's Judgment on the contractual loan default in favor of Steadfast, against 2017 Yale, for $8.4 million dollars.  Exhibit 92.  It is now known from the whistleblower evidence that they secretly personally caused the default.  *Id.*[24]

46.    Parker pretended to own 2017 Yale the entire time, and all of these lawyers and parties perjured themselves to that effect.  *See* Exhibits 10, 17, 32, 35, 35c, 53, 102.  It turns

---

[22] 2017 Yale never produced any relevant documents, such as 2017 Yale's company documents, and the 190th denied Steadfast's Motions to Compel, even after mandamus.  The SOS records show circular management and membership – i.e., the manager LLC is the manager of 2017 Yale, and 2017 Yale is the manager of the manager LLC, to avoid accountability and hide ownership.
[23] Another document concealed by the Enterprise until the whistleblowers came forward.
[24] The 190th Final Judgment only adjudicated the loan default, none of the crimes and torts.  The Yale Enterprise fraudulently concealed all of those facts from Steadfast and the Court.

out that Choudhri personally ordered 2017 Yale to not pay its construction contractors and abandon the project, during the time Kelley owned the company. *Id*. Kelley and Choudhri each secretly held the project up to make their own fantasy changes to the construction plans, despite their scheme to defraud the lenders and the fact that neither of them ever paid a single cent for the property. *Id*. *See also* Exhibits 13, 13a22, 85, 154a21 and B. Choudhri, Parker, and Kelley all personally caused the loan defaults and are personally responsible for the loan default final judgment, as well as for their torts and other causes of action set forth herein. *Id*.

47.    Parker's fake ownership of 2017 Yale was critical to all of the scams from start to finish:

> KELLEY: *"I told you this is no good if Brad's out of the picture, no good…. if Brad doesn't have ownership, these claims are worthless."* Exhibit B(c), Pg. 3-5.
>
> FRAGA:    *"What does that have to do with the tax lien because that was Brad that transferred it and the Secretary of State still shows Brad Parker on it?"* *Id*.
>
> KELLEY: *"Ali, you need to talk to Brad. You need to get him over here or you're gonna have a real problem."* [Parker then joins the call]. *Id*.

48.    This sham wasn't just the key to their fraudulent inducement of Steadfast's loans, or to allow Lloyd Kelley to drive all of their frivolous litigation posing as chief counsel instead of the owner. It was critical to every scam. Without Parker, Choudhri's wife would have a claim to whatever they took from Yale, Steadfast would have had no damages and immediately foreclose on a black and white default, and the attorneys losing their licenses. Thereafter, they would all be sanctioned and disbarred if anyone proved that fraud. Now it is time. Parker's involvement was a felony for them all from the start, so they could

never back off.  The title policy they planned to recover on if the frivolous title claim failed was fraudulently procured by Parker for 2017 Yale. They could never have duped Alvarez, *infra*, into hiring them, releasing his liens and claims against them, and 'flipping sides' if Alvarez had known Kelley and Fraga owned 2017 Yale.  The fake tax lien was assigned to Fraga's fake Wyoming company by Parker for 2017 Yale.  The void fraudulent transfer deed to the fake Fugedi trust was prepared by Kelley Fraga, Elberger, Herman and Choudhri, for Parker for 2017 Yale.  Kelley and Fraga ran the frivolous litigation posing as lawyers.  They had Parker sign a perjured supersedeas bond affidavit and perjure himself in deposition, at trial, and on appeal.  Fake trustee Fugedi's title policy was founded upon Parker's executed documents for 2017 Yale.  They had also attempted to procure <u>other loans</u> using Parker as a front for 2017 Yale.  Using Parker as a front for the original loan was a loan default justifying Steadfast's foreclosure all by itself, so none of the claims or property instruments could hold up at all if his perjury was exposed.  Everything flowed from that fraud.  The assignment to Kelley was itself a loan default, justifying foreclosure all by itself.  That's why even after Ali and Parker had their falling out, they had to bribe him to continue perjuring himself, *infra*.  Almost all of the attorneys filed their frivolous claims and pleadings and worked on the fraudulent cases based upon promised percentage interest in 2017 Yale, all founded upon Parker's fake ownership and perjured testimony to that effect.  As Lloyd said, everything would unravel but for the Parker 'front.'   Now it has all been proven to be a fraud by judicial admission.  All of the litigation completely frivolous by judicial admission.  All of the transfers and fraudulent releases felonious, by judicial admission.

49.    As Choudhri ironically stated at the end of his 2020 call with Kelley, Fraga, and

Parker, Exhibit B(c), "*These guys are f\*\*king crooks*."

**The Third Scam: Stealing Steadfast's Loan Money.**

50.    2017 Yale stole Steadfast's construction loan money remaining in 2017 Yale's bank

account, instead of paying their own construction contractors as required by Steadfast's

loan. *See* Exhibits 11e, 15, 17, 35, 35c, 55, B.

51.    The new whistleblower evidence proves that Choudhri and Parker stole 2017 Yale's

bank account funds and quit paying its workers because they had already secretly conveyed

2017 Yale to Lloyd Kelley.   Exhibits A, B.   Kelley and all Defendants knew about

Steadfast's valid lien but did nothing to pay them or prevent any of the defaults. *Id*. The

money went to Fisher, Choudhri, and their companies and conspirators, and was later used

to bribe other conspirators to participate as fake trustees, fraudulent lien releasors,

fabricators of fraudulent abstracts and documents, etc., *infra*. Even Parker and his wife,

and her company M.Naeve Antiques cut a secret $40,000 deal with Fisher for 'consulting'

at Yale pursuant to the MOU, *infra*.   None of this was never disclosed to Steadfast, nor

were these agreements or the emails circulating them produced in response to discovery,

or in depositions.   Exhibits 4a22b, 4a22b DOC 475.

52.    Instead, Kelley bribed Fraga and others to join Choudhri, Fisher and Parker's

scheme to defraud and split the lenders, try to wipe out legitimate liens by fabricating

fraudulent evidence and frivolous litigation, obstruct foreclosure, and steal the money

loaned and the property itself.  Exhibits 18, 19, A, B.[25]

***The Fourth Scam: A Three Million Dollar Secret Debt, Hidden Assets in a Divorce, and A Secret Deal Between Choudhri and Kelley Exposed By A Whistleblower- Giving Away Ownership and Borrower.***

53.     It turns out that Choudhri, Akter, and their companies altogether owed Lloyd Kelley over three million dollars in legal fees, as he was helping Choudhri assets from Choudhri's wife and the divorce court; so, they cut a secret deal.  Choudhri and Parker secretly gave the entire membership interest in 2017 Yale to Lloyd Kelley on October 9, 2017, in exchange for extinguishing the debts of Choudhri, his mother Shanaz, and all of their entities.  Exhibit A.[26]

54.     2017 Yale's first loan payment was due in November of 2017.   Exhibits 11(a-d), 35, 35c.  The Enterprise emptied 2017 Yale's bank account and sent Steadfast's loan money to Choudhri and the developer's entities, as per their extortion scheme and MOU.  Exhibits 4, 55.[27]  2017 Yale never paid a cent for the property or on the loan.  Exhibit 35, 35c.

55.     Despite receiving loan money from Steadfast earmarked to pay their contractors, they stole the money, and their unpaid contractors ultimately stopped work and filed M&M

---

[25] They tried to split the lenders, buy Steadfast's first lien at a discount, without paying the second, and then fabricate a sham default to foreclose on the subordinate second lien; they tried Fraga's tax lien fraud scam, to have her straw man company foreclose and wipe out the liens; they tried to bury the lenders with thousands of pages of pleadings, and extort them into settling; they tried the fake trust fraudulent conveyance scam during trial; they tried a frivolous eviction suit; they obtained a seven million dollar baseless sanctions award against Steadfast, resulting in the disqualification and recusal of the 125th voiding that absurd abuse;  they filed a fake title abstract in a frivolous federal quiet title suit; they obtained a wrongful possession order from a J.P. Court;  this list goes on, *infra*.
[26] That transfer constitutes yet another newly discovered Loan Default, as the borrower cannot convey away its ownership without lender consent under the Loan Documents, Exhibits 11(b), 20e, *infra*.
[27] KAVAC, CityScape, Assurance Home Warranty were all sham Fisher companies secretly getting funds from the criminal enterprise pursuant to the secret MOU, rather than using them for construction, *infra*.

liens against Steadfast's collateral.  Exhibits 15, 17, 35, 35c, 170. Fisher skipped town with his portion of the bribe and the stolen loan money, and he and 2017 Yale abandoned the property and the loans.  *Id*.  2017 Yale and the conspirators tried, unsuccessfully this time, to swindle another loan workout from Steadfast, and then tried to acquire Steadfast's first lien without paying the second lien, so they could wipe out Alvarez and take the property on the cheap that way.  *Id*.  *See also* Exhibit 19.[28]

56.    Steadfast and Alvarez refused to participate in that scam against Alvarez, refused another loan workout, and the lenders moved to foreclose again, so Kelley offered Fraga a percentage interest in 2017 Yale to help him with the Enterprise's frivolous litigation. Exhibits B(a-c).  They kept Parker as their 'front man' and filed frivolous suit pretending to be lawyers instead of principles in the 190th[29], to enjoin foreclosure by Steadfast and Alvarez. *Id*. They tried to bury their fraud under tens of thousands of pages of baseless allegations and tried numerous scams out of court to try to destroy the liens against the property they secretly owned.[30]

---

[28]  The conspirator's first plan was to extort a purchase of the first lien from Steadfast on the cheap, fabricate grounds to use the first lien to foreclose and wipe out Alvarez' second lien, and get the property nearly free that way. *See e.g.*, Exhibit 19.  Fisher allegedly had some equity in the property, prior lenders had supposedly taken a loss, and Alvarez' $2.25m lien was going to be wiped out, so the conspirators would have acquired the property unburdened by over five million dollars of equity or debt.  However, Steadfast refused to betray Alvarez or participate in the conspirator's scheme.    Thereafter, the conspirators moved to Alvarez instead and tricked him into turning on Steadfast with frivolous claims to obscure the truth and prolong the extortive litigation, and then fabricate new sham transactions to try to steal the property, *infra*.

[29] *See e.g.*, Exhibits 101, 111 – complete outright fabrications.

[30] The Enterprise caused frivolous litigation, mandamuses, attempted recusals, and appeals including the following, none of which ever adjudicated any tort claims raised herein on the merits, as the Enterprise concealed evidence and argued successfully against joinder of any such tort claims against them: 01-19-00463-CV; 01-19-00499-CV; 01-19-00555-CV; 01-19-00726-CV; 01-19-00793-CV; 01-20-00027-CV; 01-20-00133-CV; 01-20-00134-CV; 01-20-135-CV; 01-20-00188-CV; 01-20-00189-CV; 01-20-00190-CV; 01-20-00480-CV; 01-20-00481-CV; 01-20-00482-CV; 2016-64847, in the 190th Civil District Court of Harris County; 2019-23950, 2019-59191; 2019-51432 in the 125th; 03-19-CV-00249 in the Southern District, Galveston Division; 21-40365 in the Fifth Circuit; 119110044885 in Harris County Justice Court 115005 in Harris County Court at Law, *infra*.

57.     Shahnaz Choudhri a/k/a Shanaz Akter, Texas REIT, LLC, North Office Tower, LP, Worldwide Lending Fund LLC all agreed to this scam and endorsed the secret assignment to benefit from the fraud on Steadfast and secretly extinguish their debts to Kelley.  Exhibits A, B(a-c).

**The Fifth Scam:  *Attempted Acquisition of the First Lien by Extortion, try to use it to Wipe out the Second Lien.***

58.     Originally, the Enterprise wanted to acquire the first lien from Steadfast on the cheap and use it to wipe out the other liens through a fabricated foreclosure.  Exhibit 19. When Steadfast refused to participate in their scam, they switched tactics again, *infra*.

**The Sixth Scam:  *Contacting the Steadfast Lenders to Dupe Them into Turning on the Other Steadfast Lenders.***

59.     Kelley and Fraga knew that the Steadfast Lenders were represented by counsel. Kelley and Fraga secretly owned Steadfast's borrower, 2017 Yale, *supra*, and were pretending to be counsel for 2017 Yale suing the Steadfast Lenders.   Exhibit 18. Despite all that, Fraga sent the represented Steadfast Lenders a secret letter, without copying their counsel, trying to get some of the lenders to fall for their deceptions, 'flip sides' and turn on the other lenders and Steadfast. Exhibit 19b.  This is what they later did to Alvarez, a disastrous decision for him, *infra*.  They typically use such tactics create so much confusion and corruption in their cases that they get away with fraud all the time.  This time, the Steadfast lenders could not be duped or corrupted, and had the grit to ultimately prove the truth.

**The Seventh Scam: The Alvarez Deception**

60.     When they couldn't get Steadfast to participate in their scam against second lien

holder Alvarez, the Yale Enterprise instead tricked Alvarez into a tragic, almost unbelievable disaster.  They tricked Alvarez into ceasing communications with Steadfast and his own attorneys, ceasing prosecuting his foreclosure against the Enterprise, and dropping his lawsuit against his own borrowers.  They tricked him into hiring Kelley and Fraga as his lawyers (without disclosing that Kelley and Fraga secretly owned and controlled his collateral and debtors;  without disclosing that they had a secret deal with Fisher to defraud Alvarez; and without disclosing that they had first tried to get Steadfast to sell Alvarez out).[31] They tricked Alvarez into releasing his two and a quarter million-dollar lien against the Property they secretly owned, and releasing the personal guaranty against Fisher, their other client.  They tricked him into releasing all of his claims against Kelley, Fraga, Parker, Jetall, Choudhri, 2017 Yale, 829 Yale and Fisher, the people who defrauded him and defaulted on his loan. They tricked Alvarez into quitclaiming his interest in the property to their secretly owned entity, 2017 Yale, without even telling their own client that he was actually giving the property to them.  They tricked him into flipping sides in the suit, and suing Steadfast and his prior lawyer on baseless claims instead (subject of course, to a 45% contingent fee).  *See* Exhibits 18, 19, 29, 44, 45, 46, G.  They induced Alvarez into defaulting on his own obligations to Steadfast.  *Id*.  They tricked him into doing this all for no consideration.  *Id*.  Their trickery and his releases precluded causation of any damages by Steadfast or Alvarez' prior attorney (Aycock) as a matter of law, even if Steadfast had ever done anything wrong.  *See e.g.,* Exhibit 174. Of course, they lost all

---

[31] Kelley tricked Alvarez into signing an arbitration agreement, so presumably they are now engaged in that forum, together with likely bar and judicial complaints.

of those frivolous and fraudulent claims for Alvarez, exposed Alvarez to criminal liability for the fraudulent lien releasees and other documents they induced him to sign, and subjected him to a civil judgment of over eight million dollars against his company D&A Alvarez, *See e.g.*, Exhibit 92, *infra*.   However, this deception relieved the Yale Enterprise of over two million dollars of debt, and from tort and debt claims by Alvarez.   This deception caused massive confusion in the Courts.

**The Eighth Scam: The Tax Lien Scam.**

61.    The Yale Enterprise secretly formed another sham company ("Tax Relief, Inc." in Wyoming) as a straw man. Exhibits 81-83, *infra*. Fraga incorporated it and was its president.   *Id*.   They declined to authorize the sham company to do business in Texas to keep its identity secret and confuse it with the real "Tax Relief, Inc." which knew nothing about it. *Id*. Exhibit 170.   Fraga and Kelley tricked their new client, Alvarez, into giving them another two hundred plus thousand dollars to pay delinquent Harris County property taxes owed by 2017 Yale on the collateral.   *Id*.   However, instead of extinguishing the tax lien as legally required, by having 2017 Yale use the money to pay the taxes directly, they instead had Tax Relief, Inc. secretly pay the taxes using Alvarez' money.   This sham arguably created an assignable (though fraudulent) tax lien instead of extinguishing the lien.   *Id*.[32]  But for fraud, which they felt no one could prove, the tax lien would be superior to Steadfast's lien.   They caused 2017 Yale (using Parker again) to assign the fake tax lien to the fake Tax Relief, Inc., which they then intended to use to secretly foreclose the

---

[32] Kelley, Fraga and Parker perjured themselves on this point too, claiming that 2017 Yale took a loan and extinguished the tax liens in deposition, *infra*.

fraudulent but legally superior tax lien held by Fraga's sham company. This scam would arguably wipe out Steadfast's first lien, giving the Yale Enterprise title to and possession of the property.[33]  *Id.*    They would have then quickly found or fabricated a "bona fide purchaser" before Steadfast or the Courts learned of the fraud, and denuded the funds, the liens, and rendered Steadfast's remedies useless.  *Id.* Steadfast discovered the scam and prevented that scam from being consummated. *Id.*   Ultimately, when Alvarez became a whistleblower and fired Kelley and Fraga as his lawyers, his new counsel released the fake tax lien. *Id.*

**The Ninth Scam:  The Tort Severance/TCPA Sanctions/Vexatious Litigation Scam.**

62.    Steadfast became aware that the Jetall deed transfer and some of the early defaults were also likely tortious, even though the Enterprise concealed or spoliated all of their documents, refused to produce any documents, convinced the court to deny Steadfast's motions to compel, and perjured themselves to cover up the truth. Exhibit 170.[34]   The Steadfast Parties attempted to assert the tort claims they had become aware of in 2019 as counter and third-party claims in the frivolous suit by the Criminal Enterprise.  *Id.  See also* the massive trial court record in the 190th, Cause No. 64847.  However, the Enterprise convinced the 190th to force Steadfast's tort counter and third-party claims into the 125th District Court of Harris County, Texas, instead of being heard together with the note default

---

[33] In theory, a superior lienholder owes a subordinate no notice of foreclosure.  Steadfast busted that scheme, but the 190th refused any of Steadfast's related relief requested. Steadfast sleuthed out the scam and shed light on it, preventing it from going forward.  When Alvarez finally figured out how badly he had been defrauded, he fired Kelley and Fraga, gained control of Tax Relief, Inc., and released the fraudulent tax lien to avoid civil and criminal liability as he became a whistleblower.

[34] This is not a limitations or res judicata issue at all, *infra*.

counterclaims, and the baseless tort claims the Yale Enterprise had fabricated against Steadfast to obstruct foreclosure and bury their fraudulent conduct. *Id.* The Enterprise 'somehow' "convinced" the 125th to arbitrarily and *ex parte* award them nearly seven million dollars in absurd sanctions and fees, mere three weeks into that case, in the middle of trial preparations for the 190th, in spite of clear and convincing undisputed evidence proving Steadfast's claims, and without any supporting pleadings or evidence of their own. *Id*. The Enterprise and 125th accomplished this farce through proven misconduct ultimately resulting in the proper disqualification and recusal of the Judge of the 125th after a lengthy trial by the Honorable Judge Susan Brown. Exhibits 90, 91, 170. That disqualification order renders that judgment void. *Id*. Carter is one of the three judges already disqualified, forced to recuse, or forced to resign so far, *supra*.

***The Tenth Scam: The Fraudulent Transfer of Collateral to Kelley's Fake Trust.***

63.    After causing Steadfast over a million dollars in unnecessary legal fees, the Yale Enterprise lost summary judgments on the contractual debt default, and all of their fake tort claims and defenses against Steadfast in the 190th. During Steadfast's damages trial on 2017 Yale's liability for the contractual note defaults, the conspirators caused 2017 Yale to secretly fraudulently transfer its only asset (Steadfast's collateral, the property at Yale), again, this time to a fake "trust," which they attempted to paint as a 'bona fide' purchaser. Exhibits 86(a-v), G, audiotapes B(a-c), *infra*. Still concealing the true ownership of 2017 Yale, the fake grantor, they bribed Defendant Fugedi to join the Enterprise as a fake Michigan trustee, to be a fake grantee. Elberger, Herman, Lopez all created or participated in fake beneficiaries and settlors of this fake trust and the Transact Title Defendants

deliberately circulated the fraudulent documents, obtained the fraudulent title policy, and prepared a fake closing.  *Id*.   Steadfast regularly reviewed the real property records for new scams committed by the Enterprise, and thus discovered the secret transfer during trial. Exhibits 86(o), 102, starting page 78, *infra*.  Kelley, Fraga, and Parker perjured themselves in the 190th, claiming that they had nothing to do with that secret transaction.  *Id*.   They also bribed and defrauded Alvarez into executing a fraudulent release of Steadfast's lien, and used that ineffectual fake document to try to spring the entire fake transaction, attempting to make the fake trust a bona fide purchaser free of Steadfast's lien.  Exhibits 86(a-v), G, *infra*.   The Enterprise fraudulently obtained a title insurance policy with Transact Title and First American and used that together with a fraudulent title abstract by Huebner to fabricate a quiet title claim in federal court in Galveston.  *Id.  See e.g*., Exhibits 86(a-v), 94, 95 v. 115, *infra*.

64.    The Enterprise had 2017 Yale secretly give away a deed to its only remaining asset, the property at 829 Yale, to Kelley's fake trust, with Fugedi posing as the fake trustee.[35]

**CHOUDHRI: *"how is the trust, the pura vida or whatever it is, gonna deed the property back to me?  How is that going to happen?***
*KELLEY:*        *"it's not…"*

**CHOUDHRI: *"but I thought we were moving it to protect it and it would be deeded back"***

*KELLEY:*        *"we moved it so that* **[Steadfast]** *couldn't get it."*  *B(B) 11:18; Pg. 19-20.* Exhibit B authenticating*.

---

[35] This transfer is also a felony by Kelley, Choudhri, Parker, 2017 Yale, Fugedi, the fake trustee, and numerous others. *See* Penal Code § 32.33, *infra*.  *See also* Exhibits 11(b), 20e, 88, 89, 102, G.

**Criminal and fraudulent intent confirmed:**

65.     The trust scam was more than just a fraud on Steadfast, Alvarez, and the Courts. When the Enterprise lost the loan default summary judgments and all of their fake tort claims and defenses, Kelley began arguing with Choudhri about the secret assignment of 2017 Yale in exchange for canceling Choudhri's prior debt to Kelley.    Exhibits B, B(a-c). Obviously, the Yale Enterprise had only been successful in defrauding Steadfast and causing Steadfast damages, but had not been able to steal title to the collateral.  Suddenly, Kelley didn't like that crooked deal anymore, and regretted extinguishing $3 million in debt to Choudhri and his family and companies, in exchange for Yale.  *Id*.  By (illegally) putting the property into his "fake trust" during trial, Kelley was also gaining leverage against Choudhri.  *Id*.  This was Kelley's attempt to benefit the most from the Yale Enterprise, if the Enterprise was ultimately successful in stealing the collateral or extorting a settlement.  *Id*.

66.     The new whistleblower evidence filed herewith exists because Choudhri was having his conversations with Kelley taped, for use against Kelley to threaten his law license, after they stole title to Steadfast's collateral.[36] *Id*.  They were fighting over which of them would benefit the most from the Criminal Enterprise's fraud on Steadfast. *Id*.

---

[36] The 190th declined Steadfast's motions to compel discovery, limited Steadfast's requested deposition time, and Choudhri, Parker, Appellee, Kelley and Fraga concealed all relevant evidence from Steadfast and the Courts in every case involving this Property, even after mandamus.  The Enterprise also violated a Restraining Order requiring them to produce such documents.  Exhibit 98.  Choudhri repeatedly blames Kelley on tape for having Parker perjure himself and repeating that the fake trust scam was Kelley's idea, through Choudhri admits participating in the scam.

***The Eleventh Scam: Perjury and Fraudulent Documents Fabricating a Bona Fide Purchase by the Fake Trust.***

67.    Still being defrauded as to the extent of the Criminal Enterprise, Steadfast discovered the fraudulent transfer of Steadfast's collateral during the 190th note damages trial.  *See* Exhibit 102, starting at pg. 78.   Parker maintained the fiction that he owned Yale under oath again.  *Id*.  Kelley and Fraga claimed on the record that they were not involved, and that the fake trust was a bona fide purchaser.  *See* Exhibits 88, 102.   That argument was frivolous on its face, because the transfer was expressly prohibited by Steadfast's prior recorded Loan Documents, which had just been adjudicated to be valid, binding, in default by 2017 Yale, without excuse. *See* Exhibits 11(b), 20e, 88, 92.   Steadfast's Deed of Trust and Collateral Transfer Loan Documents precluded any of these transactions, all of which are felonies.   Basic title law precluded "bfp" status to Fugedi.[37]  *Id*.   However, the fraudulent lien releases they induced and bribed Alvarez to sign, together with the fraudulent title abstract, formed the basis of their subsequent frivolous litigation to cloud Steadfast's title and preclude Steadfast from mitigating its damages, even to this day. Exhibits 86(a-v), 94, G.

68.    On discovering the fake trust transfer, the 190th took Parker under oath, and also questioned Kelley and Fraga about that transfer, on the spot.  *See* Exhibit 102, starting at pg. 78.   Kelley told the 190th:

"*I did not handle the transaction.*" *Id* at pg.80.

That was an outright lie.

---

[37] As ultimately confirmed by the Federal Court in Fugedi, Kelley's fake trustee's frivolous federal quiet title action. *See* Exhibits 88, 89.  *See also* Exhibits 11(b), 20e.

69.     The 190th had already adjudicated that 2017 Yale borrowed nearly six million dollars, and never paid a cent back.  *See e.g.*, 190th <u>MSJ Number 6 and Order, 92</u>.[38]  The 190th had already adjudicated that 2017 Yale defaulted by abandoning the Property, failing to make its payment, failing to use loan money for construction, failing to pay its vendors, property taxes or insurance, and other defaults.  *Id*.  The 190th already adjudicated that the defaults by 2017 Yale were without excuse.  *See* Summary Judgment pleadings, and <u>Final Judgment</u>, <u>Exhibit 92</u>.  The 190th had already adjudicated all of the Yale Enterprises' tort claims and contract defenses against Steadfast were baseless as a matter of law and undisputed fact.  *Id*.  Steadfast had already proven that the only assets 2017 Yale ever had were the (fraudulently induced) title to the collateral at 829 Yale, and the money that Steadfast loaned it.  *Id*.  *See also* <u>Exhibits 35,35c, 102</u>.[39]  This was all known by the Yale Enterprise by the time 2017 Yale fraudulently transferred Steadfast's collateral to their fake trust during the damages trial.[40]  The 190th refused to consider Steadfast's tort and third party claims at all, due to argument by the Yale Enterprise defendants and attorneys.

70.     Brad Parker, standing right beside Kelley and Fraga in the 190th, admitted that the property at 829 Yale was 2017 Yale's only remaining asset and that it received no consideration for the transfer.  <u>Exhibit 102</u>, *infra*. All of the elements of fraudulent transfer

---

[38] The Enterprise also stole funds from its own construction contractors. *Question:  Have you ever made any effort to pay any of those mechanic's and material lien vendors on this property?*  **Parker: That wouldn't make business sense, so no."** <u>Exhibit 35</u>c, pg. 89
[39] *See* <u>Exhibits 11(e), 15, 17, 35, 55</u>.
[40] Though the 190th declined to allow Steadfast's tort counter and third-party claims in that cause number, the undisputed evidence was of record.  However, due to the total lack of honesty by the Criminal Enterprise, most of the evidence was concealed until the recent whistleblowers came forward.

are judicially admitted, though not allowed to be adjudicated.[41]

71.     In fact, Kelley had personally drafted and circulated the void fraudulent transfer deed to his sham trust.  *See* Exhibits 86(a-v), Exhibit G.  Kelley personally drafted and circulated the illusory fake note and assignment to his purported client, Alvarez (which was never signed, honored, or paid).  *Id*.  Kelley personally drafted and circulated the fake real estate sales contract.  *Id*.  He personally drafted and circulated the fraudulent Alvarez release of lien.[42]  *Id*.  He personally drafted and circulated the fake assignment.  *Id*. He personally arranged for his friends, Robert Elberger, Ed Herman, and Norma Lopez to help set up a sham LLC to be the secret settlor and beneficiary of his sham trust.  *Id*.  Kelley personally selected and bribed Fugedi, who was a friend of his from Michigan, to be the fake Trustee, presumably to manufacture diversity to get into federal court to try to enjoin Steadfast's foreclosure again.  *Id*.  He personally attended the meeting inducing Alvarez to enter into this transaction with his other conspirators, right before the 190th damages trial.  *Id*.

72.     Kelley still did not disclose to his own client at the time (Alvarez), whom he was swindling yet again, that Kelley secretly owned the property.  *Id*.  Choudhri knew about

---

[41] Exhibit 102, the trial transcript, proved that 2017 Yale received no consideration, did it to avoid judgment, and the transfer rendered it insolvent.  The federal case thereafter proved all the elements again as part of the quiet title defense, and adjudicated that Steadfast's lien was superior.  *See* Federal Judgment quieting title in Steadfast, Exhibits 88, 89.

[42] The Enterprise needed something to support the "bona fide purchaser" argument for his fake trust. Alvarez had conditionally acquired Steadfast's first lien subject to Steadfast's superior rights, but defaulted due to Kelley and Fraga. He had no right to release Steadfast's lien (Exhibits 11(b), 20e, 88, 89), but Kelley bribed and induced Alvarez to execute and record a fraudulent lien release anyway.  The Enterprise claimed that fraudulent release functioned to make Fugedi and the fake trust a bona fide purchaser, and justified the fraudulent title policy.  That release is also a felony under Penal Code 32.33.  They also used this fraudulent lien release with the help of the title company in issuing a policy.  They filed a fraudulent title abstract, in two courts, deliberately omitting the valid, prior recorded loan documents that were just adjudicated herein, to try to make that "bfp" argument.  *See* Exhibits 88, 99.

the entire fraud, participated in it, and perjured himself about it.  Exhibit B, 120. Choudhri, Parker, Fugedi, and others also participated in it and perjured themselves in furtherance of the conspiracy in Kelley and Fraga's presence, because he was bribed to do so.  *Id.  See also e.g.,* 35, 35c, 121, 122, *infra*.

73.    The fraudulent transfer not only operated as a fraud on Steadfast, but it was also a fraud on the Court (the Court thought it was adjudicating the liens such that the collateral could be foreclosed; Alvarez was expressly enjoined from selling the property, and the Court had verbally ordered the conspirators to preserve the property status quo).[43]

74.    After lying about his involvement to the 190th, Kelley said that he was not even familiar with the details, when in fact, he had just held meetings and drafted the documents himself and paid the bribes not two days before.  *Id*. Kelley responded to the Court's question as to who took the title with: "*it's called Caribbean or Carribe something trust… Carribe carribbita trust holds it for a company who's owned by a gentleman named Robert Elbert who is in Costa Rica.*" Exhibit 102 at pg.80, 84.

75.    After telling the 190th that: "*I did not handle the transaction,*" Exhibit 102 *at* pg. 80, Kelley lied again when the 190th asked him: "*Were you part of forming this entity? Mr. Kelley: No.*" *Id*.   The Court asked "*are any of you part of that entity*? Kelley and Fraga both answered: "*No sir.*" *Id* at pg. 79.  The Court again asked Mr. Kelley if he was the lawyer, and Kelley misled the Court again:  *And are you the lawyer, Mr. Kelley?  Mr. Kelley: "I'm the lawyer for David Alvarez,*" omitting the truth. *Id* at 83.

---

[43] *See* Exhibits 21, versus 88; The 190th otherwise denied all of Steadfast's motions to try to protect the property.

76.    Kelley's fake trust didn't pay 2017 Yale or Parker anything for the fraudulent transfer.  *See* Exhibits 88, 89, 102.  Kelley and Fraga were the ones in the courtroom who knew those answers, but they lied:

| | |
|---|---|
| **Ali Choudhri:** | **"you knew because of my divorce, who owned 2017 Yale from the outset… 24:09…. I had Brad as my proxy in front."** B(A) 24:24; Pg. 36, 43-5. |
| Lloyd Kelley: | *"I OWN 2017 Yale!*  B(A) 5:13, Pg. 3, 8-9. |
| **Ali Choudhri:** | **"why did you have Brad testify that he owns and controls?"** B(A) 22:24. |
| Kelley: | "I don't give a fuck what Brad testified to!"  B(A) 22:28.Pg. 33.  "because its MINE! Because 2017 Yale was mine, not yours!"  B(A) 33:17;  Pg. 49. |
| Kelley: | *"Brad was a front guy"* B(A) 31:03. Pg. 45. |
| **Choudhri:** | **"You knew that all along"** B(A) 31.04.  **"Why did you let brad testify the next day?"** B(A) 29:57. |
| Kelley: | "He just testified that he was the authorized rep, that's all he testified to."  B(A) 5:40. "He didn't testify he owns it, he said I'm an authorized agent" |
| **Choudhri:** | **"That's not what he said, Kelley, you told him to say that he owns it, and he manages it, that's what you told…"** B(A) 31:03. |
| Kelley: | *"He never said the word owns"* B(A) 24:24; Pg. 36, 43-5. |
| **Choudhri:** | **"Yes he did, you told him to say that he owns it, and he manages it.  He said he's the only … You told him to say that. Lloyd, I'm telling you, you said that"** B(A) 31:14, *Id.*  Exhibit B. |

77.    In fact, Brad Parker, with Kelley and Fraga present and making objections and instructing him throughout the deposition, did testify under oath that he owned 100% of 2017 Yale in 2019:

"*How is 2017 Yale affiliated with Jetall?*
***I'm affiliated with Jetall, and I own the company.***  Exhibit 35 at Pg. 35-6.

"*Who is Yale development GP llc?*
***It's an affiliated company.  2017 Yale development has – record owner…one is tied to the other.  I own both entities.***  *Id* at Pg. 234.

*Are there any other members of either LLC?*
***No. I'm -- I'm the sole member of both.***      *Id.*

78.    Kelley and Fraga objected for Parker immediately before and after this testimony, at pgs. 232 and 235, and throughout the case, without clarification.

79.    Parker perjured himself because he was bribed by Kelley, Fraga and Choudhri, who promised to <u>actually</u> give Parker some of the membership interest:

*Choudhri:*    **"you wanted Brad to testify that to be representative for 2017, you did not want 2017 Yale to show…."** <u>Exhibit B(A) 5:25</u>.

*Kelley:*    *"Brad didn't want to show up, and you talked about giving Brad 5% or 10% which I thought was a great idea, so he's getting his 5 or 10%, so he stays in."* *Exhibit B(A) 3:41.* <u>Pg. 7-8.</u>

*KELLEY:*    *"… I told you this is no good if Brad's out of the picture. No good. if Brad doesn't have ownership, these claims are worthless.* <u>Exhibit B(c), Pg. 3-5.</u>

*CHOUDHRI:*    **"brad never had ownership"** <u>Exhibit B(c)</u> *0:19.*

*FRAGA:*    *"what does that do with the tax lien because brad transferred it and the secretary of state still shows brad parker on it?" Id.*

80.    Choudhri also perjured himself in Kelley and Fraga's presence:

> **Q. You're affiliated with 2017 --** *MS. FRAGA: Objection. Form.* **- Yale**
> *A. CHOUDHRI:  No.*
> Deposition of Ali Choudhri, Pg. 209, ln 5-8; <u>Exhibit 120</u>.

> **Q. (STEADFAST COUNEL): Do you have any right to control anyone that's associated with 2017 Yale Development LLC?**
> *A. No.  MR. KELLEY: Objection Form…. MS. FRAGA: Objection Form.*

Deposition of Ali Choudhri, Pg. 210, Ln 3-7,9; <u>Exhibit 120</u>.[44]

### The Twelfth Scam:  The Fraudulent Title Abstract.

81.    After notice of their frivolous appeal in the 190th, supported by another fraudulent affidavit by Parker, Kelley and Fraga had their fake Trustee Fugedi file a frivolous Petition to quiet title against Steadfast in the Southern District of Texas, Galveston Division, seeking to enjoin Steadfast's foreclosure again, and quiet title in the fake trust.  <u>Exhibit</u>

---

[44] Just as Fisher made a farce out of his deposition, so did Choudhri.  *See* <u>Exhibit 120</u>, including some example video excerpts attached.  Choudhri couldn't be bothered not to check his phone on the record, and found the whole case uncontrollably funny, despite his having ruined dozens of lives in this case alone.

170.  Quieting title was the only claim and counterclaim in that Court, the conspirators still concealing all of their crimes, torts and the true ownership of the parties. *Id*. The 190th had just adjudicated that Steadfast's lien was valid, in default, without excuse, and the Enterprise admits on the whistleblower tapes that the whole case was a fraud, *infra*.

82.    That Court properly declined the Criminal Enterprise's restraining order, despite the Enterprise hiring thirteen lawyers to present the case and attend hearings, and ultimately adjudicated title to the collateral in favor of Steadfast after much delay, confusion, and expense. Exhibits 88, 89.    However, that suit remains a cloud on title due to the Yale Enterprise's frivolous appeal and fraud on the Fifth Circuit, and has prevented Steadfast from selling the collateral for value, causing further millions of dollars in additional damages to date, in excess of the stolen principle, including interest, maintenance, security, legal fees, insurance, broker's fees, nearly five hundred thousand dollars in taxes, insurance, and other costs. Exhibit 170.  The delay and additional damages were caused in part by conspirators filing a fraudulent title abstract, fraudulent lien releases, and making clearly frivolous claims, which deliberately omitted Steadfast's key valid, prior recorded Loan Documents.[45] *Id*. Their abstract deliberately omitted Steadfast's liens, which Kelley, counsel, and the fake Trustee, all knew were properly recorded and rendered the clearly fraudulent transfer void, *supra*. They also knew the 190th had just adjudicated them to be valid, in default, without excuse, *supra*.  They knew that Steadfast had already foreclosed on the collateral, and yet told the Federal Court that no liens existed, using a fraudulent

---

[45] *See* Exhibits 20e, 88, 94, 115, G, *infra*.

abstract, *infra*.   *Id*.   All of their evidence submitted was fraudulent and perjurious.

**The Thirteenth Scam: The Frivolous Eviction Case.**

83.    The Yale Criminal Conspiracy also filed a frivolous forcible entry and detainer action against Steadfast's security guard company protecting the property.  *Id*.  They filed that suit in the Justice Court presided over by the brother of the disqualified Judge Carter in the 125th.[46] *Id*.  The fake Trustee, Plaintiff in that fraudulent case, never had any landlord relationship or any other rights in the property, clearly had no standing or grounds for a writ of possession. *Id*.   That Court clearly lacked jurisdiction, as a Justice Court cannot award possession while a federal Court is adjudicating title.  *Id*.   Nonetheless, the conspirators obtained a groundless writ of possession, which they would use to obstruct any attempted sale by Steadfast, show to law enforcement to allow them wrongful access onto the property, and to generally harass Steadfast and delay Steadfast's proper recovery. Steadfast had to post bond and appeal.   *Id*.

84.    The Enterprise filed the fraudulent title abstract omitting Steadfast's recorded Loan Documents in the County Court appeal of that writ of possession as well.  *Id*.  That county court, presided over by the now disgraced former Judge Barnstone, also clearly lacked jurisdiction, but nonetheless forced a sham trial, issued an absurd order sanctioning Steadfast without due process in what appeared to be another *ex parte* "setup," and Steadfast was required to mandamus and file an interlocutory appeal in that Court as well.[47]

---

[46] Judge Carter in the 125th had to be properly recused and disqualified for arbitrarily and *ex parte* granting baseless sanctions and rulings, and other misconduct or appearances of impropriety associated with the cases in the 125th. *See* Exhibits 90, 91.

[47] Neither Steadfast nor Counsel has ever been involved in a mandamus before these cases.

*Id*. The First Court of Appeals recently ruled that Carter and Barnstone lacked jurisdiction, the disgraced former Judge Barnstone's attempted sanctions against Steadfast void, and affirmed Steadfast's appeal. *Id*. *See* <u>Exhibit 180</u>. The conspirators were again abusing another Court as a tool to help commit their fraudulent schemes.[48] *Id*. Just days ago, the Enterprise filed a dilatory motion to extend their deadline to file a frivolous motion to reconsider that clearly proper decision, for the sole purpose of obstructing and hindering Steadfast's ability to sell the collateral property and mitigate its damages. *Id*.

85.    The new whistleblower evidence also reveals judicial admissions that the Yale Enterprise <u>knew</u> that 2017 Yale's and Conspirators' claims and defenses in all of the courts were frivolous. Conspirators' cases all stood upon the fraudulent testimony of Choudhri and Brad Parker, as presented by Kelley, Hill, and Fraga, as well as the fraudulent affidavits of Parker, Huebner and Fugedi. The entire suite of litigation was a fraud, based solely on fraudulent lien releases, deeds, and title abstracts. All of the parties to all of the transactions were Defendants, members of the Yale Enterprise.

| Choudhri: | *"transferring the property to the trust was stupid.  I did it because you forced me to do it."* <u>Exhibit B(A),</u> P.49 Ln. 1-5. |
|---|---|
| Kelley: | *"Because 2017 Yale was mine!"* *Id.* |
| Choudhri: | *"You don't own 2017 Yale, I didn't agree to even transfer the interest that you told me to transfer to the fucking trust, I thought that was a stupid idea, in the middle of trial, transfer the property."* B(A) 7:20. |
| Kelley: | *"it was a brilliant idea!"* B(A) 7:23. |
| Choudhri: | *"You knew because of my divorce[49], who owned 2017 Yale from the outset, you knew that Lloyd, so don't go there… B(A) 24:09…. because* |

---

[48] It must be noted that the conspirators filed all these suits, chose all these venues, and argued against consolidation by Steadfast every time.

[49] Choudhri initially bribed Parker to front for 2017 Yale because he was defrauding his wife in divorce court.

|           |                                                                                                                                           |
|-----------|-------------------------------------------------------------------------------------------------------------------------------------------|
|           | *of the divorce I had Brad [Parker] as my proxy in front.  You know that."* B(A) 24:24. *"why did you have Brad testify that he owns and controls?"* B(A) 22:24. |
| *Kelley:* | *"I don't give a fuck what Brad testified to!"*  B(A) 22:28, Pg. 12.                                                                       |
| *Kelley:* | *"[Parker] was the front guy" Id at* 43, Ln. 4. 31:03.                                                                                     |
| **Choudhri:** | **"I thought we were moving it to protect it and it would be deeded back."**                                                           |
| *Kelley:* | ***"we moved it so that* [Steadfast] *couldn't get it."***  Exhibit B(B)11:18 Pg. 20, Ln 11-14.                                            |

*See* certified transcripts, Supplemental Exhibits B(a-c) to the audio, and Appendix attached as Exhibits B(a-c); Declaration of Wyatt, Exhibit B.; Secret Kelley Assignment, Exhibit A; Pabeshan Certificate proving Kelley's ownership, Exhibit 106.  This evidence was not discovered until 2021 after all of the trials, due to fraud, discovery abuse, and spoliation by Conspirators and Counsel.

86.    They knew that they had no right to the property.  They knew the eviction Court had no jurisdiction.  They knew they had no legitimate claim to title:

> KELLEY: *"...Ramey [Steadfast] owns the whole thing and we're done... I'm spinning my wheels with a whole lot of lawyers and it's over.* Exhibit B(c) Pg.13, Ln.10-14.[50]

87.    The Yale Enterprise asserted throughout the cases that Brad Parker owned all of the membership interest in 2017 Yale at all relevant times.   They also claimed that Fugedi was a real trustee and bona fide purchaser, when in reality they bribed him with five thousand dollars to act as Kelley's sham Trustee.[51]  Lloyd Kelley secretly owned and had Elberger and Herman form Carb Pura Vida, LLC, posing Norma Lopez as the fake owner, pretending to be the settlor and beneficiary of the Enterprise's fake trust.  *Id*. Lloyd Kelley secretly owned 2017 Yale, Steadfast's borrower, which defaulted on Steadfast's loans.[52]

---

[50] This admission predates the final rulings by a year and another million dollars in fees and expenses.
[51] Exhibits G, 86(a-v).
[52] Exhibit A: "***Whereas Parker desires to assign 100% ownership interest to PaBeShan Castle, LLC in 2017 Yale***

Kelley, Choudhri, Parker, 2017 Yale and Counsel misrepresented to Steadfast, the Secretary of State, and Courts, under oath, that 2017 Yale was owned by Parker, in order to perpetrate fraud. 2017 Yale is Fugedi and the fake trust's grantor.

88.　　Kelley acted as counsel against Steadfast, representing Fisher, 2017 Yale, Alvarez, and Choudhri whenever convenient for the Enterprise.[53]　When 2017 Yale lost[54] in the 190th District Court, Kelley secretly created the fake "Carb Pura Vida Trust"; formed a sham "Carb Pura Vida, LLC" as fake beneficiary; and bribed Fugedi as fake trustee, to avoid judgment and manufacture diversity to delay foreclosure further.[55]　Kelley and Counsel fabricated frivolous claims, attempting to paint the scam as a bona fide transaction.

***Kelley secretly controlled both sides of the transaction by which Kelley's fake trust took the void deed:***

89.　　Just as Jetall never paid a cent of the loans or for the property, other than the Fisher bribe, 2017 Yale never paid a cent for the property, nor to repay the millions it borrowed

---

***Development, LLC…. Which own a property known as 829 Yale Street***…" [signed by Parker and Choudhri individually and for 2017 Yale, and Kelley individually and for Pabeshan]. Pabeshan was just another front; "***Pabeshan? You're crazy. Pabeshan is not involved in that at all***." CHOUDHRI: "***before me and you went to Pakistan, I transf***…" KELLEY: "***you transferred 2017 Yale to me***" CHOUDHRI: "***yes***" B(C) 16:20. Exhibit B(c) Pg. 28, Ln 1-4.

[53] None of the conspirators had any respect for any Court's ability to administer justice, nor concern that they were robbing Steadfast and their construction contractors. They've even sued each other claiming fraud. Exhibit 103. These lawyers generally played a shell game on who they represented when, going back and forth, etc.

[54] Exhibit 102, pg. 78; Exhibit 92: Exhibits 90-91.

[55] Exhibit 86(a) "***Lloyd, I did not compare the trust that you sent… Lloyd, I have attached the… Trust agreement***…" 86(b):"***Lloyd – Here is the…acknowledgment that CARB pura vida, LLC is in existence…***"; 86(c):"***Carb Pura Vida Trust, is one of Lloyd's friends***."; 86(d):"***These are the final docs Lloyd reviewed***." Exhibit G. "***Neither the Carb Pura Vida Trust nor 2017 Yale ever paid anything for the property or to Steadfast"; Kelley and Fraga, told me they had devised a stratagem … to prevent Steadfast from being able to foreclose on the Property. They began working together … to avoid the judgment … by transferring the Property to the "Carb Pura Vida Trust…and …handle the transaction from both sides***."; 86(v): All conspirators received the fraudulent closing documents.

and stole from Steadfast.  Similarly, Kelley's fake trustee also never paid a cent for the property, to satisfy Steadfast's valid lien, or for the secret void fraudulent transfer deed into the fake trust.  Exhibits 86(a-v), 102, B, B(a-c), C, G.  It was a conveyance from one sham entity to another under the Enterprise's secret common control, without consideration, rendering the sham grantor insolvent. *Id*.  The transfer was made upon judgment against 2017 Yale, to avoid collection and delay foreclosure – a textbook fraudulent transfer.

***The Fourteenth Scam:  Bribing Attorneys to Pursue Frivolous Litigation Based on Fraudulent Documents and Perjured Testimony.***

*KELLEY:*      *"All of that is being held together because of me.  All these lawyers are working for me."*  B(B) 14:00; B(B) Pg.23, Ln.18-20.

*I want to send a trust -- a piece of this case -- a piece of the company so those lawyers can get paid."* B(A) Pg.42, Ln.20-22.

*"...Ramey owns the whole thing and we're done... I'm spinning my wheels with a whole lot of lawyers and it's over.* B(c) Pg.13, Ln.10-14.

*I can just focus on...2017 Yale, which I've got [Fraga]in...You haven't spent a fucking dime, Ali.*  B(A) Pg.31, Ln.13-19.

*This is coming down to me paying...and it's always been me.*  B(A) Pg.6, Ln.23-24.

*"Marc Hill...is actually getting paid...because I paid him...."* B(B) Pg.6,Ln.17-18.
**Choudhri:**  **"I just want to have clarity on what we are doing"** B(B) 3:00.
Kelley:      *"Johnny Patterson, Michelle, me, Marc Hill. Marc is actually getting paid."*
**Choudhri:**  **"I thought marc is getting paid from the tcpa."**
Kelley:      *"... he's getting paid because I paid him some money." Id.*

90.    Note:  "the tcpa" referenced in this quote is the Ninth Scam, *supra*,  using Judge Carter in the 125th to grant fraudulent sanctions against Steadfast. Investigation is underway, administrative, civil and criminal.

91.    Neither 2017 Yale and Kelley's fake trust, nor anyone in the Enterprise, ever owned any legitimate interest, never hired Counsel, never paid fees, or anything else.  Their conduct reveals exactly how much respect they have for Courts to discern the truth and administer justice.  All Counsel should be disqualified and sanctioned for their misconduct

***Conspirators and Counsel knew their litigation was frivolous; violated bar rules, F.R.C.P., F.R.A.P., and criminal statutes:***[56]

92.    The Yale Enterprise knew their 190th litigation and all claims therein were frivolous and based solely upon fraud.  Their entire original case to enjoin Steadfast's foreclosure was founded upon frivolous allegations that Steadfast had made promises to extend two notes, when the parties only closed one loan modification.  The other main fabricated claim and defense against the notes was that they were defrauded into thinking the second lien was getting its maturity date extended.  All this was irrelevant as a matter of law on the undisputed facts.  However, the tapes prove that they <u>knew</u> that both arguments were a joke from the start (along with the whole premise of the loan of course):

| | |
|---|---|
| ***Choudhri:*** | ***"they were supposed to extend the loan, they were supposed to extend the second lien and the first lien…"*** B(A) 18:19. Pg. 27 *e.g.* |
| *Kelley:* | *" <u>the problem is you didn't have workers out there</u>, they weren't working on it, you sat there."* B(A) 18:26. |
| ***Choudhri:*** | ***"you were making changes!"*** B(A) 18:32. |
| *Kelley:* | *"I didn't make changes you were!  I didn't tell people to stop working"* B(A) 18:33. |
| | *"Brad just sat there and twiddled his thumbs for 4-5months and didn't even pay attention to the paperwork.  Who doesn't get a deal that says they're both extended?* |

---

[56] 2017 Yale's defenses and claims alleged "failure to renew both notes" in the loan workout, trying to cover up the fact that 2017 Yale simply stole the loan money and abandoned the property and loan.  They claimed that Steadfast quit funding loan draws, when actually, their own workers abandoned them and filed M&M liens because 2017 Yale stole the loan money instead of paying them.  This was a legally irrelevant argument, because legally the closing eliminated any such claims by merger; and the undisputed facts proved them false in any event.  However, now we have judicial admission that the Enterprise <u>knew</u> they were false.  *See* audiotapes and MSJ's in the 190th.

> *Who doesn't do that?  In writing?   It was in the closing documents!"*  B(B) 25:20.
> Pg. 39.

Kelley:         *"all of that is being held together because of me."*  B(B) 14:00.   Exhibit B.

93.    In fact, we now know that during that time period, the Enterprise was secretly trying to defraud even more prospective lenders.  While hiding Kelley's ownership from the existing lenders, they secretly told CBRE that Lloyd Kelley owned the property to try to obtain more loans.  The last fabricated claim and defense against Steadfast's notes was the claim that Steadfast couldn't keep funding loan draws, which was legally irrelevant and also proven false as a matter of undisputed evidence.  However, in their emails to CBRE, they also admitted that Steadfast was willing to continue funding loan draws but for the Enterprise's defaults, that Kelley was the one delaying construction to make penthouse design changes to the property.  These and other incredible facts only came to light after the whistleblowers came forward.  *See e.g.,* Exhibit 13a22, *infra*.

94.    All of their litigation was a complete sham.[57]

95.    The Enterprise knew their quiet title and forcible entry cases were frivolous as well, all a part of the pattern of extortion, theft, and fraud:

Kelley:         *"he [Ramey] got the property in November, because apparently, we screwed up on the transfer to the trust and he's got case law that says we can't put it in a trust[ee]"*

**Choudhri:    "why did we screw up?"**

Kelley:         *"the title company screwed up[58]...if that wouldn't have happened he would have already foreclosed on it..."* B(B) 0:21. *"... the property was transferred and was transferred to a trust, and in Texas you can't transfer property to a trust, and that's*

---

[57] *See* certified transcripts, Supplemental Exhibits B(a-c) to the audio, and Appendix attached as Exhibits B(a-c); Declaration of Wyatt, Exhibit B.; Secret Kelley Assignment, Exhibit A; Pabeshan Certificate proving Kelley's ownership, Exhibit 106.  This evidence was not discovered until June and July of 2021 due to fraud and spoliation by Conspirators and Counsel.  It was disclosed by whistleblowers and admissible under F.R.A.P. 27(b) and the F.R.E.
[58] Actually, Kelley and Transact personally drafted the void deed and screwed it up, *see* Exhibits 86, G.

*an issue of Texas trust law, and can't get around it, and if it's not, then the trust never had the property, it was in 2017 Yale and it was foreclosed on, and it's over." B(B) 20:24.*

**Choudhri:**    *"at the end of the day, how do we get the property back?"*

*Kelley:*    *"I don't know that you ever get it back.  You have a damage claim against the insurance company, you have a title policy from April 4th, what's your title policy worth eight million dollars?  You're going to get cash." B(B) 2:27.[59]*

*Kelley:*    *"Galveston? He [Judge Edison] wasn't giving us crap, he's got a judgment from Miller, had a state court judgment that flat out says you don't get it, so I don't know what you think something different would have happened or where you criticize what we've done."  B(B) 22:20.* Exhibit B.[60]

96.    Defrauding the Courts and using them to further their Criminal Enterprise was clearly part of the plan.

97.    In other words, Kelley knew that 2017 Yale's transfer of title to his fake trust, and fake trustee, Fugedi, was void from the start, making their fraudulent federal litigation even more obviously frivolous.  Kelley also admits that the 190th's Judgment flat out said the trust doesn't get the property; a position they frivolously argued against in the other cases after these tapes.  *See* Exhibits 88, 89. Kelley admits that the Conspirators' case would have been frivolous even if the whole transaction had not been a fraud, with Kelley owning both sides of the transaction in which no money changed hands.

**Choudhri:**    *"I thought we were moving it [the Property to Kelley's fake trust] to protect it and it would be deeded back."*

*KELLEY:*    *we moved it so that [Steadfast] couldn't get it."*    Exhibit B(B) 11:18. Pg.20, Ln.11-14.

---

[59] They filed a suit against the title company too, Cause No. 2021-19648 in Harris County.
[60] They filed their frivolous federal suit in the Trial Court in the Galveston Division.   This tape was made a year before Galveston granted Summary Judgment on the title.  Yet they knew their case was 'crap.'

*KELLEY:*        *"...we screwed up on the transfer to the trust and he's got case law that says we can't put it in a trust"* <u>Exhibit B(B) Pg.2, Ln.14-17.</u>

**Choudhri:**    **"… how do we get the property back?"**

*Kelley:*        *"I don't know that you ever get it back."* <u>B(B)2:27. Exhibit B(B) Pg.5, Ln.1-7.</u>

98.    Everyone knew Steadfast had a valid superior recorded Deed of Trust, Collateral Transfer of Note and Lien ("CTNL"), held the <u>original</u> Promissory Note – and that Steadfast retained superior right, title and interest to Fugedi, and the right to foreclose against Fugedi and 2017 Yale.   They knew the law and the documents precluded Alvarez from releasing Steadfast's lien, and precluded 2017 Yale from transferring the collateral to Fugedi.   They all knew that Steadfast could foreclose against 2017 Yale, and Fugedi. <u>Exhibits 88-9, 94, 115, 20e, 11b, G</u>:

"*<u style="color:red">[2017 Yale] may not sell, transfer, or otherwise dispose of any Property</u> [10] … **this…lien will terminate <u>only</u> if [Steadfast] releases this deed of trust**..*"   <u>Exhibit 11(b).</u>

"***[D&A Alvarez] agrees to: <span style="color:red">Preserve the liability of all obligors on the Collateral and preserve the priority of all security for the Collateral… [D.7]</span>***" <u>Exhibit 20(e).</u>

"***<span style="color:red">[Steadfast] is the original Lender…and shall maintain possession of the original Collateral Note... [G.1] …This agreement binds…all successors</span>***" [H.3]. *Id.*

"***<span style="color:red">"[D&A Alvarez] agrees not to… modify the Collateral Note <u>nor grant releases of any part of the Property [E.1]</u></span>*** [E.2]*"* <u>Exhibits 11b, 20e.</u>

99.    These State Bar loan forms were proven valid, previously recorded, in default, without excuse, <u>Exhibit 92</u>, leading Kelley to admit that the Trial Court in Galveston, "*wasn't giving us crap"* in a secret acknowledgement that the whole claim was frivolous.

100.    The only basis to argue against these obvious conclusions were the fraudulent lien releases, lis pendens, deeds, and title abstracts which the Enterprise fabricated, and filed and argued vexatiously for years.

**The Fifteenth Scam:  The Frivolous Title Abstract.**

101.    In addition to using the fraudulent Alvarez releases, Conspirators defrauded these Courts claiming: "Fugedi's Abstract traced title from the sovereign to Fugedi…"  Huebner filed his perjurious affidavit and abstract, omitting the dispositive CTNL:

| Doc. # | Instrument#: | Type: | Inst. Date: | Filing Date: | Grantor: | Grantee: | Inst. Type: |
|---|---|---|---|---|---|---|---|
| 79 | RP-2017-153161 | RP | 4/4/2017 | 4/11/2017 | 2017 Yale Development LLC, a Texas limited liability company | Benjamin K. Williams, Trustee fbo Steadfast Funding, LLC, Bruce L. Robinson, Initram, Inc, | Deed of Trust |
| 80 | RP-2017-151659 | RP | 4/4/2017 | 4/10/2017 | Jetall Companies, Inc | 2017 Yale Developement LLC | General Warranty Deed |

Appellant's fraudulent abstract knowingly omits Exhibit 20e, ROA 3106-3117, the prior recorded Collateral Transfer of Note and Lien, which expressly precludes D&A Alvarez from releasing Steadfast's lien, and precludes either 2017 Yale or D&A Alvarez, both borrowers subject to Steadfast's lien, from transferring title to Fugedi's trust.  Appellant's own lien release, which they defrauded Alvarez into filing, identifies this Document by RP number as a prior instrument in the chain of title.

Specifically, 20e, recorded on 1-31-18 at RP- 2018-65405, expressly precludes the fraudulent release induced by Kelley which Appellant and counsel recorded at RP-2019-317071 below. The inducement and filing of that release is also a felony, and a fraud on this Court.

| | RP-2018-65405 | RP | 1/30/2018 | 2/16/2018 | D&A Alvarez Group, LLC | Bruce L. Robinson, et al. | Assignment/ Collateral Transfer of Note and Lien |
|---|---|---|---|---|---|---|---|
| | RP-2018-324056 | RP | 7/14/2018 | 7/18/2018 | D&A Alvarez Group , LLC | 829 Yale St , LLC, a Texas limited liability company in favor of Williams, | Release of Lien |
| | RP-2019-317071 | RP | 7/22/2019 | 7/23/2019 | D&A Alvarez Group, LLC | 2017 Yale Development LLC in favor of Benhjamin K. Williams as Trustee | Release of Lien |
| | RP-2019-317072 | RP | 7/22/2019 | 7/23/2019 | 2017 Yale Development LLC, a Texas limited liability | CARB Pura Vida Trust | General Warranty Deed |

102.    Compare Exhibit 94 to Exhibit 115, Steadfast's non-fraudulent actual abstract, which accurately reflects the recorded CTNL:

| 87. | RP-2018-65405 | RP | 1/30/2018 | 2/16/2018 | D&A Alvarez Group, LLC | Bruce L. Robinson, et al. | Assignment/ Collateral Transfer of Note and Lien |

103.    TransAct, Mansoor, Salima, Marol all worked with First American to fabricate a fraudulent title insurance policy, and the Enterprise filed that as an Exhibit to try to prove their title.

104.    Cursory review of the Collateral Transfer of Note and Lien ("CTNL" Exhibit 20e) and basic hornbook law was completely dispositive of that case in Steadfast's favor, and the Yale Enterprise knew it.  That is why Conspirators and Counsel filed the fraudulent abstract with the federal Trial Court and this Court, omitting it.  *See* Exhibits 94, 115.[61] The CTNL is a conveyance,[62] an "instrument affecting title," legally putting Fugedi on irrebuttable presumptive notice of Steadfast's superior lien and title.[63]  The CTNL expressly preserved Steadfast's valid first lien and right to foreclose on Fugedi's in interest the Property, period, regardless of any other issues.  The CTNL precluded Conspirators from relying on any release by Alvarez.  It puts the world on notice that Steadfast

---

[61] Conspirators also defrauded these Courts by arguing that they had a judgment against Steadfast on the fraud claims signed by Judge Carter, who had to be disqualified for that egregious misconduct, Conspirators and Counsel knowing that this absurd farce of a judgment was void as a matter of law.  *See e.g.,* Exhibits 90. 91.

[62] It even contains words of present grant.  ROA.3106, at top of pg. 6.

[63] The CTNL is a standard State Bar of Texas Commercial Loan Document, used in this case for its traditional purpose. If Conspirators can ignore it, then we are all going to be very famous, because every lender that has financed an assignment of a real estate loan or mortgage in Texas – which happens all the time - will never be able to foreclose on their lien.

maintained the original note and first lien, and the right to foreclose on the property. The CTNL and Deed of Trust preclude 2017 Yale from transferring the property to Fugedi.[64]

105.    Despite all that, Kelley induced Alvarez into recording fraudulent lien releases, then argued that they released Steadfast's lien, which they could never do. Exhibit G; Exhibit 86(m). They and Transact Title issued a fraudulent First American Title Company title insurance policy, No. 5825548-0022684e, from First American Title using the fake release as well, and then filed that fraudulent policy as further fake evidence to argue that they had superior title to Steadfast. Exhibit 95.

106.    Their use of this release, policy, and abstract is felonious and a fraud.[65] Id. Fugedi took only subject to Steadfast's prior recorded lien, and all terms of the CTNL and Loan Documents, as a matter of basic law. TEX. PROP. CODE §13.002; Regold Mfg Co. v. Maccabees, 348 S.W.2d 864 (Tex.Civ.App.—Fort Worth 1961); Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex.1982). Steadfast ultimately foreclosed and owns the property. Exhibit 97. Nothing can change that.[66] However, the Yale Criminal Conspiracy has continued to tortiously interfere with sales and title, deliberately continuing to file fraudulent instruments, including "correction deeds," and lis pendens, into 2022.

---

[64] It turns out that the Enterprise secretly had a prior WFG title commitment, which they knew excepted the Steadfast Deed of Trust, Lien, and CTNL, infra. They didn't pay for a policy; only the fraudulent First American Policy omitting the lien. They hid that policy from the Courts.

[65] Texas Penal Code §§ 37.10; 33.33; 32.49; 32.46; 32.32; and 18 U.S.C. §§ 1341, 1343, 1346; 2326-7; and 18 U.S.C. § 1512:

[66] The Enterprise tried to salvage their defective void fraudulent transfer fake trust deed by filing fraudulent 'correction' deeds. However, under TEX. PROP. CODE § 5.030 (c) A correction instrument is subject to the property interest of a creditor or subsequent purchaser. Steadfast filed lis pendens and foreclosed after the void deed, and before the corrections. Steadfast purchased the Property at a valid foreclosure sale on November 4, 2019. Fugedi and Conspirators remained subject to Steadfast's prior lien and foreclosure. They have no claim to title. Hooks v. Neill, 21 S.W.2d 532 (Tex. Civ. App.—Galveston, 1929, writ ref'd).

The Yale Criminal Conspiracy apparently expects to get away with their fraud based upon who they think they are and their perceived personal influence over the courts, despite clear and undisputed abuse, and the fact that this matter now gaining significant public interest.

**The Sixteenth Scam:  Conspirators and Counsel Continue to Defraud Courts and Cloud Title with False Allegations and Filings.**

107.    A deed or release procured by fraud is void.  A void deed or instrument is an absolute nullity and cannot be cured or revived.  *Parham Family Ltd. P'ship v. Morgan,* 434 S.W.3d 774, 787(Tex. App.–Houston[14th Dist.]2014, no pet.)*(citing Lighthouse Church of Cloverleaf v. Tex. Bank,* 889 S.W.2d 595, 600 (Tex.App.–Houston[14th Dist.]1994))*; Wofford v. McKinna,23 Tex.,* 36, 46 (1859); *Sanchez v. Telles*, 960 S.W.2d 762, 768 (Tex.App.—El Paso, 1997); *Lasater v. Jamison*, 203 S.W. 1151, 1154 (Tex.Civ.App.— San Antonio 1918, writ ref'd);Tex. Prop. Code §5.030.  The Yale Enterprise attempted to cure their void deed by filing additional fraudulent "correction deeds" in 2021 in an effort to continue to cloud title, fabricate frivolous litigation claims, and obstruct any sale of the property for market value by Steadfast. Exhibit 171. These cases and instruments remain a cloud on Steadfast's title and obstacle to the sale of the Property, and continue to cause Steadfast damages.  Exhibit 170.

**The Seventeenth Scam:  The 2022 Fraudulent Lis Pendens, Another Crime and Tortious Interference, Fitting Right into the Pattern of the Yale Enterprise.**

108.  After years of trying to sell the property privately, all of which efforts were unsuccessful due to the Yale Enterprise, the Steadfast Parties listed the property publicly to sell it at a dramatically reduced price, to avoid it becoming a worthless tear-down property due to dilapidation.  The Enterprise sent a spy to the showing, concealing their

identity, and attempted to entrap the Sellers, spy on proceedings, and submit a fraudulent bid. *See* Exhibit 170.    All best and final bids were due from prospective buyers by February 25, 2022. *Id.* In order to tortiously interfere with any sale, and preclude Steadfast from proper recovery and mitigation of their damages, the conspirators filed a fraudulent lis pendens, yet again, on February 25, 2022. Exhibit 163. This lis pendens is based solely on their fraudulent lawsuit and title abstract on appeal.

109.    This long-standing conspiracy to commit a lengthy pattern of related fraudulent and criminal title transfers, fraud, stolen loan money, extortion, frivolous litigation, fraudulent real property document filings, fraudulent court exhibits, all calculated to steal Steadfast's loan money and title to Steadfast's collateral, continues to this day, and continues to cause Steadfast millions of dollars in damages.

## V.
## DETAILED TIMELINE:

07/07/2016    Steadfast Parties loan $4.2million for construction funds to Terry Fisher/829 Yale St., LLC secured by a First Lien. As construction progressed, Steadfast fully funded this loan through December of 2016, and the property was essentially built to its present state before the Yale Enterprise formed. Exhibit 1,7.  Compare photos in Exhibit 7, before the fraudulent Enterprise formed, to Exhibit 12, after abandonment of the project by 2017 Yale, after millions in additional funds. Compare Exhibit 172, current pictures of dilapidation caused by the Yale Criminal Conspiracy. The first lien Deed of Trust in favor of Steadfast, executed by the borrower, 829 Yale St., LLC, was recorded at RP-2016-430945.  Exhibit 1.  That deed of trust clearly precluded 829 Yale or Terry Fisher, its owner, from conveying the collateral to Jetall, Inc., or conveying any ownership interest in 829 Yale St., LLC to any third party without prior written consent of Steadfast. *Id.*

Fisher making False Statements to Obtain Property or Credit - § 32.32[67] First Degree Felony.

---

[67] § 32.32. False Statement to Obtain Property or Credit
(b) A person commits an offense if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit, including a mortgage loan. (c) An offense under this section is: (7) a felony of the first degree if the value of the property or the amount of credit is $300,000 or more.

§31.01.[68]

07/14/16        Fisher requests more money; Alvarez loans $2.25m to Fisher/829 Yale in Second Lien position, subordinate to Steadfast's lien.  Alvarez fully funds at closing. Exhibit 2.

09/23/16[69]     Fisher/Kavac's real estate "empire" begins collapsing for numerous defaults with other lenders on other properties; Fisher hides this from Steadfast, and instead secretly engages with Choudhri, Jetall and Parker to cut a secret extortion deal. Commencing the Enterprise, Fisher illegally has his company, 829 Yale, Steadfast's borrower, convey a secret deed to Steadfast's' 829 Yale collateral (and other lender's collateral on other property loans) to Choudhri's company, Jetall, in exchange for one hundred thousand dollars plus Jetall's promise to tortiously interfere with Fisher's Lenders, including the Steadfast Parties. This formed the Yale Enterprise, and began their scheme to delay or obstruct the lenders' valid foreclosures.  They agreed to split profits from this fraud and extortion scheme. Choudhri files the first T.R.O. on the same day against other lenders (Paul & Partners) and they begin their extortion scheme.  This is the case they eventually brought Steadfast into with yet another frivolous *ex parte* T.R.O. in 2017 (2016-64847 in the 190th, eventually resulting in Steadfast's Judgment on the contract default for over eight million dollars).  Exhibits 1, 3, 107, 4, 4a21, 4a22, 6, 92, 160.

---

[68]   § 31.01 Deceive means: creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true.
(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true.
(C) preventing another from acquiring information likely to affect his judgment in the transaction.
(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.
(2) "Deprive" means: (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.
(3) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:
(A) induced by deception or coercion; (B) given by a person the actor knows is not legally authorized to act for the owner.

[69] Even if the four-year limitations periods for all causes of action were not obviously tolled by deliberate fraud, spoliation of evidence, and discovery abuse, a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless of when the RICO violation causing such injury occurred.  *Love v. National Medical Enterprises*, 230 F.3d 765, 773 (5th Cir.), reh'g denied, 239 F.3d 367 (5th Cir. 2000) (quoting *Bankers Trust v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988), cert. denied, 490 U.S. 1007 (1989)). Further, only the first few scams were committed more than four years ago, and none were discovered so as to render any of the seventeen scams untimely hereunder.

Inducing Fisher into signing fraudulent documents – § 32.46[70] First Degree Felony.

18 U.S.C. §§ 1341, 1343, Mail and Wire fraud, recording fraudulent instruments, issuing a check to bribe Fisher, emailing a secret MOU to interfere with lenders' rights.[71], 18 U.S.C. § 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, as many of the Steadfast Parties were over 55 years old.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Theft of Loaned funds – § 31.03,[72] First Degree Felony, proven by bank records and recorded documents.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

Fisher illegally secretly gave Steadfast and Alvarez' multi-million-dollar collateral to Jetall in exchange for a secret $100k check. Neither ever paid for the property or to repay the loans, and they executed a secret MOU agreeing to obstruct the lenders' foreclosure, extort the lenders and split the illicit profits. This transfer was clearly precluded by the Loan Documents and by Texas civil and criminal law.  More than 10 of Steadfast's lenders are over 55.

110.    Defendants Fisher, Choudhri, Parker, 829 Yale St., LLC, and Jetall Companies, Inc.

commenced the fraudulent Enterprise, conspiring to steal Steadfast's loaned funds, title to

the property, and interfere with Steadfast's lien and property rights, by circulating a secret

---

[70] § 32.46 - Defendants Choudhri, Parker, Kelley, Fraga, Fisher
A person commits an offense if with the intent to defraud or harm any person, he, by deception:
(1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person; (7) felony of the first degree if the value of the property, service, or pecuniary interest is $300,000 or more.

[71] Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than twenty years, or both.

[72] § 31.03 (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
(b) Appropriation of property is unlawful if: (1) it is without the owner's effective consent.
 (c) For purposes of Subsection (b):
(1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty.
(7) felony of the first degree if the value of the property stolen is $300,000 or more.

agreement.  Exhibit 4, 107.  This secret agreement was circulated by email and the fraudulent deed to Steadfast's collateral, circulated by email, and recorded by mail and circulated electronically in the Harris County real property records.  *Id*. Exhibit 3.  Such a transfer is felony Hindering Secured Creditors under Texas Penal Code § 33.33 – First Degree Felony, intent is presumed.  This misconduct using interstate commerce via email and mail also violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, as many Steadfast Parties qualify under §§ 2326-7.   This agreement and fraudulent deed also constitute a violation of 18 U.S.C. § 1512.[73]   Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10 and a violation of Texas Government Code Sec. 51.901.

111.   Kelley and Fraga presented Parker for a perjurious deposition, in which Parker testified in front of them that no one paid any consideration for the Jetall fraudulent deed transfer; that no money changed hands for that deed, that there were no agreements about that transfer, and that Parker had never spoken with anyone about what would happen with any

---

[73] 18 U.S.C. § 1512:
(b) Whoever knowingly uses intimidation, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
(1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to--
(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding.
(3) hinder, delay, or prevent the communication to a judge of the United States of information relating to the commission or possible commission of a federal offense.
(c) Whoever corruptly--
(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

money received by 2017 Yale.  <u>Exhibit 35 at pages 42-44</u>.  Fisher claimed all he got was 'a smile', *supra*.

112.    However, in 2021, Steadfast learned that instead, Jetall paid a one hundred-thousand-dollar bribe to Fisher personally to have Fisher's company, Steadfast's borrower, 829 Yale St., LLC execute the illegal fraudulent transfer deed to Jetall tortiously interfering with Steadfast's lien.  <u>Exhibits 3, 4, 4a22</u>.  This payment and fraudulent agreement were circulated by United States Mail and interstate Email. *Id*. This is a violation of 18 U.S.C. § 201(c)(3) and constitutes a violation of 18 U.S.C. §§ 1503 and 1512 as well as the mail and wire fraud statutes.  This instance reflects a pattern of repeated activity in furtherance of a common Enterprise, these same acts being repeated below, and intent proven by whistleblower tapes.

<span style="color:red">Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.</span>

<span style="color:red">Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.</span>

<span style="color:red">18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution.</span>

<span style="color:red">Defendants devised a scheme to defraud, intended to deprive another of money or property or bring about some financial gain.</span>

<span style="color:red">Defendants employed false material representations [pretenses or promises], having a natural tendency to influence, or is capable of influencing, someone's decision (the person deceived doesn't have to be the person who was cheated).</span>

<span style="color:red">The representations were untrue or was made with reckless indifference as to their truth, with specific intent to defraud, deceive or cheat.</span>

<span style="color:red">Defendants mailed something for the purpose of executing such scheme (the actual mailing doesn't have to contain false info) (§ 1341).</span>

<span style="color:red">Defendants transmitted or caused to be transmitted, by wire communications, in interstate commerce, any writing for the purpose of executing such scheme (wire need not be an essential element of the scheme; rather, it is sufficient for the wire to be incident to an essential part of the scheme) (§ 1343).</span>

This instance reflects the commencement of a long pattern of repeated activity in furtherance of a common enterprise, these same acts being repeated below and proven by whistleblower tapes.

| | |
|---|---|
| 9/19/16 | Brad Parker and his wife Margaret Naeve Parker, and her business, M.Naeve Antiques, LLC, now forfeited by the Secretary of State, secretly joined the Yale Enterprise, taking a flat $40,000 fee for 'consulting' at 2017 Yale.  This was never disclosed to Steadfast, nor was this agreement or the email circulating it produced in response to discovery, or in depositions.  <u>Exhibits 4a22b, 4a22b DOC 475</u>. |
| 01/09/17 | Steadfast Parties discover Jetall's secret deed during a title check arising from Fisher's efforts to swindle another loan out of Steadfast.  The lenders work together to deal with the defaults.  Fisher abandoned work, fails to pay the loans, and fails to pay his contractors, resulting in M&M liens against the collateral at 829 Yale, another default.  <u>Exhibit 170.</u> |
| 01/17/17 | The lenders cooperate and send Notice of Default to Fisher for the "due on sale" Loan Document violation and default caused by the secret Jetall deed.  Notice is posted for 2nd lien instead of 1st by agreement, to protect Alvarez. Jetall/Choudhri/Parker/Fisher/829 Yale begin fraudulently inducing the Steadfast Parties into loaning more money, on Choudhri's promises to help Fisher finish the project and refinance quickly, promising to pay the lender's notes. On the other hand, Choudhri threatens to obstruct foreclosure and litigate to the ends of the earth if a loan workout is not agreed.  <u>Exhibit 170</u>.  Using interstate emails, Choudhri, Parker, Jetall made demonstrably false statements about their assets and financial capability, as well as intent.  This misconduct if a felony Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony, by using fraudulent internet email and mail communications.  18 U.S.C. §§ 1341, 1343. |

18 U.S.C. § 1951(a).

 "Extortion" is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened fear." *Id.* at § 1951(b)(2). The elements of a violation of the Hobbs Act are: "(1) that the defendant induced a person to part with property; (2) the defendant acted knowingly and willfully by means of extortion; and (3) that the extortionate transaction delayed, interrupted, or adversely affected interstate commerce." *United States v. Stephens*, 964 F.2d 424, 429 (5th Cir.1992).

**The Enterprise forms a sham company to perpetrate its fraud and extortion scheme:**

113.    2017 Yale Development, LLC, and its General Partner 2017 Yale Development GP,

LLC, were formed by Choudhri and Parker for the sole purpose of defrauding Steadfast in

furtherance of the secret Enterprise (and Choudhri's wife in his divorce case, being handled

by Lloyd Kelley), both of them representing that 2017 Yale was a legitimate company with

the intent and ability to repay the loans quickly.  Choudhri, Parker, and 2017 Yale also submitted fraudulent filings with the Comptroller of the State of Texas and Secretary of State, improperly reflecting circular ownership and management, i.e., 2017 Yale supposedly managed and owned all of the membership of 2017 Yale GP, and *vice versa*, a fraud intended to conceal the true ownership of both companies.  Exhibit 14.  2017 Yale was always secretly intended as a complete sham, with no assets, other than those stolen from Steadfast.  Exhibits 35, 35c, 55, 78, 102, 109, 110.  *See* Exhibit 170, and whistleblower audio tapes, Exhibits A, B(A-C), *infra*.  Kelley, Fraga, Choudhri, Jetall, 2017 Yale, Fisher, 829 Yale, and Parker all perjured themselves, representing falsely that Brad Parker was the sole owner of 2017 Yale and the GP.  *Id.*

 Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

Emailing and recording fraudulent company records with the comptroller and secretary of state, and fraudulently inducing Steadfast's loan workout by extortion and false representations using email; §§ 1341, 1343.

Filing fraudulent documents with the Secretary of State is a second-degree felony under Penal Code 37.10 and a violation of Texas Government Code Sec. 51.901.

1951(a) *supra*.

## The Enterprise's Second Fraudulent Transfer and Fraudulent loan inducement/extortion scam:

04/04/17    The 2017 Yale loan workout closes. Exhibits 11(a-e). Choudhri/Parker/Fisher/Jetall conveyed title the collateral from Jetall again, this time by deed to 2017 Yale. Choudhri secretly owned 2017 Yale, but presented Parker as a fraudulent "front man" fake owner, to keep the assets away from Choudhri's wife and other litigants. Steadfast and 2017 Yale close a new First Lien refinance loan workout, based on the Choudhri conspirators' false promises and threats. 2017 Yale was the new borrower, and up to $8.2 million was available for funding subject to the Construction Loan Agreement and other Loan Documents, the loan secured by Steadfast's Deed of Trust and Promissory Note.  The recorded Deed of trust, as is customary, also puts the world on notice that 2017 Yale cannot transfer the property without paying Steadfast's lien.  Steadfast pays the M&M liens and other defaults

by Fisher and Jetall with loaned funds at this closing.[74]  Steadfast pays the unpaid 2016 M&M lien contractors the Yale Enterprise had ripped off and abandoned out of this closing.

The first interest payment would come due in November of 2017.  The unmodified Alvarez second lien would still mature on August 1, 2017.  Choudhri, Parker and Fisher promise that they will commence construction and refinance the loans before then.  They had also threatened endless litigation if Steadfast did not do the workout loan to 2017 Yale.

Steadfast begins funding construction loan draws to the conspirators to pay for continued construction, ultimately funding nearly six million dollars to the Enterprise; however, the real goals and competencies of the conspirators were real estate fraud rather than property development.  The Yale Enterprise commences floating and late paying their contractors and stealing the loan funds in accord with their secret MOU, Exhibit 4, *infra*.  For example, the roof construction deviates from plan and is just a sham cover to hide its faulty substrate, in order to scam another construction loan draw from Steadfast.

The recorded Deed of Trust clearly precludes Parker from conveying ownership in 2017 Yale to Kelley or Choudhri, and clearly precludes 2017 Yale from giving away title to the property to anyone without paying Steadfast's full lien.  Exhibits 11(a-e).

114.    The Warranty Deed dated April 4, 2017, from Jetall Companies, Inc. into 2017 Yale

Development, LLC and recorded at RP-2017-151659 of the Official Public Records of

Harris County was fraudulently induced by Parker, Choudhri, Fisher, Jetall, 2017 Yale,

Fisher, and 829 Yale St., LLC.    Exhibits 11(a-e).  This deed remained the last conveyance

of record, subject to Steadfast's Deed of Trust and Collateral Transfer of Note and Lien,

until the later fraudulent transfer by the Enterprise to the fake trust, *infra*, and then the

ultimate foreclosure by Steadfast.  Exhibit 97.

115.    This misconduct, committed by making fraudulent misrepresentations, false

promises, and threats of extortion and endless litigation, via interstate email and mail, was

---

[74] The Enterprise stole $261,567.90 of the Closing Funds that were not used to pay the contractors they had ripped off already (Exhibit 162), in addition to the other hundreds of thousands of dollars in funds the later stolen directly out of the loan draws by the Enterprise.  Exhibit 55.

engaged in by the Enterprise to induce a loan workout from Steadfast by fraud and duress. This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a). Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10 and a violation of Texas Government Code Sec. 51.901. Filing fraudulent 2017 Yale formation documents with the comptroller and Secretary of State, filing fraudulent deed of trust concealing 2017 Yale's ownership are all violations of this statute.

08/01/17    The unmodified Alvarez Second Lien matures without payment by the Enterprise borrowers, Exhibit 2, and 2017 Yale commences committing numerous other defaults on both loans. Choudhri and Kelley secretly begin looking at Yale as Choudhri's payment for Kelley's past due legal fees for defrauding Choudhri's wife in her divorce case. Parker remains both of their fraudulent "front-man" for the Enterprise. Exhibits A, B(A-C), infra.

    2017 Yale starts secretly stealing Steadfast's loaned funds and wrongfully pays Fisher/Jetall entities almost $400k, instead of using the loan money to pay their legitimate contractors as required by the Loan Documents, in secret anticipation of defaulting on the note payment and dumping the company on Kelley. They start "floating" contractors' payments to keep them working, to swindle more loan draws, without actually paying the contractors for the work. The unpaid M&M Liens for unpaid invoices from June 2017 forward and walk off the job (both are defaults excusing further performance by the Lenders). Steadfast later learns that Cityscape Rentals, Assurance Home Warranty are also Fisher companies, and KAVAC was also secretly getting fraudulently transferred funds out of 2017 Yale in violation of the Loan Documents. Exhibits 14, 15, 53, 55, 92, 160.

116.    In addition to the $261,567.90 of the Closing Funds stolen by the Enterprise, and the money they stole out of 2016 draws instead of paying their construction contractors, Steadfast was fraudulently induced to advance another $511,824.21 in construction loan funds to 2017 Yale on the fraudulently induced loan renewal during this period. Exhibit 55. 2017 Yale wrongfully sent $206,596.46 of that money to Cityscape Rentals, an undisclosed front for Terry Fisher, run by Allen Fisher, in violation of the loan (Exhibits

11(a-e), but in furtherance of their MOU to defraud Steadfast (Exhibit 4). Exhibit 55. 2017 Yale similarly sent $140,761.56 to Fisher's other company, KAVAC, LLC. 2017 Yale sent $49,240.58 to Jetall.

117.    It is unknown how many of its own construction contractors 2017 Yale ripped off instead of paying as required, but the following unpaid contractors filed M&M liens: Contractors Access Equipment $36,512.96; Mustang Rental Services $18,500.64, $7153.39, and $7,713.99; Supply Network d/b/a Viking Supply $7,438.86; Ferguson Fire and Fabrication, LLC $6,077.61; Chero-Key Piping Company $55,000.00. All of which funds were required to have been paid to these contractors by 2017 Yale using Steadfast's construction loan funds. Exhibit 15; compare Exhibit 11(e). Instead, the fraudulent Enterprise stole the money, floating their contractors to induce them to continue working without full payment, to induce Steadfast's inspections of their work progress justifying additional loan draws from Steadfast. *Id.*

> *Question: Have you ever made any effort to pay any of those mechanic's and material lien vendors on this property?* ***Parker: That wouldn't make business sense, so no.***" Exhibit 35c at pg. 89:

118.    They strung it out to perfectly time their contractors walking off the job with their loan payment coming due, neither of which they ever intended to pay. They later used this money to bribe more participants in the Yale Enterprise.

119.    Kelley further held the project up to make his own fantasy changes to the construction plans. *Id*. *See also* Exhibits 13, 13a22, 85 and B. 2017 Yale stole Steadfast's construction loan money remaining in 2017 Yale's bank account, instead of paying the construction contractors. *See* Exhibits 11(e), 15, 17, 55, B. The new whistleblower

evidence proves that Choudhri and Parker stole 2017 Yale's bank account and quit paying its workers because they had already secretly conveyed 2017 Yale to Lloyd Kelley in violation of the Loan Documents.  Exhibits A, B.  Kelley knew about Steadfast's valid lien but did nothing to pay them.  Instead, Kelley retained Fraga and others to join the Enterprise, and embarked on further schemes to split the lenders, wipe out liens, commence frivolous litigation, obstruct foreclosure, and steal the property. Exhibits 18, 19, A, B.[75]

Theft of Loaned funds – § 31.03, First Degree Felony, proven by bank records and recorded documents.

§§ 32.33, 1341, 1343 – also TPC §§ 31.03, 32.33 intent presumed; §32.49 intent presumed.[76]

---

[75] They tried to split the lenders, buy the first lien without paying the second, and then foreclose on the subordinate lien; they tried Fraga's tax lien fraud scam, have her straw man company foreclose and wipe out the liens; they tried to bury the lenders with thousands of pages of pleadings, and break them into settling; they tried the fake trust fraudulent conveyance scam during trial; they tried a frivolous eviction suit; they obtained a seven million dollar baseless sanctions award against Steadfast, resulting in the disqualification and recusal of the 125th;  they filed a fake title abstract in a frivolous federal quiet title suit; they obtained a wrongful possession order from a J.P. Court; this list goes on.

[76] (b) A person who has signed a … mortgage or deed of trust creating a lien on property commits an offense if, with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property.

(c) a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed:
(1) to pay the part then due; and
(2) if the secured party had made demand, to deliver possession of the secured property to the secured party.

(d) An offense under Subsection (b) is a: (7) felony of the first degree if the value of the property destroyed, removed, concealed, encumbered, or otherwise harmed or reduced in value is $300,000 or more.

(e) A person who is a debtor under a security agreement, and who does not have a right to sell or dispose of the secured property or is required to account to the secured party for the proceeds of a permitted sale or disposition, commits an offense if the person sells or otherwise disposes of the secured property, or does not account to the secured party for the proceeds of a sale or other disposition as required, with intent to appropriate (as defined in Chapter 31) the proceeds or value of the secured property. A person is presumed to have intended to appropriate proceeds if the person does not deliver the proceeds to the secured party or account to the secured party for the proceeds before the 11th day after the day that the secured party makes a lawful demand for the proceeds or account.

An offense under this subsection is: (7) a felony of the first degree if the proceeds obtained from the sale or other disposition are money or goods having a value of $300,000 or more.

10/10/17     Choudhri and Parker secretly give ownership of the borrower, 2017 Yale Development, LLC and the GP, to attorney Lloyd Kelley, in supposed payment of the Choudhri legal fees from the divorce case. This extinguishes debt not only of Choudhri, but his mother Shanaz, and all of his entities which hid assets from the divorce. This transfer was an obvious loan default under the Loan Documents if it had not been kept secret; the borrower cannot convey away its entity ownership without lender consent. <u>Exhibits 11(a-e)</u>. However, Kelley, Choudhri, and Parker continue the fraud that Parker is the sole owner of 2017 Yale, all three perjuring themselves throughout all of the subsequent litigation. This secret conveyance is concealed from all parties and courts throughout discovery and trials, until the whistleblower, a Jetall employee, came forward and exposed the audiotapes proving this fraud in 2021. <u>Exhibits A, B(A-C)</u>. Kelley and Fraga formally join the secret criminal Enterprise and continue efforts to steal Steadfast's loan money and funds, still using Parker as their front-man.

<span style="color:red">Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, intent presumed.</span>

<span style="color:red">This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a). Aggravated Perjury - § 37.03 Third Degree Felony.[77]</span>

10/14/17     2017 Yale defaults, ceases communication with the Lenders and abandons the 829 Yale project in the face of first upcoming interest payment due on the First Lien. The property at 829 Yale has remained a dangerous unfinished blight on the

---

<span style="color:red">§ 32.49. Refusal to Execute Release of Fraudulent Lien or Claim
They failed to execute releases of their fraudulent liens and claims: Penal Code § 32.49. This Class A misdemeanor also carries presumed intent.</span>

<span style="color:red">(a) A person commits an offense if, with intent to defraud or harm another, the person:
(1) owns, holds, or is the beneficiary of a purported lien or claim asserted against real or personal property or an interest in real or personal property that is fraudulent, as described by Section 51.901(c), Government Code; and
(2) not later than the 21st day after the date of receipt of actual or written notice sent by either certified or registered mail, return receipt requested, to the person's last known address, or by telephonic document transfer to the recipient's current telecopier number, requesting the execution of a release of the fraudulent lien or claim, refuses to execute the release on the request of:
(A) the obligor or debtor; or (B) any person who owns any interest in the real or personal property described in the document or instrument that is the basis for the lien or claim.
(b) A person who fails to execute a release of the purported lien or claim within the period prescribed by Subsection (a)(2) is presumed to have had the intent to harm or defraud another.
(c) An offense under this section is a Class A misdemeanor.</span>

<span style="color:red">[77] Aggravated Perjury - § 37.03 Third Degree Felony.</span>

<span style="color:red">(a) A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning:
(1) he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath; or
(2) he makes a false unsworn declaration under Chapter 132, Civil Practice and Remedies Code
03 during or in connection with an official proceeding, and (2) is material.</span>

Houston skyline ever since, due to these bad actors.  Exhibits 10, 17, 35, 53, 55, compare 7 to 112 and 172.

120.   Terry Fisher, Ali Choudhri, Brad Parker fraudulently induced Steadfast into funding construction loan draws.  The loan only funds upon proof of construction, so they slow paid and ultimately robbed their construction vendors to show some progress in order to obtain more loan money.  They sent misleading emails regarding progress, and ultimately built a defective roof to get roofing funds.  When their first note payment was coming due, they stopped paying their vendors at all, abandoned the project, and stole the loan money, distributing it among themselves.  The vendors filed liens, and Steadfast was left with a dead project subject to the MOU scheme to extort the lenders.

| | |
|---|---|
| 11/01/17 | Steadfast having funded nearly six million dollars in loans, 2017 Yale's first payment on the Loan comes due on this date.  Exhibits 11(a-e).  Construction stalled, as Choudhri/Jetall have stolen all of the loan funds out of 2017 Yale's bank account, secretly given the company to Kelley, and not paid their contractors or the loan, *supra*. Kelley, Parker and Choudhri decide 2017 Yale will not pay the loan payment coming due. 2017 Yale defaults and abandons the property, leaving more unpaid contractors filing M&M liens against Steadfast's collateral.  Exhibits 15, 17, 19. |
| 11/14/17 | The Lenders Notice foreclosure again. |
| 12/04/17 | Kelley and Fraga purport to represent 829 Yale as lawyers, concealing their personal participation in the Enterprise and ownership of 2017 Yale.  They file a frivolous *ex parte* T.R.O. against the lenders to enjoin the foreclosure, and continue their efforts to defraud and extort the lenders out of their money and property at Yale.  (Cause No. 2017-80654).  They are already litigating against other lenders on other properties for Fisher pursuant to the MOU among the Yale Enterprise in other courts, including the 190th in 2016-64847. |

This misconduct violates 18 U.S.C. § 1341, 1343, 1346; 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.

| | |
|---|---|
| 12/13/17 | In newly discovered emails the Yale Enterprise never produced, it turns out that the Yale Enterprise was trying to swindle more loan money from third parties, trying to get CBRE to refer them additional lenders they could defraud. Exhibit 13a22. |

On December 13, 2017, Jetall, Parker and Choudhri secretly told CBRE that:

*"Mr. Kelley came into the project in the last quarter to add additional strength for the refinance....Mr. Kelley stepped into the project with the current debt in place with the plan of immediately refinancing. Mr. Kelley has financial strength and is committed to completing the project." Id.*

This email also serves as yet another newly discovered sources which undisputedly proves that the Yale Enterprise knew that its entire lawsuit against Steadfast in the 190th was frivolous.   The Enterprise fabricated all manner of legally untenable claims and defenses in that case, filed solely to obstruct the lenders' foreclosure, as they had secretly agreed to do with Fisher in the MOU (Exhibits 4, 4a21, 4a22). The Enterprise's fabricated claims and defenses against Steadfast's loan primarily relied on Parker's perjurious allegation that 'we had no idea that the lenders were not modifying the second lien and extending its maturity' and 'Steadfast refused to fund construction loan draws and stalled funding, which is the only reason we abandoned the project.'

Those arguments were proven fabricated, and were legally untenable even if they had been true, as ultimately proven at huge expense by Steadfast's Summary Judgment and Final Judgment in the 190th on 2017 Yale's loan default.  However, this concealed email proves that those fabricated claims and defenses were knowingly frivolous.

In response to a prior conversation about swindling more lenders, CBRE asked Choudhri and Parker by email why Steadfast was not willing to fund the loan anymore to complete construction, what the current loan terms were, when Mr. Kelley 'purchased' the property, was construction still active, and why did Fisher sell a partially complete project?  Exhibit 13a22.

Parker and Choudhri told CBRE by this email, sent shortly before their frivolous claims were filed against Steadfast in the 190th, that:

"*What we discovered was Fisher had no problems on this project except the loan was maturing. We got an extension on the noteholder holding the first lien and with the right to refinance [sic] without penalty [sic].... The lender is willing to continue funding the deal (there is enough term)....* Exhibit 13a22.

They also told CBRE that, rather than their delay in construction being caused by Steadfast refusing to fund the loan as they falsely alleged in the 190th, the reality was that:

"*Mr. Kelley is deciding to install upgraded floor to ceiling windows in the penthouse units.  Construction has been stalled for about 2 weeks while Mr. Kelley is focused on refinancing the project*"

121.    Parker's deposition, presented by Kelley and Fraga, was perjurious throughout,

*infra*, but it is worth pointing out here that Parker testified that:

> STEADFAST COUNSEL: "***Did you ever seek any money that Ali had control over, direct control over, for this project?***  MR. KELLEY: *Objection. Form.* FRAGA: *Objection -- join:* PARKER: *Not to my knowledge.*  ***Did Ali ever offer to put any funds into this project for any reason?***  MR. KELLEY: *Objection.· Form.*  MS. FRAGA: *Objection Form.*    PARKER: *Not to my knowledge."* Exhibit 35, at pg. 102.

> STEADFAST COUNSEL: ***Where did the money come from and who all is involved in this transaction?*** [PARKER]: *...outside of draws from the lender, that no meaningful funds were contributed to this. So I don't see how it's relevant... I can tell you that the only entities that were involved with this transaction was 2017 Yale Development and then myself, with Jetall Companies Inc. I'm an employee of Jetall Companies Inc.  Those are the only -- the only entities that would have anything remotely to do with this asset.*  Exhibit 35 at pg. 104-105.   (Kelley and Fraga immediately suborn this perjury and immediately attack another lawyer in the deposition).  *Id.*

> STEADFAST COUNSEL: ***So, again, what entities were active with the Secretary of State of any state that are under your control, Ali's control, Jetall's control, or 2017 Yale's control during the pendency of this lawsuit?***  MR. KELLEY: *You don't have to answer.* MS. FRAGA: *You don't have to answer that."  Id* at 108.  **STEADFAST COUNSEL:  *And there's no expectation that you -- your expectation is not to share a penny of that with Ali or anybody else?***  PARKER: *I don't know how many more times I can answer this.· I've said no consistently.· The answer is no. It's my entity."  Id* at 115.  *See also* Pg. 311.

01/31/18    The lenders cooperate with each other to commence foreclosure again.  D&A Alvarez acquires a collateral transfer of the defaulted First Lien from Steadfast, so he could control the property and process, protect his subordinate lien, and complete or sell the property himself, subject to Steadfast's superior first lien rights as recorded in the Collateral Transfer of Note and Lien.  Steadfast retained the original note and superior rights to foreclose on the collateral until paid in full. Exhibits 20(a-g), specifically 20e.

The Recorded Loan Documents clearly preserve and put the world on irrebuttable constructive notice of Steadfast's superior first lien and Deed of Trust; they put the world on notice that Steadfast retains the original 2017 Yale promissory note and all rights to enforce the note and foreclose on the Property at 829 Yale. *Id.*  They preclude 2017 Yale from transferring ownership of the entity, or of title to the

property to anyone, without paying Steadfast's lien; preclude Alvarez from releasing Steadfast's lien, clearly put the world on notice that Steadfast retains the original promissory note, and clearly preserves the right to foreclose on the collateral at 829 Yale if Steadfast is not paid. Exhibit 20e. All of the litigation by the Yale Enterprise was frivolous.[78]

02/01/18    Kelley and Fraga, posing as lawyers, use their fake 2017 Yale front man, Brad Parker, to obtain a frivolous *ex parte* T.R.O. and later injunction by 829 Yale and 2017 Yale, preventing the lenders' foreclosure. This frivolous litigation is in furtherance of the Enterprise's 09-23-16 MOU extortion scam. Exhibits 4, 4a22. They file their fraudulent lawsuit enjoining foreclosure in their existing 190th Paul & Partners lawsuit (2016-64847) to cause maximum confusion and complexity, and begin trying to split the lenders in negotiations (they tried to buy Steadfast's first lien separately, planning on wiping out Alvarez' second lien by fraudulent foreclosure on the first lien, typical of their scams. However, Steadfast refuses to betray Alvarez.). Exhibits 19, 160.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a). Aggravated Perjury - § 37.03 Third Degree Felony. Filing fraudulent affidavits and evidence in the state court is a violation of Penal Code §37.10 and a violation of Texas Government Code Sec. 51.901, and E-filing and service of fraudulent documents by email violates §§ 1341, 1343, etc.

122.    Choudhri, Kelley and Fraga conceal their secret ownership of the borrower, 2017 Yale, and send fraudulent letters by email, mail, and make interstate phone calls to try to bribe Steadfast Parties to sell out Alvarez or each other, in furtherance of the Enterprise' efforts to steal Steadfast's (and Alvarez' money and title). Exhibit 19. The Steadfast Parties decline to participate in this scam and refuse to sell their first lien without also selling the Alvarez second.

This misconduct using interstate commerce via email and mail also violates 18 U.S.C. § §1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, as many Steadfast Parties qualify under Section 2326-7.

---

[78] The Collateral Transfer of Note and Lien executed by D&A Alvarez Group, LLC in favor of the Steadfast Parties, dated January 31, 2018 and recorded at RP-2018-65405, remained valid, in full force and effect until foreclosure by Steadfast, and all rights thereunder are enforceable by the Lenders therein, and further, such validity and priority were already adjudicated in the 190th. Exhibit 92.

The Steadfast Parties remained holders of the original Promissory Notes associated with said Deed of Trust, and Collateral Transfer of Note and Lien (Exhibits 11(a-e). and are now sole record title holders in the Property free and clear of all liens and claims. *Id. See also* Exhibits 89, 97.

03/12/18    Confused, Alvarez defaults on his collateral obligation to Steadfast and fails to handle the foreclosure or litigation diligently on behalf of both his own interests and Steadfast's. Kelley, Fraga, Parker, and Choudhri trick Alvarez into secretly turning on Steadfast, having failed to get Steadfast to turn on Alvarez. Discovery commences in 2016-64847, the Enterprise concealing all relevant facts and documents, including the fact that Kelley, Fraga, and Choudhri personally own and control the defaulting debtor for their own schemes.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Inducing Alvarez into signing fraudulent documents – § 32.46 First Degree Felony.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

§§ 32.33, 1341, 1343 – also TPC § 33.33 intent presumed; § 32.49 intent presumed

06/05/18    Kelley deposes Alvarez and obtains a private meeting with Alvarez alone. The Yale Enterprise solidifies its plan to dupe Alvarez to assisting them in stealing title to the collateral, and convince Alvarez to spy on privileged communications among Steadfast and D&A Alvarez attorneys on behalf of the Yale Enterprise.

07/14/18    Kelley and Fraga secretly dupe Alvarez into hiring Kelley and Fraga as his new lawyers, without disclosing that Choudhri and/or Kelley and Fraga secretly own 2017 Yale, his borrower, and control Fisher and 829 Yale, Alvarez' debtors and the record owner of Alvarez' and Steadfast's collateral.

Kelley and Fraga duped Alvarez into releasing his second lien for no consideration at all.[79]

Kelley and Fraga dupe Alvarez into Releasing all of his claims against Fraga, Kelley, his lawyers; Fisher, 829 Yale (his defaulted 2nd lien borrower and guarantor, the developer who threatened tortiously "sink the project" (with the city, etc.) and who was holding the construction documents hostage)[80]; Jetall, Choudhri, 2017 Yale all (his defaulted borrowers, and all of the tortfeasors who wronged him). Exhibit 107.

---

[79] Kelley found that very funny while presenting Parker for his perjurious deposition:
STEADFAST COUNSEL·· David -- or D&A Alvarez released that deed of trust? **PARKER:  Yeah. They filed a release --**MR. SAVOIE:· Is something funny, Mr. Kelley? **MR. KELLEY:· Yeah, it is.** Exhibit 35, pg. 145. Kelley thought the secret MOU and Parker lying about its terms and whether it was executed was funny too. *Id* at pg. 300-301.

[80] [STEADFAST COUNSEL] ***"Do you think anybody could have finished the project without you?*** FISHER: *I'll sink the project….why would you do that? Angst, I think is the word."* Exhibit 185, at pg. 127.

Kelley and Fraga defraud Alvarez into quitclaiming (to the defaulted borrower, 2017 Yale) all of his right, title and interest in the 829 Yale property. They duped Alvarez into recording a Release of Alvarez' second Lien against the property.

They tricked Alvarez into joining their frivolous suit against Steadfast and Alvarez' former attorney and loan servicer in their Fourth or Fifth Amended Petition, each containing hundreds of pages of false allegations, hopelessly confusing the Court.

This trick puts Alvarez into defaulting on his New D&A Loan Documents with Steadfast, eventually resulting in D&A Alvarez owing a judgment to Steadfast for over eight million dollars. These actions were not disclosed to Steadfast, who had a contractual relationship with Alvarez. The Yale Enterprise spoliates or conceals all key evidence from the Courts despite Rule 11 agreement, and motions to compel by Steadfast and other parties.

Ultimately, Steadfast was able to prove the obvious using only its own evidence, and Fraga and Kelley lost all of the frivolous claims they duped Alvarez into filing, as well as all of their own frivolous claims, 2017 Yale and D&A Alvarez owing over eight million dollars to Steadfast.   Exhibits 18, 19, 29, 44, 45, 46, 101, G; 174.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Inducing Alvarez into signing fraudulent documents – § 32.46 First Degree Felony.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

§§ 32.33, 1341, 1343 – also TPC § 32.33 intent presumed; § 32.49 intent presumed. (All of these tricks were performed using email).

Parker testified that Kelley, Choudhri, Alvarez and Parker were all present. Exhibit 35 at pg. 314-319.

10/21/18     Steadfast hires new counsel, who determines that the 190th case was a simple loan default, and files for Summary Judgment. The Yale Criminal Conspiracy uses tens of thousands of pages of fraudulent filings to confuse the Court and cause millions of dollars of useless legal fees, before the Court finally comprehends that this was really a simple loan default case and grants summary judgments.

**Another Secret Fraudulent Transfer by the Enterprise calculated to steal the property:**

12/20/18     During the litigation, 2017 Yale also failing to have paid its property taxes, Harris County sues 2017 Yale asserting a tax lien. The Yale Enterprise dupes Alvarez into another scam. Fraga secretly incorporates and is president of "Tax Relief, Inc." a

sham Wyoming company, intending to pull a tax lien scam the Jetall group has apparently pulled before. Fraga declined to authorize her sham company to do business in Texas, to conceal its identity and confuse it with the real "Tax Relief, Inc.," a legitimate Texas Corporation which knew nothing about this. Parker, Choudhri, Kelley and Fraga dupe Alvarez into giving Tax Relief the two hundred plus thousand dollars required to pay the taxes. However, instead of 2017 Yale paying the taxes directly and legitimately as required, and <u>extinguishing the tax lien</u>, they had their fake Tax Relief Company pay the lien, and then had their fraudulent front man for 2017 Yale, Brad Parker, assign Harris County's first priority tax lien against the property to the sham company. Such an assigned tax lien, but for that fraud, would have held a superior lien to Steadfast. Their intent was to use the tax lien's priority to secretly foreclose on Steadfast's lien and steal the property regardless of the litigation. Steadfast discovered the fraudulent scheme, and ultimately the sham lien was released. <u>Exhibits 81-83, G</u>. Parker Kelley and Fraga perjured themselves about this transaction, *infra*.

§§ 32.33, 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a). – also, TPC § 32.33 intent presumed; § 32.49 intent presumed.

This conduct also violates Wyoming Statutes 6-5-308, Penalty for Filing False Document, which is a felony punishable by two years in prison, as acknowledged by Fraga's signature on <u>Exhibit 83</u>.

01/03/19    Judge Miller is sworn in in the 190th and is thoroughly confused by the Criminal Enterprise, refusing Steadfast's summary judgment on the Loan Documents, refusing to grant procedural relief requested by Steadfast, ultimately requiring mandamus, and allowing the Enterprise to cause millions of dollars of depositions and discovery, all calculated solely by the Enterprise to confuse the issues, intimidate or trick the Steadfast lenders into turning on each other, and confuse the Court. The 190th ultimately refuses to allow joinder of any tort or other of Steadfast's counterclaims or third-party claims against Kelley, Choudhri, and his cohorts, forcing Steadfast to file another suit and move to consolidate in both Courts. <u>Exhibit 160</u>.

Fraga and Kelley present Parker and Choudhri to perjure themselves in depositions, claiming among many other things that Parker owns 2017 Yale,  pretending it was a legitimate company and borrower, and saying no one else had anything to do with the collateral. <u>Exhibits 35, 35c, 102, 120</u>.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a). Aggravated Perjury - § 37.03 Third Degree Felony.

01/18/19    The Enterprise records their fraudulent tax lien assignment, hoping to use its priority for the straw man company to secretly foreclose on Steadfast and Alvarez' interest. <u>Exhibits 81-83</u>.

§§ 32.33, 1341, 1343 – also TPC § 32.33 intent presumed; § 32.49 intent presumed.

123.   It is worth noting that Kelley and Fraga presented Parker to perjure himself regarding this transaction as well, Mr. Parker testifying that 2017 Yale obtained a loan from D&A Alvarez "satisfied all tax obligations…." Exhibit 35 at Pg. 93-04.

01/31/19 -   Kelley and Fraga present Fisher, Choudhri and Parker for deposition to perjure
02/12/19     themselves.  They testify that 2017 Yale was a legitimate company and that Brad
             Parker owned both 2017 Yale and 2017 Yale GP, with no control by anyone else.
             They fraudulently concealed the Enterprise, and that the entity was formed purely
             to defraud the Courts, Choudhri's wife in her divorce, and Steadfast.

   "How is 2017 Yale affiliated with Jetall?
   **I'm affiliated with Jetall, and I own the company.** Exhibit 35 at Pg. 35-6.

   "Who is Yale development GP llc?
   **It's an affiliated company.  2017 Yale development has – record owner…one is
   tied to the other.  I own both entities.** Id at Pg. 234.

   Are there any other members of either LLC?
   **No. I'm -- I'm the sole member of both.**      Id.

   "Where did the money come from and who all is involved in this transaction?
   **[PARKER]: …outside of draws from the lender, that no meaningful funds were
   contributed to this. So I don't see how it's relevant… I can tell you that the only
   entities that were involved with this transaction was 2017 Yale Development and
   then myself, with Jetall Companies Inc. I'm an employee of Jetall Companies
   Inc.  Those are the only -- the only entities that would have anything remotely
   to do with this asset.** Exhibit 35 at pg. 104-105.   (Kelley and Fraga immediately
   suborn this perjury and immediately attack another lawyer in the deposition). Id.

   STEADFAST COUNSEL: So, again, what entities were active with the Secretary
   of State of any state that are under your control, Ali's control, Jetall's control, or
   2017 Yale's control during the pendency of this lawsuit? **MR. KELLEY: You
   don't have to answer. MS. FRAGA: You don't have to answer that.**" Id at 108.

   STEADFAST COUNSEL: And there's no expectation that you -- your expectation
   is not to share a penny of that with Ali or anybody else? **PARKER: I don't know
   how many more times I can answer this. I've said no consistently. The answer
   is no. It's my entity.**" Id at 115.

124.    Kelley and Fraga objected for Parker immediately before and after this testimony, at pgs. 232 and 235, and throughout the case, without clarification.

125.    Parker perjured himself because he was bribed by Kelley and Choudhri, who promised to give Parker some of the membership interest.  Compare their conversation on the whistleblower audiotapes, discovered by Steadfast Parties in July of 2021.  Exhibits B(A-C):

| | |
|---|---|
| *Ali Choudhri:* | ***"you knew because of my divorce, who owned 2017 Yale from the outset…  24:09…. I had Brad as my proxy in front."*** *B(A) 24:24.* |
| *Lloyd Kelley:* | *"I OWN 2017 Yale!  B(A) 5:13.* |
| *Ali Choudhri:* | ***"why did you have Brad testify that he owns and controls?"*** *B(A) 22:24.* |
| *Kelley:*<br>*Kelley:* | *"I don't give a fuck what Brad testified to!"  B(A) 22:28.*<br>*"Brad was a front guy" B(A) 31:03.* |
| *Choudhri:* | ***"You knew that all along"*** *B(A) 31.04.*  ***"Why did you let brad testify the next day?"*** *B(A) 29:57.* |
| *Kelley:* | *"He just testified that he was the authorized rep, that's all he testified to."  B(A) 5:40. "He didn't testify he owns it, he said I'm an authorized agent"* |
| *Choudhri:* | ***"That's not what he said, Kelley, you told him to say that he owns it and he manages it, that's what you told…"*** *B(A) 31:03.* |
| *Kelley:* | <span style="color:red">*"He never said the word owns"*</span> |
| *Choudhri:* | ***"Yes he did, you told him to say that he owns it and he manages it. He said he's the only … You told him to say that. Lloyd, I'm telling you, you said that"*** Exhibit B(A) 31:14. |
| *Choudhri:* | ***"you wanted Brad to testify that to be representative for 2017, you did not want 2017 Yale to show…."*** *B(A) 5:25.* |

| Kelley: | *"Brad didn't want to show up, and you talked about giving Brad 5% or 10% which I thought was a great idea, so he's getting his 5 or 10%, so he stays in. I was told he wanted to do that." B(A) 3:41.* |
|---|---|
| Kelley: | *"... I told you this is no good if Brad's out of the picture. No good. if Brad doesn't have ownership, these claims are worthless.* |
| **Choudhri:** | **"brad never had ownership"** *B(C) 0:19.* |
| Fraga: | *"what does that do with the tax lien because brad transferred it and the secretary of state still shows brad parker on it?"* |

126.    Choudhri also perjured himself in Kelley and Fraga's presence as counsel:

> ***Q. You're affiliated with 2017 --*** *MS. FRAGA: Objection. Form.* **- Yale**
> *A. No.*
> Exhibit 120. Pg. 209, ln 5-8.
>
> **(STEADFAST COUNEL:) Do you have any right to control anyone that's associated with 2017 Yale Development LLC?**
> *A. No.   MR. KELLEY: Objection Form. MS. FRAGA: Objection Form.*
> Exhibit 120, Pg. 210, Ln 3-7,9.

**The Enterprise uses over two hundred hours of deposition time for the sole purpose of harassing, abusing, intimidating, and attempting to turncoat the Steadfast Lenders against each other as they did Alvarez:**

Over Steadfast's objections and requests for protective orders, the Yale Enterprise forced dozens of out of state Steadfast lenders to appear in Houston for abusive and harassing depositions. During the depositions, the Yale Enterprise was incredibly abusive. Their worst abuses were when they thought the record wasn't running. For example, read the first 25 pages of Sal Ballesteros' deposition – Steadfast had to call the police on Mr. Kelley. Exhibit 186. He thought that wasn't on the record, but it was that time. It was like this when the record was not on. Sal is a great man, a successful small businessman, but not a wealthy man. He loaned his money because we had a well secured construction loan, but for the fraud by the Yale Enterprise. But he is English second language and they attempted to abuse that and call Sal's and Steadfast's attorney racist. (The Yale Enterprise has pulled other false race-baiting tricks as well, for instance hiring or bribing or influencing "Quannell X" to call other opposing counsel 'racists' in other cases). The real reason for all of this is that they were never trying to learn information in these depositions. They knew their entire case was a fraud. They were trying to trick, intimidate, or harass the lenders into giving up, bribing them, extorting them, or making disastrous decisions to flip sides like Alvarez did.

**The Enterprise obtains improper *ex parte* relief from a Harris County Judge:**

06/04/19    During heated summary judgment and discovery practice in the 190th, the Steadfast Parties are forced to file what should be their recently discovered counter and third-party claims as a separate suit. Despite their objections and Motion to Consolidate, this case was sent to the 125th, (beginning with 2019-23950), and consolidation was denied. Judge Carter in the 125th ignored undisputed evidence, law, procedure, logic, equity, and the rules, and simply arbitrarily grants roughly seven million dollars in baseless sanctions against the Steadfast Parties three weeks after the Petition was filed, on June 25, 2019.

The 125th reviewed and took express judicial notice of Steadfast's conclusive, irrebuttable, clear and convincing, and uncontroverted evidence and pleadings, filed with Steadfast's Petition, Motion to Consolidate, and other pleadings from the start of the case, proving the 2017 Yale conspirator's fraudulent transfer and stolen loan funds as a matter of law. The file included the fraudulent transfer deed and the Deed of Trust making it illegal. The file included 2017 Yale's bank records proving they stole the loan money, along with other conclusive evidence proving Steadfast's case. The 125th nonetheless made an absolute mockery of procedural and substantive law, and arbitrarily awarded the 2017 Yale conspirators a seven-million-dollar final judgment against the Steadfast Parties, on obviously frivolous and facially defective T.C.P.A. motions, without any supporting evidence, merely three weeks into that case, in an *ex parte* ruling.

The 125th informed Steadfast's Counsel that no hearing was going forward, and then held an *ex parte* hearing with the 2017 Yale conspirators anyway; the 125th was proven to have engaged in other *ex parte* communications with the 2017 Yale conspirators and counsel as well; the District Clerk's website was later proven to have been altered to allow otherwise untimely sanctions against Steadfast.

The 125th was later disqualified after a lengthy trial supported by uncontroverted evidence before the Honorable Judge Susan Brown for egregious misconduct, and its orders and judgments voided. Due to this misconduct and vexatious litigation by Kelley and his cohorts, two more related cause numbers exist in the 125th as well (2019-51432 and 2019-59191). These cases all remain stalled in the 190th pending the Yale Conspirator's frivolous appeal of Judge Brown's Order Disqualifying Judge Carter. Exhibits 90, 91, 160. The void Orders of Judge Carter leave all of these torts unadjudicated, though now proven by judicial admissions herein and ready for summary disposition and final justice.

The District Clerk's website was also altered after the fact to accommodate prejudicial rulings against the Steadfast parties, and other matters merit investigation into felonious conduct under Penal Code §§ 39.02, 39.03; 18 U.S.C. § 201.

06/21/19    Steadfast is forced to mandamus the 190th on eighteen grounds. Mandamus was denied but 190th ruled on some procedural motions thereafter, later admitting on the record (after the Enterprise also tried to recuse, disqualify, and mandamus the 190th as well, without any valid basis) that it had essentially granted nearly all

procedural relief requested by the Yale Criminal Conspiracy during that case. Exhibit 181.

07/09/19    All contractual note default claims and defenses, and the Yale Enterprise's frivolous tort and other claims and defenses against Steadfast are resolved in the 190th by Summary Judgment in Steadfast's favor, even though no one yet knew Choudhri, Kelley and Fraga secretly owned 2017 Yale or that they were conspiring another fraudulent title transfer. The Court set trial on damages for July 23, 2019. Exhibit 160.

The Criminal Enterprise begins planning the fake trust fraudulent transfer scam, and to that end, circulates a prior title commitment they had secretly obtained from WFG in 2018. Exhibit 154a22 7-9 eml (the Enterprise always planned insurance fraud as a backup to lender fraud – See Exhibits B(a-c), supra). 2017 Yale Development LLC had secretly acquired a commitment proving yet again that the Enterprise knew that Steadfast's CTNL and Loan Documents constituted a prior superior lien. Exhibit 154a22, at page 6, item 6. This commitment is yet more evidence that the Enterprise knew that all of their federal and eviction pleadings were frivolous. The Enterprise concealed this email and commitment in discovery.

### Yet another sham company and fraudulent transfer calculated to steal the property:

07/22/19    Finally staring foreclosure and a judgment against 2017 Yale in the face, Kelley begins secretly arguing with Choudhri over their "deal" to let Kelley steal the property at 829 Yale in settlement of their prior fee obligation for their fraud on Choudhri's divorce Court. (Kelley and Choudhri, both being crooks, have sued each other for fraud on occasion as well. See Exhibits B(A-C) and 103. Kelley concocts a fraudulent scheme to gain sole control over the property using 2017 Yale and the fact that the conveyance to Lloyd still remained secret.

Kelley bribes Nicholas Fugedi, a Michigan acquaintance, into pretending to be a trustee. Kelley has other friends, Elberger, Herman and others, create trust documents for his fake trust, and create a sham beneficiary entity. Exhibits 59, G, 86(a-v). They create this fake trust and fake transaction documents, circulating all by interstate emails and mail, and recording fraudulent releases and deeds in the Harris County Real Property records by U.S. mail and fake documents with the Secretary of State. Id.

Kelley tries to get Alvarez to execute another fraudulent lien release, this time purporting to release Steadfast's first lien, even though such a release is clearly precluded by Steadfast's Loan Documents. Alvarez apparently won't do it unless Kelley pays him, so Kelley arranges to pay Alvarez $251,000 to get him to sign the fraudulent lien release. The Criminal Enterprise lied to the Federal and state Courts, claiming that Fugedi, who had no assets, paid the funds to Alvarez for the bribe to get the fraudulent lien release. However, Kelley later admits that 2017 Yale, his secret company, which also had no assets, is the one that funded his money to Alvarez in the bribe to induce the fraudulent release. (See Designation of Responsible Third Parties in the 190th, filed February 25, 2022). Either way, that

was Enterprise money, stolen from Steadfast, and invested into the Enterprise to continue its pattern of fraud.

Kelley has Parker, the fake owner of 2017 Yale, execute a fraudulent deed to Kelley's fake Trust, on a defective deed form which is void for lack of a grantee. (Kelley's fake deed should have named his fake trustee, Fugedi, instead of just the fake trust itself as the grantee under Texas law).

Kelley and Choudhri use their shady title agency, Transact Title, and their lawyers, to obtain a title insurance policy based on the fraudulent Alvarez release.

The entire Criminal Enterprise knows that Alvarez can't release Steadfast's liens; that Steadfast had a judgment pending; that Kelley owned both sides of the fake transaction, and that the entire sham was solely to perpetrate a fraud.

Kelley and Transact Title secretly record the fake deed to the trust on July 22, 2019. 2017 Yale pays nothing. The Carb Pura Vida trust paid nothing. Neither has any other assets. They are both just a sham for Kelley and Choudhri, with Fraga and Parker getting promised a cut as well to participate in the fraud. Exhibits 86(a-v), 35, 95, 102, 109, 110, G.

After losing everything, Alvarez later finally realizes he will never see a dime from the Criminal Enterprise, retains real lawyers in 2020, and ceases cooperating with Kelley and Choudhri's frauds. Exhibits B(A-C); G.

127. The fraudulent transfer Deed recorded on July 23, 2019, at RP-2019-317072 of the Official Public Records of Harris County, Exhibit 68, and the fraudulent Release of Lien filed by D&A Alvarez Group, LLC, fraudulently purporting to release a lien held by Steadfast Defendants, recorded at RP-2019-317071 of the Official Public Records of Harris County, are facially void, in breach of contract, and are fraudulent transfers and lien documents, constituting numerous felonies. Exhibit 94, pg. 402.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, at least 5 counts, intent presumed.

Inducing Alvarez into signing fraudulent documents – § 32.46 First Degree Felony.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

§§ 32.33, 1341, 1343 – also TPC § 32.33 intent presumed; §32.49 intent presumed.

2017 Yale lost the civil suit, and to avoid judgment, Kelley, still its secret owner, formed a fake Michigan trust, bribed a Michigan friend to be a sham trustee, bribed and tricked Alvarez into executing and recording a fraudulent lien release, wired Alvarez some funds for the sham release (about what they had stolen from him for the tax lien scam) and 2017 Yale again illegally and fraudulently transferred another sham deed to the collateral from 2017 Yale to the fake trust. Kelley had the trust make out a fake promissory note to Alvarez to supposedly get Alvarez to participate.  They also defrauded First American Title Insurance Company using the fake lien release, using their buddies at a local crooked title agent.   The bribes to Fugedi and Alvarez were made by interstate wire and email.

07/24/19      During the damages trial, Steadfast searched the real property records discovering the secret fraudulent transfer of the void deed. The Court takes Parker under oath who admits the fraudulent transfer. Parker, Fraga, Kelley all lie to the Court and pretend that Parker owns 2017 Yale and that the trust is a real bona fide purchaser. Court continues with the jury on the contract loan default issues presently before the Court.  Exhibit 102, pg. 78-85.

Making False Statements to Obtain Property or Credit - § 32.32 First Degree Felony.

Aggravated Perjury - § 37.03 Third Degree Felony.

128.    Kelley, though he personally created the entire sham just two days before, lied to

Steadfast and the Trial Court and said:

> "*it's called Caribbean or Carribe something trust… Carribe carribbita trust holds it for a company who's owned by a gentleman named Robert Elbert who is in Costa Rica.*"  Exhibit 102 at pg.80, 84.   After telling the 190th that: "*I did not handle the transaction,*" Exhibit 102 *at* pg.80; Kelley lied again when the 190th asked him: "*Were you part of forming this entity?*  Mr. Kelley:  *No.*" The Court asked "*are any of you part of that entity*?  Kelley and Fraga answered: "*No sir.*"  *Id* at pg.79.   The Court again asked Kelley if he was the lawyer, and Kelley misled the Court again: *And are you the lawyer, Mr. Kelley?   Mr. Kelley: "I'm the lawyer for David Alvarez,*" omitting the truth. *Id* at 83.   Compare Exhibits 86(a-v), B(a-c), G, where Kelley deliberately drafted all the documents, bribed all the players, and concocted the whole 'brilliant idea', *supra*, solely to defraud Steadfast.

07/26/19      190th Jury enters verdict in favor of Steadfast. Kelley's cohorts engage in extended vexatious and fraudulent post-judgment litigation in the 190th and the 125th to avoid justice and delay the judgment, including mandamusing Judge Miller and filing Motions to Recuse and Disqualify Judge Miller based upon false allegations of unethical conduct.  Exhibit 160.  The Ancillary Court enjoins all the criminals from further action against the collateral and orders production of documents, which Order the criminals all completely ignore.  Exhibits 98, compare 105.  Kelley goes to the property at 829 Yale and gets into an altercation threatening Steadfast's

security guards, requiring law enforcement intervention, and illegally placing his own lock on the property in violation of the T.R.O.  *See* <u>Exhibit 105.</u>

Civil and Criminal contempt, trespass.

08/01/19    Kelley pays Hill and other lawyers to have his fake trustee, Fugedi, file a frivolous federal quiet title action against Steadfast in the Galveston District Court (3-19-cv-00249), seeking to enjoin Steadfast's foreclosure again.  Fraga frivolously sues 2017 Yale's title insurance company they defrauded in Harris County District Court.  <u>Exhibit 93.</u>  Fugedi, Kelley's fake trustee, perjures himself in an affidavit electronically filed from Michigan in the E-Filing system of the Federal Court. <u>Exhibit 121.</u>

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, intent presumed.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.

Judge Carter continues a pattern of abuse in favor of the Conspirators in various cause numbers in the 125th, resulting in mandamus and disqualification.

10/22/19    After numerous vexatious tactics, hearings, trials on recusal, disqualification, T.C.P.A motions, contempt hearings dodged by false allegations of illness and other tactics, Judge Hill denies recusal or disqualification of Judge Miller, the Courts of Appeals deny their Mandamus of Judge Miller, and Judge Miller enters Final Judgment in the 190th on the contractual liability of the borrowers. <u>Exhibit 92</u>.  2017 Yale appeals frivolously, still concealing the fact that Choudhri, Fraga, and Kelley secretly own 2017 Yale. They present fraudulent supersedeas bond affidavits, obstructing Steadfast's remedies and recovery for years more.  <u>Exhibit 110</u>.  The 190th refuses Steadfast's requested relief to protect the property.

Hindering Secured Creditors Penal Code § 33.33 – First Degree Felony, intent presumed.

This misconduct violates 18 U.S.C. §§ 1341, 1343, 1346; §§ 2326-7 adds another 10 years and full mandatory restitution, and 18 U.S.C. § 1951(a).  Aggravated Perjury - § 37.03 Third Degree Felony.

11/04/19    Conspirators file a frivolous quiet title case in Galveston Federal Court seeking to enjoin Steadfast's foreclosure again, based upon the fraudulent transaction with the fake trust, perjurious affidavits, and fraudulent evidence.  After extensive hearing, the Honorable Jeffrey Brown declines to enjoin foreclosure.

Penal Code § 37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.

11/06/19    Steadfast properly forecloses on the collateral, properly sending and recording all notices and its Substitute Trustee's Deed.   <u>Exhibit 97</u>.  None of the frauds make

any offer for the Property, neither Choudhri, Parker, Kelley, Fisher, 2017 Yale, 829 Yale, or any of their conspirators ever having paid or offered a cent for the property, or to repay the loans.  However, the Yale Conspirator's fraudulent pleadings, evidence, and real property records, as well as spies posing as potential buyers, prevent Steadfast from being able to sell the collateral, and cause additional damages.

| | |
|---|---|
| 11/07/19 | After losing the T.R.O. hearing, the Enterprise seeks out Judge Carter's brother's Justice of the Peace Court to files a frivolous eviction lawsuit (191100448845) on behalf of Kelley's fake trustee, Fugedi, against Steadfast's security guard company, seeking to effectively evict Steadfast, obstruct sale of the property, and gain access. Carter ignores the law, evidence, rules, equity, and obvious lack of jurisdiction, and gives the fake trustee a judgment for eviction after a trial. They also record a frivolous Lis Pendens against the Property. <u>Exhibit 96</u>.  Steadfast is forced to post bond and appeal to the County Court.  The now resigned and disgraced Judge Barnstone in the County Court also ignores the law, evidence, equity, logic, rules and obvious lack of jurisdiction or standing and attempts to sanction Steadfast for the condition of the property.  After mandamuses, appeals, and unnecessary trials and hearings, Barnstone is ultimately forced to resign from the bench for misconduct.[81]  The First Court of Appeals ultimately affirms Steadfast's appeals of the misconduct by these courts.  <u>Exhibit 180</u>. |

<span style="color:red">Penal Code § 37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.</span>

| | |
|---|---|
| | Steadfast files clearly valid motions to dismiss and for summary judgment in the Enterprise's frivolous federal quiet title and state eviction cases, to no immediate avail due to the Enterprise's fraudulent documents, perjury, and apparent undue influence on certain judges (Carter, Barnstone). |
| 12/18/19 | Judge Carter issues the absurd judgment evicting Steadfast's security company and gives the Enterprise a baseless writ of possession.  Steadfast appeals to County Court, landing in soon-to-be-forced-to-resign-in-disgrace Judge Barnstone's Court. |
| 01/09/2020 | Conspirators appeal 190th judgment on fraudulent pauper's supersedeas bonds. <u>Exhibit 110</u>. |

<span style="color:red">Penal Code § 37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.</span>

| | |
|---|---|
| 01/13/20 | <u>Exhibit B(b)</u> is recorded, proving the Yale Enterprise federal case was frivolous, and their fraud was the only thing that obstructed Steadfast's proper foreclosure; proving that the title companies were involved in the transfer; the fake trust scam started the minute they lost the summary judgments in the 190th; planning how to |

---

[81] https://lawsintexas.com/texas-judge-george-barnstone-resigns-rather-than-face-any-discipline/

bribe Parker to give perjured testimony in support of supersedeas bond for that frivolous appeal; admission that the Fugedi transfer was really the Yale Enterprise's fake trust plan to steal the property and set up frivolous claims; admission that Choudhri expected to get 829 Yale back or be given the trust ownership back, after the Yale Enterprise's frivolous litigation stole it from Steadfast; sharing the profits from the transaction among Choudhri, Fraga, Parker, Kelley, Mansoor; implication that the Yale Enterprise rigged the wrongful Judge Carter TCPA judgment and intended to use that fraudulent judgment to pay the attorneys; admit that Stephanie Alvarez, Shanaz Choudhri and all of Choudhri's companies were using the scams to avoid their debts; proof that Kelley was originally promised a condo at Yale, and instructed Choudhri not to settle the 2017 Yale case with Steadfast, and that the entire 190th case was frivolous, because Parker and 2017 Yale didn't extend both notes; admit that the Criminal Enterprise's relationship with Judge Brittany Morris made it impossible to lose in her Court; proof that Choudhri promised Pierce, Fraga and other attorneys would be paid out of the Yale Enterprise, or by assignment of 2017 Yale; discussion of various judicial ethics abuses. *See* Highlighted Certified Condensed Transcript Exhibit B(b), and audiotape. These tapes are probably best reviewed in this format, reviewing B(a) first, B(b) second, and B(c) third.

01/27/20    Kelley's lawyers for his fake trust bribe landman Don Huebner into creating a fake title abstract, and the attorneys file the fake abstract in the Federal Court to try to claim Alvarez released Steadfast's liens and the fake trust should be a bona fide purchaser. They also file the fake abstract in the Barnstone's frivolous County Court eviction case. Exhibits 94, 115.

These Parties filed fraudulent and fraudulently induced instruments in the Harris County real property records, and U.S. Federal Court for the Southern District of Texas, Galveston Division. Government Code Sec. 51.901 requires notice to the County or District Attorney once we notify them. Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10. The false title abstract and affidavit in Federal Court; the fraudulent deeds; the fraudulently induced lien releases, and the fraudulent corrective instruments are all violations. Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.

02/07/20    The Honorable Susan Brown concludes a lengthy trial and properly disqualifies Judge Carter of the 125th, voiding those orders. Exhibits 90, 91.

Steadfast demands retraction of fraudulent real property documents under Penal Code § 32.49. Exhibit 100. None of the Yale Enterprise respond, except Alvarez, who takes control back of Tax Relief, Inc., and releases that fraudulent lien as he became a whistleblower and renounced the fraud. As such each of these parties is guilty of an automatic Class A misdemeanor.

Failing to release fraudulent instruments – § 32.49, Class A misdemeanor, at least 3 counts, intent is presumed. Even this crime alone supports RICO relief, as it is punishable by one year in prison.

| | |
|---|---|
| 02/10/20 | Conspirators file numerous frivolous mandamus actions of Judge Brown's disqualification of Carter. |
| 02/14/20 | Steadfast mails notice of demand under Penal Code § 32.49 to the Yale Enterprise, who ignores it, cementing their felony under § 32.49 without need for further evidence proving intent, *supra*. |

Penal Code § 32.49, intent presumed.

| | |
|---|---|
| 02/21/20 | Exhibit B(c) recorded by Ali. Fraga, Parker, Choudhri, Kelley; discussing perjury, *ex parte* communications with judges, the goal of the Yale Enterprise to defeat Steadfast and steal the property; proof that Kelley was paying for frivolous claims and appeals; proof that the sole purpose of the fake Fugedi trust was to denude Steadfast's judgment and obstruct foreclosure; admit federal case was frivolous; admit Mansoor and the Transact Title Defendants were in on the fake trust scam; parties plotting the scope of Parker's future perjury. *See* Highlighted Certified Condensed Transcript <u>Exhibit B(c)</u>, and audiotape. |
| 04/06/20 | Conspirators file frivolous appeal of the Disqualification of Carter. |

Penal Code §37.10, Aggravated Perjury §§ 37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512. All fraudulent instruments were circulated by interstate email in violation of § 1343.

| | |
|---|---|
| 04/14/20 | <u>Exhibit B(a)</u> is recorded, wherein the Yale Criminal Conspiracy confirmed their 2017 Yale assignment to Kelley, to cancel debts of the Choudhri, Shanaz and companies through the Yale Enterprise fraud; arguing over whether they cancelled the fraudulent transactions between them for the debt or not (now that their victory over Steadfast was slipping); pressing Parker to perjure himself to try to steal Yale, and bribed him with "5 or 10%"; proof that Choudhri expected to get the Yale property back after the fraudulent trust transfer and frivolous litigation; Kelley explaining that he had control of Yale and the fake Trust instead, pushing Choudhri for cash; Kelley concealing his ownership from the Court and Parker's perjury; offering a percentage of the Yale Enterprise to lawyers to participate in the fraud; acknowledging that Kelley and Choudhri still have the power to "undo the trust transfer" and control 2017 Yale and Fugedi's trust; proof Choudhri caused 2017 Yale to abandon the loan and construction, and told workers to stop, and that the entire 190th lawsuit was frivolous, as Steadfast's supposed "failure to renew the second lien' was 'not the problem.'" Admits Kelley gave Fraga a percentage of the Yale Enterprise to work on the frivolous litigation; proof that Kelley and the others agree that both Choudhri and Brad are still getting 5 or 10% of the Yale Enterprise; Kelley offers to sell 2017 Yale back to Choudhri for cash; proof that they both instructed Parker to perjure himself and claim sole ownership of 2017 Yale in all the Courts, and proof that without that fraud, the entire Yale Enterprise was worthless. *See* Highlighted Certified Condensed Transcript <u>Exhibit B(a)</u>, and audiotape. |
| 06/30/20 | Conspirators file another frivolous mandamus of Judge Brown. |

| 12/16/20 | Soon-to-be-former Judge Barnstone holds sham trial and attempts seemingly "setup" sanctions and injunctive hearing against Steadfast and later trial, without jurisdiction.  Steadfast mandamuses and appeals, |
|---|---|

| 04/16/21 | Galveston Federal Court finally issues final summary Judgment in Steadfast's favor, failing to address many key issues, but deciding on the valid ground that the Enterprise's fraudulent deed was void for lack of a grantee.   Exhibit 89. Conspirators file a frivolous appeal, continuing to defraud the Court as to ownership of 2017 Yale and the fake trust, lying to the Court claiming that the trust paid millions of dollars to buy the property, and relying on their fraudulent title abstract, perjurious affidavits, and fraudulent releases and deeds.  *See* Motion to Dismiss Appeal filed in the 5th Circuit, Cause No. 21-40365. |
|---|---|

Penal Code § 37.10, Aggravated Perjury §§37.02, 03, Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.  All fraudulent instruments were circulated by interstate email in violation of §1343.

| 12/15/21 | Oral Arguments held in the First Court of Appeals on the Yale Enterprise's frivolous appeal of the 190th contractual liability Judgment on the notes.  The Criminal Enterprise makes numerous frivolous claims and arguments, and of course their entire case was founded in fundamental fraud on the Court. |
|---|---|

| 01/31/22 | Oral Arguments are held in the Fifth Circuit on the Yale Enterprise's frivolous appeal of the federal quiet title judgment.  The Criminal Enterprise makes numerous frivolous claims and arguments, and of course their entire case was founded in fundamental fraud on the Court. |
|---|---|

| 02/08/22 | Conspirators file request of Justice Hecht to remove appeals from the First Court of Appeals.   In response, Steadfast requests a Special Master to coordinate combined federal, state, civil, administrative, and criminal investigations into the Yale Enterprise.  The Clerk of the Supreme Court declines the Enterprise's request to remove the cases from the Court of Appeals.  The Court is silent as to the Special Master request.  The Criminal Enterprise makes numerous frivolous claims and arguments, and of course their entire case was founded in fundamental fraud on the Court. |
|---|---|

| 02/23/22 | After years of trying to sell the property privately, all of which efforts were unsuccessful due to the fraudulent litigation, and likely other fraud and tortious interference by the conspirators, the Steadfast Parties must list the property and sell it at dramatically reduced price, to avoid it becoming a worthless tear-down property due to dilapidation.  The conspirators sent a spy to the showing, concealing their identity, and attempted to entrap the Sellers' broker, spy on proceedings, and file a fraudulent bid.  *See* Sherrin Declaration Exhibit 170.   All best and final bids were due from prospective buyers by 02/25/22.  *Id*. |
|---|---|
| | First Court of Appeals overturns frivolous Carter J.P. and Barnstone Judgments and reverses the judgment and order of both Courts in Cause No. 01-21-0036.  Exhibit 180. |

02/25/22    In order to tortiously interfere with any sale, and preclude Steadfast from proper recovery and mitigation of their damages, the conspirators filed a fraudulent lis pendens again.  Exhibit 163.  This lis pendens is based solely on their fraudulent lawsuit and title abstract on appeal.

These Parties filed fraudulent and fraudulently induced instruments in the Harris County real property records, and U.S. Federal Court for the Southern District of Texas, Galveston Division. Government Code Sec. 51.901 requires notice to the County or District Attorney once we notify them.  Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10.  The false title abstract and affidavit in Federal Court; the fraudulent deeds; the fraudulently induced lien releases, and the fraudulent corrective instruments are all violations. Concealing the recorded title documents from the federal court is a clear violation of 18 U.S.C. § 1512.

The conspirators still did not make an offer to buy the property, just as they never paid a cent for the property in the entire history of the case, never offered a cent in settlement, and never offered a cent at the substitute trustee's sale.

3/16/2022    The Yale Enterprise filed yet another frivolous pleading founded upon fraudulent documents and perjured testimony, requesting an extension of time for the Criminal Enterprise to request a rehearing from the First Court of Appeals on their frivolous eviction case against the Steadfast Parties' Security Guard Company.  The only possible purpose for these actions is to continue their fraudulent pattern, continue frivolous pleadings, for the sole goal of increasing damages to the Steadfast Parties and obstructing the sale of their collateral in mitigation of damages.

03/19/22    After four years, twenty cause numbers in eight different courts,[82] with fourteen mandamuses, seven appeals, and after oral arguments in the First Court of Appeals and the Fifth Circuit of the United States; after two hundred and fifty thousand dollars in deposition transcripts, and over two million, four hundred thousand dollars in legal fees by Steadfast, no Court has yet seen fit to do justice or rectify these wrongs. Steadfast moved for a summary judgment that was clearly and obviously dispositive within the first ninety days and first forty thousand dollars of attorney's fees.   Nothing has changed since then, except that Kelley and Choudhri have been desperately and successfully spending effort, fees, and "capital" of whatever kind necessary to preclude any justice from ever being done.  The 190th and Galveston Court eventually came to their judgments, but the path to get there was not justice and their rulings essentially hollow.   No one has sanctioned these criminals.   These criminals have ruined so many lives that Wayne Dolcefino released a series of exposes.   Judges have been disqualified and forced to resign.

---

[82] 01-19-00463-CV; 01-19-00499-CV; 01-19-00555-CV; 01-19-00726-CV; 01-19-00793-CV; 01-20-00027-CV; 01-20-00133-CV; 01-20-00134-CV; 01-20-135; 01-20-00188-CV; 01-20-00189-CV; 01-20-00190-CV; 01-20-00480-CV; 01-20-00481-CV; 01-20-00482-CV; 2016-64847, in the 190th Civil District Court of Harris County; 2019-23950, 2019-59191; 2019-51432 in the 125th; 03-19-CV-00249 in the Southern District, Galveston Division; 21-40365 in the Fifth Circuit; 119110044885 in Harris County Justice Court 115005 in Harris County Court at Law.

Bar complaints have been filed.  Criminal investigations are apparently underway.  But so far, few Courts have properly or timely administered justice, as did the Honorable Judge Susan Brown, and there remain appeals unresolved to this day.  All of the Courts had clearly dispositive motions and evidence before them almost immediately, by 12(b), or Motions to dismiss or for Summary Judgment.  All of these Courts have had clear, undisputed whistleblower evidence of this multi-million-dollar fraudulent Enterprise since July of 2021.  Now this Court is armed with the whistleblower evidence and judicial admissions to finally make this right.

This is an interstate Criminal Enterprise among several corporations, trusts, LLC's and individuals, using mail and email communications to engage in a pattern of fraud in these and other cases, as well as a conspiracy to engage in vexatious and frivolous litigation and "extortion by courthouse."  They have attempted to collect fraudulent debt and violated 18 USC §§ 1341 and 1343.  Their fraudulent inducement of the deeds from STF, and the releases from DA are clear violations of 18 U.S.C. § 1951(a). Their witness tampering and fraudulent inducement of DA to testify against his own and STF's interests is a clear violation of 18 U.S.C. §§ 1503 and 1512.  These federal crimes all have ten- or twenty-year punishments.

Such "racketeering activity" means (A) any act or threat involving extortion, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1503 (relating to obstruction of justice), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1546 (relating to fraud and misuse of visas, permits, and other documents), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering) section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958.

There is already another Civil RICO action against these Parties in the Southern District Bankruptcy Court.

129.    The reality of a case is found by following the money.  Conspirators deliberately and illegally inserted themselves into the title to Steadfast's collateral, and pursuant to their scams, stole millions of dollars from Steadfast and D&A Alvarez.  Conspirators never put a penny of their own into the loan or the Property.  Conspirators are infamous for leaving a blight of hundreds of cases involving real estate fraud scattered throughout Harris

County, with abandoned properties littering Houston's skyline.  The only money ever paid by the Yale Criminal Conspiracy was a $100,000 bribe to Terry Fisher to illegally give away title and let Jetall and the rest of them extort and steal loan money; a $5,000 bribe to Fugedi to be a fake trustee, and a $251,000 bribe to Alvarez for the fraudulent lien release, and then the money Kelley secretly paid other lawyers to pretend to be lawyers for real parties, and defraud Steadfast.  That money came from the Enterprise's theft of Steadfast funds, and was reinvested in furtherance of their scams against the Yale property.

**Attorneys must be disqualified:**

130.    These taped calls evidence ongoing crimes and fraud.    They were recorded by the participants.  None of the players on this call even legally own an interest in the subject matter of this suit.   None are attorney of record.   *See also* Memorandum Confirming Admissibility of Wyatt Audio, Exhibit B; Exhibit 122.

*KELLEY:*        *"All of that is being held together because of me.  All these lawyers are working for me." B(B) 14:00.*

*"You never paid any attorney's fees…" B(B) 23:18.*

*KELLEY:*        *"I've got to make the decision to rescind the transaction and sue you,[Choudhri] or continue with the transaction." B(A) 5:53. Alright Ali, keep complaining about your lawyers, you are about to have an avalanche of shit hit you, it ain't even gonna be funny. You got no good lawyers. None that I am aware. B(A) 14:45. "I'm tired of working my ass off, worried about these people that I've got involved in this shit worried about whether they're gonna commit malpractice.  and somebody's gonna come after me.  I'm gonna make assurances to them.  I want to send the trust, a piece of this case, a piece of the company to these lawyers to get paid." B(A) 28:25. "I can just focus on the last part which is 2017 Yale. Which I've got Michelle in, and Michelle… thinks she's going to miss deadlines, and she's already missed one. She's got a… to pay this shit up.  You're forking up the money? You haven't spent a fucking dime Ali, so how do you own it, and you've spent nothing and you're gonna claim all this shit later?  What did you do Ali, you don't spend a fucking nickel?  No thanks.  This is expensive shit and you ain't paid a goddamn dime yet.  Shit.* <span style="color:red">*We're offering you a free 5 or 10% and the 10% was supposed to be for Brad."*</span>*B(A) 20:42. "I'm not handling the appeal'" B(A) 32:22.*

*"If you want free advice, that's free, just because you fuck it up later, and don't do the right thing ain't my problem.  When I give you free shit, or free shit on the phone like, how do you deal with Moore, and you're not paying and it's not my case, I'm not responsible how it all turns out at the end.*  Exhibit B(A) 15:40.

KELLEY:        *"I don't represent anybody in that case anymore."*  Exhibit B 6:15.

131.    It is worth noting that Kelley and Fraga had recently presented Parker to perjure himself and testify that only Jetall would have paid these attorneys. Exhibit 35 at pg.1-103:

**(*"STEADFAST COUNEL:)  The attorneys that have been paid by -- were they -- the attorneys for Fisher, were they paid by Jetall or who paid those fees?*** *MR. KELLEY:  Objection.  Form. MS. FRAGA:  Objection.  Form. PARKER: I don't recall.*  **(*STEADFAST COUNEL:)  Would it -- who would it have been if it wasn't Jetall?*** *MR. KELLEY:  Objection.  Form. MS. FRAGA: Form. PARKER:  It could have been – it could have been Jetall." Id.*[83]

132.    Hill participated in this fraud by filing fraudulent title abstracts, and knowingly representing a secret real party in interest, while perpetuating the fraudulent trust scam on the Court.

133.    T.D.R.P.C. 102(c) provides that: A lawyer shall not assist or counsel a client to engage in conduct that the lawyer knows is criminal or fraudulent. Section (d) and (e) require disclosure of such conduct.  T.D.R.P.C. 105 precludes privilege for this conduct.

134.    A lawyer shall not represent opposing parties to the same litigation, or involving a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client. Rule 1.06.

135.    A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client. Rule 1.08.

---

[83] Kelley and Fraga both clearly advised Parker what to say and both hid behind privilege for 2017 Yale and Parker. *See e.g.*, Exhibit 35 at pg. 210-212.

136.    A lawyer shall not accept compensation for representing a client from one other than the client.  *Id*. A lawyer shall not enter into a business transaction with a client unless fair and reasonable to the client and are fully disclosed and consented to. *Id*.  A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer any substantial gift from a client.  *Id*.  A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client.  *Id*.

137.    Where attorney disqualification and waiver issues are legal ones that can be resolved entirely on the written record of the proceedings below, no evidentiary hearing is necessary. *In re EPIC Holdings, Inc*., 985 S.W.2d 41 (Tex. 1998).

138.    Additionally, disqualification of a lawyer arises when the lawyer may be called to testify. Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct restricts a lawyer's representation if that lawyer believes he may be a witness "necessary to establish an essential fact…."  At this point, it is quite clear that Kelley and Fraga have some explaining to do under oath.

139.    Rule 3.01 provides that:  A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous. Rule 3.02 provides: In the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.

140.    Rule 3.04 of the Texas Disciplinary Rules of Professional Conduct forbids an attorney from compensating or offering to compensate "a witness . . . contingent upon the content of the testimony of the witness or the outcome of the case." Kelley and Fraga

personally induced Alvarez and Parker to commit various felonies and execute fraudulent documents.

141.   Rule 1.05: a "reasonable probability" of a violation of confidentiality in the attorney-client relationship can be the basis for disqualification of an attorney. *In re Roseland Oil & Gas*, 68 S.W.3d 784, at 787 (Tex.App.—Eastland 2001).   Reasonable probability of a violation of confidentiality may include: "(1) "'an unauthorized disclosure of confidential information' obtained from a client or former client or (2) the inappropriate use of confidential information to the detriment of a former client." *Id.*  When the lawyer secretly owns 2017 Yale and the Appellee's trust, it is hard to reconcile these rules and the Attorneys must be disqualified, especially when the 2017 Yale is now filing motions in the 190th to try to force Alvarez to offset the judgment against 2017 Yale.

141.   Rule 3.08 prohibits an attorney from serving as an advocate and witness in the same proceeding other than in the circumstances listed within this Rule.

142.   Rule 3.03 states that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal; fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act, or offer or use evidence that the lawyer knows to be false.  Rule 3.03(d) requires affirmative disclosure. Rule 3.04(d) states that a lawyer shall not obstruct another party's access to evidence; falsify evidence, counsel or assist a witness to testify falsely, or pay, offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony of the witness or the outcome of the case;  nor can an attorney disobey, or advise the client to disobey, an obligation under the standing rules of or a ruling by a tribunal.

143.    Rule 3.05 provides that a lawyer shall not seek to influence a tribunal concerning a pending matter by means prohibited by law or applicable rules of practice or procedure. Rule 4.01 provides that a lawyer shall not knowingly make a false statement of material fact or law to a third person; or fail to disclose a material fact to a third person when disclosure is necessary to avoid making the lawyer a party to a criminal act or knowingly assisting a fraudulent act perpetrated by a client. Rule 5.04 provides that a lawyer shall not share or promise to share legal fees with a non-lawyer. Rule 8.02 provides that a lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory official or public legal officer, or of a candidate for election or appointment to judicial or legal office. Rule 8.04 provides that a lawyer shall not commit a serious crime or commit any other criminal act that reflects adversely on the lawyers honesty, trustworthiness or fitness as a lawyer in other respects; engage in conduct involving dishonesty, fraud, deceit or misrepresentation; engage in conduct constituting obstruction of justice; state or imply an ability to influence improperly a government agency or official; knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

144.    It is hard to find a disciplinary rule that the conspirator attorneys have not violated.

## VI.
## CAUSES OF ACTION

145.    All of the pleadings, allegations, evidence, exhibits, and arguments listed above, and all of the criminal statutory analysis set forth above, are repeated and incorporated herein in

all sections hereof, for all purposes.

## CIVIL RICO

146.    A private federal RICO cause of action exists for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c)*; Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 508 (1985). Plaintiff is such a person within the meaning of 18 U.S.C. § 1961(3) and 1964(c).

147.    Defendants are all: (1) culpable persons who used interstate commerce to engage in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an Enterprise, which violation causes 4) injury to Steadfast's business or property, harming people all over the country through their criminal and fraudulent Yale Enterprise. 18 U.S.C. § 1962. *de Pacheco v. Martinez*, 515 F. Supp. 2d 773 (S.D. Tex. 2007). *In re Burzynski*, 989 F.2d 733, 742 (5th Cir.1993).

148.    Defendants constitute an Enterprise for purposes of 18 U.S.C. § 1961(4).  Alternately, Defendants with their members formed an association-in-fact for the purpose of depriving Plaintiff of its property. This association is an "Enterprise" within the meaning of 18 U.S.C. § 1962(c). This Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

149.    Defendants are all persons wrongfully "employed by or associated with" the Yale Enterprise, who "conducted and participated, directly or indirectly, in the conduct of such Enterprises' affairs, through a pattern of racketeering activity" under Section 1962(c).

150.    Defendants all have been clearly proven to have conspired to engage in that pattern of racketeering activity under Section 1962(d).

151.    Defendants are all persons who acquired or maintained, directly or indirectly, an interest in or control of the Yale Enterprise, which was engaged in, and whose activities affected interstate commerce, through a pattern of racketeering activity under Section 1962(b).

152.    Plaintiff is a person or class of persons injured in its business or property by a violation of 18 U.S.C. § 1962, and hereby sue for damages, treble damages, costs of filing the lawsuit, and reasonable attorney's fees. Defendants, including persons employed by or associated with the Enterprise, specifically the Defendants, and its members, conducted or participated, directly or indirectly, in the operation and/or management of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and § 1962(c). Defendants along with the Enterprise, engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above.

153.    Defendants' Enterprise was built around an ongoing system of criminal and fraudulent acts as set forth above.

### *Predicate Acts of Racketeering Activity*

154.    Defendants committed not only primary crimes and torts supporting RICO civil relief, but also predicate acts including wire fraud, mail fraud, extortion, etc., as plead with specificity herein and in the timeline and background sections of this Petition, together with supporting Exhibits, Affidavits, audiotapes, and other evidence proving this summary judgment RICO case by already judicially admitted evidence.  All of Defendants' numerous acts herein have the same or similar purposes, results, participants, victims, and methods, have common distinguishing characteristics, and aren't isolated events.  These predicate acts

extended over a substantial period of time, from late 2016 to the present, and by their nature, are likely to be repeated into the future unless this Court does justice.

155.    Specifically, these parties all intentionally conspired to steal Steadfast's loan money and title to the collateral at 829 Yale and committed dozens of fraudulent scams to attempt to accomplish that purpose, as well as to bury the evidence of their crimes under tens of thousands of pages of fraudulent and vexatious frivolous litigation.

156.    All of the Defendants either committed – or aided, abetted, counseled, commanded, induced, or procured the commission of two or more predicate acts that make up this clear pattern, or willfully caused the commission of two or more alleged predicate acts that make up the pattern. All Defendants acted with intent or knowledge, as proven by the whistleblowers' judicially admitted evidence, and also obvious from the undisputed facts in evidence.

157.    Through the pattern, each Defendant acquired or maintained, directly or indirectly, an interest in or control of the Yale Enterprise.  All of these acts were related by design to accomplish the goals of the Yale Enterprise – stealing loan money and title to the collateral property at 829 Yale.  Defendants have committed numerous proven predicate acts from September of 2016 through the present.  All Defendants gained some interest in or control of the Yale Enterprise or were employed or associated with the Enterprise.  All Defendants participated, either directly or indirectly, in the conduct of the affairs of the Enterprise.  All Defendants agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity, by fabricating evidence and conveyances, and agreed to the overall objective of the conspiracy to steal Steadfast's property, as well as agreed to commit the predicate acts.  In an

ordinary case, the conspiracy's existence and the Defendants' intent is properly inferred from the participants' conduct; however, in this case, the whistleblower evidence proves such intent as a matter of law.

158.    Defendants induced and stole nearly a million dollars in cash out of Steadfast's loan, destroyed the value of the remainder of the money loaned, defaulted on the nearly six million dollar principle balance and all fees, interest and other costs; denuded the value of an eight-million-dollar judgment, precluded the sale of property originally worth over ten million dollars, stole millions more from Alvarez, caused over two and a half million dollars in unnecessary attorney's fees, several million dollars of depreciation to the collateral, over three million dollars in fees and accrued interest, and caused over fifteen million dollars in total actual damages, lost principal and interest, lost property value of the collateral.

159.    Defendants prevented the marketing or sale of the collateral by Steadfast, or other mitigation of damages.  Defendants reinvested money stolen from Steadfast and Alvarez to pay bribes to further the Yale Enterprise, including to Fisher, his companies, Jetall, Choudhri's companies, Kelley and the attorneys and their employees whom the Enterprise bribed to participate. They also used those funds to pay Fugedi's bribe, Kelley's bribe to Alvarez, bribed Parker to perjure himself and keep quiet, and to avoid service, and paid for fraudulent instruments, title abstracts, and other instances of fraud, together with likely paying for improper judicial influence, all under § 1962(a).  Defendants stole Steadfast's money and title to collateral, all as part of the Yale Enterprise, under § 1962(b).  All Defendants are liable persons under § 1962(c) proven to have conspired together under § 1962(d).

160.    But for Defendants conspiring to engage in all of the predicate acts against Steadfast, its loaned funds, and its title, Steadfast's loan would have been timely paid, or Steadfast would have simply foreclosed and sold the property free and clear in 2016 or 2017, for its fair market value then in excess of Steadfast's loan principle, interest, fees, and attorney's fees, and without being subject to the dilapidation of the property, millions in legal fees unnecessary but for the Yale Enterprise, and without dilapidation of the property from years of neglect caused by all of the predicate acts of Defendants in conspiracy to create the Yale Enterprise.

***Pattern***

161.    A pattern may be established by showing two predicate acts of racketeering activity within a ten-year period. *See* 18 U.S.C. § 1961(5).  Defendants all committed numerous acts within the pattern, comprising seventeen scams against Steadfast's money and collateral, over a five-year period, including acts that are (1) related and (2) amount to a historical patter, or pose a threat of continued criminal activity, constitute a pattern.  *Snow Ingredients*, 833 F.3d at 524 (quoting *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam). *E.g., H.J. Inc. v. Nw. Bell. Tele. Co.*, 492 U.S. 229, 236 (1989).  All of the acts set forth herein were committed in furtherance of the attempt by the Yale Enterprise to fraudulently induce and then steal Steadfast's Loan money, engage in sham transactions to steal or cloud title to Steadfast' collateral, obstruct Steadfast's loan and judgments, and fabricate claims against or clouding Steadfast's title to preclude Steadfast from being able to sell its collateral or recover its lenders' remedies.  Even after exposure and judicial admission of the whistleblower tapes, they have not ceased their activities intended to damage and defraud Steadfast and its collateral.

162.    Defendants continue to prepare and record fraudulent lis pendens, and pleadings to this day, and have never given up attempting to defraud, steal, extort, and denude the value of Steadfast's property.   Their actions pose a threat of continued criminal misconduct, though given the long history of numerous predicate acts, no further threat is required for Plaintiff to recover.

163.    This is not a new pattern for the Yale Enterprise,  in addition to a sampling of their fraudulent litigation in Exhibit 99, a recent scathing arbitration award clearly demonstrates the same pattern of fraud by the same players.   An arbitration award on file in a 2012 case, 2012-27197A, was recently made public.   Exhibit 184.  The arbitration panel found that Kelley, Fraga, Choudhri, Parker, Pierce, and the other related cast of characters committed fraud in a very similar pattern on another property, to quote the arbitration panel:

"*Choudhri engaged in numerous tactics designed to improperly delay and obstruct" the litigation. "Choudhri repeatedly lied under oath and changed his positions and testimony as necessary to suit his personal needs and without regard to the truth. Choudhri caused multiple documents to be fabricated after the fact, and Choudhri unlawfully withheld evidence to protect himself and to hide his wrongful conduct.   Choudhri refused to participate as ordered in necessary discovery*." *Id.*

"*Choudhri intentionally hid his involvement in [the sham lienholder] and the foreclosure process, and the Panel finds that his conduct was wrongful and improper. Choudhri tried to cover up his wrongful conduct after the fact, including by intentionally withholding and secreting evidence that he was ordered to produce…" Id.*

"*Choudhri hid his true ownership of [another sham lienholder entity] with his CFO, Brad Parker, as the front man*."  *Id.*

"*Choudhri owned and controlled both entities to the agreements*."  *Id.*

"*Later, third parties produced documents revealing that Choudhri was the true owner of [the sham company] and he had installed Zaheer, his alleged girlfriend, as the "front" to hide his ownership and involvement in [the sham company] conducting the foreclosure and taking the Property away from [the legitimate owner]*." *Id.*

"*Choudhri planned and orchestrated a plan to cause [his secretly owned company] to purchase [liens] from [a legitimate party], to put [his target for the fraud holding a subordinate lien] into a non-monetary default when it was not really in default, to falsely inflate the amount of the Note, and to conduct a wrongful foreclosure of the Property ...with the purpose and intent to deprive [legitimate owners] of the Property and any lien on the Property, ... for the sole benefit of Choudhri.*" *Id.*

Sound familiar?  This is an identical pattern executed by the same primary players as those controlling the Yale Enterprise.  Kelley and Fraga represented Choudhri again, and their Enterprise clearly goes beyond just Yale.

164.    The Criminal Enterprise forced that case into Arbitration because Judge Moore, then handling the case, seemed prepared to do justice against them (the Enterprise also accuses Judge Moore, Miller and others of misconduct on the audiotapes, Exhibits B(a-c)).  The Criminal Enterprise apparently undertook successful efforts to put Brittany Morris, Choudhri's alleged girlfriend and former employee, on the bench of the 333rd Court handling the case, to replace Judge Moore.   Then the Enterprise fought the arbitration tooth and nail, seeking to have Morris rule on the case on their behalf.  Morris refused to recuse herself, and Mokaram had to have a special trial to recuse Morris from the case, just as Steadfast had to do with Judge Carter.  *Id*; *see also* Exhibits 90-91, media links, *supra*.

165.    The panel found that the Enterprise filed fraudulent lis pendens, extensive motions for sanctions, and tried to bury that fraud in voluminous frivolous pleadings as well.

166.    The depths of deceit by the Yale Enterprise can hardly be believed, and that has allowed this Criminal Enterprise to get away with their fraud for many years, but it is time for justice to be done.  They concealed all of this evidence from all of the other Courts in

this related litigation, the whistleblower coming forward (who was never identified, named, or designated as a witness) after the trials were over. This Court finally has the tools.

### Persons and Enterprise

167.    "An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 229 (5th Cir. 2003).  RICO enterprises may consist of: 1) a legal entity, such as a corporation, or 2) an "association-in-fact," which can include "any union or group of individuals." 18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576 (1981); *de Pacheco, supra*, at 790. There is no requirement that any particular conspirator "have committed or agreed to commit the two predicate acts"; instead, the conspirator "need only have known of and agreed to the overall objective of the RICO offense." *United States v. Delgado,* 401 F.3d 290, 296 (5th Cir. 2005); *see* 18 U.S.C. § 1962(d).  The evidence set fort herein irrefutably proves the Defendants all knew of the Enterprise objective to steal Steadfast's funds, defraud Steadfast's title to the collateral, obstruct Steadfast's loan, prevent Steadfast's recovery of the money they stole, interfere with Steadfast's title in the collateral, prevent Steadfast from being able to sell the collateral, and ultimately burying their crimes under the burden of vexatious litigation.[84]

168.    Each of the Defendants is a "person" charged with violating § 1962(c), separate and distinct from the "enterprise" through which the defendant is alleged to have conducted a

---

[84] The Criminal Enterprise filed no less than twenty-five groundless motions for sanctions against every party in every case, and regularly sought "emergency hearings" and filed voluminous pleadings to confuse the truth from every Court.

"pattern of racketeering activity."[85] The Yale Enterprise was the scheme by Choudhri, Kelley, Parker, Jetall, 2017 Yale and the other Defendants to defraud the lenders, steal the loan money, steal the title to the collateral, and extort money from the lenders, each playing their roles, mostly in secret and outside the light of day. Section 1962(c)'s distinctness requirement is met in this circumstance. *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1274-77 (11th Cir. 2000).

169.    Whenever an attorney is alleged to be a participant in an enterprise with her client, sufficient independence exists to satisfy § 1962(c)'s distinctness requirement. Thus, distinctness is satisfied when a corporate client is pled as a RICO defendant and the client and outside counsel are pled as the enterprise, or *vice versa*. Just as a corporate officer can be a person distinct from the corporate enterprise, a purported client is separate from its legal defense team. *See Sever v. Alaska Pulp Corp*., 978 F.2d 1529, 1534 (9th Cir.1992); *Benny*, 786 F.2d at 1415–16.

170.    An enterprise is basically any informal group coordinating with a common goal. *Boyle v. United States*, 556 U.S. 938, 942-46 (2009). *United States v. Turkette*, 452 U.S. 576, 583 (1981). All of these Defendants undertook specific acts to assist in the Yale Enterprise's tortious acts against Steadfast, its lenders' rights and loans, and title to Steadfast's property.

171.    All of the Defendants have been proven by their own admitted tapes and whistleblower evidence to have agreed amongst each other to commit predicate acts, which is a RICO conspiracy. *Tel–Phonic*, 975 F.2d at 1140 (citing *Hecht v. Commerce Clearing*

---

[85] The person and enterprise need not be distinct in § 1962(b) cases. *See, e.g., Landry v. Airline Pilots Ass'n Int'l AFL-CIO,* 901 F.2d 404, 425 (5th Cir. 1990) (finding no distinctness required). 1962(a) also does not contain a distinctness requirement. *See Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 30 (1st Cir. 1986).

*House, Inc*., 897 F.2d 21, 25 (2d Cir.1990)). *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995).    Defendants' conspiracy, predicate acts, and pattern of racketeering activity have precluded Steadfast from recovering clear title to its collateral, or from selling it to mitigate its damages.    *See* Sherrin Affidavit, <u>Exhibit 170</u>.  This is the result they agreed upon; they participated in the fraud as something they all wished to bring about and sought by its actions to make it succeed. *Armco Industrial Credit Corporation v. SLT Warehouse Co*., 782 F.2d 475 (5th Cir.1986).  All Defendants have worked together for years, and committed numerous fraudulent acts to accomplish this purpose, continuing to this day.

172.    All Defendants are vicariously liable for the acts of the other conspirators committed as their agents; such as Kelley for Fraga, Kelley and Choudhri for Parker, etc.; no barrier to vicarious liability in this case as such liability has been found to be available under subsections (a) and (b) when the principal has derived some benefit from the agent's wrongful acts. *Landry*, 901 F.2d at 425; *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1307 (7th Cir.1987), cert. denied, 492 U.S. 917 (1989).

173.    Each Defendant either participated in or directed the Enterprise in violation of RICO under 18 U.S.C. § 1962(b) and (c), by directly or indirectly maintaining an interest in or control of an enterprise engaged in interstate commerce through a pattern of racketeering activity or associating with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.  Further, Defendants worked in concert as part of a conspiracy in violation of RICO, under 18 U.S.C. § 1962(d).

*Racketeering Activity*

174.    "Racketeering activity" means (A) any act or threat involving extortion, which is chargeable under State law and punishable by imprisonment for more than one year; the Defendants committed numerous acts in furtherance of the pattern in furtherance of the Yale Enterprise, as specifically set forth in the Timeline above and the evidence filed herewith reflecting such State law felonies, *supra*;  (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1512 (relating to tampering with a witness, victim, or an informant), section 1951 (relating to interference with commerce, robbery, or extortion).  As evidenced and plead in detail in the Timeline set forth herein, each Defendant committed numerous acts constituting all of those listed federal felonies in furtherance of the pattern of fraud in furtherance of the Yale Enterprise.

175.    Defendants or their agents have caused or conspired to cause the transmission of forged or fraudulent documents through the mail and/or by wire via facsimile, email, U.S. mail, and by wire transfer. Such actions constituted:

a.    A scheme to defraud conducted through the mails and/or over wire transmissions;

b.    With the intent to defraud the Plaintiff, Alvarez, the Courts, and the local and state government offices where these forged or fraudulent documents were ultimately filed, and with the intent to defraud Steadfast out of its loaned money and collateral; and

c.    Defendants did in fact mail and/or transmit by wire materials in furtherance of this scheme.  Defendants or their agents have engaged or conspired to engage in use or investment

of stolen money and title by investing the proceeds of these activities into the Enterprise in violation of RICO §1962(a), such that:

a.      Defendants knowing that the money involved in these financial transactions represented the proceeds of unlawful activity, conducted or attempted to conduct financial transactions involving the proceeds from the unlawful activities of the Defendants by paying many of the co-conspirator's bribes and investing the rest of the proceeds of these unlawful activities in their Enterprise.

b.      Defendants initially acquired an interest in money and real property through the creation of the forged or fraudulent documents. After these fraudulent and forged documents were created, they were used by the Defendants to the further injury of Plaintiff, by fraudulently filing them in official records for their real property through the U.S. mail, causing actual damages and damages as allowed by statute;

c.      Having set up a system through which fraudulent documents would be executed or forged and mailed, wired or emailed for filing to create the appearance of an interest in real property, through repeated sham transactions based on fraudulent documents, Defendants intentionally misrepresented material facts to Courts, Steadfast, potential purchasers of Steadfast's collateral, and government officials.

d.      With the intent to promote the carrying out of these unlawful activities.

***Additional information on State Law Crimes supporting Civil RICO relief:***

### ***Extortion***

176.    The Texas Penal Code § 31.03 encompassed all of the acquisitive conduct that had previously been made unlawful in many separate offenses, establishing a single offense of

theft superseding the separate statutory offenses of theft, theft by false pretext, conversion by a bailee, theft from the person, acquisition of property by threat, swindling, embezzlement, extortion, among others.  Tex. Penal Code § 31.02.

177.    Defendants have conspired to commit and engaged in a pattern of committing the following violations pursuant to § 31.03, all of which are first degree felonies as the Property they have stolen far exceeds $300,000.00, making each instance of this conduct a first-degree felony.  As such, Defendants' misconduct qualifies as a state felony under RICO for state law criminal conduct: "(A) any act or threat involving extortion, which is chargeable under State law and punishable by imprisonment for more than one year."

178.    In Texas, "(a) An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years. (b) In addition to imprisonment, an individual adjudged guilty of a felony of the first degree may be punished by a fine not to exceed $10,000. TEX. PENAL CODE § 12.32.

179.    The evidence shows that this criminal Enterprise committed the following crimes: Hindering Secured Creditors § 33.33 – First Degree Felony, at least 5 counts, intent presumed. Failing to release fraudulent instruments – § 32.49, Class A misdemeanor, at least 3 counts, intent presumed.  Theft of Loaned funds – § 31.03, First Degree Felony, proven by bank records and recorded documents.  Defrauding D & A Alvarez and bribing Transact Title, Umitaya, Chaudhry, Huebner, Elberger, Herman, Carb Pura Vida, LLC, Norma Lopez, and Fugedi, into signing numerous fraudulent documents – including releases purporting to fraudulently release Steadfast's lien.  § 32.46 First Degree Felony.

## *§ 32.33. Hindering Secured Creditors*

180.    The Yale Enterprise fraudulently conveyed deeds to their secured creditors' collateral worth millions on multiple occasions:  This first degree felony under Penal Code § 32.33 carries presumed intent as they never paid a penny of the debt or returned the property on demand, which demand Steadfast repeatedly made to each of them (*See e.g*. Exhibit 170, 100, each notice of foreclosure posted, and admitted by each fraudulent lawsuit seeking restraining orders against foreclosures):  (b) A person who has signed a … mortgage or deed of trust creating a lien on property commits an offense if, with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property. (obviously Exhibits 1 v. 3; 11(b) v. 86(o), and of course conspiracy for all the other fraudulent instruments) (c) a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed: (1) to pay the part then due; and (2) if the secured party had made demand, to deliver possession of the secured property to the secured party. (all judicially admitted) (d) An offense under Subsection (b) is a: (7) felony of the first degree if the value of the property destroyed, removed, concealed, encumbered, or otherwise harmed or reduced in value is $300,000 or more. (e) A person who is a debtor under a security agreement, and who does not have a right to sell or dispose of the secured property or is required to account to the secured party for the proceeds of a permitted sale or disposition, commits an offense if the person sells or otherwise disposes of the secured property, or does not account to the secured party for the proceeds of a sale or other disposition as required, with intent to appropriate (as defined in Chapter 31) the proceeds or value of the secured property. (all

judicially admitted).  A person is presumed to have intended to appropriate proceeds if the person does not deliver the proceeds to the secured party or account to the secured party for the proceeds before the 11th day after the day that the secured party makes a lawful demand for the proceeds or account.   An offense under this subsection is: (7) a felony of the first degree if the proceeds obtained from the sale or other disposition are money or goods having a value of $300,000 or more.

181.    Fisher's first Felony Transfer of title to Jetall violates this section, with Jetall, Parker, and 2017 Yale conspiring to violate this section with Fisher and bribing him to do so.  Kelley, Parker, Choudhri, 2017 Yale, and Fraga's fake tax lien assignment violates this section.  2017 Yale's conveyance of Steadfast's loaned funds to the other conspirators, Fisher, his companies, Jetall, etc., violates this section.  The Enterprise's inducement of D&A Alvarez to sign fraudulent lien releases violate this section.  2017 Yale's fraudulent conveyance of title to the collateral to the fake trust violates this section, with conspiracy by all the other Defendants, including by filing the fraudulent lis pendens and correction deeds in 2020, 2021, 2022, all of which constitute separate violations of this section, and all are criminally liable as they conspired to commit these crimes.

### § 32.49. Refusal to Execute Release of Fraudulent Lien or Claim

182.    The conspirators failed to execute releases of their fraudulent liens and claims:  Penal Code § 32.49, after demand.  *See* Exhibit 100, *supra*.  This Class A misdemeanor also carries presumed intent. (a) A person commits an offense if, with intent to defraud or harm another, the person (1) owns, holds, or is the beneficiary of a purported lien or claim asserted against real or personal property or an interest in real or personal property that is fraudulent, as

described by Section 51.901(c),[86] Government Code; and (2) not later than the 21st day after

the date of receipt of actual or written notice sent by either certified or registered mail, return

receipt requested, to the person's last known address, or by telephonic document transfer to

the recipient's current telecopier number, requesting the execution of a release of the

fraudulent lien or claim, refuses to execute the release on the request of: (A) the obligor or

debtor; or (B) any person who owns any interest in the real or personal property described in

the document or instrument that is the basis for the lien or claim. (b) A person who fails to

execute a release of the purported lien or claim within the period prescribed by Subsection

(a)(2) is **presumed** to have had the intent to harm or defraud another. (c) An offense under

this section is a Class A misdemeanor, also qualifying as a RICO predicate crime as it carries

up to a year in jail.  The enterprise Defendants have all been proven to have committed this

crime as a matter of law as well.

### *§ 31.03 Defendants stole over seven hundred thousand dollars out of the Loan*

183.    (a) A person commits an offense if he unlawfully appropriates property with intent to

deprive the owner of property. (b) Appropriation of property is unlawful if: (1) it is without

the owner's effective consent; (c) For purposes of Subsection (b): (1) evidence that the actor

has previously participated in recent transactions other than, but similar to, that which the

prosecution is based is admissible for the purpose of showing knowledge or intent and the

issues of knowledge or intent are raised by the actor's plea of not guilty; (7) felony of the first

---

[86] This section does not <u>define</u> "fraudulent," but presumes it if: (c) the document or instrument purports to create a lien or assert a claim against real or personal property or an interest in real or personal property and: (B)is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person.

degree if the value of the property stolen is $300,000 or more. Jetall stole title without effective consent, acting in conspiracy with Choudhri, Parker, Fisher. 829 Yale stole loan money acting for Fisher. 2017 Yale acquired title by fraud and duress without effective consent, and stole the loan money and distributed it among all of the Yale Enterprise. Fraga and Tax Relief, Inc. fraudulently acquired a lien against the property. Fugedi, acting for the other Yale Enterprise stole title to the property. The list goes on.

### § 32.46 - Defendants fraudulently induced and deceived Steadfast and Alvarez into executing documents with the intent of defrauding Steadfast

184.    A person commits an offense if with the intent to defraud or harm any person, he, by deception[87]:  (1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person;  (7) crimes under this section are a felony of the first degree if the value of the property, service, or pecuniary interest is $300,000 or more. They intentionally deceived Alvarez into signing fraudulent lien releases, made false promises to induce a loan workout from Steadfast, made false promises and bribed witnesses to execute fraudulent releases, deeds, title abstracts and other instruments.

---

[87] § 31.01 Deceive means: creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true.
(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true.
(C) preventing another from acquiring information likely to affect his judgment in the transaction.
(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.
(2) "Deprive" means: (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.
(3) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:
(A) induced by deception or coercion; (B) given by a person the actor knows is not legally authorized to act for the owner.

185.    The tapes and whistleblower evidence prove their intent to deceive and defraud Steadfast on all counts, steal Steadfast's loan money, and steal title to Steadfast's collateral. The filed pleadings and false evidence, and the fraudulent recorded instruments clearly reflect signatures induced by deception by all Defendants on multiple counts.

### ***Additional Offenses***

186.    Defendants intentionally made materially false and misleading statements in connection with a purchase or sale of property on multiple occasions, a Class A misdemeanor also qualifying as a RICO predicate act crime with punishment of one year. These Parties filed fraudulent and fraudulently induced instruments in the Harris County real property records, and U.S. Federal Court for the Southern District of Texas, Galveston Division. Government Code Sec. 51.901 requires notice to the County or District Attorney once we notify them.  Each occurrence of this conduct is a second-degree felony under Penal Code § 37.10.   The false title abstract and affidavit in Federal Court; the fraudulent deeds; the fraudulently induced lien releases, and the fraudulent corrective instruments are all violations.

187.    These parties perjured themselves on numerous occasions in court, a third-degree felony under § 37.02.  These parties engaged in *ex parte* communications with at least one Harris County judge and obtained absurd rulings resulting in the constitutional disqualification and recusal of said judge.  The District Clerk's website was altered after the fact to accommodate prejudicial rulings against the Steadfast parties, and other matters merit investigation into felonious conduct under Penal Code §§ 39.02, 39.03; 18 U.S.C. § 201.

188.    Concealing the recorded title documents evidencing Steadfast's valid first lien and CTNL from the federal courts are clear violations of 18 U.S.C. § 1512.

*Federal Crimes supporting RICO relief:*

**Defendants violated 18 U.S.C. §§ 1503 and 1512,** *supra.*

189.    18 U.S.C. § 1503; (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to— (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to— (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding;  shall be fined under this title or imprisoned not more than 20 years, or both. (c) Whoever corruptly— (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

190.    Defendants bribed each other to participate in the Yale Enterprise on numerous occasions, coerced Alvarez to file fraudulent documents and releases, corruptly persuaded Huebner, Fugedi, Hill, and the other counsel to file fraudulent title abstracts and other fraudulent pleadings, verifications, evidence in real property records and federal and state courts, and bribed Parker to do the same, as well as to perjure himself in furtherance of the Yale Enterprise, all to steal Steadfast's money and property.   They bribed Parker with a percentage of Yale to perjure himself and deceive Steadfast and the Courts, and then apparently with five hundred thousand dollars cash to keep his mouth shut.  They deceived and/or bribed Alvarez into defaulting, changing his testimony, filing fraudulent documents,

and have generally conspired to dodge service and avoid testifying, all in furtherance of their Criminal Enterprise.

**Defendants violated 18 U.S.C. §§ 1341 and 1343, *supra*.**

191.    Defendants knew the scheme involved false representations, which related to material information, engaged in through interstate commerce and emails.  18 U.S.C. § 1343; *United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009) (") (quoting *United States v. Nguyen*, 504 F.3d 561, 568 (5th Cir. 2007)).   Defendants also wired bribe money to Michigan, D&A Alvarez in Dallas, through national banks and electronic transfers across state lines. Defendants used interstate cell phone, text, email and other interstate communications to plan their fraud and Enterprise, pay themselves money they stole from Steadfast, E-Filing in Federal and State Courts, E-Filing with the Harris County district Clerk and Real Property records, wiring money and sending checks by U.S. Mail, and sending fraudulent communications to Steadfast and others by the same interstate commerce means.  Defendants mailed misleading letters to multi-state Steadfast lenders hoping to induce them into participating in their fraud.   Defendants schemed by email, text, and cell phone calls to commit criminal predicate acts and perjure themselves.  Defendants also (1) intentionally, (2) devised a scheme or artifice to defraud Steadfast, including the out of state Steadfast Parties (3) to obtain Steadfast's real property and loan money, and (4) used or caused to be used the United States mail or an interstate commercial carrier to deliver original fraudulent title instruments to themselves and the Harris County Clerk for recordation in the Real Property

Records and Official Public Records. *Skilling v. United States*, 130 S. Ct. 2896, 2926-27 (2010). 18 U.S.C. § 1341.[88]

192.    "[I]ntent to defraud," is "imputed to civil RICO defendants who act with reckless indifference to the truth or falsity of their representations." *Landry*, 901 F.2d at 429 n. 87. Here, this is not necessary as the whistleblower tapes prove their fraudulent intent beyond any doubt. "The elements of a wire fraud claim under 18 U.S.C. § 1343 are the same as those for a mail fraud claim…." *Walsh v. America's Tele–Network Corp.*, 195 F.Supp.2d 840, 846 (E.D.Tex.2002). *McPeters v. Edwards*, 806 F. Supp. 2d 978, 990–91 (S.D. Tex. 2011), aff'd, 464 F. App'x 351 (5th Cir. 2012).

### Interstate Commerce

193.    The use of the wires "need not be an essential element" of the scheme; it can further the fraud as long as it is "incident to an essential part of the scheme, or a step in the plot." *United States v. Dowl*, 619 F.3d 494, 499 (5th Cir. 2010) (quoting *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989)). *United States v. Hoffman*, 901 F.3d 523, 547 (5th Cir. 2018),

---

[88] Whoever, intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, exchange, give away, supply, or procure for unlawful use any spurious obligation, security, or other article, for the purpose of executing such scheme or artifice or attempting to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343

(1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 648 (S.D.Tex.2007) (quoting *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001)).

revised (Aug. 28, 2018). Here, the mailed letters and title instruments, wired money, e-filed documents, checks, emails, including perjured affidavits emailed from multiple states, and phone calls across the country were necessary to pull off the goals of the Yale Enterprise. *See United States v. Rodriguez-Cruz*, 681 Fed.Appx. 312, 313 (5th Cir. 2017) (cell phones are "facilities of interstate commerce," and even wholly intrastate use of a cell phone can satisfy jurisdictional "commerce" element of federal crimes); *BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil*, 56 F.Supp.2d 14, 53 (D.D.C. 1999), aff'd in part, rev'd in part on other grounds and remanded sub nom. *BCCI Holdings (Luxembourg), S.A. v. Khali*l, 214 F.3d 168 (D.C. Cir. 2000) ("use of a facility in commerce" includes interstate wire transfers and use of mail, telephone, or telegraphy). *K&F Rest. Holdings, Ltd. v. Rouse,* No. CV 16-293-JWD-EWD, 2018 WL 3553422, at *19 (M.D. La. July 24, 2018), aff'd on other grounds, 798 F. App'x 808 (5th Cir. 2020). Defendants irrefutably used cell phones to defraud Alvarez and Steadfast, conspire amongst themselves in furtherance of the fraudulent Enterprise, and commit all of the other crimes set forth herein.

194.    It is a violation that Defendants used, or caused to be used, the U.S. mails; any private or commercial interstate carrier; and/or interstate or intrastate wires (ii) in furtherance of, or for the purpose of, executing the scheme to defraud. A person causes the mails to be used when he or she acts "with knowledge that the use of the mails will follow in the ordinary course of business" or where the mailing was reasonably foreseeable. *Pereira v. United States*, 347 U.S. 1, 8-9 (1954). Plaintiff needs not show a defendant personally mailed or received mail to prove the defendant caused the mails to be used. *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007). *United States v. Ratliff-White*, 493 F.3d 812, 818 (7th Cir.

2007) ("To satisfy the causation element, the [plaintiff] need only show that the defendant knew that some use of the wires would follow. Our case law does not require that a specific mailing or wire transmission be foreseen.").

195.    Defendants regularly used interstate commerce to plan, scheme, implement their Yale Enterprise.  For instance, they knew that they would be E-filing fraudulent documents, mailing original fraudulent instruments for recordation, fraudulently inducing loans using email and cell phones, using email to circulate fraudulent documents for signatures, etc.

196.    The defendants need not be aware of, or specifically intend, the use of the mails in order to satisfy this element of the statute. If someone "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira*, 347 U.S. at 8-9 (holding defendant who collected proceeds in El Paso from check drawn on Los Angeles bank caused check to be mailed from Texas to California); *see also United States v. Cohen*, 171 F.3d 796, 800 (3d Cir. 1999) (finding this element to be met when defendant acts with knowledge that use of mails will follow in ordinary course of business); *United States v. Seran*g, 156 F.3d 910, 914 (9th Cir. 1998) (holding defendant need not specifically intend to use mails). In short, specific intent not required for the "causing the mails or wires to be used" element.  *United States v. Cusino*, 694 F.2d 185, 188 (9th Cir. 1982) ("The specific intent requirement under 18 U.S.C. § 1343 pertains to the scheme to defraud ... not to the causing of wire transmissions.").

197.    This is an interstate criminal Enterprise among several corporations, trusts, LLC's and individuals, using mail and email communications to engage in a pattern of fraud in these and

other cases, as well as a conspiracy to engage in vexatious and frivolous litigation and "extortion by courthouse." Their fraudulent inducement of the deeds from Fisher, Releases from Alvarez, Deed from Steadfast, etc., are clear violations of 18 U.S.C. § 1951(a). Their witness tampering and fraudulent inducement of Alvarez, Fugedi, Parker, Fugedi, and others to testify is a clear violation of 18 U.S.C. §§ 1503 and 1512. These federal crimes all have ten- or twenty-year punishments.

### *RICO Damages*

198. Steadfast was injured by the wire fraud and other predicate acts, fraudulent transfers of property, theft, fraudulent pleadings and real property instruments, and the investment of the money and borrower ownership interests stolen from Steadfast to bribe additional Defendants to participate in additional crimes and fraud in furtherance of the Yale Enterprise. Defendants all took control of ownership of Steadfast's borrower, or use of Steadfast's funds, membership interest in its borrower, or claims against its title, in order to benefit from their fraud and crimes. Defendants' overt acts damaged Plaintiff in excess of fifteen million dollars in unpaid principle, interest, fees, property damage, and legal fees caused by their Criminal Enterprise to date.   Steadfast is also owed treble damages, costs of filing the lawsuit, and reasonable attorney's fees. 18 U.S.C. § 1962. All of Plaintiff's damages are a direct and proximate result of these acts and the Yale Enterprise, for which all Defendants are jointly and severally liable.  Further, Defendants are jointly and severally personally liable for the Judgment by the Steadfast Parties against 2017 Yale Development, LLC for its loan default, having all used 2017 Yale to perpetrate a fraud on the lenders.

199.    Steadfast is also entitled to divestiture of funds, dissolution, and reorganization of corporations or other business structures, even restrictions on future activities.  18 U.S.C. § 1964(a), (c) (2006), and specifically pleads for T.R.O., appointment of receivers, and prevention of future acts in the fraudulent litigation and against the collateral or Steadfast. But for the delay caused by each Scam in sequence, and the hindrance of the ability to foreclose or sell the collateral deliberately caused by each of Defendants' seventeen scams in sequence, Plaintiff would have incurred no damages.  If Plaintiff had not been wrongfully scammed out of properly foreclosing in 2017, likely even 2018, without the massive accrual of lost interest, taxes, fees, attorney's fees as damages, and the severe dilapidation of the property, then Steadfast could have sold the property for more than its damages.  Only because of the continued sequence of scams, torts, and predicate acts by Defendants in furtherance of the Yale Enterprise did the property's value decrease, and the amount of taxes, insurance, other costs, attorney's fees, lost interest, and other damages increase and accrue to the point where Steadfast has many millions in damages let over even once it is able to sell the property at all.  That sale for full value is <u>still</u> being obstructed by pending appeals and fraudulent lis pendens filed as recently as February 2022.   This pattern constitutes a continuing tort. Plaintiff has also suffered ruined lives, retirements, relationships, and consequential damages in the millions of dollars, in addition to statutory and punitive damages.

## **<u>CONVERSION</u>**

200.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

201.    Plaintiff, would show that 1.) it owned, possessed, or had the right to immediate possession of property, being loaned funds, 2.) that the property was personal property, 3.) that Defendants wrongfully exercised dominion or control over the property, and 4.) Plaintiff suffered injury as a result of Defendants' actions.

## FRAUD, FRAUDULENT TRANSFER, STATUTORY FRAUD, AND FRAUD IN THE INDUCEMENT

202.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

203.    Pleading additionally, or in the alternative, Defendants made false representations to Plaintiff that Plaintiff relied upon to their detriment. Plaintiff suffered harm as a result of the false representations made to it and would not have loaned any money or participated in any transactions with the Defendants if not for those false representations.

## TORTIOUS INTERFERENCE WITH A CONTRACT AND PROSPECTIVE BUSINESS RELATIONS

204.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

205.    Pleading additionally, or in the alternative, to recover for tortious interference with an existing contract, Plaintiff had existing Loans, personal guarantees, Loan Servicing Agreements and Loan Documents, constituting valid contracts subject to interference; (2) Defendants committed willful and intentional acts of interference, including deliberately transferring collateral and conspiring to default and obstruct collection efforts; (3) these acts and others were the proximate cause of the Plaintiff's damages; and (4) that actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d

793, 795–96 (Tex.1995); *Juliette Fowler Homes*, 793 S.W.2d at 664; *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

206.    In the instant case, Defendants willfully and intentionally interfered with valid Loan Service Agreements, deeds of trust, promissory notes, and guaranty agreements, collateral transfers of note and lien, and other Loan Documents, as well as joint defense agreements and attorney – client relationships, making performance impossible or more burdensome, difficult or expensive, which was the proximate cause of Plaintiff's actual damages and loss.  They also interfered with opportunities to sell the property to viable third parties for market value.

## QUANTUM MERUIT

207.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

208.    Pleading additionally, or in the alternative, Plaintiff would show that 1.) Plaintiff provided valuable services, 2.) the services were provided for the Defendants, 3.) the Defendants accepted the services, and 4.) the Defendants had reasonable notice that the Plaintiff expected compensation for the services. *Johnston v. Kruse*, 261 S.W.3d 895, 901 (Tex.App. – Dallas 2008, no pet.).

## CONSPIRACY

209.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

210.    Pleading additionally, or in the alternative, Plaintiff would show that each Defendant was a member of a combination of two or more persons, the object of which

was to accomplish an unlawful purpose, or a lawful purpose by unlawful means, the members had a meeting of the minds on the object or course of action, one of the members committed an unlawful, overt act to further the object or course of action, and the Plaintiff suffered injury as a proximate result of the wrongful act.

## AIDING AND ABETTING

211.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

212.    Pleading additionally, or in the alternative, Plaintiff would show, the primary actors committed torts, the Defendants had knowledge that the primary actor's conduct constituted a tort, the Defendants had the intent to assist the primary actor in committing the tort, the Defendants gave the primary actor assistance or encouragement, and the Defendants' assistance or encouragement was a substantial factor in causing the tort.

## FRAUDULENT TRANSFER

213.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

214.    Pleading additionally, or in the alternative, Plaintiff would show, unbeknownst to Plaintiff, Defendants purportedly conveyed the collateral for Defendants' loan and Deed of Trust numerous times, in an effort to defraud, delay, and hinder Defendants from recovery of the Mortgaged Property.   Such transfer was to an insider, Defendants retained control over the property after the transfer, Defendants were indebted to Plaintiff at the time of the transfer, the transfer was of substantially all of Defendants' assets, and Defendant was or

became insolvent as a result of the transfer. Defendants were aware that Defendant borrowers were insolvent at the time the transfer was made.

## PRINCIPAL-AGENT LIABILITY

215.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

216.    Pleading additionally, or in the alternative, Plaintiff would show that Defendants were acting as agent for each other in making representations and signing agreements with Plaintiff.

## TEXAS CIVIL PRACTICE & REMEDIES CODE § 12.002

217.    Defendants filed in Harris County, Texas, fraudulent court documents, a fraudulent lien release, numerous fraudulent deeds and lis pendens, and/or a fraudulent claim against real property situated in Harris County, Texas, with the intent that the documents or other records fraudulently signed would be relied upon to evidence a valid claim against real property by Defendants and with the intent to cause Plaintiff to suffer physical injury, financial injury, mental anguish, and emotional distress. Plaintiff seeks $10,000.00 or actual damages if greater for each such violation and all costs, fees, exemplary and punitive damages as allowed by Texas Civil Practice & Remedies Code §12.001, et. seq. Pursuant to Texas Civil Practice & Remedies Code 12.002(b), "[a] person who violates [§ 12.002(a)] is liable to each injured person for (1) the greater of: (A) $10,000; or (B) the actual damages caused by the violation; (2) court costs; (3) reasonable attorney's fees; and (4) exemplary damages in an amount determined by the court.

## VICARIOUS LIABILITY, ALTER EGO, PIERCING
## THE CORPORATE AND LLC VEIL

218.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

219.    In the instant case, and pursuant to Section 101.002 of the Texas Business Organizations Code, the corporate form of all of the Yale Enterprise entities should be disregarded as the forms were used as a sham to perpetrate fraud, and the limited liability companies were organized and operated as a mere tool or business conduit of another ("alter ego").  In addition, all members of the Yale Enterprise are jointly and severally liable for the acts of 2017 Yale Development, LLC, including the Final Judgment in favor of the Steadfast Parties and all costs of suit and other present liabilities of Fugedi and 2017 Yale Development, LLC.  Every single one of the Defendant entities was never used for anything other than as vehicles to perpetrate fraud.

## VII.
## APPLICATION FOR APPOINTMENT OF RECEIVER AND TURNOVER

220.    Plaintiff re-alleges and by reference incorporate all allegations in the preceding paragraphs.

221.    The Steadfast Parties seek the appointment of a receiver for all of the Defendant entities, including but not limited to 2017 Yale Development, LLC, 2017 Yale Development GP, LLC, Pabeshan, LLC, Carb Pura Vida, LLC, the Carb Pura Vida Trust, Pabeshan Castle, LLC, Jetall Companies, Inc. Said Parties abused their legal forms and standing and used them as vehicles to defraud Steadfast, the Courts, and the Public.  It appears that Defendant entities have never been used for anything other than fraud.  *See e.g.*, <u>Exhibits 99, 184</u>.    These

Conspirators have all committed fraud on the Courts, filed fraudulent evidence, withheld evidence from discovery, and used their existence to perpetrate fraud. The Steadfast Parties will, in all reasonable probability, prevail in the underlying action. V.T.C. Civil Practice & Remedies Code Section 64.001 et seq. The non-exempt property is in danger of being lost, removed, damaged, or materially injured, as evidenced by Defendants' improper conveyance of the Mortgaged Property in this case and in many other instances of similar schemes against other lenders. A receiver is required to protect and preserve the Non-Exempt Property during the pendency of this suit, and to protect the interest of the Steadfast Parties in the Non-Exempt Property. The Steadfast Parties request that a receiver be appointed and given powers pursuant to Civil Practice & Remedies Code §§ 31.002, 64.031 et seq., 28 U.S.C. § 1292, Federal Rule of Civil Procedure 66. Further, Plaintiff is the beneficiary of a judgment for contractual liability by 2017 Yale, the entity used by all Defendants to perpetrate a fraud on Steadfast and orchestrate the entire Yale Enterprise. All Defendants are personally liable for that judgment as alter ego, conspiracy, piercing the veil, principle-agent, and use of the entity for their personal fraud. In particular, Lloyd Kelley, Michelle Fraga, Brad Parker, and Ali Choudhri admit on tape that they secretly owned this entity and each used it solely to defraud Steadfast, and are therefore personally presently liable for this judgment in its entirety. Under Tex. Civ. Prac. & Rem. Code Ann. § 31.002, Steadfast, judgment creditor, is entitled to aid from this court in reaching the described property of the judgment debtor to satisfy the judgment. This court has jurisdiction to provide such aid. Judgment creditor requests that the court appoint a receiver of the described property and give him/her power to take possession of all assets of the Defendant entities, and sell it and pay it to judgment creditor

to the extent required to satisfy the judgment.  Pursuant to Tex. Civ. Prac. & Rem. Code §

31.002, judgment creditor requests that the court also enter judgment for him/her against

each Defendant for the sum of the Judgment with interest, and as the reasonable costs of

this proceeding in aid of collection of judgment, which sum includes one million, nine

hundred thousand dollars as reasonable attorney's fees and six hundred thousand dollars as

other reasonable costs, to wit: additional taxes accrued on the property.  Plaintiff is entitled

to reasonable costs, including attorneys' fees, pursuant to Section 31.002(e) of the Texas

Civil Practice and Remedies Code. Federal Rule of Civil Procedure 60(b) and parallel state

statutes recognize the inherent power of a court to "relieve a party or his legal

representative from a final judgment, order, or proceeding."  "This rule does not limit the

power of a court to entertain an independent action to relieve a party from a judgment,

order, or proceeding, … or to set aside a judgment for fraud upon the court" at any time.

*Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S. 238 (1944).  Further, a court may

assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for

oppressive reasons.'" *Chambers, Supra* at 45, quoting *Alyeska, supra*, 421 U.S., at 258–

259, (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116

(1974)). *See also Hall v. Cole*, 412 U.S. 1, (1973); *Newman v. Piggie Park Enterprises,

Inc*., 390 U.S. 400, 402, n. 4, (1968) (per curiam). Now new rulings have come out proving

that the Yale Enterprise has done all this not only in this case, but that this pattern is their

actual habit, their actual business model, and that if a receiver is not appointed and justice

done, that it will never stop. *See e.g.,* Exhibit 184.  The Yale Enterprise fraudulently

concealed all of these facts from all Courts for years.  They have waived any conceivable

141

argument against their authenticity or admissibility, even though no such arguments would have ever prevailed.  *See* Wyatt Declaration and MEMORANDUM ON AUDIOTAPES, Exhibit B, and Exhibit 237.  All relief requested herein is properly granted on the affidavits and evidence before the Court. The only hope for the Criminal Enterprise, and the outcome that cannot happen is for Courts to avoid ruling on the merits and sanctioning Defendants' fraud and misconduct, each claiming these issues to be the responsibility of some other court.  The Yale Enterprise has been undisputedly, conclusively proven to have committed fraud directly on each of these Courts, based on proven perjured testimony, proven sham parties, proven fraudulent instruments, and proven frivolous pleadings and arguments in each and every Court.   They cannot be allowed to deliberately create a procedural mess, and then cause justice to fall through the cracks based upon procedural technicalities which they deliberately caused.

## VIII.
## DECLARATORY JUDGMENT

222.    All of the Yale Enterprise used 2017 Yale to perpetrate a fraud, and Choudhri, Parker, Kelley, and Fraga in particular used that entity to defraud Steadfast and the Courts.   Plaintiff seeks declaratory judgment that Defendants Choudhri, Parker, Fraga and Kelley personally caused the loan default by 2017 Yale Development, LLC, through their personal acts of fraud and use of the entity for fraud, and that they are therefore immediately personally jointly and severally liable for Steadfast's existing Final Judgment against 2017 Yale Development, LLC.   Plaintiff requests declaratory judgment that 2017 Yale lacked standing to appeal as a

corporate fiction, and that the entity was used solely to perpetrate fraud upon the Judgment creditors in that suit.

223.    Plaintiff requests declaratory judgment adjudicating that Nicholas Fugedi was never acting as a trustee; that the Carb Pura Vida Trust never existed; that Carb Pura Vida, LLC was a fraudulent entity created and existing solely to perpetrate fraud and that it has no right, title or interest in 829 Yale street property or any trust assets; that Fugedi's acquisition of any right, title, or interest in the property at 829 Yale was ineffective and fraudulent;  that all of the instruments recorded by or on behalf of 2017 Yale Development, LLC, Nicholas Fugedi in any capacity, or the Carb Pura Vida Trust in any capacity, are void, as procured by fraud, including all lis pendens, deeds, correction deeds, affidavits, or other instruments filed by the Yale Enterprise;  that all pleadings of any member of the Yale Enterprise in any Court, which arise from 829 Yale, or 2017 Yale Development, LLC, or the Carb Pura Vida Trust or any trustee, settlor, or beneficiary, or Jetall Companies, Inc., or Transact Title, or relate in any way to the property known as 829 Yale Street were frivolous, founded upon perjured testimony and affidavits, and fraudulent instruments.

224.    Texas law provides three broad theories or circumstances under which corporate existence can be disregarded and shareholders, members, managers, or others abusing the entity structure are held personally liable for corporate or limited liability company debts and obligations[89]:

---

[89] *S.E.C. v. Resource Development Intern., LLC*, 487 F.3d 295 (5th Cir. 2007) (applying Texas law); *Fidelity & Deposit Co. of Maryland v. Commercial Cas. Consultants, Inc.*, 976 F.2d 272 (5th Cir. 1992) (applying Texas law; decided under the Business Corporation Act); *In re Arnette*, 454 B.R. 663 (Bankr. N.D. Tex. 2011) (applying Texas law); *Durham v. Accardi*, 587 S.W.3d 179 (Tex.. App.--Houston [14th Dist.] 2019).

• the entity as the alter ego of its shareholders or members;

• the entity is used for an illegal purpose; or

• the entity is used as a sham to perpetuate a fraud.

225.    Courts disregard the corporate or entity fiction in tort cases: (1) when the fiction is used as a means of perpetrating fraud, (2) where a corporation is organized and operated as a mere tool or business conduit of another, (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation, (4) where the corporate fiction is employed to achieve or perpetrate a monopoly, (5) where the corporate fiction is used to circumvent a statute, and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.[90] Inadequate capitalization is another basis for disregarding the corporate fiction.[91] Obviously, all of the Defendant entities fit the very textbook definition of entities that must be disregarded.

226.    Disregard of the corporate fiction is an equitable doctrine to which Texas takes a flexible fact-specific approach focusing on equity.[92] The underlying purpose of corporate disregard generally is to prevent use of the corporate identity as a cloak for fraud or illegality or to work an injustice. *Id*. These principles all apply to 2017 Yale Development, LLC in this

---

[90] *SSP Partners v. Gladstrong Investments (USA) Corp*., 275 S.W.3d 444 (Tex. 2008); *Wilson v. Davis*, 305 S.W.3d 57 (Tex. App.--Houston [1st Dist.] 2009) (decided under the Business Corporation Act); *Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688 (Tex. App.--Beaumont 2005) (decided under the Business Corporation Act).

[91] *In re Ryan*, 443 B.R. 395 (Bankr. N.D. Tex. 2010) (applying Texas law).

[92] *Wilson v. Davis*, 305 S.W.3d 57 (Tex. App. Houston 1st Dist. 2009) (decided under the Business Corporation Act*). R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc*., 578 S.W.3d 218 (Tex. App.--El Paso 2019); *Richard Nugent and CAO, Inc. v. Estate of Ellickson,* 543 S.W.3d 243 (Tex. App.--Houston [14th Dist.] 2018); *Freeman v. Harleton Oil & Gas, Inc*., 528 S.W.3d 708 (Tex. App.--Texarkana 2017), review denied, (Sept. 28, 2018).

instance.[93]

# IX.
# CONDITIONS PRECEDENT AND DAMAGES

227.    All conditions precedent to Plaintiff's claims for relief have been performed or have

occurred.  As a result of Defendants' aforementioned actions and misconduct, Plaintiff has

suffered damages in excess of the minimum jurisdictional limits of this Court. Defendants'

conduct has directly resulted in the damages to Plaintiff described in this Petition. Further,

Plaintiff has been forced to retain counsel and seeks recovery of reasonable attorney's fees

pursuant to Civil Practice Remedies Code § 37 and 38 et seq., RICO, the Texas statutory

regime set forth above, and otherwise as allowed at law or in equity and as otherwise plead

for herein.

---

[93] *See, e.g., McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590–91 (Tex. App. 2007). Texas courts and other jurisdictions have applied to LLCs the same state law principles for piercing the corporate veil that they have applied to corporations. *See e.g., Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners' Ass'n*, 77 S.W.3d 487, 499 (Tex.App.--Texarkana 2002, pet. denied) (applying corporate alter ego veil piercing precedent in analyzing plaintiff's attempts to pierce veil of LLC); *In re Secs. Inv. Prot. Corp. v. R.D. Kushnir & Co.*, 274 B.R. 768, 775–76 (Bankr.N.D.Ill.2002) (concluding that nothing in statute bars piercing LLC veil on other grounds applicable to corporations); *Hamilton v. AAI Ventures*, L.L.C., 768 So.2d 298, 302 (La.App.2000) (applying corporate veil piercing principles in upholding trial court's piercing of LLC veil to hold member liable); *Kaycee Land & Livestock v. Flahive*, 46 P.3d 323, 327 (Wyo.2002) (holding that, while Wyoming LLC Act was silent as to veil piercing, there was no policy or legal reason to treat LLCs different from corporations in this regard; when LLC has caused damage and has inadequate capitalization, co-mingled funds, diverted assets, or used LLC as a mere shell, individual members are immune from liability. Legislative silence cannot be stretched to condone such an illogical result.). Texas courts have disregarded the corporate fiction and pierced the corporate veil when the corporate form has been used as part of an unfair device to achieve an inequitable result. *See Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986), superseded in part by statute, TEX. BUS. CORP. ACT ANN. ART. 2.21(Vernon Supp.2005). Specifically, courts have disregarded the corporate form when it is used as a sham for perpetrating a fraud. *Id.  In re Giampietro (AE Rest. Assocs., LLC v. Giampietro*), 317 B.R. 841, 848 n.10 (Bankr. D. Nev. 2004); *Kaycee Land and Livestock v. Flahive*, 46 P.3d 323, 328 (Wyo. 2002); *D.R. Horton Inc.-N.J. v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, at *33-36 (N.J. Super. L. Aug. 10, 2005). *Pinebrook Prop., Ltd v. Brookhaven Lake Prop. Owners Ass'n,* 77 S.W.3d 487 (Tex. App.--Texarkana 2002, pet. denied). *McCarthy v. Wani Ventures, A.S.,* 251 S.W.3d 573 (Tex. App.--Houston [1st Dist.] 2007, pet. denied). 376 B.R. 500 (Bankr. N.D. Tex. 2007). *See also In re Moore (Cadle Co. v. Brunswick Homes, LLC*), 379 B.R. 284 (Bankr. N.D. Tex. 2007) (applying corporate reverse veil piercing principles to Texas LLC and stating that whether an entity is a corporation or an LLC is a "distinction without a difference" for purposes of veil piercing); *Arsenault v. Orthopedics Specialist of Texarkana*, No. 06-07-00022-CV, 2007 WL 3353730 (Tex. App.--Texarkana Nov. 14, 2007). Bankruptcy No. 05-95161-H4-7, Adversary No. 06-03415, 2008 WL 2754526 (Bankr. S.D. Tex. Jul. 10, 2008) (mem. op.).

# X.
## ADDITIONAL DAMAGES

228.    Plaintiff further specifically pleads that it is entitled to punitive damages, in addition to actual, consequential, statutory damages, attorney's fees, costs, expenses, and pre-and post-judgment interest.  The limitation on amount of recovery of punitive damages as set out by § 41.008 of the Texas Civil Practice & Remedies Code does not apply to the cause of action pled by Plaintiff in that forgery and fraud is specifically exempted from any limitation on recovery of punitive damages. Since the subject documents are fraudulent, contain forged signatures and/or forged notary public signatures, there is no cap on punitive damages.  Plaintiff seeks pre-judgment and post-judgment interest as allowed by law.

# XI.
## FOLLOWING THE MONEY REVEALS DEFENDANTS' OBVIOUS SCAMS

229.    The following is all of the money that changed hands related to the property at 829 Yale Street:

230.    Steadfast funded its entire $4,200,000 original construction loan balance to its borrower, 829 Yale St., LLC, with Fisher as guarantor, taking a first lien against the property at 829 Yale Street.  Exhibit 1.

231.    Alvarez funded $2,250,000 in loans to 829 Yale St., LLC, with Fisher as guarantor, taking a second lien.  Exhibit 2.

232.    Fisher fell into unrelated financial trouble, so Jetall secretly bribed Fisher with a $100,000 check to have 829 Yale St., LLC give away title to Steadfast 's collateral to Jetall, which is a felony and a loan default, for the purpose of having Jetall interfere with

Steadfast's loan, obstruct foreclosure, extort funds, and split the profits of that scheme with Fisher.  Exhibits 3, 4, 4a21, 4a22.  Fisher abandoned the project.

233.    829 Yale St. used Kelley and others to get a T.R.O. obstructing foreclosure, and the Enterprise swindled a loan workout from Steadfast, Parker posing as supposed owner of 2017 Yale.    Steadfast funded another $1,500,000 of loans arising from that workout to 2017 Yale as borrower, while remaining in first lien position.  Exhibits 11(b), 205 at pg.3. Steadfast paid off taxes, various contractors Fisher stiffed when he abandoned the work, as well as additional construction draws to 2017 Yale.

234.    Ali and Brad Parker secretly gave 2017 Yale to Lloyd Kelley and his company Pabeshan castle.  Exhibit A.

235.    Not one cent of Steadfast or Alvarez' loaned funds were ever paid back.   Exhibit 92.  The Yale Enterprise never paid a single cent for the property either.  Exhibits 35, 35c.

236.    Steadfast was fraudulently induced by the Enterprise (Choudhri, Parker, 2017 Yale) to release another $511,824.21 in construction loan draw funds to 2017 Yale.  Exhibit 55. 2017 Yale never had any money or assets other than the money Steadfast loaned it. Exhibits 35, 35c, 109, 110.  2017 Yale floated its contractors (Exhibit 15), stole over $400,000 of the loaned money, sending it to Fisher, Parker and Choudhri related companies (Exhibit 55), and abandoned the project at 829 Yale instead of paying any of the loans (Exhibits 9, 10, 12, 17, 32, 35, 35c).  2017 Yale wrongfully sent $206,596.46 of that money to Cityscape Rentals, a front for Terry Fisher, run by Allen Fisher, in violation of the Loan Documents (Exhibits 11(a-e), 5).  This theft was in furtherance of their 'MOU' to defraud

Steadfast (Exhibit 4).  2017 Yale sent $140,761.56 to Fisher's other company, KAVAC, LLC.  Exhibit 55.  2017 Yale sent $49,240.58 to Jetall.  *Id*.

237.   It is unknown how many of its own construction contractors 2017 Yale ripped off instead of paying as required, but the following contractors filed M&M liens because the Criminal Enterprise failed to pay them despite having received Steadfast's loan draws for that purpose, and telling Steadfast they had been paid to induce further draws:  Contractors Access Equipment: $36,512.96; Mustang Rental Services: $18,500.64, $7153.39, and $7,713.99; Supply Network d/b/a Viking Supply: $7,438.86; Ferguson Fire and Fabrication, LLC: $6,077.61; Chero-Key Piping Company: $55,000.00.  All of these funds were required to have been paid to these contractors by 2017 Yale using Steadfast's construction loan funds.  Exhibit 15; compare Exhibit 11(e).

238.   Alvarez convinced Steadfast to let him acquire the First Lien via owner financed collateral transfer, so he could have greater control over the litigation, foreclosure, protect his second lien, or finish the project himself and take the profits.  His interest in the first lien remained expressly subject to Steadfast's retention of the original note, and at all times superior rights in the collateral at 829 Yale.  Exhibit 20e; s*ee also e.g.,* Exhibit 213, MSJ No. 4 in the 190th, which was granted and finally adjudicated in Exhibit 92.  Steadfast was always allowed to foreclose on the collateral if 2017 Yale or Alvarez defaulted.  *Id*. "*Counter-Plaintiffs [Steadfast] may commence foreclosure proceedings pursuant to the Deed of Trust together with all other rights and remedies thereunder*."  *Id*, e.g., at pg. 3.

239.   Alvarez paid Steadfast $300,000 for the collateral transfer, and Steadfast financed the rest of the consideration, loaning Alvarez the remaining $5,700,000.  As long as

Alvarez kept the first lien current and paid Steadfast, he could run the litigation against the borrowers and foreclose on the borrower's (2017 Yale's) interest in the property at 829 Yale with Steadfast's consent. *Id*.

240. The Yale Enterprise obstructed foreclosure again with another frivolous T.R.O., filed by Kelley and Fraga, pretending to be lawyers in the case instead of owning the actual borrower, and the Yale Enterprise sued Steadfast and others on countless frivolous claims, all of which they ultimately lost. Exhibit 92.

241. Alvarez also never made a payment, defaulted, and was duped into joining Kelley, Choudhri, and the Yale Enterprise, ultimately costing him everything. Kelley duped Alvarez into giving 2017 Yale his rights in the collateral, releasing his second lien, and releasing Kelley, Fisher, 2017 Yale, Jetall, Ali, etc., from liability, etc.

242. Fraga and 2017 Yale used approximately $220,000 of Alvarez' money to pay property taxes as part of their tax lien scam against the collateral. (admitted by Fraga in open Court and by subsequent pleadings; *see also* Exhibit G).

243. After losing the lien case in the 190th, the Enterprise created the fake Carb Pura Vida trust, and fake settlor and beneficiary, using Herman and Elberger, and Lopez. They paid Fugedi $5,000 to be the fake trustee. Exhibit 86(v). Kelley paid Alvarez a $251,301 bribe to get him to participate in the scam, and executed the fraudulent and void lien release. Exhibit 86(q). They used Transact Title, First American, Umitaya, Mansoor, etc., to create a fraudulent title policy, for the purpose of inducing Alvarez into thinking his lien release was legitimate, and to defraud the Federal Court in Galveston into thinking there must be something legitimate to the fake trust if a title company issued such a policy. Exhibits

86(a-v).    Kelley paid the bribe to Fugedi, and the bribe to Alvarez - and whatever they gave Lopez, Elberger, etc., to participate in the scam. Exhibit 86(v).    Kelley also paid Transact Title $16,145 to fabricate the fake closing and fraudulent policy. *Id*.  Kelley paid the Law Offices of Ed Herman, PLLC $5,000 to fabricate the fake trust and trust settlor and beneficiary entity. *Id*.  Kelley paid his secretly owned company 2017 Yale $23,699 to participate in the fraudulent transfer.   *Id*.  Kelley paid all the Criminal Enterprise lawyers. Exhibits B(a-c).

Kelley:        *"All of that is being held together because of me.  All these lawyers are working for me."* B(B) 14:00; B(B) Pg.23, Ln.18-20.
*"I want to send a trust -- a piece of this case -- a piece of the company so those lawyers can get paid."* B(A) Pg.42, Ln.20-22.
*"…Ramey owns the whole thing and we're done… I'm spinning my wheels with a whole lot of lawyers and it's over.* B(c) Pg.13, Ln.10-14.
*I can just focus on…2017 Yale, which I've got [Fraga]in…You haven't spent a fucking dime, Ali.*  B(A) Pg.31, Ln.13-19.

244.    Steadfast and Alvarez having been robbed of over eight million dollars, the only money that Defendants, the Yale Enterprise, Choudhri, Jetall, 829 Yale, Fisher, Kelley, Parker, 2017 Yale, Fugedi, or the trust ever paid at any point during this entire scheme was the $100,000 bribe to Fisher, the $5,000 bribe to Fugedi, and the $251,301 bribe to Alvarez - and whatever they gave Lopez, Elberger, etc., and the other lawyers and people to participate in the scam.  Kelley also paid Transact Title $16,145 to fabricate the fake closing, and apparently First American received $13,955.  Kelley paid the Law Offices of Ed Herman, PLLC $5,000 to help fabricate the fake trust, settlor and beneficiary and participate in the fake closing.   Kelley apparently also paid his own secret company 2017

Yale $23,699 to participate in the fraud.  Exhibit 86(v).    They never paid a cent for the property or to the lenders.

## XII.
## "WHO DID WHAT" SUMMARY PROVES EACH DEFENDANT'S CONTRIBUTIONS TO THE CRIMINAL ENTERPRISE

245.    Plaintiff's original Petition was clearly sufficient, but this amendment addresses all issues raised by Defendants' to date, no matter how spurious.  Rule 9(b) must be read as part of the entire set of rules, including Rule 8(a)'s insistence upon "simple, concise, and direct" allegations.  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

246.    Defendants' Rule 12 Motions and frivolous sanctions threats are demonstrably groundless by review of the Original Petition and the evidence cited therein and provided to the Court.    As predicted, their deliberately deceitful and complex pleadings are calculated to confuse, but any review of the Petition side by side with the Exhibits cited remove any doubts about this case, which is already proven even prior to discovery.  The nature of each Defendant's participation in the Yale Enterprise is clear from the Original Petition, including the timeline and Exhibits filed therewith, and all threatened sanctions and dismissal motions are obviously baseless.

247.    All pleadings, allegations and evidence cited in the Original Petition are re-incorporated herein without further reference into the section for each Defendant below. The summaries below are simply to outline in the simplest terms the very basic grounds for each Defendants' liability, all of which is clear from the prior Petition and previous paragraphs herein in greater detail.

248.    Follow the actual evidence, and the case is clear.  If one instead follows the thousands of pages of false allegations, deceptive pleadings, and red herrings filed by Defendants in their motions, ignoring the actual evidence, only then might things become cloudy.  This is by design.  Defendants have already filed baseless motions for frivolous relief exceeding a thousand pages of disinformation, and the case could seem complicated, when it is actually very simple. They cite no evidence contradicting Plaintiffs' evidence. Plaintiff's case is already proven.  The Court need only review the evidence.

249.    In order to help the Court do so, Plaintiff has amended this Petition with a very brief additional summarization of each Parties involvement, which together with the timeline, and Exhibits previously cited, and every other mention of each particular Defendant herein, render the liability of each Defendant extremely clear, as well as their role in the Yale Enterprise more than sufficient to meet the Federal Rules of Civil Procedure:

250.    **829 Yale St., LLC** was the original borrower from Steadfast, receiving $4.2 million dollars of Steadfast's money.   When its owner, Fisher, realized he was going to go bankrupt on all his projects due to unrelated mistakes and other defaults, 829 Yale commenced the Yale Enterprise by secretly giving away a deed to Steadfast's collateral to Defendant Jetall for the purpose of extorting money from Steadfast.  Exhibits 1, 3, 4, 4a21, 4a22.  829 Yale did so for no consideration other than the $100,000 bribe from Jetall, and the agreement to tortiously interfere with and extort money from Steadfast and other lenders and split the profits.  This conveyance was a felony and loan default, as well as conversion, tortious interference, conspiracy, and numerous other causes of action.  *See also* actions of Fisher below.  This action commenced the Yale Enterprise and but for this transaction, Plaintiff would have

suffered no damages.251.    **Terry Fisher** owned the original borrower from Steadfast, 829 Yale St. LLC, receiving $4.2 million dollars of Steadfast's money and personally guaranteeing that loan.   When Fisher realized he was going to go bankrupt on all his projects due to unrelated mistakes and other defaults, he commenced the Yale Enterprise by secretly causing 829 Yale to give away a deed to Steadfast's collateral to Defendant Jetall for the purpose of extorting money from Steadfast.   Exhibits 1, 3, 4, 4a21, 4a22.   Fisher took a $100,000 bribe from Jetall to form the Yale Enterprise, and Fisher, his son, and his other companies received stolen loan money from Steadfast's loan from his conspirator 2017 Yale, pursuant to their agreement to tortiously interfere with and extort money from Steadfast and other lenders and split the profits.   *Id*. Fisher executed the fraudulent conveyance deed.   *Id*. This conveyance was a felony and loan default, as well as conversion, tortious interference, conspiracy, and numerous other causes of action.   Fisher used 829 Yale and his other entities to perpetrate fraud against Steadfast and is personally and vicariously liable for the actions of these entities as well as the damages caused thereby.    Fisher also owned and controlled Defendants Assurance Home Warranty, Cityscape Rentals, the KAVAC entities and other entities that received and benefitted from the funds stolen from the Steadfast loan by 2017 Yale and distributed to him and his companies in violation of the Loan Documents and the Texas Penal Code, in excess of $400,000, *supra*.   Fisher and 2017 Yale concealed from Steadfast that they were using the money that was supposed to pay real construction contractors for work they were doing, and instead paying the money to Fisher's companies pursuant to the MOU, Exhibits 4, 4a21. Fisher did not disclose that he and his son owned these companies, nor that they were receiving the loan money illegally.   Fisher also tortiously

interfered with Steadfast's Loan, sales agreements, and prospective sales agreements, and hindered Steadfast's ability to complete the sale or construction of the collateral, by converting Steadfast's project documents, plans, permits, and specifications necessary to complete the project, (*See* Deed of Trust and Substitute Trustee's Deed proving ownership of these documents by Steadfast, Exhibits 1, 97 at pgh.3) and interfering with the City of Houston permitting,  architect and other vendors.  Fisher threatened to and has acted affirmatively to "*sink the project*" out of spite.  Exhibit 107, pg. 127 (pg. 5 of pdf), Exhibit 185, obstructing Steadfast's ability to recover the value of its collateral. Fisher also trespassed on the collateral property by forcible entry and stole property of Steadfast from the premises. Fisher perjured himself in deposition on numerous occasions to attempt to aid the Yale Enterprise, including for example (*Id*) to continue to conceal the true nature of the MOU (Exhibit 4), deliberately lying about the fact that the MOU had actually been executed and the extortion scheme commenced (Exhibit 4a21); he lied claiming that he received no consideration for the fraudulent transfer deed to Jetall, when he instead took a $100,000 bribe (Exhibit 4a22);  he lied to continue to conceal the fact that Parker did not actually own 2017 Yale (*Id*.), the list goes on.  Fisher's perjury proximately caused years of delay in selling the property, years of delay in foreclosing, and millions of dollars in legal fees and lost interest. But for Fisher approaching Choudhri and taking the bribe to commence the Yale Enterprise, and assisting with the rest of the scams against the property and Steadfast,  none of the scams would have moved forward and Plaintiff would have suffered no damages.

251.    **Defendant JETALL Companies, Inc**. knew that Fisher and 829 Yale St. LLC was the original borrower from Steadfast, receiving $4.2 million dollars of Steadfast's money.

Jetall knew full well that taking title to the collateral without paying for it, without the lender's consent, and without paying the loan was a felony, loan default, and fraudulent transfer. Jetall concealed the transaction, and the $100,000 bribe Jetall paid to Fisher, as well as their intent to extort Steadfast and the other parties from Steadfast, the Courts, and third parties. Jetall knew Fisher was going to go bankrupt on all his projects due to unrelated mistakes and other defaults. Jetall commenced the Yale Enterprise by secretly taking a deed to Steadfast's collateral to Defendant Jetall for the purpose of extorting money from Steadfast. Exhibits 1, 3, 4, 4a21, 4a22. Jetall paid no consideration other than the $100,000 bribe to Fisher, and the agreement to tortiously interfere with and extort money from Steadfast and other lenders and split the profits. This conveyance was a felony and loan default, as well as conversion, tortious interference, conspiracy, and numerous other causes of action. *See also* actions of Fisher below. This action commenced the Yale Enterprise and but for this transaction, Plaintiff would have suffered no damages. Jetall also fraudulently induced the loan workout by promising to use its false "$250 million in real estate assets" to quickly refinance Steadfast's 2017 Yale Loan, after a short bridge period. Exhibit 150a21. Jetall also received nearly $50,000 stolen from the Steadfast loan by 2017 Yale. Exhibit 55. Jetall also interfered with whistleblowers providing evidence and documents about the transaction, deliberately attempting to tamper with them as a witness and prevent him from disclosing the Yale Enterprise's fraud. But for Jetall's actions set forth herein, Plaintiff would have suffered no damages.

252. **Defendant Ali Choudhri** owns Jetall, and personally helped cause and contributed to each of the seventeen scams. Choudhri has become infamous for real estate fraud, vexatious

litigation, perjury, obstruction of discovery, fraudulent evidence, and using fake fronts to

defraud lenders.

"Choudhri [with Kelley and Fraga as 'counsel'] *engaged in numerous tactics designed to improperly delay and obstruct this arbitration...Choudhri tried to hide his true ownership and involvement... [and] installed his alleged girlfriend, as the "front"....Under oath, Choudhri denied having ownership or involvement with Dalio I when it purchased the...Note and when it foreclosed...Choudhri owned and controlled both entities to the agreements...Choudhri ...planned and orchestrated his fraudulent foreclosure scam to deprive...creditors of the Property and its equity....Mokaram incurred fees and expenses to obtain documents from third parties which Respondents should have produced, but did not produce, including documents showing Choudhri was actually the beneficial and defacto owner ...."* Exhibit 184.

"Choudhri repeatedly lied under oath and... caused multiple documents to be fabricated *after the fact, and ...unlawfully withheld evidence to ... to hide his wrongful conduct... [Choudhri] refused to participate ... in necessary discovery...."* Id.
"*...there is* clear and convincing evidence that [Choudhri's] conduct was knowing, intentional and malicious, that they acted with malice and intent to defraud, and ... had a specific intent to cause substantial harm or injury to [their] creditors...."

"....*it is apparent* Choudhri will continue to do what he can to deprive TXR and its members of the value, if any, of the Property and their investments." *Id.*

A District Court recently ruled that a Receivership must be imposed on the Yale

Enterprise parties as the only way to put a stop to their fraud - the same pattern:

"*The documents and purported agreements asserted [by] Mr. Ali Chaudry [Choudhri]...are invalid, probably fraudulent....*" *[Choudhri and conspirators] are attempting to orchestrate an improper transfer of Grove Enterprises, LLC...in violation of...the recorded secured lien of [its lender]...*"* [just like their fraudulent transfer of the borrower to Kelley and the collateral to Fugedi] Exhibit 194.

Less than two minutes of judicially admitted video and audio recordings of Lloyd

Kelley, Ali Choudhri, and Brad Parker prove Choudhri's liability, as set forth in this

PowerPoint link, slides 3, 4, 6, 7, and as quoted below:

https://www.dropbox.com/s/uhss354y0305tfq/Motion%20to%20Appoint%20Receiver%2C%20release%20bond%2C%20discovery.pptx?dl=0

Steadfast's loan, and 2017 Yale, and Fugedi's claims, defenses, and evidence were all induced by and predicated upon Brad Parker's fake ownership of 2017 Yale:

| | |
|---|---|
| *KELLEY:* | *"… I told you this is no good if Brad's out of the picture.  No good.  if Brad doesn't have ownership, these claims are worthless.*  Exhibit B(c), Pg. 3-5. |
| ***Choudhri:*** | ***"Brad never had ownership"*** Exhibit B(c) *0:19* |

New evidence concealed from this Court by the Enterprise proves that Choudhri secretly owned 2017 Yale when it induced the loan from Steadfast, stole the money, and commenced its loan defaults.  Kelley secretly owned 2017 Yale when 2017 Yale finally defaulted on payment in November of 2017, resulting in the Judgment on the note in the 190th.  Both bribed Parker to be their "front man."  They gave Fraga an interest, and personally caused the loan defaults and 2017 Yale's fraudulent transfer of Steadfast's collateral to the fake Fugedi Carb Pura Vida Trust:

| | |
|---|---|
| ***Ali Choudhri:*** | ***"you knew because of my divorce, who owned 2017 Yale from the outset… *** *24:09…. I had Brad as my proxy in front.*** ** B(A) 24:24. |
| Lloyd Kelley: | *"I OWN 2017 Yale!*  B(A) 5:13. |
| ***Ali Choudhri:*** | ***"why did you have Brad testify that he owns and controls?"*** *B(A) 22:24.* |
| Kelley: | *"I don't give a fuck what Brad testified to!"*  B(A) 22:28. *"because its MINE!  Because 2017 Yale was mine, not yours!"*  B(A) 33:17. |
| Kelley: | *"Brad was a front guy"* B(A) 31:03. |
| ***Choudhri:*** | ***"You knew that all along"*** B(A) 31.04. ***"Why did you let brad testify …?"*** B(A) 29:57. |
| Kelley: | *"He just testified that he was the authorized rep, that's all he testified to."  B(A) 5:40.  "He didn't testify he owns it, he said I'm an authorized agent"* |
| ***Choudhri:*** | ***"That's not what he said, Kelley, you told him to say that he owns it…"*** B(A) 31:03. |
| Kelley: | *"He never said the word owns"*  B(A) 24:24; Pg. 36, 43-5. |
| ***Choudhri:*** | ***"Yes he did, you told him to say that he owns it and he manages it… You told him to say that. Lloyd, I'm telling you, you said that"*** B(A) 31:14, *Id.* |
| ***Choudhri:*** | ***"you wanted Brad to testify that to be representative for 2017, you did not want 2017 Yale to show…."*** Exhibit B(A) 5:25. |
| Kelley: | *"Brad didn't want to show up, and you talked about giving Brad 5% or 10% which I thought was a great idea, so he's getting his 5 or 10%, so he stays in"* Exhibit B(A)*3:41.* Pg.7-8. |
| *KELLEY:* | *"… I told you this is no good if Brad's out of the picture.  No good.  if Brad doesn't have ownership, these claims are worthless.*  Exhibit B(c), Pg. 3-5. |
| ***Choudhri:*** | ***"brad never had ownership"*** Exhibit B(c) *0:19* |
| ***Choudhri:*** | ***"transferring the property to the trust was stupid.  I did it because you forced me to do it."***  Exhibit B(A), P.49 Ln. 1-5. |

| | |
|---|---|
| *Kelley:* | *"Because 2017 Yale was mine!" Id.* |
| **Choudhri:** | **"You don't own 2017 Yale, I didn't agree to even transfer the interest that you told me to transfer to the fucking trust, I thought that was a stupid idea, in the middle of trial, transfer the property."** B(A) 7:20. |
| *Kelley:* | *"it was a brilliant idea!"* B(A) 7:23. |
| **Choudhri:** | **"how is the trust, the pura vida or whatever it is, gonna deed the property back to me? How is that going to happen?... I thought we were moving it to protect it and it would be deeded back"** |
| *Kelley:* | *"we moved it so that* **[Steadfast]** *couldn't get it."* Exhibits B B(B) 11:18; Pg. 19-20. |

Play the audio via the link above. *See also* Wyatt's whistleblower DECLARATION OF AUTHENTICITY and MEMORANDUM ON ADMISSIBILITY, Exhibit B. Further, *see* 5th Circuit Motion to Dismiss and for Just Damages pleadings, admitting these tapes without controversion of their authenticity, essentially "Pleading the 5th." This evidence is all judicially admitted. This evidence was fully briefed by all sides, including three briefs by the 2017 Yale parties, and they could not argue against admissibility of the tapes. They have waived any claims or defenses relating to these tapes. Exhibit B and MEMORANDUM, *supra*.

Fugedi was not honestly involved at all, the only place he appears in any of the fraudulent transfer documents is the HUD showing he was bribed with $5,000.00. Exhibits 86(a-v), G. *See Also* Whistleblower Exhibit A, the secret Assignment to Kelley in October of 2017, concealed from Steadfast and this Court despite document production requests, motions to compel, and deposition questioning. Kelley, Fraga, Parker and Choudhri's tapes make this clear: "*We moved it so that [Steadfast] couldn't get it.*"

Choudhri, Kelley and Fraga are the real parties in interest, not 2017 Yale, Fugedi or the Carb Pura Vida Trust:

| | |
|---|---|
| *Kelley:* | *"All of that is being held together because of me. All these lawyers are working for me."* B(B) 14:00; B(B) Pg.23, Ln.18-20. |
| | *"I want to send a trust -- a piece of this case -- a piece of the company so those lawyers can get paid."* B(A) Pg.42, Ln.20-22. |
| | *"...Ramey owns the whole thing and we're done... I'm spinning my wheels with a whole lot of lawyers and it's over.* B(c) Pg.13, Ln.10-14. |
| | *I can just focus on...2017 Yale, which I've got [Fraga]in...You haven't spent a fucking dime, Ali.* B(A) Pg.31, Ln.13-19. |

Contrast these admissions with Parker's perjured 2017 Yale testimony, Fraga and Kelley acting as his lawyers:

"*How is 2017 Yale affiliated with Jetall?*
**[Parker, Kelley and Fraga pretending to be his lawyers]** *"I'm affiliated with Jetall, and I own the company.* Exhibit 35, Pg.35-6.
"*Who is Yale development GP LLC?*"
*"It's an affiliated company….one is tied to the other.* **I own both entities.**" *Id* at Pg. 234.

"*Are there any other members of either LLC?*"
*"No. I'm -- **I'm the sole member of both.**"* *Id.*
"*… your expectation is not to share a penny of that with Ali or anybody else?* **I don't know how many more times I can answer this. I've said no consistently. The answer is no. It's my entity.**" *Id* at 115.

### Choudhri also perjured himself in Kelley and Fraga's presence:

*Q. "You're affiliated with 2017 -- MS. FRAGA: Objection. Form. – Yale"*
*A. CHOUDHRI: "No."*
*Q. "Do you have any right to control anyone that's associated with 2017 Yale Development LLC?"*
*A. "No." MR. KELLEY: Objection Form…MS. FRAGA: Objection Form.*

Deposition of Ali Choudhri, Pg. 209-210, Exhibit 120.

Choudhri knew and intended, and bribed Parker to commit fraud and perjury. Choudhri was a mastermind and participant in the entire Yale Enterprise, and actively partook in all seventeen scams. Choudhri knew and intended that Kelley would defraud Steadfast once he owned 2017 Yale. Choudhri personally instructed 2017 Yale to default and steal the loan money. Choudhri personally instructed 2017 Yale and Kelley to file the frivolous litigation. Choudhri received stolen loan money from 2017 Yale. Choudhri admits that Parker knew about the money stolen from 2017 Yale. Exhibit 154a21, Wyatt 0431. "*We need written details on money transfers from Yale and JETALL. Brad knows this info" Id.* Choudhri admits that he, Parker and Alvarez engaged in and approved the fake trust transfer agreement three days prior to the fraudulent release and deed recordation. Exhibit 154a21Wyatt 000104. Choudhri admits that Parker signed affidavits for Yale on his authority, and that he, Jetall, and Parker controlled the funds stolen by 2017 Yale. Exhibit 154a21, at pdf pg. 3, Wyatt 0384. Choudhri admits that he and Lloyd are paying

Fraga to participate in the Yale Enterprise.  Exhibit 154a21, Wyatt 3069.  Obviously Parker's testimony claiming to know nothing about the conveyance was perjured.  Exhibit 102, *supra*.  But for Choudhri's actions set forth herein, Steadfast would have foreclosed in 2018 and Plaintiff would have suffered no damages.

253.  **Defendant Brad Parker** was the C.F.O. of Jetall, and personally helped cause and contributed to each of the seventeen scams.  Parker has become infamous for real estate fraud, vexatious litigation, perjury, obstruction of discovery, fraudulent evidence, and using fake fronts to defraud lenders.  Parker's fake contribution as a front man was critical to the entire Yale Enterprise and all seventeen scams, as well as the defrauding of other parties, including Choudhri's wife.

| KELLEY: | *"… I told you this is no good if Brad's out of the picture.  No good.  if Brad doesn't have ownership, these claims are worthless.*  Exhibit B(c), Pg. 3-5. |
| **Choudhri:** | **"brad never had ownership"** Exhibit B(c) *0:19* |

Choudhri admits that he and Lloyd are paying Parker, Fraga and others to participate in the Yale Enterprise.  Exhibit 154a21, Wyatt 3069.  Obviously Parker's testimony claiming to know nothing about the conveyance was perjured.  Exhibit 102, *supra*. Choudhri admits that Parker signed affidavits for Yale on his authority, and that he, Jetall, and Parker controlled the funds stolen by 2017 Yale.  Exhibit 154a21, at pdf pg. 3, Wyatt 0384. *"We need written details on money transfers from Yale and JETALL. Brad knows this info" Id.*  Choudhri admits that he, Parker and Alvarez engaged in and approved the fake trust transfer agreement three days prior to the fraudulent release and deed recordation. Exhibit 154a21Wyatt 000104-5.

Parker perjured himself repeatedly claiming to own 2017 Yale, and fraudulently inducing the loans. Parker personally stole Steadfast's loan money and gave much of it to his wife and her company. Parker stole other money and gave it to Jetall, Choudhri, himself, or Fisher's entities, including Cityscape, Assurance, and KAVAC. Parker lied to the Court about the fake trust transfer. Parker executed the secret assignment to Kelley, which is a crime, a fraudulent transfer, and a loan default. Parker executed the fraudulent transfer deeds, as well as the fraudulent correction deeds, and the fraudulent tax lien assignments, participating in the tax scam. Parker defrauded the Courts with fake affidavits and testimony. Parker personally attended meetings about the fraudulent fake trust transfer. Parker deliberately faked his ownership the entire time and defrauded all of the Courts, and was integrally involved in all seventeen scams. Parker fraudulently formed 2017 Yale and 2017 Yale Development GP, deliberately concealing its true ownership and management, and committed numerous crimes and torts as set forth herein. But for Parker's predicate acts, Steadfast would have never loaned the money, and would have never suffered damages even if it had. If Parker had disclosed that he was a fraudulent front at any time, Plaintiff would not have suffered damages. Plaintiff could have immediately foreclosed for the default back when its collateral was worth far more than the note balance. But for Parker's actions set forth herein, Plaintiff would have suffered no damages. Plaintiff would have never loaned the money. Its money wouldn't have been stolen. It would have foreclosed and sold the property before its value declined below Plaintiffs' damages.

254.   **Defendant 2017 Yale Development, LLC** is Steadfast's borrower under the note, which stole construction loan money, defaulted in every way possible, and owes Steadfast a judgment for the default for over ten million dollars now.   Exhibit 92.   2017 Yale (and Parker, Choudhri, Kelley, and Fraga, its owners) knew full well that the secret transfer to Kelley was a fraudulent transfer, loan default, and felony.   2017 Yale is responsible for all of the acts of Choudhri, Kelley, Fraga, and Jetall in this case, and Kelley, Fraga, Choudhri, and Parker are all personally liable for the existing judgment against 2017 Yale for having used 2017 Yale as their personal vehicle for fraud and to benefit personally from the Yale Enterprise.   2017 Yale also knew that its transfer of collateral to Fugedi was a fraudulent transfer, and that Fugedi could only take subject to paying of Steadfast's lien.   2017 Yale was involved integrally in all seventeen scams.   2017 Yale fraudulently induced the loan, stole the loan money, defaulted on the notes, executed the tax lien scam, filed the frivolous litigation, executed the fake trust scam, perjured itself, and was the vehicle for the entire Yale Enterprise. But for 2017 Yales' actions set forth herein, Plaintiff would have suffered no damages. Plaintiff would have never loaned the money.   Its money wouldn't have been stolen.   It would have foreclosed and sold the property before its value declined below Plaintiffs' damages.

255.   **Defendant 2017 Yale Development GP, LLC** was the purported manager of 2017 Yale and is liable exactly as set forth above for 2017 Yale Development, LLC. Further, Kelley, Parker, Choudhri, and Fraga are all vicariously liable and alter egos of this company as well.   But for 2017 Yales Development GP's actions set forth herein, Plaintiff would have suffered no damages.

256.   **Assurance Home Warranty Group, LLC** is a company owned and controlled by Allen and Terry Fisher to perpetrate fraud on Steadfast by posing as a legitimate contractor, and receiving money stolen from the Steadfast Loan which was required by the Loan Documents to be used to pay 2017 Yale's legitimate construction contractors.  Exhibits 11€, 55.  The Fishers concealed their ownership of this company from Steadfast.  Assurance stole $60,000 from the Steadfast Loan.  *Id*. But for this Defendants' actions set forth herein, Plaintiff would have suffered no damages from stolen loan money.  All of these Fisher entities concealed known facts about the Yale Enterprise and received the benefits by wire and email from the Enterprise, and are all liable for Plaintiff's damages.

257.   **Cityscape Rentals, LLC** is a company owned and controlled by Allen and Terry Fisher to perpetrate fraud on Steadfast by posing as a legitimate contractor, and receiving money stolen from the Steadfast Loan which was required by the Loan Documents to be used to pay 2017 Yale's legitimate construction contractors.  Exhibits 11e, 55.   The Fishers concealed their ownership of this company from Steadfast.   Cityscape stole $206,596.46 from the Steadfast Loan.  *Id*.  But for this Defendants' actions set forth herein, Plaintiff would have suffered no damages from stolen loan money, and if Steadfast had known, would have foreclosed in 2018.

258.   **KAVAC Holding Company, LLC**, is a company owned and controlled by Terry Fisher to perpetrate fraud on Steadfast by posing as a legitimate contractor, and receiving money stolen from the Steadfast Loan which was required by the Loan Documents to be used to pay 2017 Yale's legitimate construction contractors.  Exhibits 11e, 55.   The Fishers concealed their use of this company to continue to steal money from Steadfast after the 2017

Yale workout.    KAVAC stole $ 140,761.56 from the Steadfast Loan.  *Id*. But for this Defendants' actions set forth herein, Plaintiff would have suffered no damages from stolen loan money.

259.    **Kavac Holdings, LLC** is a company owned and controlled by Terry Fisher to perpetrate fraud on Steadfast, as manager of KAVAC Holding Company, LLC,  by posing as a legitimate contractor, and receiving money stolen from the Steadfast Loan which was required by the Loan Documents to be used to pay 2017 Yale's legitimate construction contractors.  Exhibits 11e, 55.   The Fishers concealed their use of this company to continue to steal money from Steadfast after the 2017 Yale workout.   KAVAC stole $ 140,761.56 from the Steadfast Loan.  *Id*.  But for this Defendants' actions set forth herein, Plaintiff would have suffered no damages from stolen loan money.

260.    **Defendant Nicholas Fugedi, individually and as Trustee of the Carb Pura Vida Trust** is the fake trustee bribed by Kelley to pretend to be a trustee.  Exhibits B(a-c), G, 86(v). Kelley and the Yale Enterprise concocted the scheme "as a stratagem to avoid Steadfast's judgment and foreclosure.  Exhibit G.  Fugedi never paid a dime for anything, was not involved at all in setting up the fake trust, never contacted Steadfast, was not on any of the formation emails, never set foot on the property, did not attend any closing, never came to Texas, never appeared in any trial or hearing, Fugedi is a friend of Kelley.  *Id*. *See also* Exhibit 102, Trial Transcript from 115005.  He lives in Michigan and was chosen to manufacture diversity for Kelley's forum shopping scam to get the frivolous quiet title case into Galveston federal court.  Yet he filed multiple fraudulent lis pendens, and deeds which were recorded and filed in state and federal courts for the purpose of perpetrating the Yale Enterprise's

fraudulent schemes. *See e.g.,* <u>Exhibits 86(o), 96, 163, 183, 193</u>, and filed a perjurious declaration in support of a frivolous motion for summary judgment in state and federal courts, attempting eviction and quiet title. <u>Exhibit 121</u>. Fugedi's affidavit falsely claims that he is the Trustee of the Carb Pura Vida Trust. *Id.* He never signed the trust agreement because the 190h and Steadfast busted this scam and Alvarez backed out. <u>Exhibits 86(j), 86(r), 102, G</u>. A trust cannot exist without a signed trust agreement.

The sole purpose of the trust was so that Choudhri, Kelley, Parker, Fraga could "move it so that Steadfast couldn't get it" and so that they could "get it transferred back" after defrauding Steadfast using the fake evidence to win the fraudulent quiet title suit. <u>Exhibits B(a-c)</u>.

Elberger and Norma Lopez didn't just suddenly decide to create Carb Pura Vida, LLC for their own purposes, and make it the settlor and beneficiary of a trust.  They didn't fund the settlor LLC with millions of dollars to buy the property from some random seller, 2017 Yale (it was not funded at all).  The property was not listed for sale.  They didn't just happen to want to buy this particular property, and put it in the 'Carb Pura Vida Trust' for their own benefit (they never even created the trust).   They didn't really just hire some random guy out of Michigan named Fugedi to be their trustee.  They didn't have Fugedi buy the property for millions of real dollars from 2017 Yale, for their own benefit, totally ignorant of Steadfast's lien (though they were on binding constructive notice anyway – *Westland*, T.P.C. 13.002).

It wasn't just coincidence that they all rushed to create these entities and conduct this sham transaction right after Kelley, Patterson and Fraga lost the summary judgments against 2017 Yale.  It is not just a coincidence that they are all friends of Lloyd Kelley, who got them

all together (except Fugedi himself) for drinks, and circulated all these fake documents among them all.  It isn't coincidence that Choudhri, Kelley, Parker, Fraga just happened to own and control 2017 Yale also.

An objective observer might wonder why Fugedi and the fake trust and beneficiary didn't sue Parker and 2017 Yale, and their lawyers, for failing to disclose that the property they 'bought' 'so innocently' was subject to a valid first lien after they were foreclosed upon!? Interesting that when they found out that 2017 Yale had JUST LOST THE LIEN DEFAULT CASE validating Steadfast's lien, and 2017 Yale didn't tell them about it, they didn't complain a bit.  No claims or suits.  Interesting that they didn't sue Kelley, Fraga and Choudhri when they 'found out' that these parties actually secretly owned their grantor in title and 'never told the buyers?'    Interesting that they didn't sue First American, Transact Title, Umatiya, Chaudhry, Brobisky, all the Title Policy Defendants, who gave them such a clear title policy after they were foreclosed upon and lost the title suit from an 'unscheduled' lien? They got foreclosed on and lost a title suit by a prior recorded lien not excluded by the policy.

Funny how Choudhri, Parker, Kelley and Fraga didn't mention the trustee or beneficiaries in their tapes on how "_we moved it so Steadfast couldn't get it_", _supra_.  Kelley Fraga and Choudhri do not have a reputation for being so generous as to just give away a multimillion-dollar property to Norma Lopez and Elberger as managers and members of the trust beneficiary, and then hire fourteen lawyers including two former Texas Supreme Court justices to file tens of thousands of pages of pleadings, for years, costing millions of dollars, for their benefit.

Surely Fugedi, as a 'true fiduciary' for his 'innocent beneficiaries', has a duty to attempt collection from the seller parties and attorneys that 'deceived him' about identity of the 'seller' 2017 Yale, the seller's recent loss of the lien trial, and the existence and validity of the foreclosing lien after they lost the property in foreclosure, and lost their quiet title claim? Seems like a receiver for the trust beneficiary might want to look to sue Fugedi, Kelley, Fraga, Parker, Choudhri, and all the attorneys and Title parties.

Mr. Fugedi perjured himself claiming "*I purchased the property at its appraised value*". Exhibit 121. This is a joke- neither he nor the trust ever paid a dime for anything other than the bribes to Alvarez, Elberger, Lopez, Herman, and whoever else they secretly paid - and that money came from Kelley. There was never even a signed note or other fake document. The fake seller received nothing for the fraudulent transfer deed. These facts were already adjudicated during the quiet title case. Fugedi signed and emailed and filed numerous fraudulent documents.

Fugedi admits to active participation in the First American/Transact Title fraudulent title policy scam, claiming: "*I had a title report run on the property which did not disclose the Steadfast group's now asserted claim*." *Id*. All of the Defendants were fully aware of the CTNL, that it was recorded, that it preserved Steadfast's valid first lien, and were fully aware that the 190th had already adjudicated that Steadfast's valid first lien was valid, in default by 2017 Yale (his grantor), without excuse. "*I closed the transaction through a title company and was provided title insurance for the purchase of the Property from 2017 Yale Development LLC in the summer of 2019*." *Id*. Fugedi was an active conspirator in the felony predicate acts alleged above and the torts related to the trust transfer. Fugedi was integral to

167

all of the scams related to the fake trust, and but for his participation and acts alleged herein, Steadfast would have foreclosed in July of 2019 and been able to immediately sell or develop the property free and clear, without damages caused by delay, dilapidation, fees, costs, taxes and the other damages alleged.

### *Fugedi Deposition Testimony*

Fugedi doesn't know why he is a trustee, who named the trust, why the trust was formed or why it wanted the property, who the supposed seller was, where the money came from or went for the trust or the fake property transaction.  He  never set foot on the property, or even saw it until years after his frivolous suits were filed in his name.  He didn't know who he sued or why, nor has he read the pleadings.  He claimed not to know that Steadfast loaned millions of dollars to 2017 Yale and had a Deed of Trust precluding his acquisition.  He couldn't identify or describe anyone supposedly affiliated with 2017 Yale, and never spoke to anyone representing his supposed seller other than the lawyers perpetrating this scam.  He didn't know that Alvarez got the only money that changed hands, or why:

*Pg. 19  Q. Why are you the trustee?* **13 A. You'd have to ask my lawyers.** *14 Q. Oh, really? No. Why are you the trustee?* **15 A. You would have to ask my lawyers.** *16 Q. What lawyers?* **17 A. The ones I've told you about.** *18 Q. Would we ask Lloyd Kelley for that information?* **19 A. If you want to.** *20 Q. Do you have -- so you don't have any idea why you're 21 the trustee?* **22 A. I seem pretty trustworthy.**

*140 Q. But you don't know whose idea it was to name the LLC 24 or the trust?* **25 A. No, I don't.**  *68 Q. (BY MR. RAMEY) Tell me everything you know about the trust.* **23 A. That I am the trustee.** *24 Q. (BY MR. RAMEY) What does that mean to you? Page 69* **1 A. That means that I am in charge of making certain decisions.** *3 Q. What kind of decisions?* **4 A. Well, I haven't had to make many decisions.**  *70 Q. (BY MR. RAMEY) Whose decision was it to sue – for the trust to sue anybody?* **7 A. You would have to talk to my lawyers.** *8 Q. (BY MR. RAMEY) No. You're the trustee…Who did you decide to sue and why?* **14 A. You'd have to talk to my lawyers.** *89 Q. Have you read any of the pleadings in any of these 11 lawsuits?* **13 A. Not yet.** *(the witness refused to answer why he never appeared for any trial or hearing.  Pg. 95-7).*

*116 So why do you think 5 Mr. Elberger suddenly got an interest in this trust in July of 6 2019?* **7 A. You'd**

*have to talk to Bob. Tell me everything -- everything you remember 22 Elberger telling you about this property and why he wanted to 23 be in the trust? 25 A. I don't know the details.*

Fugedi admits he never saw the property before the fake trust transfer, and has never

set foot on the property.

*Pg. 55 what brought you down here (in 2021, two years after the fake trust transfer)   …to look at the property and see it and then just to hang out, take a little break.  Part of it was vacation. Yeah.   Did you walk into the Property? No.  56  Just you and Mr. Kelley went and looked at the property?  Uh Huh. Nobody else?  Yeah. 59  Q. And that's the only time you've ever been to the property? 3 A. No. .. I went by there last night. 5 Q. Any other times you've been to the property? 6 A. No. So that's all the visits you've ever made to the property? 18 A. Yes. 19 Q. So before becoming trustee you had never seen the property?  21 A. No.*

Fugedi, the supposed trustee, admitted that for this multi-million-dollar property,

the only consideration that ever changed hands was $275,000, and he never met or talked

to anyone from the supposed seller, doesn't know who the seller was, doesn't know where

the money came from, or where it went:

*101 Q. (BY MR. RAMEY) Tell me everything that you know of that got paid for this property. 13 A. The initial payment. 14 Q. Which was what? 15 A. 275. 275,000. 102 So where did the money come from? 9 A. I'm assuming Bob Elberger. 10 Q. Why do you assume that? 12 Q. How did it come into the trust? 13 A. I don't remember. 16 Q. Do you think it came from Bob Elberger? 18 A. I don't remember. Pg. 109  7 Q. (BY MR. RAMEY) And the only cash that ever changed hands is this $275,000 that we just talked about, right? 9 A. Yes.*

It is admitted by Defendants that the money came from Choudhri and went to

Alvarez, and was not consideration for the fraudulent transfer deed. Exhibit 272.[94]  This

---

[94] Kelley and Alvarez arranged a 'set-up' deposition, no one else present. Kelley had Alvarez admit that the $275,000, the only money changing hands related to the fake trust transaction, which was the bribe money Alvarez took for his fraudulent attempt to release Steadfast's lien actually came from Ali Choudhri  -- not Fugedi or the fake trust.  *See* Exhibit 272, pg. 127, 147-8. Kelley's motives were likely to set up Alvarez and Choudhri to owe Steadfast's damages, arguably reducing his exposure.

Pg. 147.  **KELLEY: Choudhri agreed that he would pay you two seventy-five. ·Right?…** 24· · · ·A.· ·Correct. 148 **KELLEY: part of your deal [for the felonious fraudulent lien release] was two seventy-five minus closing costs. ·Right?** ·4· · · ·A.· ·Correct. ·Q.· ·You got whatever was net [of the other bribes Kelley and Alvarez paid to the other conspirators]? ·6· · · ·A.· ·Yes… ·Two fifty-one and some change.  (See e.g. Exhibit 86(q),(v)).  *pg. 71 18· **KELLEY: · ·Q.· ·What mattered to you was what you were going to get out of it, right --** 20· · ·ALVAREZ: ·A.· ·Yes. 21· · · ·**Q.· ·-- your personal benefit?** 22· · · ·A.· ·Yes. Pg. 72 ·4· · · ·**KELLEY: Q.· ·You received $251,301 from TransAct Title.· ·Right?** ·6· · · ·ALVAREZ; A.· ·Correct.

fake trustee didn't even know who 2017 Yale was:

*Pg. 135 who did you talk to that you thought was 2017 Yale?* **3 A. I can't remember.** *136  7 Q. Well, what did they look like?* **8 A. I don't remember.** *Q. So you didn't talk to anybody about 2017 Yale?* **17 A. As far as what?** *18 Q. Anything. Who did you think you were dealing with 19 when you thought -- when you thought you were doing a 20 transaction with 2017 Yale? What human?* **23 A. I signed documents. I discussed things with my 24 lawyers. That's what I did.** *25 Q. (BY MR. RAMEY) So you didn't have any idea who owned 137 2017 Yale?* **2 A. Not to my knowledge, no.** *Q. (BY MR. RAMEY) So when you -- when you -- when you think you're getting a free property in Texas and a -- and a deed to it, who did you think it was coming from?* **19 A. This was all discussed with my lawyers.**

This fake trustee didn't know that the money went to Alvarez, not for consideration

for this fake trust.

*Page 202 1 Q. Cash from borrowers, $275,000, right?* **2 A. Uh-huh.** *3 Q. Is that the 275 you remember paying?* **4 A. The trust, yes.** *22 Q. So who did that go to?* **23 A. … it looks like the D&A Alvarez Group.** *24 Q. So not 2017 Yale then, right?* **25 A. I don't know….** *20 Q. So why did the trust pay D&A Alvarez Group or 21 Alvarez?* **23 A. I'm not certain.**

Not only has this fake trustee not paid his lawyers, but <u>his lawyers are paying him,</u>

<u>and claim to own the property.</u>

*Pg. 262.  Do you expect to be paid….A.* **I do.**  *What's your pay arrangement?* **A. I haven't decided yet.**  *Q. who do you have an agreement with?*  **Well, I was paid a fair and reasonable amount to open the trust, and then after that it will be determined.**  *Q. Determined by who?  A. Myself and my lawyers.*

*Pg. 303-4.*  **Kelley's on contingency.**  *Well, you got about 20 lawyers spending millions and millions of dollars' worth of time on this.* **A. Uh Huh.**  *How do you think that works from a contingent fee standpoint?* **You'd have to ask my lawyers.**  *120  There has been between five and 22 lawyers working for your trust for five years. Do you understand that?* **13 A. Yes.** *14 Q. And how much money do you think they've spent on this case?* **16 A. I would have no idea. You would have to talk to them.** *18 Q. It's way more than this property would be ever worth, isn't it?* **21 A. I don't know.** *22 Q. (BY MR. RAMEY) Why do you think they're doing that? Do you think they are doing that for your benefit?* **121 A. I don't know. You would have to ask them.**

 *Pg. 12   6 A.  It's my understanding that we own the property….* *9 Q. So who's "we" when you say "we"?* *13 A. Myself and my lawyers and the trust.*

*35  17 Q. -- you can't tell me whether it's closer to a dollar or closer to ten million dollars or any ballpark figure? You can't come up with any even rough estimate of what you've paid lawyers?* **21 A. Somewhere in**

---

Exhibit 272.  Compare Exhibits 86(q),(v).

*there. 36 Q. Yes or no. Can you tell me whether it's closer to a dollar or closer to ten million dollars? **Pg. 36  7 A. No.** And you can't tell me whether you've made one payment or monthly payments or 10,000 payments? 20 A…. no… 47. 17 Q. You don't know if there has been a dollar or ten million dollars put into that trust? 20 A…. no. 21 Q. (BY MR. RAMEY) How about a range? What's -- what's the closest range you could think of as money that went into that trust? 24 **A. Definitely more than a dollar. Definitely under a 25 hundred million.***

***This fake trustee also never spent a dime or raised a hand to deal with taxes, insurance, security, maintenance, repairs, offers, paid any liens, didn't even know Steadfast had loaned money to 2017 Yale or that Steadfast had a judgment against 2017 Yale,***

Fugedi's lawyers coached him to try to fabricate testimony about some fake promissory note[95], but Fugedi had no idea:

*Pg. 343 You're trying to make up a note. You tell me about this note.  **I can't remember all the details.** When was it signed?  **I don't remember.**  Has it ever been paid?  **I don't know.**  Will it ever be paid?  **I don't know.**  Is it enforceable in your opinion?  **I don't know.**  Who's the lender? …**I don't know.**  Who's the borrower…**I'd have to look.**  344 There is no note. Have you ever seen a signed note?  Have you ever seen a signed note…**I don't remember.**  (witness and lawyers refuse to continue).*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

261.  **Defendant Carb Pura Vida, LLC**, *see* <u>Exhibits 86, G</u>, and the entire section herein on Herman and Lopez, as well as Elberger, Fugedi, and First American.  This is the fake trust settlor and beneficiary entity created by Herman and Elberger for Lloyd Kelley and Choudhri after 2017 Yale lost the lien case.  Its purpose was to steal the property, denude the judgment, and support a frivolous 'bona fide purchaser argument and file fraudulent documents in the real property records and state and federal courts.  It was integral to all of the scams related to the fake trust, and but for its participation, Steadfast would have

---

[95] Kelley also forgot that he admitted in one court, after Alvarez turned on him, that he knew that there was never any supposed note for the fake trust scam, despite pleading and having Patterson argue otherwise, and trying now to get Fugedi to claim there was a note.  <u>Exhibit 261</u>.

foreclosed in July of 2019 and been able to sell the property free and clear, without damages caused by delay, dilapidation, fees, costs, taxes and the other damages alleged.

262.    **TransAct Title, LLC**, *see* Exhibits 86(a-v), 95,  G, and the entire section herein on Herman and Lopez, as well as Elberger and First American.  This is the title agent for First American that conducted the fake trust closing, created the fake lien release and fraudulent transfer deed, and circulated the fake trust documents, held a fake closing, and wired the bribe funds around.   It is owned by Chaudhry and Umatiya.  This entity created the fake title policy, intended to be used with the fake abstract and fake trust entity to fabricate a bona fide transaction and attempt to steal the property from Steadfast.  "*We moved it so that Ramey couldn't get it*," *supra*.  But for this Defendants' actions set forth herein, Plaintiff would have suffered no damages and foreclosed and sold the property in 2019.

263.    **TransAct Holdings, Inc**., s*ee* Exhibits 86, G, and the entire section herein on Herman and Lopez, Fugedi, as well as Elberger, Transact Title, and First American.  This is a manager for and was used to perpetrate fraud by the Umatiya and Chaudhry parties, and used Transact Title LLC to perpetrate fraud against Steadfast as set forth above.

264.    **Marol Brobisky,** *see* Exhibits 86, G, and the entire section herein on Herman and Lopez, as well as Elberger, Fugedi, Transact Title, and First American.  She circulated and assisted with the entire fake closing, and signed the fake closing statement and fraudulent title policy.  Any competent title employee knows that Steadfast's lien was valid and binding, and she was in on the secret formation emails, and knew that the entire transaction was solely a fraud.  But for her signatures and circulation of these fraudulent title documents and the fake closing statement, Steadfast would have foreclosed and sold the

property quickly and without subsequent frivolous litigation, lis pendens, fees, dilapidation, and delay.

265. **Mansoor Chaudhry** secretly owns Transact Title and worked this fake trust transaction and fake title policy personally: "*so much [of the fake title policy, lien release, and fraudulent trust transfer scam] was handled with you all and Mansoor directly*" Exhibits 86(s), G.  Mansoor was in on most of the emails and works regularly with Choudhri and Kelley.   He is personally responsible for using Transact Title to perpetrate fraud, for directly conspiring to produce fraudulent closing documents, a fake closing, and a fraudulent title abstract to perpetrate the Yale Enterprise's fake trust transfer scam, and for the use of those fake documents in their filing with the real property records (a felony) and in the Galveston Federal Court and Carter's Justice Court and Barnstone's disgraced County Court.  *See also* the entire First American Section of this Article, for which Chaudhry is directly responsible as well as vicariously liable.

Mansoor admits he was "*involved in yale*" Exhibit 154a21, Wyatt 002482, and tries to claim that he "*did the (fake) note purchase or something*" *Id.*

Mansoor, Parker, and Choudhri had the fraudulent transfer deed and release in their files and knew all about it.  Mansoor provided the files.  Exhibit 154a21, Wyatt 001017. Mansoor used Transact Title to perpetrate a fraud and is vicariously liable and for alter ego, piercing of the veil, and owes Steadfast full damages.  But for his facilitation of the fake trust transfer, and circulation of these fraudulent title documents and the fake closing statement, Steadfast would have foreclosed and sold the property quickly and without subsequent frivolous litigation, lis pendens, fees, dilapidation, and delay.

173

266. **Salima T. Umatiya** owns Transact Title and worked this fake trust transaction and fake title policy personally. *See e.g.* Exhibits 86(u), G. She was in on most of the emails and works regularly with Choudhri and Kelley. *Id.* She is personally responsible for using Transact Title to perpetrate fraud, for directly conspiring to produce fraudulent closing documents, a fake closing, and a fraudulent title abstract to perpetrate the Yale Enterprise's fake trust transfer scam, and for the use of those fake documents in their filing with the real property records (a felony) and in the Galveston Federal Court and Carter's Justice Court and Barnstone's disgraced County Court. *See also* the entire First American Section of this Article, for which Chaudhry is directly responsible as well as vicariously liable. She used Transact Title to perpetrate a fraud and is vicariously liable and for alter ego, piercing of the veil, and owes Steadfast full damages. But for her facilitation of the fake trust transfer, and circulation of these fraudulent title documents and the fake closing statement, Steadfast would have foreclosed and sold the property quickly and without subsequent frivolous litigation, lis pendens, fees, dilapidation, and delay.

267. **Umatiya Law Firm, PLLC**, *see* Exhibits 86, G, and the entire section herein on Umatiya, Herman and Lopez, as well as Elberger, Transact Title, and First American, Chaudhry, Umatiya. Umatiya used this entity to perpetrate a fraud and is personally responsible for the damages arising therefrom. But for the fake transaction and cover up by this entity, Steadfast would have sold the property in 2019 and not suffered the damages it has suffered.

268. **Donald E. Huebner** is a Texas landman, who created a fraudulent title abstract for the Yale Enterprise, omitting Steadfast's prior recorded Loan Document, in particular the

Collateral Transfer of Note and Lien (Exhibit 20e) from his fraudulent abstract.    Mr. Huebner also submitted an affidavit in support of the fraudulent abstract to the county court and federal district courts, attempting to help the Yale Enterprise fabricate a frivolous title claim and perpetrate its fraud on the Court and Steadfast.    Deliberately omitting a prior recorded lien from a title abstract does not lie within the bounds of professional judgment of a certified landman, expert witness or not. It is a federal crime to submit such a fraudulent document and perjured testimony as evidence before a state and federal court.    *See also* "No witness immunity for Huebner" section, *supra*.

This is especially true when the omitted prior recorded valid first lien secured over eight and a half million dollars, had already been adjudicated to have been a valid lien and loan document which the borrower was fully aware of, in default by the borrower who granted the fraudulent transfer to Mr. Huebner's fake client (the fake trustee), and when the lender had already foreclosed on the property and lien against his fake client.  It is even worse if he knew that the fake trust was never formed, never paid a cent for the property or the loans, and was created and the entire transaction designed solely to defraud lenders.

It is literally the most basic foundation of real property law and land work that any buyer is on constructive notice of, and takes subject to, the full contents of every single prior recorded instrument in the chain of title, and that the Collateral Transfer of Note and Lien precluded Alvarez from releasing Steadfast's liens, or 2017 Yale from giving away the collateral.   No landman could make such an abstract except with intent to facilitate fraud.   But for the fake title abstract and omission of recorded lien documents, and misconduct of Huebner, the frivolous quiet title action could not have proceeded, and could

not have supported more years of delay, costs, damages, dilapidation, fake lis pendens, and other obstructions of sale.  Steadfast would have sold the property in 2019.

269.   **Robert Elberger**, acting for his buddy Lloyd Kelley, made himself the fake member (Exhibit 86(j) pg. 6) and used his office as the principal place of business for the fake trust beneficiary, Defendant Carb Pura Vida, LLC, and claimed to own 100% of the company. Exhibit 86(j), pg. 1, 6, 7.  The purpose was to conceal Choudhri and Kelley's involvement and try to fake a bona fide trust.  Elberger hosted the secret meeting of the Yale Enterprise to plan out the entire fake trust transaction and finalize the fake documents over drinks at his house.  Exhibits 86(b), G.  He made himself the fake member to disguise the Yale Enterprise's ownership of the fake trust and beneficiary, and pretend to be a bona fide purchaser using the fake title documents and fraudulent lien release.  Elberger also helped prepare the fake 'consent' of the fake trust beneficiary.  Exhibit 86(h).  Though this trust agreement was never signed, this fact was concealed from discovery in the litigation, and the fake trustee Fugedi perjured himself claiming that he was a trustee and bona fide purchaser.   The fake identify of Elberger was used by Kelley to conceal the Yale Enterprise's fake trust scam from Steadfast and the Courts, e.g.: "*it's called Caribbean or Carribe something trust… Carribe carribbita trust holds it for a company who's owned by a gentleman named Robert Elbert who is in Costa Rica.*"  Lloyd Kelley lied to the Court, Exhibit 102 at pg.80, 84; Compare Exhibits 86, G, and the audio tapes Exhibits B(a-c) e.g. "we (Kelley and Choudhri) moved it [to the fake trust] so that Ramey [Steadfast] wouldn't get it" *supra*.  Kelley had just circulated the whole fake trust documents and named the fake trust two days before, with Elberger, Lopez, Herman and their offices participating,

176

and sending and receiving those emails, as well as the title Defendants.  Exhibits 86(a-v),

G.  But for the fake entities and roles created by Elberger, and the misconduct alleged

herein, Steadfast would have sold the property in 2019 and not suffered the damages

incurred.

270.  **Edward Herman** worked with Kelley and Elberger and made himself the

Registered agent of Defendant Carb Pura Vida, LLC, the fake trust beneficiary, to disguise

the Yale Enterprise's ownership of the fake trust and beneficiary and pretend to be a bona

fide purchaser using the fake title documents and fraudulent lien release.   Exhibits 86(a),

(k), and circulated the fake documents to Kelley and Elberger, using Lopez as a fake owner

to cover and front for the Yale Enterprise (which she never did, but they represented to the

Federal Court that they had in order to try to fabricate a title claim). *See* Summary Judgment

pleadings by Fugedi in their frivolous Galveston case, 00249.  Hermana and Lopez knew

full well that their fake trust was not really buying the property;  that Kelley controlled it

and was using it in a scam for the Yale Enterprise. They were on the emails, sent emails,

were in the meetings, and tabbed by the whistleblowers as participants.  Exhibit G.

Fugedi, Elberger, Herman and Lopez knew full well that this fake trust was not

going to give them real actual ownership or control of a ten-million-dollar building.   They

knew full well that this fake trust wasn't paying anything for the deed or property either,

nor to repay the loans.  *Id*.  They knew full well that their fake trust settlor didn't have any

money of its own, it came from Kelley and was only there to pay bribes.   They knew full

well the fake beneficiary entity was not actually getting ownership of a ten million dollar

building for free.  They were willing conspirators, in on the meetings and emails.  They

knew Kelley was the one fronting the pittance of money being circulated as bribes and drafting the fake illusory notes, assignments, etc., to dupe Alvarez into participating, and to use to try to make the fake trust look like a bona fide purchaser.  But for the fake entities and roles created by Herman, and the misconduct alleged herein, Steadfast would have sold the property in 2019 and not suffered the damages incurred.   Herman also used the Law Offices to perpetrate fraud for his own benefit, and Herman is personally liable for its actions.

271.    **Law Offices of Edward Herman, PLLC,** *see* Exhibits 86, G, and the entire section herein on Herman and Lopez, as well as Elberger and First American, and Herman above. This entity was used by Herman, Kelley and Lopez to perpetrate fraud, without which Steadfast would have suffered few damages as it would have foreclosed in 2019.

272.    **Norma Lopez** lives with Ed Herman per Plaintiff's process server, and is probably his employee as well.  Herman is a friend of Kelley's.  Exhibit 86(c).  She and Herman filed fake LLC documents for Lloyd Kelley, pretending to own and manage the fake trust settlor and beneficiary, Defendant Carb Pura Vida, LLC, with the Secretary of State of Texas. Exhibit 86(l).  Norma Lopez doesn't really own or manage Carb Pura Vida, LLC as she alleged in the fraudulent document. She didn't fund the trust assets.  Norma Lopez didn't really get management or ownership of a multimillion dollar building for free.  She is a front for Lloyd Kelley, Choudhri, and the Yale Enterprise.    The audiotapes make a mockery of the whole fake trust– "*we (Kelley, Fraga, Choudhri, Parker and their minions, including Lopez) transferred it [the collateral at 829 Yale to the fake trust] so that Steadfast couldn't get it.*"  The enterprise admitted in their own tapes that they controlled both the

buyer and seller, and the fake trust, settlor, trustee, and its beneficiary. Lopez participated as a front to defraud Steadfast and the Courts and hide the true ownership of the trust assets. See also entire section on Fugedi, Transact Title, First American, and the Title Defendants. But for the fake entities and roles played by Lopez, deliberately trying to hide Kelley and Choudhri's involvement, and the misconduct alleged herein, Steadfast would have sold the property in 2019 and not suffered the damages incurred.

273.    **Allen J. Fisher** is Terry Fisher's son. He was in on the scams from the start, and received the benefit of loan money stolen by 2017 Yale and distributed to his companies Assurance, KAVAC, Cityscape, etc. Exhibit 55. He used those entities to perpetrate fraud. Six months after 2017 Yale and the Yale Enterprise defaulted on the loans, abandoned the property and project, and sued Steadfast on frivolous claims, Kelley, Choudhri, Parker, and Terry and Allen Fisher were still fabricating plans to change the property and add a pool, clearly contemplating the fruits of a successful extortion plan they commenced with the MOU (Exhibit 4). They still interfered with foreclosure, sale or development of the property, causing their own in-house manager to claim that he needed a: *"- Current Operating agreement for the owner (the one we have shows Bradley Parker as the sole member). There is no mention of Lloyd Kelly in the agreements or any reference to Terry Fisher. Who is making the decisions on this project?" Id.* But for Allen's concealment of key facts, and participation in the enterprise, taking stolen loan money from the Steadfast loan and running it through Cityscape, Assurance and Kavac, Steadfast would not have suffered damages in this case from the stolen loan money, or renewed the loans, or provided more loan draws, or suffered any damages. Steadfast would have foreclosed in 2018.

274.    **Defendant Michelle M. Fraga** took a secret ownership interest in 2017 Yale as a bribe, and pretended to be a lawyer on the case.  Fraga deliberately lied to the Court (Exhibit 102 for example) and deliberately presented Parker for the purpose of perjuring himself for the sole purpose of furthering the entirety of the seventeen scams by the Yale Enterprise.  Exhibits 35, 35c.  Fraga personally formed the fake "Tax Relief, Inc." entity and was its president.  She formed it secretly in Wyoming and declined to authorize it to do business in Texas to conceal the fact that it was a sham.  She defrauded her own supposed client, Alvarez, into paying the property taxes through the sham entity, instead of by the borrower and property owner, 2017 Yale (which she owned an interest in as a bribe).   This scam was intended solely to steal the property in the name of her company, Tax Relief, Inc.

Fraga, Parker and Choudhri continued to scheme into 2020 to perpetrate the Yale Enterprise:    Parker to Choudhri: "Do I still represent 2017yale?"  Exhibit 154a21, Wyatt 001575.  *"Ali, while you were away from table Lloyd was talking about assigning some of the atty fees etc. to Michelle and team." Id.*  The Enterprise conspires to keep these secret bribes verbal:  Parker to Choudhri: *"So you want me to email Michelle? Or only keep as verbal?"* Message received from Ali Choudhri 1/15/2020 2:40:41 PM *"I don't want it in writing".  Id.,* at Wyatt 1576.  Choudhri admits that he and Lloyd are paying Fraga to participate in the Yale Enterprise.  Exhibit 154a21, Wyatt 3069.  Obviously Parker's testimony claiming to know nothing about the conveyance was perjured.  Exhibit 102, *supra*.

Fraga was integral and participated actively in and knew all about all seventeen

scams.  Fraga also participated in efforts to defraud and deceive all of the lenders (e.g., Exhibit 19) secretly contacting opposing parties who were represented by counsel, as well as defrauding Alvarez into committing his crimes and flipping, which created a huge mess in the litigation and caused mass confusion, not to mention robbing her own client of several million dollars.

Brad Parker, with Kelley and Fraga present and making objections and instructing him throughout the deposition, did testify under oath <u>that he owned 100% of 2017 Yale in 2019</u>:

"*How is 2017 Yale affiliated with Jetall?*
***I'm affiliated with Jetall, and I own the company.***  <u>Exhibit 35 at Pg. 35-6</u>.

"*Who is Yale development GP llc?*
***It's an affiliated company.  2017 Yale development has – record owner…one is tied to the other.***
***<span style="color:red">I own both entities.</span>***  *Id* at <u>Pg. 234</u>.

*Are there any other members of either LLC?*
***No. I'm -- <span style="color:red">I'm the sole member of both</span>***.       *Id*.

Kelley and Fraga objected for Parker immediately before and after this testimony, at pgs. 232 and 235, and throughout the case, without clarification.

Parker perjured himself because he was bribed by Kelley, Fraga and Choudhri, who promised to <u>actually</u> give Parker some of the membership interest:

| | |
|---|---|
| ***Choudhri:*** | ***"you wanted Brad to testify that to be representative for 2017, you did not want 2017 Yale to show…."*** <u>Exhibit B(A) 5:25</u>. |
| *Kelley:* | <span style="color:red">*"Brad didn't want to show up, and you talked about giving Brad 5% or 10% which I thought was a great idea, so he's getting his 5 or 10%, so he stays in."*</span> <u>Exhibit B(A)</u> *3:41*. <u>Pg. 7-8</u>. |
| *KELLEY:* | <span style="color:red">*"... I told you this is no good if Brad's out of the picture.  No good*. *if Brad doesn't have ownership, these claims are worthless.*</span>  <u>Exhibit B(c), Pg. 3-5</u>. |

**CHOUDHRI:**   **"brad never had ownership"** <u>Exhibit B(c)</u> *0:19.*

FRAGA:   *"what does that do with the tax lien because brad transferred it and the secretary of state still shows brad parker on it?" Id.*

Choudhri also perjured himself in Kelley and Fraga's presence:

*Q. You're affiliated with 2017 -- MS. FRAGA: Objection. Form. - Yale*
*A. CHOUDHRI: No.*
Deposition of Ali Choudhri, Pg. 209, ln 5-8; <u>Exhibit 120</u>.

*Q. (STEADFAST COUNEL): Do you have any right to control anyone that's associated with 2017 Yale Development LLC?*
*A. No. MR. KELLEY: Objection Form…. MS. FRAGA: Objection Form.*

Deposition of Ali Choudhri, Pg. 210, Ln 3-7,9; <u>Exhibit 120</u>.[96]

The Yale Enterprise secretly formed another sham company ('Tax Relief, Inc." in Wyoming) as a straw man. <u>Exhibits 81-83</u>, *infra*. Fraga incorporated it and was its president. *Id.* They declined to authorize the sham company to do business in Texas to keep its identity secret and confuse it with the real "Tax Relief, Inc." which knew nothing about it. *Id.* <u>Exhibit 170</u>. Fraga and Kelley tricked their new client, Alvarez, into giving them <u>another</u> two hundred plus thousand dollars to pay delinquent Harris County property taxes owed by 2017 Yale on the collateral. *Id.* However, instead of extinguishing the tax lien as legally required, by having 2017 Yale use the money to pay the taxes directly, they instead had Tax Relief, Inc. secretly pay the taxes using Alvarez' money. This sham arguably created an assignable (though fraudulent) tax lien instead of extinguishing the lien. *Id.*[97] But for fraud, which they felt no one could prove, the tax lien would be superior

---

[96] Just as Fisher made a farce out of his deposition, so did Choudhri. *See* <u>Exhibit 120</u>, including some example video excerpts attached. Choudhri couldn't be bothered not to check his phone on the record, and found the whole case uncontrollably funny, despite his having ruined dozens of lives in this case alone.
[97] Kelley, Fraga and Parker perjured themselves on this point too, claiming that 2017 Yale took a loan and extinguished the tax liens in deposition, *infra*.

to Steadfast's lien.  They caused 2017 Yale (using Parker again) to assign the fake tax lien to the fake Tax Relief, Inc., which they then intended to use to secretly foreclose the fraudulent but legally superior tax lien held by Fraga's sham company. This scam would arguably wipe out Steadfast's first lien, giving the Yale Enterprise title to and possession of the property.[98]  *Id*.    They would have then quickly found or fabricated a "bona fide purchaser" before Steadfast or the Courts learned of the fraud, and denuded the funds, the liens, and rendered Steadfast's remedies useless.  *Id*. Steadfast discovered the scam and prevented that scam from being consummated. *Id*.   Ultimately, when Alvarez became a whistleblower and fired Kelley and Fraga as his lawyers, his new counsel released the fake tax lien.  *Id*.

| | |
|---|---|
| *KELLEY:* | *"All of that is being held together because of me.  All these lawyers are working for me."*  B(B) 14:00; B(B) Pg.23, Ln.18-20. |
| | *"I want to send a trust -- a piece of this case -- a piece of the company so those lawyers can get paid."* B(A) Pg.42, Ln.20-22. |
| | *"...Ramey owns the whole thing and we're done... I'm spinning my wheels with a whole lot of lawyers and it's over.* B(c) Pg.13, Ln.10-14. |
| | *I can just focus on...2017 Yale, which I've got [Fraga]in...You haven't spent a fucking dime, Ali.*  B(A) Pg.31, Ln.13-19. |
| | *This is coming down to me paying...and it's always been me.*  B(A) Pg.6, Ln.23-24. |
| | *"Marc Hill...is actually getting paid...because I paid him...."* B(B) Pg.6,Ln.17-18. |
| **Choudhri:** | **"I just want to have clarity on what we are doing"** B(B) 3:00. |
| *Kelley:* | *"Johnny Patterson, Michelle, me, Marc Hill..."* |

---

[98] In theory, a superior lienholder owes a subordinate no notice of foreclosure.  Steadfast busted that scheme, but the 190th refused any of Steadfast's related relief requested. Steadfast sleuthed out the scam and shed light on it, preventing it from going forward.  When Alvarez finally figured out how badly he had been defrauded, he fired Kelley and Fraga, gained control of Tax Relief, Inc., and released the fraudulent tax lien to avoid civil and criminal liability as he became a whistleblower.

Parker's deposition, presented by Kelley and Fraga, was perjurious throughout, *infra*, but it is worth pointing out here that Parker testified that:

> STEADFAST COUNSEL: "***Did you ever seek any money that Ali had control over, direct control over, for this project?*** MR. KELLEY: *Objection. Form.* FRAGA: *Objection -- join:* PARKER: *Not to my knowledge.* ***Did Ali ever offer to put any funds into this project for any reason?*** MR. KELLEY: *Objection.· Form.* MS. FRAGA: *Objection Form.* PARKER: *Not to my knowledge."* Exhibit 35, at pg. 102.

> STEADFAST COUNSEL: ***Where did the money come from and who all is involved in this transaction?*** [PARKER]: *...outside of draws from the lender, that no meaningful funds were contributed to this. So I don't see how it's relevant... I can tell you that the only entities that were involved with this transaction was 2017 Yale Development and then myself, with Jetall Companies Inc. I'm an employee of Jetall Companies Inc. Those are the only -- the only entities that would have anything remotely to do with this asset.* Exhibit 35 at pg. 104-105. (Kelley and Fraga immediately suborn this perjury and immediately attack another lawyer in the deposition). *Id.*

> **"*Where did the money come from and who all is involved in this transaction?* [PARKER]: *…outside of draws from the lender, that no meaningful funds were contributed to this. So I don't see how it's relevant… I can tell you that the only entities that were involved with this transaction was 2017 Yale Development and then myself, with Jetall Companies Inc. I'm an employee of Jetall Companies Inc. Those are the only -- the only entities that would have anything remotely to do with this asset.*** Exhibit 35 at pg. 104-105. (Kelley and Fraga immediately suborn this perjury and immediately attack another lawyer in the deposition). *Id.*

> STEADFAST COUNSEL: *So, again, what entities were active with the Secretary of State of any state that are under your control, Ali's control, Jetall's control, or 2017 Yale's control during the pendency of this lawsuit?* **MR. KELLEY: *You don't have to answer.* MS. FRAGA: *You don't have to answer that."* Id at 108.

> STEADFAST COUNSEL: *And there's no expectation that you -- your expectation is not to share a penny of that with Ali or anybody else?* **PARKER:** ***I don't know how many more times I can answer this. I've said no consistently. The answer is no. It's my entity."*** *Id* at 115.

Fraga was a part of the entire conversation on tape between Choudhri and Kelley, piping up occasionally, where they outlined the entire Yale Enterprise, and yet as an officer of the Court, she not only didn't withdraw and disclose the felonious conduct, but she also actively pushed it forward in all seventeen scams. But for Fraga's misconduct, the entire Yale Enterprise and all seventeen scams would have never occurred, and Steadfast would have suffered no damages.

As Choudhri ironically stated at the end of his 2020 call with Kelley, Fraga, and Parker, Exhibit B(c), "*These guys are f\*\*king crooks*."

275. **Fraga Law Office, PLLC** is now forfeited, but Fraga used it to perpetrate fraud and is personally liable for all of its actions. But for Fraga and her pretense of being a lawyer and a law firm on the case, and actions set forth above, none of the scams would have proceeded and Steadfast would have suffered no damages.

276. **Defendant Lloyd E. Kelley** needs no introduction by now.  Once he asked Choudhri for the secret transfer of Steadfast's borrower, he became the primary orchestrator of the Yale Enterprise, admittedly creating the whole "brilliant idea", *supra*, himself.  drafted, reviewed, and circulated all of the final drafts of the fraudulent trust transaction via email.  Exhibits 86(d), (e).  Lloyd (who did not represent Ali Choudhri or Jetall) plotting with Choudhri on how to lie to the Court about how 2017 Yale was paying attorney's fees, and how to hide Choudhri and Akter's fraudulent transfers.  Exhibit 154a21, at pdf pg. 3, Wyatt 0433.  Kelley personally and directly committed every single act of fraud and predicate act, and benefitted from the entire Yale Enterprise.  As his

admissions, quotes, perjury, secret documents, and details of his involvement are rife through this petition, they need not be repeated here.  But for Kelley, Plaintiff has no damages at all.

277.  **BDFI, LLC** is Ali Choudhri's company, apparently very much in the know about Choudhri's business model of real estate fraud.  This company is engaged in fraud as a business model through Choudhri.  Exhibits 99, 103. Choudhri has allegedly transferred assets to and from it as convenient vehicle by which to hide his assets from Steadfast, other creditors, and Courts, including Choudhri's wife's divorce Court.   Specifically, this company further approved and benefitted from the secret criminal transfer and default by 2017 Yale's membership interests and management to Kelley and his company, Pabeshan.

Exhibit A.   That transfer was made to extinguish her debt to Lloyd Kelley.  *Id*.

MR. KELLEY:         *"No, it wouldn't. That's - why would I get a contingency fee on your -- for the future from $3 million you already owe me, you, your mother and all your companies? That's the difference.  I had you, your mother and all your companies lined up on a note, a promissory note, a settlement, a Rule 11."*

MR. CHOUDHRI:   *"Lloyd, you wanted to cancel it because you didn't want to be the lawyer. You wanted Brad to be the representative of the 2017 Yale."*

MR. CHOUDHRI:    *"I owned it. You know that. Man, come on. Why are –"*

MR. KELLEY:         *"How did you own it? It was transferred to me."*

Exhibit B(a) pg. 3.

The entire secret transfer of the borrower 2017 Yale to Kelley was to pay Kelley for legal fees for all of them, as they were hiding assets from other creditors.   This company benefitted from and acknowledged the scam.   But for its extinguishment of debt using the

vehicle of fraud against Steadfast, and accepting the benefits of that fraud, Steadfast would have suffered no damages at all.

278.    **Stephanie Alvarez** worked for Choudhri, Parker, and Jetall for years.  She notarized the fraudulent transfer deed to the fake trust.  Exhibit 86(o).  She also notarized the fraudulent tax relief assignment.  Exhibit 81.  She knew all about it, and perjured herself claiming to be completely ignorant in order to cover her ass and continue the concealment by the Criminal Enterprise.  She orchestrated the Yale Enterprise's secret spying on and videotaping of the foreclosure sale, which of course they never offered a penny at or bid.  She knows full well what these conspirators are.  Enterprise spied on Steadfast's foreclosure sale, and videotaped the sale, but did not bid, offer, or participate.  Exhibit 154a21, Wyatt 00247.  Stephanie Alvarez was involved in these operations.  Exhibit 154a21, Wyatt 003462.  Stephanie Alvarez also monitored foreclosure postings and was involved in the Enterprise's fraudulent schemes.  Exhibit 154a21, Wyatt 001019.  There is no way she worked for these people through literally hundreds of real estate fraud cases and not known she was participating in a criminal enterprise.  Exhibit 99.  Lloyd Kelley and Choudhri even sued each other for fraud.  Exhibit 103.  But for her acknowledging and recording fraudulent documents, and covering up the Yale Enterprise, none of the seventeen scams would have gone forward and Steadfast would have suffered no damages.

Stephanie participated directly in the fake trust transfer for the purpose of defrauding the Court, denuding the judgment and defrauding Steadfast:

MR. KELLEY:    *I'll send you -- you know, you first. But behind that is you, your mom, Stephanie, Brad.*

| | |
|---|---|
| MR. CHOUDHRI: | *I get it. I understand.* |
| MR. KELLEY: | *(Unintelligible) this. We have already set that up. We've already sent them the demand letter. We have $8.2 million. Wouldn't you be happy with $8.2 million?* |
| MR. CHOUDHRI: | *Well, I'd like to develop —* |
| MR. KELLEY: | *I know you would.* |
| MR. CHOUDHRI: | *— the property. I — I'd be happy —* |
| MR. KELLEY: | *Huh?* |
| MR. CHOUDHRI: | *— with $8.2 million, yeah, but I'd like to develop the property or – or something —* |
| MR. KELLEY: | *Not when you talk to Ramey because apparently he foreclosed on it.* |
| MR. CHOUDHRI: | *On a -- on a -- on a – on a property that doesn't have title to the entity that they foreclosed on? I mean, it just makes no fucking sense.* |
| MR. KELLEY: | *I told you there's a -- there's an allegation, and Marc keeps looking at this and I tell him to chill out, <span style="color:red">the property is transferred and transferred to a trust</span>, and in Texas you can't transfer property to a trust. That's an issue of Texas trust law and you* |
| MR. CHOUDHRI: | <span style="color:red">*And Stephanie only did it because you told her to do it.*</span> |
| MR. KELLEY: | *(Unintelligible).* |
| MR. CHOUDHRI: | <span style="color:red">*You -- you thought it was great idea to transfer* --</span> |
| MR. KELLEY: | *(Unintelligible).* |
| MR. CHOUDHRI: | <span style="color:red">*-- the property, but I thought it was a bad idea.*</span> |
| MR. KELLEY: | *Huh?* |
| MR. CHOUDHRI: | *I thought it was really bad idea to transfer.* |
| MR. KELLEY: | *What would it have saved if you would have kept the property? That's what I (unintelligible) mention this. It would have been definitely foreclosed on in November. Then where would you be?* |

Exhibit B(b) pg. 32-33.


KELLEY:     <span style="color:red">*"it was a brilliant idea!"*</span>  B(A) 7:23.  <span style="color:red">***"we moved it so that* [Steadfast] *couldn't get it."***</span>  Exhibit B(B)11:18 Pg. 20, Ln 11-14.


Stephanie is certainly part of that "brilliant" "we."  She is taking the benefit of Yale Enterprise and concealing her knowledge of and participation in the fraud, without which concealment none of the damages would have been caused:


MR. KELLEY:     <span style="color:red">*He's representing you. He's representing your mom, Stephanie. He's getting paid because I paid him some money.*</span>

Exhibit B(b) pg. 6.

279.   **Defendant Pabeshan Castle, LLC** is owned by Kelley, Exhibits 106, 106a21, and used to perpetrate fraud against Steadfast and the Courts, taking secret ownership of the 2017 Yale membership interest in a deal kept secret from the lenders and Courts. Exhibit A. It is both a loan default by the terms of Steadfast's Loan Documents, and a crime, to take title to collateral from a lender without their consent, or to take ownership of the membership interest of the borrower. As Kelley admitted on the tapes, Parker's fake ownership of 2017 Yale was the key to all of the schemes against Steadfast, the Courts, and other parties, *supra*, and Kelley went to special lengths to hide his ownership. Kelley used this entity to perpetrate fraud and is personally liable for all of its actions and obligations. But for the secret involvement of Pabeshan for Kelley, Steadfast would have no damages and would have sold the property years ago.

280.   **First American Title Guaranty Company** aka First American Title Company claims that 'the petition fails to identify how the title policy was false', which evidence will be summarized again below, and argues that 'title policies are not guarantors of the status of title' as grounds for its Rule 12 motion. It is true that title insurers do not guaranty the status of title, but that argument is irrelevant to their misconduct in this case. First, the title policy is false because First American issued a policy and commitment for title insurance which deliberately omitted Steadfast's valid first lien, Deed of Trust (Exhibit 11(b)), Collateral Transfer of Note and Lien (Exhibit 20e), and the Summary Judgments it was aware of in the 190th Court, declaring those Loan Documents to be valid, in default by the trust's grantor, 2017 Yale, without excuse. *See* Exhibits 92, 102, 196. Its policy falsely reflected title vested in the "Carb Pura Vida Trust, "despite all of these issues, and despite

the fact that the conveyance into the fake trust is also a facially void conveyance.  <u>Exhibits</u> <u>89, 95.</u>  Any landman, title insurance employee, lawyer, or employee of any real estate lender would know that this policy falsely reflects the status of title with a cursory review. *See e.g.* <u>Exhibits 88, 89</u>.  This is property law 101.  First American did not except, reserve or note Steadfast's valid lien or litigation in its fake policy under schedule B or C as any even remotely competent title insurer would do.  <u>Exhibit 95</u>.  It is not credible to make a mistake in this regard for any competent title insurer.  Literally any paralegal, law student, landman, first week title employee, neophyte lender employee, anyone knows that a borrower can't file a release of its lender's lien, especially when the borrower is in default; they know that a trust is not a legal entity and can't own real property except in the name of the trustee; they know that someone who doesn't pay anything for property can't be a bona fide purchaser; they know that a trust which never has a signed trust agreement doesn't even exist; and they know that no one could ever take title to 829 Yale without satisfying Steadfast's valid, prior recorded, first lien held against the property.  These are *Westland* and T.P.C. 132.002 hornbook law issues - first day of property law concepts.

No title insurer could 'accidentally' issue title in the name of 'a trust', which is facially void, much less a trust for which they never even received an executed trust agreement for.  Without a written trust agreement, no trust exists, period.  There was never an executed trust agreement because Steadfast busted this scam before it was completed, Alvarez realized he should bail out from this scam, and Choudhri realized Kelley was defrauding him as well by this scheme.  The fake trustee was never even included in any

of the communications forming Kelley's fake trust.   Exhibits 86(a-v).  First American's agents certainly were, though, and they knew that no trust existed.  *Id*.

This is all true even in the unlikely event that First American was ignorant of the fact that the fake trust never paid a cent for the property, or that the fake trust was actually owned by the same Yale Enterprise that owned the fraudulent grantor 2017 Yale and the whole conveyance was a sham to defraud Steadfast as clearly demonstrated in the audiotapes (Exhibits B(a-c)).

First American's fraudulent title policy was issued not for the purpose of insuring title, but for the sole purpose of creating a fraudulent document to use as fake evidence to support the Yale Enterprise.   Its fake policy was intended solely to dupe Alvarez into participating in the trust scam and executing his fraudulent lien release, thinking that the transaction must be legitimate if a real title company approved it.  Its only other purpose was to support the Enterprise's frivolous quiet title action as fabricated evidence, and try to portray the fake trust as a bona fide purchaser.

The Enterprise has no qualms against frivolous lawsuits against title policies.  2017 Yale filed a frivolous suit against its prior title policy.  However, they never made a title failure claim on this policy, though title clearly failed.  They never intended to because this policy and its issuer were part of the conspiracy.  They certainly did show it to Alvarez, and they certainly did file it as a summary judgment exhibit in support of their frivolous Galveston title suit to confuse the Court and delay the obvious eventual result.  They filed this fake policy for the proposition that 'First American said the fake trust owns the property, so the trustee must be legitimate, and the fake trust should win this quiet title

case.' *See* Fugedi's frivolous summary judgment pleadings filed in 03-19-CV-00249. The only purpose of this policy was to facilitate fraud against Steadfast. Therefore, the 'title insurance is not a guarantor of title' argument by First American is irrelevant. This title policy was not issues for the purposes of providing insurance; it was issued solely to be used as fraudulent evidence to support the Yale Enterprise's scam against Steadfast.

They knew that the Collateral Transfer of Note and Lien was recorded; the Enterprise's own fraudulent Alvarez lien release they used to justify their fake title policy actually recited its existence and recordation – it's hard to keep everything straight when it is all a lie. Exhibit 86(m), bottom of page 2. They knew the CTNL constitutes irrebuttable constructive notice that Steadfast maintained the original note and its valid first lien against the property. Exhibit 20e. They used the fake title policy to fabricate a title argument for the Yale Enterprise to use in a frivolous title suit against Steadfast. It was also used to help dupe Alvarez, an unsophisticated layman, into thinking that this fancy fraud might actually work, since a real title company said it was effective, by showing him this false title policy and fake closing statement, together with Kelley's bribe. Exhibit G. The Criminal Enterprise needed Alvarez' fraudulent lien release to even craft the arguments for their frivolous title case.

First American received $13,955 in Yale Enterprise funds (stolen from Plaintiff) in order to issue the fraudulent title policy to perpetrate this scam. Exhibit 95, pdf pg. 8.

First American and its agent, Transact Title, knew full well that there was no real consideration for this conveyance. The fake note, assignments, and agreements were never signed. They never had any of it. And they are a joke – literally illusory on their face.

Exhibits 86(f- l), p.  They were never executed the deal after Alvarez backed out, Steadfast busted the scam, and Kelley and counsel lied to the Court about it. Exhibits 86(r), (u), G. Yet they made up and circulated a fraudulent closing statement anyway. Exhibit 86(v).

Further, First American employed its agent, Transact Title, LLC dba Transact Title, to issue this fake policy.  Exhibit 95, pdf pg. 2.  Marol Brobisky countersigned the fraudulent policy, as an employee of First American's agent, Transact Title.  Exhibit 95, pdf pg. 11.  Mansoor Chaudhry, the Umitaya Defendants (who together own First American's agent, Transact Title, which employs Brobisky, who executed the fraudulent policy and circulate the entire suite of fraudulent closing documents)  Brobisky, Elberger, and Herman all drafted fake documents for Kelley, and circulated them by emails forming the fake trust beneficiary, the fake lien release, the fake notes and other conveyance instruments, the fraudulent deed, all for a trust that they knew never existed, all recruited or bribed by Kelley for his own benefit and that of the Yale Enterprise, all knowing there was no trust; that no real consideration was being paid;  that Alvarez could never release Steadfast's lien; and that the fake trust could never be a bona fide purchaser. *See* Exhibits 86(a-v), G.  Transact Title, First American's agent, wired Kelley's bribes, including the bribe to Alvarez, to spring the fake trust scam.  Exhibits 86(c), G.  Notably, no consideration for the deed was ever sent anywhere by First American or its agents, as no consideration existed.  First American and its agents knew that some fake trust that didn't even exist was not acquiring legitimate title to a ten-million-dollar property for free.  That is not credible.

Put another way, there are only two alternatives:  First American deliberately participated in the Yale Enterprise, which is really the only credible option.  No title company could fail to understand that their policy was obviously reflecting a fake party as the owner of a ten-million-dollar building; or, First American is vicariously liable, both as principal, and for negligence in the hiring and supervision of its agents, and for the misconduct of their agents, for which it is responsible for hiring, supervising, directing, employing, and holding out as their agent.   If First American contends and has evidence supporting its contention that the second option is all they are liable for, then their proper action would be to bring cross claims for the fraudulent inducement and use of their fraudulent title policy by their own agents, Transact Title and its owners and employees. They would also be suing Kelley, Choudhri, Umatiya, Parker, Fugedi and the rest if they were a legitimate company that was not implicated in this fraud.   If they haven't done that, then the only logical reason is that they know that the evidence will prove that they were willing participants.

Of course the entire Yale Enterprise, including First American, Transact Title (Mansoor expressly was familiar with "the prior policy" per 154a21, *supra*, as they had obtained a policy from WFGF in 2018, which clearly excluded from Schedule C the Steadfast's Collateral Transfer of Note and Lien precluding Alvarez' release and 2017 Yale's transfer to the fake trust.  Exhibit 154a22 2-18-18 WFG at pdf pg. 6; Schedule C item 6 confirming the exclusion from coverage for the: "*Collateral Transfer of Notes and Liens filed February 16, 2018 under Harris County Clerk's File No. RP-2018-65405to D&A Alvarez Group LLC*".  *Id.*  This policy was also procured from Transact Title,

194

Mansoor, Marol, and Salima.  *Id* at pdf pg. 7.  Kelley and Parker specifically referred back to this policy on July 9, the day after losing the summary judgments, when they hatched their fake trust transfer scam.  They obviously knew the CTNL was in the chain of title and binding. They obviously told Huebner, and all the other conspirators that they needed to fabricate evidence to try to overcome that document or hide it.   They orchestrated the entire fake trust scam, Huebner fraudulent abstract, First American and Transact policy and the fraudulent lien release to fabricate a false claim that the fake trust was a bona fide purchaser.  Exhibit 154a22 7-9-19.

281.   **Shahnaz Choudhri a/k/a Shanaz Akter** is Ali Choudhri's mother, apparently very much in the know about Choudhri's business model of real estate fraud.  Like Stephanie, there is no way she doesn't know Choudhri and Kelley are primarily engaged in fraud as a business model. Exhibits 99, 103. Choudhri has allegedly transferred assets to and from her as convenient vehicle by which to hide his assets from Steadfast, other creditors, and Courts, including Choudhri's wife's divorce Court.  Specifically, Akter further approved and benefitted from the secret criminal transfer and default by 2017 Yale's membership interests and management to Kelley and his company, Pabeshan.  Exhibit A.   That transfer was made to extinguish her debt to Lloyd Kelley.  *Id*.

MR. KELLEY:      *"No, it wouldn't. That's - why would I get a contingency fee on your -- for the future from $3 million you already owe me, you, your mother and all your companies? That's the difference.  I had you, your mother and all your companies lined up on a note, a promissory note, a settlement, a Rule 11."*

MR. CHOUDHRI:   *"Lloyd, you wanted to cancel it because you didn't want to be the lawyer. You wanted Brad to be the representative of the 2017 Yale."*

MR. CHOUDHRI:    *"I owned it. You know that. Man, come on. Why are –"*

MR. KELLEY:        "*How did you own it? It was transferred to me.*"

Exhibit B(a) pg. 3.

The entire secret transfer of the borrower 2017 Yale to Kelley was to pay Kelley for legal fees for all of them, as they were hiding assets from other creditors.   She benefitted from and acknowledged the scam.   But for her extinguishment of debt using the vehicle of fraud against Steadfast, Steadfast would have suffered no damages at all.

282.  **Texas Reit, LLC,** s*ee* outline of debts extinguished and fraudulent transfers approved as set forth in BDFI and Akter's statements above, including Exhibit A.

283.  **Worldwide Lending Fund LLC,** s*ee* outline of debts extinguished and fraudulent transfers approved as set forth in BDFI and Akter's statements above, including Exhibit A.

284.  **Worldwide Lending Organization, LLC,** s*ee* outline of debts extinguished and fraudulent transfers approved as set forth in BDFI and Akter's statements above, including Exhibit A.

285.  **Margaret Naeve Parker**, individually and as former manager and member of the forfeited **M.Naeve Antiques, LLC**, is the wife of Brad Parker.  She knew exactly what the Yale Enterprise was doing, and actively participated in it.  Margaret Parker knew that the Yale Enterprise was part of their pattern of unethical conduct, "*the way you run your business is completely unethical*" Exhibit 154a21.   She was involved in meeting with Choudhri to cover up the Enterprise and ensure that her husband was properly bribed to participate.  "*You promised him a million dollars…*", she knew that Brad was covering for

the Enterprise "*the one employee you've ever had – who had your back…*"  *Id* at Wyatt 0434.

Margaret and her company M. Naeve pretended to be legitimate contractors, and stole Steadfast's loaned funds to 2017 Yale, but never did any work, just like Allen Fisher and the others.   Brad secretly funneled her $40,000 in a 'flat fee' from the Steadfast Loan. Exhibit 4a22b.  Margaret Parker never did any work for the $40,000 of stolen loan money she received. "*Brad's wife was supposed to come up with Selections for the whole building....never seen anything."* Exhibit 4a21 4-4-18.

## XIII.
## PREDICATE ACTS ALREADY PROVEN

**18 U.S.C. 1341, 1343 Mail, Wire Fraud - SCHEME**

1) ***A scheme existed for the purposes of committing fraud, scheme defined as;***
   *"Misrepresentation or concealment of a material fact or matter or the scheme to obtain money or property by means of false or fraudulent pretenses involving a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter."  More simply, fraud is the knowing or reckless misrepresentation or omission of a material fact for the purpose of depriving someone of a valuable thing. "[T]he words 'to defraud' in the mail fraud statute have the 'common understanding' of '"wrongdoing one in his property rights by dishonest methods or schemes," and "usually signify the deprivation of something of value by trick, chicane, or overreaching."'" McNally v. United States, 483 U.S. 350, 358 (1987)).*

   *"Scheme" is defined in the broadest and most general terms. United States v. Lemire, 720 F.2d 1327, 1335 (D.C. Cir. 1983).*

**Summary of one key Scheme (detailed acts of wire fraud are identified, with Exhibits, in Section Three of this Supplement below):** *The Fake Trust and Fraudulent Transfer Deed (identified as the "Tenth Scam" and "Eleventh Scam" in the Petition).*

286.    Beginning in July of 2019, Ali Choudhri and Lloyd Kelley masterminded a scheme to defraud Steadfast and destroy Steadfast's ability to foreclose and sell its collateral Property at 829 Yale Street. They used Brad Parker as a "front-man" for Steadfast's borrower-in-default, 2017 Yale. Kelley and/or Choudhri influenced Parker to pretend to own 2017 Yale.   They caused 2017 Yale to illegally give away a deed to Steadfast's collateral Property worth millions of dollars, to a fake Michigan trust they had secretly created, using Nicholas Fugedi, a Michigan resident, as a "front-man" for their fake trust. Kelley and Choudhri secretly owned and controlled both sides of that fake transaction. They bribed or otherwise influenced others into conspiring to participate in the scheme. Their express intent was to keep the loan money they had stolen from Steadfast, render Steadfast's judgment against 2017 Yale useless, and secure title to the collateral Property for themselves by fraud, depriving Steadfast of its collateral, six million dollars loaned to 2017 Yale, and other losses.

287.    The lynchpin of the scheme was the false pretense that the trust was a bona fide purchaser for value and knew nothing of the lien, litigation or of Steadfast.  This is all now proven to be a sham by evidence provided by multiple whistleblowers, David Alvarez and Chris Wyatt, who came forward in 2021 and produced documents and audiotapes which Choudhri, Kelley and others had concealed from Steadfast, the Courts, and everyone else.

This evidence has been filed in several courts, and its authenticity or admissibility not contested in those cases.

288. In fact, Choudhri's compa0ny, Jetall, sued whistleblower Wyatt for possessing Choudhri's documents and tapes (without contesting their authenticity or admissibility). Choudhri was so afraid of having to testify under oath in that proceeding that when ordered to appear for deposition, Choudhri nonsuited that case. *See* <u>Exhibit 253</u>. This is a clear wavier of Choudhri and Jetall's Counter and Third Party claim, as well as the other Defendants' belated and already waived complaints about the Wyatt whistleblower audiotapes.

289. Steadfast is a small, privately owned Loan Servicing Company owned by Marc Sherrin, and a multi-state group of over twenty people, who were fraudulently induced into loaning approximately six million dollars to 2017 Yale. They are good people; veterans, active-duty military, small real estate lenders, retired, small business owners, some just putting their savings or retirements into a real estate loan secured by property which would have been extremely safe, but for the fraud. The lenders' money has been lost completely due to Defendants' scheme.

***Summary of Evidence on Concealed or Misrepresented Facts (Specific Crimes tied to Exhibits are referenced below in Section Three):***

290. Defendants concealed and misrepresented everything about the collateral conveyance from their secretly owned sham company, 2017 Yale, to their fake trust, the Carb Pura Vida Trust, and all of the parties to it. They concealed that Choudhri secretly owned 2017 Yale from the start. 2017 Yale was Steadfast's borrower and debtor in default,

and grantor of the illegal July of 2019 deed to the fake trust.  They concealed that Kelley secretly took ownership of 2017 Yale, and that Brad Parker never owned it. They concealed that they bribed other Defendants with a promised percentage of ownership in 2017 Yale to get them to participate in the scheme.

291.    Kelley and Fraga, posing as attorneys in the civil suit by 2017 Yale against Steadfast to obstruct foreclosure (Cause No. 2016-64847), concealed that they secretly owned the borrower company Plaintiff, 2017 Yale, together with Choudhri.  They presented Choudhri and Parker to commit aggravated perjury and testify that Parker was the sole owner of 2017 Yale, and that Choudhri and Kelley had nothing to do with it.   Kelley and the other lawyers filed real property documents, false affidavits, and frivolous pleadings that told courts that Parker owned 2017 Yale, and they and Choudhri also caused Parker and others to file and record fake company records with the Texas and Wyoming secretaries of state, false affidavits and pleadings in federal and state courts, and fraudulent real estate documents, all founded on Parker's fake ownership.

292.    They all concealed that Kelley and Choudhri secretly created the "Carb Pura Vida" Trust in 2019, and bribed Nicholas Fugedi and others to participate, solely for their own personal benefit.  Their express sole intent, as proven by whistleblower audiotapes, was to use the fake trust to steal title to Steadfast's multi-million-dollar collateral and prevent Steadfast from being able to recover anything from their loan or judgment against 2017 Yale.   They concealed that the trust's supposed "settlor" and "beneficiary" manager, Norma Lopez, was just a woman who worked for Ed Herman, one of the lawyers and Kelley acquaintances they used to hide Kelley and Choudhri's involvement.  This was only

disclosed by emails produced by Alvarez as a whistleblower. They concealed that Elberger, the supposed "member" of the fake trust beneficiary, was a friend of Kelley's, only disclosed by emails produced by a whistleblower.

293.    They concealed that formation of the Carb Pura Vida Trust was begun in July of 2019, immediately upon 2017 Yale losing the debt lawsuit, and was created solely to defraud Steadfast and illegally take title to Steadfast's collateral. They concealed that the fake trust never had any assets other than from Kelley and/or Choudhri. They concealed that the incorporators, settlor, beneficiary, and trustee of the fake trust were all owned or controlled by Kelley and Choudhri. They concealed that the fake trust never paid anything for the deed from 2017 Yale to the Carb Pura Vida Trust, Fugedi perjuring himself in Federal Court claiming he paid millions of dollars for the Property. They concealed that the borrower, 2017 Yale, never received any consideration for the illegal fraudulent transfer deed it gave to Defendants' fake trust. They concealed that the fake trust never paid anything for the deed, property, or transaction, and that the relatively small amount of bribe money that was circulated related to the scheme was paid by Kelley and/or Choudhri, not the trust settlor or trustee. All of these facts were only revealed by the whistleblowers.

294.    Defendants represented to Courts, Steadfast, and others that the Trust was a bona fide purchaser, who had bought the property legitimately for approximately three million dollars. They concealed that they bribed their one-time victim, later co-conspirator, and later whistleblower, David Alvarez, with over $250,000 for him to participate in the scam

by executing and recording on his behalf a fraudulent and illegal lien release in the Real

Property Records, illegally purporting to release Steadfast's lien.[99]

***Whistleblower and Documentary Evidence Summary:***

*See* Exhibit 11a, recorded deed to Steadfast's collateral property into 2017 Yale, subject to Steadfast's recorded lien, Deed of Trust, and Loan Documents, Exhibits 11b-e.

*See* Parker and Choudhri Depositions [Brad Parker testifying under oath that Parker was the sole owner of 2017 Yale, Kelley and Fraga pretending to be lawyers presenting him for perjured testimony, for their own secret purposes]:

**Parker Deposition – January 2019:**

> ***"… I own the company [2017 Yale].*** Exhibit 35, Pg.35-6.

> "*Who is Yale development GP LLC?"*

> ***"It's an affiliated company [with 2017 Yale]….one is tied to the other.***  *I own both entities."* *Id* at Pg. 234.

> *"Are there any other members of either LLC?"*

> ***"No. I'm -- I'm the sole member of both."*** *Id.*

---

[99] The transfer deed (Exhibit 11a) and release (Exhibit 86m) are also expressly disallowed by the Loan Documents (*See e.g.* Exhibit 20e) and made felonious by T.P.C. 32.33 and other federal and state criminal statutes, proving their intent to defraud:

"*[2017 Yale] may not sell, transfer, or otherwise dispose of any Property [10] … this…lien will terminate only if [Steadfast] releases this deed of trust..*" Exhibit 11(b).

"*[D&A Alvarez] agrees to: Preserve the liability of all obligors on the Collateral and preserve the priority of all security for the Collateral… [D.7]"* Exhibit 20(e).

"*[D&A Alvarez] agrees not to… modify the Collateral Note nor grant releases of any part of the Property [E.1] [E.2]"* Exhibits 11b, 20e.

"*... your expectation is not to share a penny of that with Ali or anybody else? **I don't know how many more times I can answer this. I've said no consistently. The answer is no. It's my entity.**" Id* at 115.

**Choudhri Deposition – January 2019:**

*Q. "You're affiliated with 2017 -- MS. FRAGA: Objection. Form. – Yale"*

*A. CHOUDHRI:* "No."

*Q. "Do you have any right to control anyone that's associated with 2017 Yale Development LLC?"*

*A.* "No." *MR. KELLEY: Objection Form...MS. FRAGA: Objection Form.*

Deposition of Ali Choudhri, Pg. 209-210, Exhibits 120, 187.

*Compare* this perjured testimony with:

1) The secret conveyance document giving ownership of the borrower, 2017 Yale, from Choudhri to Kelley, concealed by Kelley, Parker, Choudhri and their minions, and only later produced and authenticated in 2021by Whistleblowers (Exhibits A, B);

*"WHEREAS, Parker desires to assign all of his membership/ownership and management rights...Parker hereby (in October of 2017) transfers all of his interest in 2017 Yale..."* Exhibit A, pg. 3.[100] and;

2) The whistleblower audiotapes produced in 2021 and fully authenticated (Exhibits B, B(a-c)) and their authenticity uncontested (*See* Supplemental Memorandum of Law on Wyatt Audiotapes):

**Ali Choudhri:**        *"you knew because of my divorce, who owned 2017 Yale from the outset... 24:09.... I had Brad as my proxy in front."* B(A) 24:24.

*Lloyd Kelley:*        *"I OWN 2017 Yale!  B(A) 5:13.*

---

[100] Pabeshan was just an alter ego sham entity for Kelley, Exhibit 106.

| | |
|---|---|
| ***Ali Choudhri:*** | ***"why did you have Brad testify that he owns and controls?"*** *B(A) 22:24.* Pg. 33. |
| *Kelley:* | *"I don't give a fuck what Brad testified to!" B(A) 22:28. Id.* |
| *Kelley:* | *"Brad was a front guy" B(A) 31:03.* Pg. 45. |
| ***Choudhri:*** | ***"You knew that all along"*** *B(A) 31.04.* **"** |
| *Kelley:* | *"He didn't testify he owns it" B(A) 5:40.* |
| ***Choudhri:*** | ***"That's not what he said, Kelley, you told him to say that he owns it and he manages it, that's what you told…"*** *B(A) 31:03.* |
| *Kelley:* | *"He never said the word owns"* Exhibit B(a). Pg. 43. |
| ***Choudhri:*** | ***"Yes he did, you told him to say that he owns it and he manages it. He said he's the only … You told him to say that. Lloyd, I'm telling you, you said that"*** Exhibit B(A) 31:14. *Id.* |
| *Kelley*: | "*I told you this is no good if Brad's out of the picture, no good…. if Brad doesn't have ownership, these claims are worthless."* Exhibit B(c), Pg. 3-5. |
| ***Choudhri:*** | ***"brad never had ownership"*** Exhibit B(c) *0:19.*Pg. 4. |
| *Fraga*: | "*What does that have to do with the tax lien because that was Brad that transferred it and the Secretary of State still shows Brad Parker on it?" Id.* |
| *Kelley:* | <span style="color:red">*"Brad didn't want to show up, and you talked about giving Brad 5% or 10% [of the fake Carb Pura Vida Trust] which I thought was a great idea, so he's getting his 5 or 10%, so he stays in."*</span> Exhibit B(a) *3:41.* Pg. 7-8., Pg. 15 |
| *Kelley:* | *"All of that is being held together because of me.* <span style="color:red">*All these lawyers are working for me."*</span> B(B) 14:00; B(B) Pg.23, Ln.18-20. <br> <span style="color:red">*"I want to send a trust -- a piece of this case -- a piece of the company so those lawyers can get paid."*</span> B(A) Pg.42, Ln.20-22. |

***The scheme hinged on the illegal, fraudulent transfer deed Kelley and Choudhri plotted, from their sham company 2017 Yale, Steadfast's borrower, to their sham Michigan Trust. For the scheme to work, they had to defraud the world into believing that the trust was a bona fide purchaser without knowledge of Steadfast issues and lien.***

295.   *See* illegal fraudulent transfer deed recorded in July of 2019, from 2017 Yale to Carb Pura Vida Trust, Exhibit 86(o), executed by Parker for 2017 Yale.  *See also* Exhibit 102, starting pg. 78, Parker, Kelley lying under oath, disclaiming their knowledge of the trust.  *See also* Fugedi's perjured declarations and all of their pleadings in the civil suits, alleging that Fugedi was a legitimate trustee, with no relationship to Choudhri or Kelley, and that the trust innocently paid millions of dollars for the Property without knowledge of Steadfast's lien.  *See e.g.* Exhibits 94, 110, 121.  This innocent bona fide purchaser status was the lynchpin of their scheme.  *Compare* their perjured testimony and denial of knowledge of the Steadfast lien with the Whistleblower Audiotapes, Exhibits B(a-c):

| | |
|---|---|
| ***Choudhri:*** | ***"transferring the property to the trust was stupid.  I did it because you forced me to do it."***  Exhibit B(A), P.49 Ln. 1-5. |
| *Kelley:* | *"Because 2017 Yale was mine!"*  B(A) 33:17. Pg. 49. |
| *Kelley:* | *"I OWN 2017 Yale!   B(A) 5:13.* Pg. 9. |
| ***Choudhri:*** | ***"You don't own 2017 Yale, I didn't agree to even transfer the interest that you told me to transfer to the fucking trust, I thought that was a stupid idea, in the middle of trial, transfer the property."***  B(A) 7:20. B(a) Pg. 12. |
| *Kelley:* | *"it was a brilliant idea!"*  B(A) 7:23. B(a) Pg. 12, Pg. 15. |
| ***Choudhri:*** | ***"You knew because of my divorce[101], who owned 2017 Yale from the outset, you knew that Lloyd, so don't go there… B(A) 24:09…. because of the divorce I had Brad [Parker] as my proxy in front.  You know that."***  *B(A) 24:24.* Pg. 36. |
| ***Choudhri:*** | ***"I thought we were moving it to protect it and it would be deeded back."***  Exhibit B(B)11:18 Pg. 20, Ln 5-14. |

---

*Kelley:*  "*we moved it so that* **[Steadfast]** *couldn't get it.*"  Exhibit B(B)11:18 <u>Pg.</u> 20, Ln 11-14.

**CHOUDHRI:**  "*how is the trust, the pura vida or whatever it is, gonna deed the property* <u>*back to me*</u>?  *How is that going to happen?* Exhibit B(B)11:18 <u>Pg. 19</u>.

"*I thought* <u>*we*</u> *were moving it to protect it and it would be deeded back*" Exhibit B(B)11:18 <u>Pg.20</u>."*2017 Yale went to you, Lloyd, and then you wanted to cancel it, and then you made me transfer – and then you had 2017 transfer it to this trust knowin that its gonna be protected.*" <u>Exhibit B(c) pg. 13-14</u>.

*KELLEY:*  "*we moved it so that* **[Steadfast]** *couldn't get it.*"  *B(B) 11:18;* Pg. 19-20. <u>Exhibit B</u> authenticating.

*CHOUDHRI:*  "*what if* <u>*we*</u> *undo the transfer to the trust from 2017 Yale*?" *B(a) Pg. 17.*

*Kelley:*  "*and what are you going to give [me] for that, Ali? ... Let's undo it all.*" B(a) Pg. 17.

296.    The other whistleblower, Alvarez, produced Kelley's emails setting up the fake trust and transfer with other participants, and made clear in affidavits that remain uncontested as to authenticity that he understood the intent of the group in creating the fake trust and giving away the collateral was solely to defraud Steadfast:

"*Neither the Carb Pura Vida Trust nor 2017 Yale ever paid anything for the property or to Steadfast*" "*Kelley and Fraga, told me they had devised a stratagem … to prevent Steadfast from being able to foreclose on the Property….The entire Carb Pura Vide Trust was a scheme, fake and trick. This intentional plot was designed to hinder Steadfast.*" <u>Exhibits G, H, 86(a-v)</u>.

297.    Alvarez produced emails, sent in interstate commerce, which had been concealed from Steadfast and the Courts, by which Choudhri, Kelley and their minions created the fake trust and its fake settlor and beneficiary, created all of the fraudulent transaction documents, and circulated them by what surely constitutes interstate email and presumably

to be placed in the U.S. mail for recording of fraudulent instruments in the real property records, and state and federal courts, and then the group wired the bribe money to participants in a fake closing.  Exhibits  86(a-v).

**MAIL, WIRE FRAUD ELEMENT 2 – PARTIAL PARTICIPATION:**

*2) The parties knowingly participated in part of the scheme;*

*"All that is required is that [the defendant has] knowingly and willingly participated in the scheme; she need not have performed every key act herself." Each Defendant need not know of all details or aspects of the scheme.  United States v. Maxwell, 920 F.2d 1028, 1036 (D.C. Cir. 1990).*

*Plaintiff need only prove that each Defendant participated in **just one level of the scheme, even if Defendant only played a minor role**. See United States v. Prieto– Tejas, 779 F.2d 1098, 1103 (5th Cir.1986). **RICO does not require proof that each or any defendant knew all of the details of the unlawful enterprise or the number or identities of all of the co-conspirators, as long as there is evidence from which the jury could reasonably infer that the defendant knowingly participated in some manner in the overall objective** of the conspiracy. See United States v. Fernandez– Roque, 703 F.2d 808, 814–815 (5th Cir.1983); United States v. Posada-Rios, 158 F.3d 832, 858 (5th Cir. 1998)*

298.    Choudhri, Kelley, Parker and Fraga are on the tapes; they knew what was going on. The remaining Defendants all played very specific roles, and could not have failed to know of the scheme by the nature of their roles.

299.    This Property was not for sale or on the market.  Steadfast had just won the summary judgments on the debt against 2017 Yale, with Kelley and Fraga pretending to be lawyers on the case, and Alvarez, Choudhri and Parker were all witnesses or parties in the case. Steadfast's lien was valid, in default, without excuse and Steadfast had the right to foreclose.  Exhibits 92, 220.  It is not credible that Elberger, Ed Herman and Norma Lopez (all Texas residents) just suddenly decided to create the Carb Pura Vida Trust, in Michigan,

and have a random guy from Michigan, Fugedi, be their trustee, all to suddenly buy this multi-million dollar property from 2017 Yale in a legitimate sale.  None of them could develop this Property.  They didn't put any of their own money into the trust, they knew the trust had no real purpose, and that they weren't really getting the building for themselves.  They knew they weren't paying anything for the Property.  They never approached Steadfast about paying the lien or buying the Property.  They never mentioned the transaction until Steadfast found out about the illegal deed through its own research.  Thereafter, they concealed the true nature of the scheme and perjured themselves about it.

300.   Kelley and Choudhri paid money through a fake closing to Alvarez, and companies owned by the other conspirators, using interstate wire transfer, and used interstate emails and texts to further the scheme and attempt to avoid foreclosure by Steadfast.  Exhibits 86 (a-v), Exhibit 154a21.  Obviously Kelley and Alvarez knew about it, as they circulated the original emails and release for recording (Exhibits 86(a-v), G, H), and caused Brobisky, Umatiya and/or Chaudhry place it in the US mail for recording by the Harris County Clerk at RP-2019-317071 in the Harris County real property records.   Mansoor Chaudhry and Marol Brobisky worked directly with Kelley and Alvarez to pull off the scheme: "*so much was handled between you all with Mansoor [Chaudhry] directly….:*  Exhibit 86(s).

301.   They gave Parker and Fraga bribes with part of the ownership to get them to participate.  Umatiya, Brobisky, and Chaudhry's title company got paid tens of thousands of dollars to handle the fake closing and obtain a title insurance policy by fraud.  There is no way any title company employees actually believed that Steadfast's lien had been released, and no way that they could issue a policy excluding Steadfast's lien even if they

were told it had been released.  This is basic title law 101.   Every title company employee knows a borrower cannot release his lenders' lien and give away a deed free and clear. Preventing that conduct is the whole reason title abstracts and insurance exist at all. Herman got paid to create the fake trust entities and have Lopez pretend to be the money person behind the fake trust. They paid Huebner, a landman, to file a fraudulent title abstract in federal court based upon the fraudulent and illegal deed and lien release, in order to fabricate a claim to title to Steadfast's collateral.  Choudhri and Parker clearly knew about it, as Choudhri sent a text approving Parker and Alvarez working on the fake transaction documents.   Exhibit 154a21.   Every Defendant either has direct or clear circumstantial evidence already proving that they knew the overall objective of avoiding Steadfast's valid lien and judgment, before any discovery has even commenced.

## RICO MAIL WIRE FRAUD ELEMENT 3 – INTERSTATE IMPACT:

### *The Parties used a public or private mail service or interstate wire communication to further the scheme.*

*Use of the mail has been defined as any of the following:*

  a)  *Placing materials in a post office, mailbox, or other receptacle with intent that the materials are delivered by the U.S. Postal Service or a private interstate carrier;*

  b)  *Receiving anything delivered by the U.S. Postal Service or a private carrier; or*

  c)  *Causing something to be delivered, such as asking someone else to put the materials into a mailbox.*

*It is not necessary to show that defendant directly participated in the transmission, where defendant had reason to know that transmission was the foreseeable result. United States v. Jones, 554 F.2d 251, 253 (5th Cir.), cert. denied, 434 U.S. 866 (1977).  Defendant need not have reasonably foreseen that the mail or wire would involve interstate transmission. United States v. Blackmon, 839 F.2d 900, 907 (2d Cir.1988).  Use of the mails or wires **may be proven by direct evidence, such as**

*the envelope or a recording of a telephone conversation, or by circumstantial evidence.*  See *United States v. Nguyen, 829 F.3d 907 (8th Cir. 2016).*  Wire fraud can be conducted through an email, a text message, a phone call, or social media. Transmission of words, pictures, or sound, and may be transmitted utilizing a landline telephone, a cell phone, a computer, or a public internet service. *Sullo v. Kubosh, 616 S.W.3d 869, 880 (Tex. App. – Houston [1st dist.]2020); United States v. Pecora, 693 F.2d 421 (5th Cir. 1982); Huff v. United States, 301 F.2d 760, 765 (5th Cir.), cert. denied, 371 U.S. 922 (1962).  Each use of the mails or wire communication constitutes a separate offense. See, e.g., United States v. Pazos, 24 F.3d 660, 665 (5th Cir. 1994).*

**Each paragraph below constitutes one or more separate felonies and RICO predicate acts in furtherance of this Scheme, "Scams Ten and Eleven" as Plead in the Petition, by each Defendant listed[102]:**

302.    Choudhri, Parker, Kelley and Fraga committed and conspired to commit state Aggravated Perjury, Federal Perjury, and Subornation of Perjury, in January of 2019, and July of 2019, and filed perjurious affidavits in 2019 and 2020, to cover up Choudhri and Kelley's ownership of 2017 Yale, (perjury being a separate felony and RICO predicate act, *infra*), and caused their perjurious transcripts to be placed in the U.S. Mail, and by email, for three separate and complete felony mail fraud counts, and RICO predicate acts. Exhibits 35, 35c, 102, 120, and 187. They used these transcripts to spring their fraudulent scheme and attempt to portray the conveyance as a legitimate transaction so that they could profit from the collateral themselves.

303.    Choudhri and Kelley used interstate wire communications to plot their continuing scheme to defraud Steadfast in 2020, avoid paying Steadfast's lien or judgment, and obtain the collateral for themselves, by not less than two recorded telephone calls, for two separate and complete felony wire fraud counts, and RICO predicate acts.  Exhibits B(a), B(b).

304.    Choudhri, Kelley, Parker and Fraga used interstate wire communications to plot their continuing scheme to defraud Steadfast in 2020, by a third recorded telephone call, for two separate and complete felony wire fraud counts, and RICO predicate acts.  Exhibit B(c).

305.    Choudhri sent Wyatt a text via interstate wire instructing Wyatt that the plan with Alvarez and Parker on July 19, 2019 (planning to create the fake trust and execute the fake trust scam) had his approval, for a separate and complete felony wire fraud count, and RICO predicate act. Exhibit 154a21b.

---

[102] Steadfast has mail envelopes proving certain mailings; the calls, recording, e-Filing and emails are generally Gmail, Hotmail, AOL, or others, out of state accounts.   The wire was Wells Fargo, also an interstate source.

306.    Choudhri, Kelley, Fraga and Parker caused all of the following people to commit the following additional felony wire and mail fraud acts from 2019-2021.  The sole purpose for all of these fake documents was to conceal that Kelley and Choudhri secretly owned both sides of the illegal, fake transaction, and to defraud Steadfast, the Courts, and prospective buyers into believing that the fake trust was a bona fide purchaser who could sell or develop the property legitimately and without paying Steadfast's lien:

307.    Herman created the fake trust settlor and beneficiary, Carb Pura Vida LLC, and Norma Lopez agreed to be its fake manager to hide the secret ownership of Choudhri, Kelley, and Fraga.  They placed the entity documents which was created for the sole purpose of perpetrating fraud in the U.S. Mail or filed by electronic filing in July of 2019 for recordation with the Texas Secretary of State, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibits 86(l, h).

308.    Elberger agreed to be the fake sole member of the trust settlor and beneficiary, for the sole purpose of defrauding Steadfast, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibits 86(j, h).

309.    Herman circulated the fake entity documents to Elberger and Kelley, and Kelley put them in touch with Brobisky to conclude the fake transaction, signatures by interstate email, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(b).

310.    Kelley prepared all of the final fake transaction and entity documents and circulated them to Alvarez for signatures by interstate email, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibits 86(d, e).

311.    Kelley forwarded the final fake documents to Alvarez and Herman to prepare the fake entities and transaction by interstate email, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(a).

312.    Herman circulated fake entity documents to Kelley and Elberger by interstate email, instructing Elberger and Lopez to execute the fake documents on Kelley's secret behalf, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(a).

313.    Alvarez executed and forwarded Kelley's fake documents to Chaudhry for use in the fake closing, by interstate email, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(e).

314.    Umatiya circulated Kelley's final fake closing documents to Kelley, Parker, Choudhri, Alvarez, Chaudhry, and Brobisky by interstate email for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(u).

315.   Parker executed and Stephanie Alvarez notarized and caused the illegal fraudulent transfer deed to be recorded in the Harris County Real Property Records, for a separate and complete felony mail and wire fraud count, and RICO predicate act.  Exhibit 86(o).

316.   Parker's wife, Margaret Naeve Parker, knew all about the fraud and Parker's role for Ali in it; she received $40,000 dollars from the scheme, and circulated the secret agreement via interstate emails, as well as texted Ali in 2020 to make sure he paid her and Parker the bribes which had been offered in exchange for their participation in the scheme. Exhibits 4a22b, 4a22b DOC 475, 154a21 ali texts w naeve.

317.   Transact Title, owned by Umatiya and Chaudhry and employing Brobisky, placed the illegal fraudulent transfer deed into the United States mail and fraudulently recorded the instrument in the Harris County Real Property records; Stephanie Alvarez notarized the fraudulent instrument, and Brad Parker executed it in his fake capacity for 2017 Yale, for a separate and complete felony mail and wire fraud count, and RICO predicate act.  Exhibit 86(o).

318.   Umatiya prepared the illegal and fraudulent Alvarez lien release, Alvarez executed it, and Transact Title, owned by Umatiya and Chaudhry and employing Brobisky, placed the illegal fraudulent release into the United States mail and fraudulently recorded the instrument in the Harris County Real Property records, for a separate and complete felony mail and wire fraud count, and RICO predicate act.  Exhibit 86(m).

319.   Fugedi, Parker, and Brobisky circulated and sent electronic signatures by interstate email, for a separate and complete felony wire fraud count, and RICO predicate act. Exhibit 86(v).  Defendants Transact Title, Umitaya, Herman, First American and other Defendants received funds by interstate wire from this fake closing.

320.   First American not only issued a fraudulent title commitment, but then received a wire transfer of funds for the fake transaction, and also issued a title policy by interstate wire, failing to identify Steadfast's valid lien, setting the grounds for the fabricated title claim, and circulated it via email as well as filing with the Federal Court.  Exhibits 86(v), 94, 95.

321.   Mansoor Chaudhry circulated Kelley's final fake closing documents to Kelley, Alvarez and Brobisky, to prepare for the illegal wire transfer, by interstate email for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(r).

322.   Alvarez received the $251,301 bribe by interstate wire transfer for the illegal lien release and fake transaction participation from Kelley and/or Choudhri, and circulated Kelley's "final" fake closing documents to Chaudhry, Umatiya, and Brobisky, by interstate

email for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(q).

323.    Brobisky followed up to consummate the fake closing to Alvarez, Chaudhry by interstate email for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 86(s).

324.    Brobisky executed and circulated a fraudulent title commitment to obtain a title insurance policy by fraud through interstate email, for a separate and complete felony wire fraud count, and RICO predicate act.  Exhibit 95.

325.    Parker executed a perjurious affidavit claiming to be the sole manager of 2017 Yale, Exhibit 110, for the purpose of obstructing Steadfast's collection rights on its collateral, when the secret assignment agreement clearly assigned all management, membership and other rights to Kelley, Exhibit A.  Parker, Kelley and/or Fraga placed this perjured affidavit in the U.S. Mail for filing with the Court and to Steadfast, for a separate and complete felony mail fraud count, and RICO predicate act.  Exhibit 110.

326.    Fugedi executed and caused a fraudulent and perjured affidavit to be filed by interstate mail and e-filing in Federal Court, for a separate and complete felony wire and mail fraud count, and RICO predicate act.  Exhibit 121.  Fugedi attempted to mislead Steadfast, the Courts and prospective buyers into believing that Fugedi was a legitimate bona fide purchaser of the Property.

327.    Fugedi caused a fraudulent lis pendens to be filed in the Harris County real property records by interstate mail, for a separate and complete felony wire and mail fraud count, and RICO predicate act.  Exhibit 96.

328.    Huebner created a fraudulent title abstract and executed a fraudulent affidavit for filing in federal court, based upon the fraudulent and illegal deed and lien release, in order to fabricate a claim to title to Steadfast's collateral to serve the scheme.  Huebner caused each of these two documents to be circulated and by interstate email and filed using electronic filing systems in federal court, for four separate and complete felony wire fraud counts, and RICO predicate act.  Exhibit 94.[103]

329.    Choudhri sent Chris Wyatt a text via interstate wire in 2020 for review of the fraudulent affidavit Parker signed to hide his involvement, for a separate and complete felony wire and mail fraud count, and RICO predicate act. Exhibit 154a21a.

---

[103] Everyone knew that Steadfast's lien was valid, in default, without excuse, that Alvarez could never release it, and that both the deed and release were felonies.  See e.g. Exhibits 92, 220, 154a22, even their own fraudulent release they drafted for Alvarez accidentally referenced the Collateral Transfer of Note and Lien, which expressly precluded Alvarez from releasing Steadfast's lien.  Exhibits 20e, 86m.

330.   Fugedi caused a fraudulent lis pendens to be filed in the Harris County real property records by interstate mail, for a separate and complete felony mail fraud count, and RICO predicate act.  <u>Exhibit 163</u>.

331.   Parker, Fugedi, and Brobisky executed fraudulent correction deeds and affidavits, and caused more fraudulent lis pendens to be filed in the Harris County real property records by interstate mail, for six separate and complete felony mail fraud counts, and RICO predicate acts.  <u>Exhibits 171, 183, 193</u>.

332.   All of the legal entity Defendants are liable for the predicate acts of their owners, officers, managers, members, directors, and as such every predicate act outlined above constitutes an act of each Corporation, Limited Liability Company or other legal entity Defendant.  "Generally, courts impute a bank officer or director's knowledge to the bank unless the officer or director acts with an interest adverse to the bank." *Rogers v. McDorman*, 521 F.3d 381, 394 (5th Cir. 2008);  *FDIC v. Ernst & Young,* 967 F.2d 166, 170–71 (5th Cir.1992).

333.   Steadfast was about to foreclose and sell the collateral property to recoup its losses. At that time, the value of the property was higher, and Steadfast's losses much lower, such that they could have recouped their losses and pursued 2017 Yale for the eight and a half million dollar judgment.  Steadfast had offers which fell through because of the fake trust scam.  Creating the fake entities, perjured testimony, fake documents, including the trust, settlor, and beneficiary, bribing Alvarez for the fake release, and Fugedi for the fraudulent transfer deed are the cause of millions of dollars in losses by Steadfast.  Bribing all the other players to circulate fake documents and conduct a fake closing were the cause of the inability of Steadfast to ever recover their losses.

334.   All of these felonies and predicate acts relate to the fake trust scheme.  Kelley, Choudhri and the others conducted numerous other schemes and scams, within the last five years, as well, as set forth in great detail in the RICO Petition.   They stole the last $4000 of Steadfast's loan money in 2019, having stolen the remainder before then.  *See e.g.* <u>Exhibit 55</u>.   They bribed other attorneys for various roles in 2020 (Scam 14).  The scam they pulled on Alvarez in July of 2018 is absolutely unbelievable, and that ended up being a crucial component of the scams against Steadfast, continuing through until 2020 when Alvarez turned whistleblower.  (Scam 7).  In 2019, they had Fraga create a fake Wyoming Company and used Parker and her sham company to fabricate a fraudulent property tax lien and try to wipe out Steadfast using Alvarez' money. (Scam 8).  All of these remain additional timely federal felonies and predicate acts but will not be addressed in detail here.

**18 U.S. Code § 1621 - Perjury**

*Whoever—*

*(1)having taken an oath …, in any case in which a law of the United States authorizes an oath to be administered… willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or (2)in any declaration, certificate, verification, or statement under penalty of perjury…willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.*

335.    Choudhri, Kelley, Parker and Fugedi all committed multiple counts of perjury in federal court proceedings: *See* Exhibit 11a, recorded deed to Steadfast's collateral property into 2017 Yale, subject to Steadfast's recorded lien, Deed of Trust, and Loan Documents, Exhibits 11b-e.  *See* Parker and Choudhri Depositions [Brad Parker testifying under oath, Kelley and Fraga pretending to be lawyers], quoted *supra*. Exhibits 35, 35c, Exhibits 120, 187. *Compare* with Exhibit A and the audiotapes and whistleblower evidence quoted, supra.  Exhibits A, B, B(a-c), G, H, 86(a-v).

367.    Choudhri, Parker, Kelley and Fraga committed and conspired to commit state Aggravated Perjury, Federal Perjury, and Subornation of Perjury, in January of 2019, and July of 2019, and filed perjurious affidavits in 2019 and 2020, to cover up Choudhri and Kelley's ownership of 2017 Yale, (perjury being a separate felony and RICO predicate act, for three separate and complete RICO predicate acts.  Exhibits 35, 35c, 120, 187, and 192.

337.    Parker executed a perjurious affidavit claiming to be the sole manager of 2017 Yale, Exhibit 110, for the purpose of delaying Steadfast's collection rights on its collateral, when the secret assignment agreement they had concealed clearly assigned all management, membership and other rights to Kelley, Exhibit A, for a separate and complete felony count, and RICO predicate act.  Exhibit 110.

338.    Fugedi executed and caused a perjured affidavit for a separate and complete RICO predicate act.  Fugedi attempted to mislead Steadfast, the Courts and prospective buyers into believing that Fugedi was a legitimate bona fide purchaser of the Property.  Exhibit 121.

339.    Huebner fabricated a fraudulent title abstract and executed a perjured affidavit in federal court based upon the fraudulent and illegal deed and lien release, in order to fabricate a claim to title to Steadfast's collateral to serve the scheme, for four separate and complete felony counts, and RICO predicate act. Exhibit 94.

## 18 U.S. Code § 1622 - Subornation of perjury

*Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both.*

340.    Kelley and Fraga (and other attorneys Kelley was secretly paying to represent sham Yale parties) were all paid to present Parker, Choudhri, and Fugedi's perjured testimony and affidavits referenced above, and are on record suborning perjury.

## 18 U.S. Code § 1016 - Acknowledgment of appearance or oath

*Whoever, being an officer authorized to administer oaths or to take and certify acknowledgments, knowingly makes any false acknowledgment, certificate, or statement concerning the appearance before him or the taking of an oath or affirmation by any person with respect to any proposal, contract, bond, undertaking, or other matter submitted to, made with, or taken on behalf of the United States or any department or agency thereof, concerning which an oath or affirmation is required by law or lawful regulation, or with respect to the financial standing of any principal, surety, or other party to any such proposal, contract, bond, undertaking, or other instrument, shall be fined under this title or imprisoned not more than two years, or both.*

341.    Stephanie Alvarez worked for Choudhri, Parker, and Jetall. She notarized the fraudulent transfer deed to the fake trust for use in filing with the Federal Court to facilitate the Scheme. Exhibit 86(o). She also notarized the fraudulent tax relief assignment. Exhibit 81. She had to have known all about it. She orchestrated Choudhri's secret spying on and videotaping of the foreclosure sale, though of course they never bid or offered a cent for the Property. Exhibit 154a21. Alvarez also monitored foreclosure postings and was involved in the Enterprise's fraudulent schemes. Exhibit 154a21. There is no way she worked for these people through literally hundreds of real estate fraud cases and not known she was participating in a criminal enterprise. Exhibit 99. But for her acknowledging and recording fraudulent documents, and covering up the true nature of the scheme, none of the seventeen scams would have gone forward and Steadfast would have suffered no damages. Without her acknowledgement, the illegal fraudulent transfer deed could never have been recorded or used to defraud Steadfast. Stephanie participated directly in the fake trust transfer for the purpose of defrauding the Court, denuding the judgment and defrauding Steadfast:

MR. KELLEY:        *I'll send you -- you know, you first.* *But behind that is you, your mom, Stephanie, Brad.*

MR. KELLEY:        *... the property is transferred and transferred to a trust...*

MR. CHOUDHRI:        *And Stephanie only did it because you told her to do it.*

Exhibit B(b) pg. 6, 8, 32-33.

**18 U.S. Code § 1623 - False declarations before court**

> *(a)Whoever under oath ...in any proceeding before or ancillary to any court of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.*

> *In any prosecution under this section, the falsity of a declaration ...shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury.*

342.    Choudhri, Parker, Kelley and Fraga caused perjurious affidavits to be filed in 2019 and 2020, to cover up Choudhri and Kelley's ownership of 2017 Yale, for separate and complete RICO predicate acts.  Exhibits 35, 35c, 102, 120, and 187.

343.    Parker executed a perjurious affidavit claiming to be the sole manager of 2017 Yale, Exhibit 110, for the purpose of delaying Steadfast's collection rights on its collateral, when the secret assignment agreement they had concealed clearly assigned all management, membership and other rights to Kelley, Exhibit A, for a separate and complete felony count, and RICO predicate act.  Exhibit 110.

344.    Fugedi executed and caused a perjured affidavit, for a separate and complete RICO predicate act.  Fugedi attempted to mislead Steadfast, the Courts and prospective buyers into believing that Fugedi was a legitimate bona fide purchaser of the Property.  Exhibit 121.

345.    Huebner fabricated a fraudulent title abstract and executed a perjured affidavit in federal court based upon the fraudulent and illegal deed and lien release, in order to fabricate a claim to title to Steadfast's collateral to serve the scheme, for separate and complete felony wire fraud counts, and RICO predicate act.  Exhibit 94.

**18 U.S.C. § 1001: False statements.**

*This statute broadly covers falsification or cover-up of material facts, making materially false, fictitious, or fraudulent statements or representations, or making or using false writings or documents in any matter within the jurisdiction of the judicial branch of the federal government. (a) whoever, in any matter within the jurisdiction of the ... judicial branch of the ... United States, knowingly and willfully—*

*(1)falsifies, conceals, or covers up by any trick, scheme, or device a material fact;*

*(2)makes any materially false, fictitious, or fraudulent statement or representation; or*

*(3)makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;*

346.    Every predicate act listed above also constitutes a felony and additional RICO predicate act hereunder, as the scam was not only designed to defraud Steadfast and potential innocent buyers of the Property from the Trust, but also to fabricate a fake title case in federal Court.  All of the documents, the illegal fraudulent transfer deed, the illegal fraudulent lien release, the Parker, Fugedi and Huebner perjured affidavits and fraudulent abstract were all intended to be, and actually were, filed in Federal Court in furtherance of their scheme to defraud Steadfast out of their collateral, in Cause No. 3-19-cv-00249.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

347.    Recent Developments: Now that Defendants' fraud has been outed by whistleblowers, and the world knows Parker was just a fake "front-man" for Choudhri to pretend to own the borrower, 2017 Yale, Choudhri for the first time admits to own 2017 Yale. *See* <u>Exhibit 286</u>. Now that the fake trust has been outed as controlled by Kelley and Choudhri, Kelley now admits to owning the fake trust settlor and beneficiary, Carb Pura Vida LLC, and that Fugedi, Elberger, etc., are all just friend of Kelley's.  *See* <u>Exhibit 286</u>.[104]  Kelley, Choudhri, and Parker

---

[104] Pg. 63 22· · KELLEY: I hope he's [Fugedi] still my friend. Pg. 90·3· · Kelley and Alvarez admit that Fugedi and Lopez were just bribed to pretend to be legitimate trust parties, and had nothing to do with the fake transaction.  It was all Kelley and Choudhri. ·KELLEY: · · did you ever meet Fugedi?  ALVAREZ:  ·A.· ·No, I did not. ·Q.· ·So Fugedi and Norma Lopez · ·Did you ever talk to them on the phone? 21· · · ·A.· ·No. 22· · · ·Q.· ·Did you ever talk to them directly by email? 23· A.· ·No. <u>Exhibit</u>

all previously testified falsely that Parker owned 2017 Yale, the trust was just an unrelated

bona fide purchaser, and that Kelley and Choudhri had nothing to do with it.  *See e.g.* Exhibits

35, 102.

348.    Kelley and Alvarez actually disclosed that the bribe money given to Alvarez for his

fraudulent lien release actually came from Choudhri.  *See* Exhibit 272, pg. 127, 147-8.

> *15· · · ·KELLEY: Q.· ·So the negotiation was between you and Mr. Choudhri. ·Right?*
> *18· · · ALVAREZ: ·A.· ·Yes.* Pg. 147.
> *KELLEY: Choudhri agreed that he would pay you two 17· seventy-five. ·Right?* …
> *24· · · ·A.· ·Correct.* 148
> *KELLEY: part of ·2· your deal [for the felonious fraudulent lien release] was two*
> *seventy-five minus closing costs. ·Right?· ·4· · · ·A.· ·Correct.*
> *·5· · · ·Q.· ·You got whatever was net [of the other bribes Kelley and Choudhri paid to the*
> *other conspirators]? ·6· · · ·A.· ·Yes.·Two fifty-one and some change.  (See e.g.* Exhibits
> 86(q),(v)).

That bribe money was laundered through Transact Title to confuse its origin.

> *pg. 70 18· KELLEY: · ·Q.· ·What mattered to you was what you were going to get out of*
> *it, right --*
> *20· · · ALVAREZ: ·A.· ·Yes. 21· · · ·Q.· ·-- your personal benefit? 22· · · ·A.· ·Yes. Pg. 72*
> *·4· · · ·KELLEY: Q.· ·You received $251,301 from TransAct Title.· ·Right? ·6·ALVAREZ;*
> *A.· ·Correct.*
> Exhibit 272.  *Compare* Exhibits 86(q),(v)).

349.    The reason Kelley duped Alvarez into this deposition without anyone else around is

Kelley wants Steadfast to recover damages from Choudhri and Alvarez, which he thinks will

reduce Kelley's personal exposure for Steadfast's damages in multiple cases.    But Kelley

outsmarted himself, admitting that he personally drafted the fraudulent lien release.

---

272, pg. 37

*Pg. 60  KELLEY [reading from Steadfast Exhibit H]:· ·"He [Kelley] personally drafted and circulated the ·6· Release of Lien for me to sign." ·That may be true.· Right? ·I may have sent you the release, the ·9· recordable Release of Lien that the title comp- --· ·Did I send it to you or the title company? 11· ·ALVAREZ:· ·A.· ·I think the title company sent it to me. 12· · · ·Q.· ·But if I got it, I would have forwarded it to 13· you.· Right?... 15· · · ·A.· ·I believe so, yes.*

Exhibit 272*; compare* Exhibits 86(a-v).

350.    Kelley also admits that while he and his cohorts were pleading and testifying to the contrary, he knew Alvarez and 2017 Yale never received any supposed $3 million dollar note for the fake trust scam.  Exhibit 261, and that Kelley introduced all the fake trust transaction parties to each other, who are all Kelley friends.  Exhibit 272, pg. 67.  In unrelated frivolous litigation, the Enterprise admitted that 2017 Yale never even had title, their lawsuit was frivolous; they never received consideration from the trust for the scam, that Steadfast validly foreclosed, and that they suffered a complete loss of title.  Exhibit 263 at bates FNTI-00030-1.[105] "***…leaving [2017 Yale] without marketable title***." *See* Exhibit 272, pg. 47, 63, 90, 240.[106]

351.    They testified that Alvarez could never release Steadfast's first lien, proving that they all knew that when they fabricated the fraudulent lien release to use the Galveston Court as a vehicle for fraud to spring the fake trust transaction.  Before they lost the loan lawsuit, and as a result wanted the fake lien release, Kelley, Fraga and Alvarez testified that Alvarez could never release Steadfast's lien, and that Steadfast had the right to foreclose on the property. Exhibit 285:

---

[105] Most anything plead anywhere by these actors is false or misleading, but that does not prevent function as judicial admissions.

[106] Choudhri recently nonsuited his case against the whistleblower producing the audiotapes B(a-c)to avoid a Court ordered deposition, due to the pending Department of Justice investigation into these crimes;  Parker and Kelley dodged depositions as well.  Exhibits 256, 267.

*205 18·· I mean, there was nothing I could do on the first lien because Matt and Marc controlled it. 208 ·4· · · ·Steadfast Q.·· Nobody else wiped your lien out, right?  MR. KELLEY:· Objection.· Form.·6· · · · THE WITNESS ALVAREZ:· Again, Marc [Steadfast, pursuant to the Collateral Transfer of Note and Lien, Exhibit 20e] and Matt had control of the first lien.  I only wiped out the 2.2 lien -- 2.2 million [second]  lien…* <span style="color:red">*The first [Steadfast] lien, I did not wipe out.· I had no control in it to wipe it out or 25· release the lien.*</span> *209*

352.    Only after they needed a fraudulent lien release from Alvarez, to spring the Fugedi fraudulent transfer scam did they change their story and claim that Alvarez could release Steadfast's lien.

***************************

# XIV.
# PRAYER

352.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court enter judgment in their favor and against Defendants and that Defendants have judgment of and against them for the following relief:

1. All actual, compensatory, and consequential damages of Plaintiff proven and supported by the Pleadings;

2. All punitive, statutory and exemplary damages and remedies against Defendants proven and supported by the Pleadings;

3. Awarding an order of disgorgement against Defendants;

5. Prejudgment and post judgment interest as provided by law;

6. Attorney's fees;

7. Costs of suit;

8. Appointment of a Receiver as set forth herein;

9. Declaratory Judgment as set forth herein.

10. Such other and further relief at law or in equity to which Plaintiff may be justly entitled.

Respectfully submitted,

**RB LEGAL GROUP, PLLC**

/s/ Christopher Ramey

_____

Christopher Ramey
FBN:  2506
SBN:  00791480
215 S. 4th Street
Wallis, TX 77485
713/974-1333 (Telephone)
713/974-5333 (Facsimile)
*Ramey@RBLegalGroup.com*
*Notice@RBLegalGroup.com*
**COUNSEL FOR PLAINTIFF**

**DESIGNATED E-SERVICE EMAIL ADDRESS**
**The following is the undersigned attorney's designated e-service email address for all eserved documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21(a):** NOTICE@RBLEGALGROUP.COM**. This is the undersigned's only e-service email address, and service through any other email address will be considered invalid.**